## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **Christine Finger** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **4:20-cv-4205** |
| **United Airlines, Inc.** | § | **EFC** |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Ms. Christine Finger served United Airlines for over thirty years as a flight attendant. During her tenure, she received multiple accolades, lauds, and recognition for her outstanding service. One example of this being her serving as flight attendant for the Houston Astros on their flights.

Unfortunately, United turned on its loyal employee after she sustained an in-flight injury due to turbulence, damaging her ankle. As a part of the flight attendant union's collective bargaining agreement, Ms. Finger could return to work after three years of medical leave. Just days before the deadline to return to work Ms. Finger return to United, released by her doctor and ready to fly. However, Ms. Aleta Stansbury said the quiet part out loud, "I almost got you." And, ultimately, through a series of exploitations of United's internal systems, United found a way to terminate Ms. Finger, extinguishing a life-long career and the hopes and Ms. Finger's hopes and

dreams all because of her age, disability, and use of the Family Medical Leave Act (FMLA).

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Christine Finger, is an individual who resides in Harris County, Texas.

2. United is a Delaware Corporation with its principal place of business in Illinois and significant operations in Harris County at the International Airport of Houston.

3. Defendant may be served with process by serving its registered agent for service of process in Texas, CT Corporation System, at its registered address, 1999 Bryan St., Ste. 900 Dallas, Texas 75201.

4. Personal jurisdiction over Defendant United is appropriate because at all times relevant to Plaintiff's claims, Defendant United was doing business in the State of Texas as defined by the Texas Long Arm Statute, contained in Section 17.042 of the Texas Civil Practice and Remedies Code, by recruiting Texas residents for employment inside the State of Texas through its various locations throughout the State of Texas including Defendant's location where Ms. Finger was employed. Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

5. Defendant is an employer within the meaning of the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.001 et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, et seq., as amended ("ADAAA"), et seq., the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., and the

Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et seq.

6.   This Court has jurisdiction to hear the merits of the claims under 28 U.S.C. § 1331.

Venue is proper in the district and division under 28 U.S.C. § 1391(b).

7.   The Court has supplemental jurisdiction over Plaintiffs' claims under the Texas

Labor Code because those claims are so related to claims in the action within

Court's original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution. 28 U.S.C. §1367.

## II.   FACTUAL BACKGROUND

8.   Ms. Finger began her career at United Airlines with its predecessor, Continental

Airlines, in July 1984.

9.   For the duration of her career, Ms. Finger worked as a flight attendant.

10.   As a flight attendant, Ms. Finger received honors and awards for her outstanding

service and professionalism, for example, Ms. Finger was selected for:

   a.   selected for a Flight Service Manager position;
   b.   uniform wear tester;
   c.   ambassador representing United at ongoing functions, including crew
        to unveil new Continental/United logo on first "tail" of our fleet,
   d.   crew for delivery of new aircrafts from Boeing, and
   e.   to be one of less than 20 NFL Charter Coordinators,
   f.   serving Major League Baseball and National Football League team
        flights.

11.   The two companies merged in 2008 with company taking the name United

Airlines.

12.   During a flight in August 2014, Ms. Finger experienced an on-the-job injury to her

left ankle, left hip, and lower back due to severe clear air turbulence.

13. The damage to which required time off and medical treatment to heal.

14. Ms. Finger initially received medical treatment through United's workers' compensation doctors and TPA administrator Gallagher Basset; however, the medical care Ms. Finger received was sub-par.

15. This sub-par medical treatment, misdiagnosis and denial of proper medical treatment, prolonged her recovery and delayed her return to work.

16. United has a policy with which a Flight Attendant who becomes injured on the job may return to work within three years of leave due to an on-the-job accident.

17. Under Continental, this policy had been a six-year return to work policy but was superseded by the new collective bargaining agreement in September 2016.

18. This collective bargaining agreement also eliminated the opportunities for light duty or transitional work available to flight attendants at Continental.

19. Ms. Finger had previously used the light duty provisions in April 2016 to work light duty as a recruiter.

20. Additionally, the new policy adopted a "100% healed" policy, meaning flight attendants had to be released by their physicians with "no restrictions."

21. United enforced these policies without consideration of their employees' needs and whether those needs would allow an employee to work with or without a reasonable accommodation.

22. In April 2016, Ms. Finger returned to work at United to work in a position created for her as recruiter, which was a form of light duty.

23. Ms. Finger only worked this position until May 28, 2016, due to the fact, that her

pain from her injuries prevented her from continuing.

24. Because of this short stint, the three-year contractual leave provision reset, meaning Ms. Finger would need to return to work on or before May 28, 2019.

25. Eventually, Ms. Finger decided to hire her own private surgeon and paid medical expenses out of her own pocket.

26. Because of this, Ms. Finger finally healed and was released to return to work on May, 26, 2019.

27. Indeed, Ms. Finger began re-training on June 2, 2019.

28. In preparing to return to work, Ms. Finger attended her required return to work interview with her base supervisor.

29. During this meeting, Ms. Finger also poked her head into Ms. Aleta Stansbury's office on May 29, 2019.

30. In this meeting, Ms. Stansbury told her, "Ms. Finger almost had you; all I needed was three more days."

31. She explained to her, that she handles all the leave of absence cases, once they begin the 90-day countdown to the 3-year deadline.

32. She further expressed that she is the one that sends out the termination letters.

33. Ms. Stansbury showed her ableist and ageist biases and her desire to terminate someone who used medical leave or otherwise was disabled.

34. Ms. Stansbury admitted to United's desire to terminate employees who have disabilities or are over the age of 40.

35. Notwithstanding Ms. Stansbury's comments, Ms. Finger began the re-training on

June 2, 2019.

36. During training, United employed her, issuing pay checks, including her in benefits, directing when, where, and how Ms. Finger should perform her work

37. Ms. Finger completed 17 days of training in June 2019

38. Unfortunately, on the last day of training, June 16, 2019, Ms. Finger suffered another on-the-job injury.

39. After this injury Ms. Finger observed all required notices, policies, and procedures for reporting an on-the-job injury and initiated the interactive process.

40. Initially, Ms. Finger begged her training instructors not to report the injury as Ms. Finger feared a new on the job injury would draw retaliation from United.

41. Eventually, Ms. Finger reported the injury to her supervisor, Mr. Dominic Cordova, and Ms. Finger contacted our ESC in an attempt to find the phone number for Sedgwick, our plan administrator.

42. Sedgwick informed her that her supervisor was in charge of forwarding employees' information.

43. Ms. Finger immediately wrote Dominic and explained what had happened, what the ESC told her, and therefore Ms. Finger was writing him to change and document the on-the-job injury status.

44. Ms. Finger also verified this procedure with the WC Guidelines Handbook.

45. Ms. Finger also told the representative at the ESC that Ms. Finger had been on OJI and had participated in the RAP to RTW, and Ms. Finger would need to update that the status of her injury had changed, as per they instructed her to do,

upon being released to work.

46. She told her that Ms. Finger needed to wait until her supervisor had documented it, status changed, and Sedgwick had accepted her injury, then contact the RAP division to notify of status change.

47. Along with numerous emails back and forth to Mr. Cordova, Ms. Finger called her supervisor, Mr. Dominic Cordova, over twenty (20) times.

48. Ms. Finger has phone logs of over 60 phone calls, trying to reach the ESC and Inflight, and receive definitive answers about this new OJI status, between the dates of June 18th and June 26th, when her first trip was scheduled.

49. In one of those emails from Dominic, he told her to contact Aleta Stansbury for direction. Ms. Finger has phone log of leaving her 3 voice mails, asking her what to do, that Dominic told her to ask her for further direction.

50. Ms. Finger never received a response from Aleta.

51. Aleta Stansbury is our Base Administrative Secretary and had a responsibility to respond to her phone calls and inquiries for assistance during this new injury.

52. Though, at this time United had changed her supervisor, neither Ms. Finger nor Mr. Cordova knew United had changed her supervisor.

53. Ms. Finger called Ms. Stansbury three times as instructed to try to obtain leave.

54. Ms. Stansbury never called her back.

55. No one from United ever contacted her about any sort of leave, light duty, or other accommodation.

56. On June 28, 2019, Ms. Stansbury – the same employee who bragged about "almost

getting her" – sent her a letter confirming United had terminated her 35 years of employment.

57.  The stated reason for her termination was that Ms. Finger had not completed the return-to-work process within its three-year extended medical leave program.

58.  This occurred despite her being a current employee and entitled to rights under the Americans with Disabilities Act.

59.  Indeed, her employment status was even listed as "active" within United's own systems.

60.  United failed to engage her in trying to accommodate or even talk to her about how to allow her to continue working while her ankle healed.

61.  United failed to accommodate her disability.

62.  As evidenced by Ms. Stansbury's own words, United targeted her because of her disability and age.

63.  Upon information and belief, United prefers to target older workers for termination.

64.  Further, United retaliated against her for taking medical leave.

65.  United ended her 35-year-long career because of her disability, her age, and in retaliation for her disability leave.

### III.   <u>CAUSES OF ACTION</u>

## A.  ADEA AGE DISCRIMINATION

66.  Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

67.   Defendant's actions as described herein constitute unlawful sex discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

68.   Plaintiff has satisfied all jurisdictional prerequisites in connection with Plaintiff's claims.

69.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

70.   As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

71.   Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights.  Plaintiff therefore seeks liquidated damages under 29 U.S.C. § 626.

72.   Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 29 U.S.C. 14 § 626.

73.   Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

## B.  TCHRA AGE DISCRIMINATION

74.  Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

75.  As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's age in violation of the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, et seq. The employment practices complained of above were intentional.

76.  Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Texas Labor Code.

77.  As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

78.  As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

79.  Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's state-protected rights.   Plaintiff therefore seeks punitive damages under the Texas Labor Code.

80.  Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

81.  Defendant's actions referenced in the paragraphs above have caused Plaintiff to

retain the services of the undersigned counsel in order to pursue her state rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under the Texas Labor Code.

## C.   ADAAA DISABILITY DISCRIMINATION

82.   The paragraphs above are hereby incorporated by reference as if fully set forth herein.

83.   Defendant's actions, including but not limited to Defendant's ultimate termination of Plaintiff were undertaken because of Plaintiff's disabilities and/or perceived disabilities.  These actions constituted a continuing violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, et seq, as amended.

84.   Due to Defendant's actions, including but not limited to Defendant's ultimate termination of Plaintiff, Plaintiff has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

85.   Defendant's actions were done with malice and/or reckless indifference, entitling Plaintiff to punitive damages under the ADAAA.

86.   To redress the injuries sustained by Plaintiff on account of Defendant's discriminatory actions, Plaintiff has retained the undersigned counsel to represent her in this action.  Plaintiff therefore seeks recovery of her reasonable attorneys' fees, experts' fees, and costs.

## D.   TCHRA DISABILITY DISCRIMINATION

87.   Plaintiff realleges and incorporates the allegations contained in the Paragraphs

above as if fully stated herein.

88. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.001 et. seq.

89. Defendant is an "employer" as defined by the TCHRA in Tex. Lab. Code. § 21.002.

90. Plaintiff is an "employee" as defined by the TCHRA in Tex. Lab. Code. § 21.002.

91. Defendant subjected Plaintiff to disability discrimination when Defendant terminated her.

92. As described above, Defendant intentionally and willfully violated the TCHRA by discriminating against Plaintiff in violation of the Tex. Lab. Code. §§ 21.051, 21.106 & 21.125.

93. In illegally discriminating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutory-protected rights of Plaintiff.

94. As a result of Defendant's violations of the TCHRA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which can be estimated for the purpose of bringing this lawsuit for which they hereby sue.

95. Plaintiff has also suffered compensatory damages in the form of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and other losses, for which Plaintiff hereby sues.

96. To redress the injuries sustained by Plaintiff on account of Defendant's discriminatory and retaliatory actions, Plaintiff has retained the undersigned

counsel for representation in this action. Plaintiff therefore seeks recovery of her reasonable attorneys' fees, experts' fees, and costs.

97. As a result of these willful violations of the TCHRA, Plaintiff requests she be awarded all compensatory and punitive damages, to which she is entitled, as outlined in Tex. Lab. Code. § 21.2585, equitable and/or injunctive relief as outlined in Tex. Lab. Code. § 21.258, and attorneys' fees and costs as described in Tex. Lab. Code. § 21.259.

## E.   RETALIATION

98. Plaintiff realleges and incorporates the allegations contained in the Paragraphs above as if fully stated herein.

99. Defendant intentionally retaliated against Plaintiff in violation of:

   a.   the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, et seq, as amended ("ADAAA");

   b.   the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. because of her protected activities;

   c.   Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.001 et. seq.; and

   d.   Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

100. As a result of the unlawful retaliatory actions of Defendant as described above, Plaintiff has suffered, and will continue to suffer, actual damages in the form of lost wages, medical and mental health costs, both past and future, and lost employment benefits, for which she hereby sues.

101. As a result of Defendant's unlawful retaliation, Plaintiff has suffered

compensatory damages by reason of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

102. At all times relevant to this action, Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, thus entitling her to punitive damages, for which she hereby sues.

103. To redress the injuries sustained by Plaintiff on account of Defendant's retaliatory actions, Plaintiff has retained the undersigned counsel to represent her in this action.   Plaintiff therefore seeks recovery of her reasonable attorneys' fees, experts' fees, and costs.

## IV.  **JURY DEMAND**

104. Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

## V.  **PRAYER**

105. WHEREFORE, Plaintiff Ms. Finger respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, she be awarded:

  i.   Back pay, including but not limited to, lost wages (salary and commissions) and other employment benefits;

ii.   Reinstatement to Plaintiff position of employment, equivalent position of employment, or the position of employment Plaintiff would have enjoyed but for the discrimination and retaliation;

iii.   In the event that reinstatement is not feasible, front pay with respect to all pay and benefits Plaintiff would have received but for termination;

iv.   Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

v.   Actual damages;

vi.   Punitive damages;

vii.   Liquidated damages in the maximum amount allowed by law;

viii.   Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit; and

ix.   Prejudgment and post-judgment interest as allowed by law;

x.   Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

Respectfully submitted,
December 10, 2020

Evan Lange Law, PLLC
14015 Southwest Fwy. #14
Sugar Land, Texas 77478
713.909.4558-telephone

By: /s/ *Evan B. Lange*
Evan B. Lange
Texas Bar No. 24089021
evan@evanlangelaw.com