United States District Court
Southern District of Texas
**ENTERED**
August 26, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHRISTINE FINGER, | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. 4:20-CV-4205 |
| UNITED AIRLINES, INC., | § |
| Defendant. | § |

**ORDER**

Pending before the Court is the Defendant United Airlines, Inc.'s ("United") Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. 18). The Plaintiff Christine Finger ("Finger") has responded (Doc. No. 19) and United has replied (Doc. No. 20). After considering the motion, briefing, and applicable law, the Court denies the motion.

**I.   Background**

Finger was employed by United as a flight attendant for more than thirty years. In August of 2014, Finger sustained an injury during a flight. The collective bargaining agreement (CBA) that governed Finger's employment provided that flight attendants must return to work within three years of taking leave due to an on-the-job injury (OJI). In April of 2016, Finger returned to work as a recruiter, but her injuries prevented her from continuing and she took leave again the following month. Due to this short stint working, the leave provision reset; Finger was required to return to work on or before May 28, 2019 under the CBA.

Finger was finally cleared to return to work on May 26, 2019. She attended a required return-to-work interview with her supervisor and began training. Finger alleges that, during this time, the base administrative secretary for IAH airport told her, "Ms. Finger, I almost had you; all I needed was three more days." (Doc. No. 13 at 6). On the last day of training, Finger sustained

another OJI. Finger alleges that she initially asked her training instructors not to report the new OJI for fear of retaliation from United, but then observed all the required notices, policies, and procedures for reporting the injury. Finger further alleges that she struggled to get in contact with the appropriate supervisors to try to take leave and ensure she would not be disciplined. According to Finger, she was never contacted about any leave, light duty, or other accommodation.

On June 28, 2019, Finger received a letter from United terminating her employment. The reason given in the letter was that Finger had not completed the return-to-work process within the three-year allowable leave period.

Finger has now sued United pleading causes of action of age discrimination under the Age Discrimination in Employment Act (ADEA) and Texas Commission on Human Rights Act (TCHRA), disability discrimination under the Americans with Disabilities Act (ADA) and TCHRA, and retaliation. United has moved to dismiss under Rule 12(b)(1) claiming that the Railway Labor Act (RLA) precludes jurisdiction in this Court because the Act grants exclusive subject matter jurisdiction over disputes of this kind to the RLA Adjustment Board.

## II.     Legal Standards

### A.     Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Handy v. United Airlines, Inc.*, CV H-20-3751, 2021 WL 639995, at *2 (S.D. Tex. Feb. 18, 2021) (quoting *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014)). When the Court's subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing it. *See id.*; *Alabama-Coushatta Tribe of Tex. v. U.S.*, 757 F.3d 484, 487 (5th Cir. 2014). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot

prove a plausible set of facts that establish subject matter jurisdiction. See *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). "[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012) (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2007)).

**B.     Jurisdiction Under the RLA**

The RLA classifies disputes relating to a CBA as either "major" or "minor." *Handy*, CV H-20-3751, 2021 WL 639995, at *2 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994)). Minor disputes are exclusively within the jurisdiction of the RLA Adjustment Board. *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978); *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322 (1972). "The distinguishing feature of a minor dispute is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (quoting *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 305 (1989)). "To state that a claim can be 'conclusively resolved' by interpreting a CBA 'is another way of saying that the dispute does not involve rights that exist independent of the CBA.'" *Id.* (quoting *Norris*, 512 U.S. at 265).

**III.     Analysis**

United argues that Finger's claims may be conclusively resolved by interpreting the CBA, and therefore are within the exclusive jurisdiction of the RLA Adjustment Board. Finger responds that, while her claims may necessitate the consultation of the CBA, the CBA itself does not conclusively resolve them because her claims involve rights that exist independent of the CBA. Both parties rely on the Fifth Circuit case, *Carmona v. Sw. Airlines Co.*, 536 F.3d 344 (5th Cir.

3

2008), to argue their respective positions, and its similarity to the situation here makes it particularly helpful.

In *Carmona*, a male flight attendant Edward Carmona was employed by Southwest Airlines. *Carmona*, 536 F.3d at 345. The terms and conditions of his employment were governed by a CBA. *Id.* Carmona suffered from psoriasis and psoriatic arthritis, which caused him to take leave under the Family and Medical Leave Act (FMLA) multiple times a month. *Id.* In addition, Carmona had multiple unexcused absences for which he accumulated attendance "points" pursuant to the CBA. *Id.* Eventually, Carmona accumulated more than the maximum number of points allowed by the CBA and Southwest terminated his employment. *Id.* at 346. Carmona sued Southwest alleging sex discrimination under the Civil Rights Act, disability discrimination and failure to accommodate under the ADA, and retaliation in violation of the FMLA. *Id.* Specifically, Carmona alleged that Southwest assessed him attendance points and denied him medical leave in situations under which similarly situation female flight attendants were not assessed points or denied leave. *Id.* He also alleged that female flight attendants who exceeded the maximum number of points under the CBA were not terminated and that Southwest discriminated against him because of his various medical conditions. *Id.*

Southwest moved to dismiss pursuant to Rule 12(b)(1) arguing, as United does here, that Carmona's claims were precluded by the RLA. *Id.* at 346–47. The district court denied the motion without prejudice and Southwest filed a motion for summary judgment reasserting the same contention. *Id.* at 347. The court granted the motion finding that Carmona's claims were precluded by the RLA and dismissed the action for lack of subject matter jurisdiction. *Id.*

On appeal, the Fifth Circuit reversed. The court held that the provisions of the CBA were "relevant to, but *not* dispositive of, the resolution of Carmona's claims," so his claims did not

constitute a minor dispute under the RLA. *Id.* at 349. "Even though a court would have to *refer to* the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination." *Id.* Carmona alleged that the "CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory." *Id.* The court also acknowledged that it was significant that Carmona sought to enforce his federal statutory rights under the Civil Rights Act and the ADA rather than contractual rights embodied in the CBA. *Id.* at 350. While the court did not go so far as to suggest that "the source of the rights asserted in a union member's claims determines absolutely whether his action is precluded by the RLA," it did recognize that the rights' statutory source evinces that the suit does not require CBA interpretation. *Id.* at 351.

Here, Finger's claims similarly "do not require interpretation of the CBA, only reference to it." *Id.* Finger's amended complaint does not allege that United has misapplied or misinterpreted the CBA. Indeed, the complaint never asserts that United did not have the contractual right to terminate Finger under the CBA. Instead, Finger alleges that "United does not subject the same strict return to work requirements to younger, able-bodied flight attendants . . . and that [Finger's] use of statutory rights, age, and chronic illnesses were the real reasons she was fired." (Doc. No. 13 ¶ 68). Just as Carmona did, Finger alleges that the "CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory." *Carmona*, 536 F.3d at 349. In addition, just as Carmona only pleaded causes of action to enforce federal statutory rights, Finger has sued to enforce only federal and state statutory rights. (*See* Doc. No. 13 at 13–18). She does not seek to enforce contractual rights under the CBA.

5

United argues that, because there is an ongoing contractual dispute currently in arbitration in which Finger's union has challenged United's interpretation of the CBA, Finger's claims here must also be precluded. Nevertheless, United has provided no authority for the proposition that a union member and her union may not challenge the employer's CBA interpretation in RLA arbitration while simultaneously suing to enforce statutory rights. In fact, the Supreme Court has squarely rejected such an interpretation. *See Norris*, 512 U.S. at 256 ("[T]he RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA.").

Just as Carmona's allegations, Finger's allegations of discrimination and retaliation "do not require interpretation of the CBA" and therefore "they do not constitute a minor dispute precluded by the RLA." *Carmona*, 536 F.3d at 351. Accordingly, the Court has jurisdiction to hear Finger's claims.

### IV.  Conclusion

For the foregoing reasons, United's motion to dismiss (Doc. No. 18) is hereby denied.

Signed at Houston, Texas, this 26th day of August 2021.

Andrew S. Hanen
United States District Judge