**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTINE FINGER,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 4:20-cv-04205** |
| | § | |
| **UNITED AIRLINES, INC.** | § | |
| | § | |
| *Defendant* | § | |

# DEFENDANT UNITED AIRLINES, INC.'S RESTATED MOTION FOR SUMMARY JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTINE FINGER,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 4:20-cv-04205** |
| | § | |
| **UNITED AIRLINES, INC.** | § | |
| | § | |
| *Defendant* | § | |

---

**DEFENDANT UNITED AIRLINES, INC.'S RESTATED**
**MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS


I. INTRODUCTION ............ 1

II. NATURE AND STAGE OF THE PROCEEDING ............ 2

III. STANDARD OF REVIEW ............ 3

IV. STATEMENT OF FACTS ............ 3

V. SUMMARY OF THE ARGUMENT ............ 9

VI. FINGER CANNOT STATE CLAIMS FOR AGE DISCRIMINATION ............ 9

A. Finger Cannot Create a Fact Issue as to a Comparator. ............ 9

B. Finger Cannot Create a Fact Issue as to Pretext. ............ 10

VII. FINGER CANNOT STATE CLAIMS FOR DISABILITY DISCRIMINATION. ............ 13

A. Finger Cannot Create a Fact Issue as to Her Qualification or Causation. ............ 13

B. Finger Cannot Create a Fact Issue as to Pretext. ............ 15

VIII. FINGER CANNOT STATE CLAIMS FOR RETALIATION. ............ 16

A. Finger Cannot Create a Fact Issue as to Protected Activity or Causation. ............ 16

B. Finger Cannot Create a Fact Issue as to Pretext. .................................................. 17

IX. CONCLUSION.......................................................................................................... 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTINE FINGER,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 4:20-cv-04205** |
| | § | |
| **UNITED AIRLINES, INC.** | § | |
| | § | |
| *Defendant* | § | |

---

**DEFENDANT UNITED AIRLINES, INC.'S RESTATED**
**MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF AUTHORITIES

**Cases**


Agoh v. Hyatt Corp., 992 F.Supp.2d 722, 744 (S.D. Tex. 2014) ........ 12

Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988) ........ 11

Caldwell v. KHOU-TV, 850 F.3d 237, 242 (5th Cir. 2017) ........ 15

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ........ 3

Cervantez v. KMGP Servs. Co., 349 F. App'x 4, 10 (5th Cir. 2009) ........ 11

CSC Applied Technologies, LLC, 376 S.W.3d 802, 822 (Tex.App.—Houston [1st Dist.] 2012, pet. denied) ........ 15

Donaldson v. Tex. Dept. of Aging & Disability Servs., 495 S.W.3d 421, 436 (Tex.App.—Houston [1st Dist.] 2016, pet. denied) ........ 13

Dugger v. Stephen F. Austin State Univ., 232 F.Supp.3d 938, 950 (E.D. Tex. 2017) ........ 16

EEOC v. Chevron Phillips Chem. Co., 570 F.3d. 606, 616 (5th Cir. 2009) ........ 14

EEOC v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014) ........ 13

Feist v. Louisiana, 730 F.3d 450, 454 (5th Cir. 2013) ........ 15

Ferrera-Parra v. United Airlines, Inc., No. 4:19-cv-01053 (S.D. Tex. Aug. 20, 2019) ................ 16

Goudeau v. National Oilwell Varco, L.P., 793 F.3d 470, 478 (5th Cir. 2015) ............................ 15

Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 258-59 (5th Cir. 2001) ..................... 13

Jones v. Gulf Coast Rest. Grp., Inc., 8 F.4th 363, 368 (5th Cir. 2021) ....................................... 10

Lanza v. Postmaster Gen. of the U.S., 570 F.App'x 236, 241 (3d Cir. 2014) ............................ 16

Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) ............................................................ 15

LeMarie v. Louisiana Dept. of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007) ................... 11

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) ..................................................... 3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ............................. 3

Nelson v. Covestro LLC, No. 4:18-cv-02899 (S.D. Tex. May 3, 2019) .................................... 13

Norsworthy v. Hous. Indep. Sch. Dist., 70 F.4th 332, 337 (5th Cir. 2023) .................................. 9

Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002) ................................................ 11

Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001) ....................................... 11

Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp., 992 F.2d 1398, 1401 (5th Cir. 1993) ......................................................................................................................................... 3

Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012) ....................................... 16

Rodriguez v. Eli Lilly & Co., 820 F.3d 759, 765 (5th Cir. 2016) ............................................... 13

Ross v. Judson Indep. Sch. Dist., 993 F.3d 315, 321-22 (5th Cir. 2021) ...................................... 9

Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122-23 (5th Cir. 1998) .................................... 16

Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996) ............................................................. 3

Summerville v. Trans World Airlines, Inc., 219 F.3d 855, 858 (8th Cir. 2000) ......................... 12

Waggoner v. City of Garland, 987 F.2d 1160, 1165-66 (5th Cir. 1993) .................................... 11

Watkins v. Tregre, 997 F.3d 275, 283 (5th Cir. 2021) .............................................................. 10

**Statutes**

29 U.S.C. §621 *et seq.* ......................................................................................................... 2

42 U.S.C. §12101 *et seq* ........................................................................................................ 2

45 U.S.C. §151 *et seq*. 1

TEX. LABOR CODE §21.001 *et seq*. 2

**Rules**

FED. R. CIV. P. 56(c). 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTINE FINGER,** | § | |
| | § | |
| ***Plaintiff*** | § | |
| | § | |
| **v.** | § | **Case No. 4:20-cv-04205** |
| | § | |
| **UNITED AIRLINES, INC.** | § | |
| | § | |
| ***Defendant*** | § | |

---

**DEFENDANT'S RESTATED MOTION FOR SUMMARY JUDGMENT**

---

Defendant United Airlines, Inc. ("United") files this motion for summary judgment as to all claims by Plaintiff Christine Finger ("Finger") per Federal Rule of Civil Procedure 56.

## I.
## INTRODUCTION

1. Finger worked as a Flight Attendant with United for nearly 35 years, the last five of which she spent on medical leave. After exhausting all available leave under the applicable collective bargaining agreement ("CBA") with the Association of Flight Attendants ("AFA"), Finger did not have a right to continued leave, and United exercised its right under the CBA for an administrative employment separation. A final and binding decision by a System Board of Adjustment, empaneled under the Railway Labor Act, 45 U.S.C. §151 *et seq*. ("RLA"), confirmed that United properly exercised its contractual right when it separated Finger from employment administratively.

2. Now, acting *pro se*, Finger continues to pursue claims for age discrimination, disability discrimination, and retaliation under federal (the Age Discrimination in Employment

Act, 29 U.S.C. §621 *et seq.* ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("ADA") ) and Texas law (TEX. LABOR CODE §21.001 *et seq*. ("Chapter 21")). United has clearly articulated a legitimate, non-discriminatory, non-retaliatory reason for employment separation – namely, its contractual right to do so after Finger exhausted her contractual leave entitlement, affirmed by the RLA System Board of Adjustment. In order to avoid summary judgment as to all of her claims, Finger bears the enormous burden of establishing that United's articulated reason is false or otherwise a pretext for a discriminatory or retaliatory motive. Despite this case meandering for nearly six years, the underlying facts have remained the same, and Finger cannot meet this burden Because she cannot create a fact issue as to the elements of her underlying claims, the Court should grant summary judgment.

## II.
## NATURE AND STAGE OF THE PROCEEDING

3. Finger filed her EEOC charge on November 21, 2019. The EEOC dismissed her charge on September 18, 2020. She filed her first amended complaint on February 9, 2021. Dkt. 13. United filed a motion to dismiss for lack of subject matter jurisdiction on March 2, 2021, Dkt. 18, which the Court denied on August 26, 2021, Dkt. 29. Finger also filed an original petition with Harris County district court on June 4, 2021, which the court dismissed for lack of subject matter jurisdiction on January 19, 2022. The AFA also pursued a labor grievance on Finger's behalf which was heard by an RLA System Board of Adjustment on July 29, 2021. Ex. 1 at 1-22 (United 5725-46). The System Board of Adjustment issued an award denying the grievance on March 17, 2022. *Id*. On November 15, 2024, United previously filed a motion for summary judgment. Dkt. 94. On September 30, 2025, the Court denied this motion without prejudice. Dkt. 163. On January 16, 2026, Finger filed her second amended complaint, Dkt. 216, and on January 29, 2026, United timely filed its amended answer, Dkt. 223. United now timely files this restated motion for

summary judgment.

## III.
## STANDARD OF REVIEW

4. United moves for summary judgment as to all of Finger's claims under Rule 56. Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "go beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial." *Id*. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' … by 'conclusory allegations,' … by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Matsushita, 475 U.S. at 586). Rather, to meet this burden, the non-movant must "identify specific evidence in the record" and "articulate the precise manner" in which that evidence supports her claims. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). The moving party is entitled to summary judgment if no "rational trier of fact" could find that the non-moving party could prevail on his case based on the record evidence. Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp., 992 F.2d 1398, 1401 (5th Cir. 1993).

## IV.
## STATEMENT OF FACTS

5. Finger began her employment as a flight attendant with Continental Airlines on July 12, 1984. Ex 1 at 25 (United 246). On August 3, 2014, Finger injured her left foot while

working. *Id*. at 28 (United 5668). As a result, Finger could not work and filed a worker compensation claim, and United placed her on medical leave.

6. In April 2016, Finger briefly returned to work when United identified an available light duty position. Ex. 1 at 32. When this position ended, United again placed Finger medical leave effective May 26, 2016. *Id*. at 24 (United 245). Shortly afterward, United informed Finger that under the terms of the new CBA between the airline and the AFA, her leave would expire in three years, on May 26, 2019. *Id*. at 34 (United 249).

7. Other than this brief period of light duty in 2016, Finger remained on medical leave for nearly five years. Ex. 1 at 37 (United 4116). Commensurately, the lengthy period of her worker compensation claim remaining open resulted in a contested case hearing. *Id*. at 38-39 (United 3828-29). On June 28, 2017, after the parties entered an oral agreement, the hearing officer entered an agreed decision. *Id*. at 42-44 (United 3793-95). Notably, this agreed decision found that Finger had reached maximum medical improvement with an impairment rating of six percent as early as August 8, 2016. *Id*. at 44 (United 3795). Despite the hearing officer entering an agreed decision, Finger acting *pro* se filed an appeal. *Id*. at 46-54 (United 3782-90). She argued that her attorney substituted at the last moment and that the hearing officer was biased. *Id*. On October 2, 2017, the appeals panel denied Finger's appeal. *Id*. at 56-57 (United 3765-66).

8. On April 19, 2019, based on information that Finger provided from her treating physician, United informed Finger that she was cleared to return to full duty effective May 23, 2019, three days before her leave of absence would have expired. Ex. 1 at 58 (United 830). United also informed Finger that she would need to schedule recurrent training and complete other administrative tasks before she could return to work. *Id*. Because Finger's treating physician released her without any restrictions, United also informed Finger that "an accommodation is not

required at this time as you are able to perform all the essential functions of your current position as outlined in your job description." *Id*. at 60 (United 861).

9. As a supplement to the CBA's leave provisions, United also publishes a "Flight Attendant Leaves of Absence (LOA) Packet," a document containing related policies and procedures for flight attendants, on its intranet. Ex. 1 at 62-72 (United 4683-84, 4698-4703, 4718-22). The LOA Packet includes a section entitled, "Return from Leave of Absence." *Id*. at 70 (United 4718). This section defines "inactive status" and "active status" for a flight attendant in connection with her leave of absence—

> Flight attendants who are on a leave of absence are considered to be on inactive status. In order to end the leave and return to active status, you must complete the following steps in the following order:
>
> 1. Receive a medical clearance from United Medical (if required);
> 2. Complete a DOT Staffing Clearance if LOA is over 365 calendar days;
> 3. Attend any required training;
> 4. Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g. trip trade, personal drop (PTO), etc.)
>
> Until such time as you have completed these steps, you remain on inactive status.

*Id*. Item No. 4 specifies that a flight attendant must actually fly, work on reserve, or engage in some other "contractual schedule change" to be deemed on active status. *Id*. Without this step, the flight attendant remains on inactive status. *Id*. The LOA Packet also includes a subsection entitled, "Seniority and Longevity Accrual" in its Occupational Leave of Absence section—

> Per the Agreement, Section 15.E.3, for the purposes of pay and vacation step adjustments, flight attendants on Medical Leave will continue to accrue longevity and bid seniority for the duration of the Medical Leave up to the maximum leave per section 15.E.1 as detailed above. That provision provides that if you are unable to return to active status within the three (3) year maximum allowance, your name will be removed from the system seniority list and you will be administratively terminated from the Company.

*Id*. at 67 (United 4701). Under the plain language of the CBA and United policy, Finger had to return to active status by the time her leave expired on May 25, 2019 in order to avoid administrative termination.

10. After United informed Finger that she was cleared to return to full duty, Finger attempted to complete the steps required to return to active status. On May 23, she met with her supervisor and obtained a new uniform. Ex. 2 at 95:19-97:17. She enrolled in the next available requalification training class, from June 3 to 16 in Denver. *Id*. at 103:20-104:24. Because of a personal matter – Finger's mother required surgery – Finger tried to delay her requalification training to July. Ex. 1 at 76 (United 5251). Finger's supervisor Dominic Cordova consulted with Bob Krabbe, Director of Labor Relations for Inflight, before concluding that Finger could not postpone her training because her administrative termination date had already passed. *Id*.

11. During the requalification training class, as provided by the LOA Packet, Ex. 1 at 74 (United 4722), Finger bid for a schedule to work after completing the training, Ex. 2 at 177:9-20. She scheduled two trips in June and seven trips in July. *Id*. Finger ultimately completed and passed the requalification training on June 16. Ex. 1 at 78 (United 5284). Unfortunately, while exiting a mock aircraft during another training exercise on June 17, Finger re-injured her left foot. *Id*. at 79-80 (United 5288-89). As a result, United began another occupational injury case for her. *Id*. at 81-86 (United 5706-11). Finger also called in sick for her trip on June 26-28 trip and later for her June 29-30 trip as well. Ex. 2 at 177:21-25; Ex. 1 at 89 (United 5643).[1]

12. On June 27, and Sabrina Clark, Inflight Service Base Manager, learned that Finger had called in sick for her June 26-28 trip due to her new occupational injury. Ex. 1 at 93 (United 5629). Clark consulted with Bob Krabbe to understand what impact Finger's sick call would have on her attempted return to work—

---

1 Finger's "Sick Occurrence" on June 19 (coded as "260619") resulted in "System Drops."

```
-----Original Message-----
From: Clark, Sabrina
Sent: Thursday, June 27, 2019 3:45 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>; Heckman,
Crystal <Crystal.Heckman@united.com>
Subject: FW: ***Important ***Christine Finger

Bob,
Christine Finger completed her training, however has not flown a trip.  She called in a WKCP stating she
reinjured herself during training (left ankle).  She picked up her required hours, but they have been
dropped WKCP 6/26-6/28. Her next scheduled trip is 6/29.  Her Admin. Term date was 5/25/19. What is our
next course of action?

Thanks,
Sabrina
```

*Id*.

13. Krabbe responded within an hour, reciting the language from the LOA Packet—

```
-----Original Message-----
From: Krabbe, Bob
Sent: Thursday, June 27, 2019 4:30 PM
To: Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>; Heckman,
Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary
<Mary.Merritt@united.com>; Brown, Marcus <marcus.brown@united.com>
Subject: RE: ***Important ***Christine Finger

Sabrina,

It doesn't look like she went active, so she is separated. To go active, she would need to sit a day of
Reserve, fly a trip or engage in a contractual schedule change. I looks like she just built the line,
then called in sick. As such, her leave was not broken and since she is past the three year mark, she has
exceeded her maximum leave length and gets separated.

I expect a fight from her, but this is straight contract.

Bob Krabbe
Director, Labor Relations - Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606 Tel 872 825 1036 | Cell 224 287 2247 |
Bob.Krabbe@united.com united.com
```

*Id*.

14. With this guidance from Krabbe, IAH Supervisor Base Administration Aleta Stansberry initiated the administrative termination process. Ex. 1 at 95 (United 4425). After obtaining necessary approvals, Stansberry proceeded to issue Finger a termination letter on June 28, 2019—

> Company records reflect you have been on a medical leave of absence beginning 5/26/16. As indicated in the September 29, 2016 business letter if you do not return to work prior to the expiration of your Medical leave, your employment with United Airlines will be administratively terminated in accordance with Section 15.E.1&2.
>
> You submitted a release to return to full duty effective 5/23/19 and you attended training from <6/2/19> to <6/17/19. Following your training, you called in sick for your first trip assignment as a result, you have exceeded the maximum contractual duration for a medical leave. Pursuant to the terms of Section 15.E.1 and 15.E.2, you are therefore administratively terminated from United Airlines effective with the date of this letter and you have been removed from the United Airlines Flight Attendant System Seniority List.

*Id*. at 110 (United 4974).

15. Immediately after Finger's administrative separation, the AFA conferred with United management informally on Finger's behalf. Ex. 1 at 115-17 (United 5303-05). Later, on July 10, 2019, AFA local grievance chairperson Jared Beto filed a grievance with Inflight Services Base Director Crystal Heckman. *Id*. at 118-19 (United 5306-07). However, because of the nature of Finger's administrative separation – an action based on the CBA, unrelated to Finger's job performance – Heckman summarily rejected the appeal. *Id*.

16. Ultimately, the AFA pursued the matter to the System Board of Adjustment empaneled under the RLA. After a hearing on July 29, 2021, Neutral Chairman Steven Bierig issued an award on March 17, 2022, denying the grievance. Ex. 1 at 1-22 (United 5725-46). In denying the grievance, Chairman Bierig found that Finger had not complied with the return-to-work requirements set forth in the LOA Packet. In particular, Finger had not flown a trip, sat a day of reserve, or engaged in a contractual schedule change. *Id*. at 16-17 (United 5740-41). Despite awards of the System Board of Adjustment being final and binding, Finger acting *pro se* filed an appeal with Chairman Bierig on June 8, 2022. *Id*. at 120-29 (Finger 843-52). She argued that her attorney substituted at the last moment and altered or withheld documents. *Id*. Chairman Bierig did not modify or vacate the award or otherwise grant Finger any relief.

17. Meanwhile, following Finger's administrative separation, the worker's compensation claim stemming from her June 17, 2019 injury continued being processed. With Finger continuing to receive wage replacement benefits more than eighteen months later, the worker's compensation administrator conducted a physician peer review of Finger's claim on March 11, 2021. Ex. 1 at 130-41 (United 5420-31). The reviewing physician noted that while Finger's June 2019 injury should have resolved within 6 to 8 weeks, Finger had "non-[w]ork related chronic and degenerative conditions" that required her to remain off work. *Id*. at 139 (United 5429). She received wage replacement benefits from August 23, 2019 to March 15, 2021. *Id*. at 142-48 (United 5712-18); Ex. 2 at 46:10-49:5. Over eighteen months, Finger received $76,514 for her "Temporary Total Disability" through her worker's compensation claim. Ex. 1 at 148 (United 5718); Ex. 2 at 49:6-14. Since she separated from United, Finger has not sought other employment. Ex. 2 at 53:10-18.

## V.
## SUMMARY OF THE ARGUMENT

18. Finger cannot create a fact issue as to each element of each of her claims under federal and Texas law for age discrimination, disability discrimination, and retaliation. She cannot create a fact issue as to pretext regarding her claims under federal and Texas law for age discrimination, disability discrimination, and retaliation.

## VI.
## FINGER CANNOT STATE CLAIMS FOR AGE DISCRIMINATION.

### A.
### Finger Cannot Create a Fact Issue as to a Comparator.

19. To establish a *prima facie* case of age discrimination under federal and Texas law that survives summary judgment, Finger must create a fact issue as to each of the following elements: (1) she was forty years of age or older, (2) was qualified for the position at issue, (3)

suffered a final, adverse employment action, and (4) was either (a) replaced by someone outside the protected class or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. Norsworthy v. Houston Indep. Sch. Dist., 70 F.4th 332, 337 (5th Cir. 2023) (citing Ross v. Judson Indep. Sch. Dist., 993 F.3d 315, 321-22 (5th Cir. 2021)). Finger cannot support the fourth element.

20. As to the fourth element, Finger does not allege any comparator. In her second amended complaint, Finger does not address the issue of a comparator in any way whatsoever. In her numerous discovery requests, Finger does not seek any information about any alleged comparator. She has not made any effort to develop evidence to support this element and cannot produce any supporting evidence in response to this motion. Indeed, the only comparator evidence produced during discovery came from United. Specifically, United produced evidence of two similarly situated employees whom it also separated. Ex. 1 at 149-53 (United 5720-24). United had provided this evidence to the RLA System Board of Adjustment as well to establish precedence in its interpretation of the CBA permitting administrative separation when an employee exceeds the maximum contractual duration for a medical leave. *Id*. at 20 (United 5744). Accordingly, the only comparator evidence in the record demonstrates that United did not treat Finger less favorably.

21. Without creating a fact issue as to at least one comparator, Finger cannot state a *prima facie* case for race discrimination, and the Court should grant summary judgment as to this claim.

## B.
## Finger Cannot Create a Fact Issue as to Pretext.

22. If, *arguendo*, Finger establishes a *prima facie* case, then United bears the burden to produce a legitimate, nondiscriminatory reason for its adverse employment action. Ross, 993 F.3d

at 321. As explained above, United separated Finger from employment because she exceeded the maximum contractual duration for a medical leave under the CBA. Because United has asserted its legitimate reasons for separation, the burden shifts to Finger to create a fact issue as to pretext to avoid summary judgment.

23. As to her federal law claims, "Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or unworthy of credence – that it is not the real reason for the adverse employment action." Jones v. Gulf Coast Rest. Grp., Inc., 8 F.4th 363, 368 (5th Cir. 2021) (internal quotations omitted). "[T]he plaintiff must produce substantial evidence of pretext." *Id*. at 369 (internal quotations omitted). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Watkins v. Tregre, 997 F.3d 275, 283 (5th Cir. 2021).

24. Importantly, employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of employment decisions, nor [are they] intended to transform the courts into personnel managers." Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988). Rather, at the summary judgment stage, Finger must produce some evidence "demonstrating that discrimination lay at the heart of [United]'s decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." LeMarie v. Louisiana Dept. of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). Even if Finger could show the inaccuracy of United's reason for administrative employment separation, this would not suffice to establish pretext. "[A] fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." Cervantez v. KMGP Servs. Co.,

349 F. App'x 4, 10 (5th Cir. 2009). "[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." Waggoner v. City of Garland, 987 F.2d 1160, 1165-66 (5th Cir. 1993).

25. As to her Texas law claims, to rebut United's stated reason and survive summary judgment, Finger would have to create a fact issue that, "even if the defendant's stated reason is true, that another motivating factor was the protected characteristic." Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001) ("The plain meaning of [§ 21.125 of the Texas Labor Code] establishes a 'motivating factor' as the plaintiff's standard of causation in [an] unlawful employment practice claim….").

26. Finger cannot meet her pretext burden under either the federal or Texas pretext standard. She cannot produce any evidence showing that United's stated reason is false or even inaccurate. The RLA System Board of Adjustment determined that Finger had not flown a trip, sat a day of Reserve, or engaged in a contractual schedule change; that Finger had not returned to active status; and that Finger called in sick for her June 26-28 flight pairing, after the maximum contractual duration for medical leave had expired on May 25. The Court must "defer to the System Board's fact-finding because the System Board has exclusive statutory authority to decide disputes … regarding the interpretation and application of the collective bargaining agreement." Summerville v. Trans World Airlines, Inc., 219 F.3d 855, 858 (8th Cir. 2000). She cannot show that United did not, in good faith, reasonably believe its stated reasons for employment separation. She cannot show that United's stated reasons are otherwise unworthy of credence. She cannot show that her age motivated any management employee who participated in the employment separation process. Finger did not depose or otherwise develop evidence regarding the motivations of Aleta Stansberry, Sabrina Clark, or Bob Krabbe. Indeed, Clark (born in 1957) is older than

Finger (born in 1959), and Stansberry (born in 1962) and Krabbe (born in 1965) are of similar age. "When decision makers are in the same protected class as the plaintiff, there is a presumption that unlawful discrimination is not a factor in the discharge." Agoh v. Hyatt Corp., 992 F.Supp.2d 722, 744 (S.D. Tex. 2014).

27. Without creating a fact issue as to pretext, Finger cannot state her race discrimination claims, and the Court should grant United's motion as to these claims.

## VII.
## FINGER CANNOT STATE CLAIMS FOR DISABILITY DISCRIMINATION.

### A.
### Finger Cannot Create a Fact Issue as to Her Qualification or Causation.

28. To establish a *prima facie* case of disability discrimination that survives summary judgment, Finger must create a fact issue as to each of the following elements: (1) she has a disability; (2) she is qualified for the job she held; and (3) she was "subject to an adverse employment decision on account of her disability." EEOC v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014); Donaldson v. Tex. Dept. of Aging & Disability Servs., 495 S.W.3d 421, 436 (Tex.App.—Houston [1st Dist.] 2016, pet. denied). The Fifth Circuit has alternatively rendered the third element of causation as "there was a causal connection between an adverse employment action and [the employee's] disability." Rodriguez v. Eli Lilly & Co., 820 F.3d 759, 765 (5th Cir. 2016). In this manner, proof of the third element requires both an adverse employment action and causation. Finger cannot support the second element as to qualification or the third element as to causation.

29. As to the second element, Finger incurred an on-the-job injury on June 17, 2019, filed a worker's compensation claim, and then continued to receive wage replacement benefits for her "temporary total disability" until March 15, 2021. A peer review conducted by the worker's compensation administrator at that time concluded that Finger's chronic and degenerative

conditions required her to be off work. Ex. 1 at 139 (United 5429). The Fifth Circuit has previously affirmed summary judgment where a former employee could not show that he was a "qualified individual" under the ADA when he admitted that he was unable to work when applying for and receiving long-term disability benefits. Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 258-59 (5th Cir. 2001). This Court has more recently held that a totally disabled person cannot meet the ADA's "qualified individual" standard. Nelson v. Covestro LLC, No. 4:18-cv-02899 (S.D. Tex. May 3, 2019) (Rosenthal, C.J.). Finger could not receive wage replacement benefits for her temporary total disability on the one hand and claim to be an ADA qualified individual on the other hand. Because her employment termination occurred during this period of temporary total disability, Finger cannot create a fact issue as to the second element of her disability discrimination claim.

30. As to the third element, unlike with her age discrimination claim, Finger need not identify a comparator to establish causation for her disability discrimination claim. Instead, she could create a fact issue as to causation through other means. Despite this less exact standard for causation for a disability discrimination claim, Finger cannot meet it.

31. For example, in LHC Group, *supra*, the Fifth Circuit found that the plaintiff avoided summary judgment and created a fact issue as to causal nexus based on the following evidence: (1) her job performance was criticized only after she had a grand mal seizure; (2) she produced evidence that criticisms of her performance were "exaggerated, unfounded, or fabricated;" and (3) she submitted multiple statements by her supervisor indicating that her disability rendered her unfit for her job. 773 F.3d at 697. Similarly, in EEOC v. Chevron Phillips Chem. Co., 570 F.3d. 606, 612 (5th Cir. 2009), the Fifth Circuit found that the plaintiff established a *prima facie* case on this element by having written evidence that her employer's immediate reaction to her request for

disability accommodations was to determine whether she could be terminated.

32. In this matter, Finger cannot point to any evidence of a causal nexus meeting the standards set forth in LHC Group and Chevron Phillips, *supra*. There is no evidence that United separated Finger from employment *because* of her on-the-job injuries. To the contrary, United had nearly five years to terminate Finger after her August 2014 injury and did not do so. There is no evidence that United's interpretation of the CBA which supported Finger's administrative separation were exaggerated, unfounded, or fabricated. There is no evidence that anyone involved in the separation process had any opinion about Finger's fitness for her job or otherwise had any anti-disability animus.

33. Without creating a fact issue as to causation, Finger cannot state a *prima facie* case for disability discrimination, and the Court should grant summary judgment as to this claim.

**B.**
**Finger Cannot Create a Fact Issue as to Pretext.**

34. Pretext in the context of a federal disability discrimination claim requires the same burden as an age discrimination claim: "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Caldwell v. KHOU-TV, 850 F.3d 237, 242 (5th Cir. 2017). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id*. (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)). The Texas "motivating factor" standard also applies to disability-related claims under Chapter 21 of the Texas Labor Code. Quantum Chem., 47 S.W.3d at 480.

35. For the same reasons set forth in Section VI.B., *supra*, Finger cannot create a fact issue as to pretext to support her disability discrimination claims. She cannot show that her

disability motivated any management employee who participated in the employment termination process. The Court should grant United's motion as to these claims.

## VIII.
## FINGER CANNOT STATE CLAIMS FOR RETALIATION.

### A.
### Finger Cannot Create a Fact Issue as to Protected Activity or Causation.

36. To establish a *prima facie* case of retaliation under the ADA or ADEA, Finger must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. Feist v. Louisiana, 730 F.3d 450, 454 (5th Cir. 2013) (ADA); Goudeau v. National Oilwell Varco, L.P., 793 F.3d 470, 478 (5th Cir. 2015) (ADEA); Chandler v. CSC Applied Technologies, LLC, 376 S.W.3d 802, 822 (Tex.App.—Houston [1st Dist.] 2012, pet. denied) (Chapter 21). Finger cannot support the first element as to protected activity or the third element as to causation.

37. As to the first element, Finger cannot produce any evidence that she took any protected activity proximate to her employment separation as to her disability. As this Court has previously held, "An allegation of retaliation based on filing a workers' compensation claim does not fall within the scope of the ADA." Ferrera-Parra v. United Airlines, Inc., No. 4:19-cv-01053, slip op. at 5 (S.D. Tex. Aug. 20, 2019) (Atlas, J.) (citing Dugger v. Stephen F. Austin State Univ., 232 F.Supp.3d 938, 950 (E.D. Tex. 2017); Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012); and Lanza v. Postmaster Gen. of the U.S., 570 F.App'x 236, 241 (3d Cir. 2014)). This Court has also previously held that filing a worker's compensation claim does not constitute protected activity under Chapter 21. Ferrera-Parra, slip op. at 5. Meanwhile, there is no evidence that Finger sought a reasonable accommodation. Indeed, United had confirmed with Finger that she did not require an accommodation because her treating physician had returned her to work

without restrictions. Finger also cannot produce evidence that she took any protected activity as to her age. She never complained internally to any member of United management attributing any change to any term or condition of employment to her age. Finger cannot create a fact issue as to the first element of her retaliation claim.

38. As to the third element, to establish a causal connection, Finger must show "that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122-23 (5th Cir. 1998). She must also show but-for causation between her protected activity and her employment separation. *Id*. at 1123. Finger cannot produce any evidence that, but for her purported protected activity, United would not have separated her employment. To the contrary, the evidence conclusively establishes that United separated Finger from employment only because she exceeded the maximum contractual duration for a medical leave under the CBA.

**B.**
**Finger Cannot Create a Fact Issue as to Pretext.**

39. If, *arguendo*, Finger establishes a *prima facie* case, then United bears the burden to produce a legitimate, nonretaliatory reason for its adverse employment action. Feist, 730 F.3d at 454 (ADA); Sherrod, 132 F.3d at 1122 (ADEA). As explained above, United separated Finger from employment because she exceeded the maximum contractual duration for a medical leave under the CBA. Because United has asserted its legitimate reason for employment separation, the burden shifts to Finger to create a fact issue as to pretext to avoid summary judgment. Under both the ADA and the ADEA, "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity. " Feist, 730 F.3d at 454 (ADA); *see also* Sherrod, 132 F.3d at 1122 (ADEA) (plaintiff must "adduce sufficient evidence"). Under Chapter 21, the same "motivating

factor" standard applies. Quantum Chem., 47 S.W.3d at 480.

40. Finger cannot meet her pretext burden. For her federal retaliation claims, Finger cannot show that, but for her purported protected activities, United would not have separated her from employment. She cannot show *any* evidence, much less *substantial* evidence, which demonstrates her protected activity being the *sole* reason for her employment separation. For her Texas retaliation claim, Finger cannot show any evidence of any management employee being motivated to retaliate against her for her purported protected activities.

41. Without creating a fact issue as to pretext, Finger cannot state her retaliation claims, and the Court should grant United's motion as to these claims.

## IX.
## CONCLUSION

42. Finger cannot establish prima facie cases for her claims of age discrimination, disability discrimination, and retaliation. For these reasons, United requests that the Court enter judgment that Finger take nothing, dismiss Finger's suit with prejudice, assess costs and attorney fees against Finger, and award United such other and further relief, general or special, legal or equitable, to which it may show itself justly entitled.

Respectfully submitted,

THE MISRA LEGAL GROUP

By: **/s/ Amit K. Misra**
Amit K. Misra, Esq., P.C.
S.D. Tex. No. 21460
State Bar of Tex. No. 00795534

639 Heights Boulevard
Houston, Texas 77007
832-723-4776 Telephone
832-476-9656 Telecopier
amit@misralegal.com

ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2026, a copy of the foregoing was filed electronically with the Clerk of Court and served by email as permitted by the consent of parties under Rule 5(b)(2)(F), to the following pro se party:

Christine Finger
1ladyfinger@gmail.com

**/s/ Amit K. Misra**
Amit K. Misra