**BEFORE SYSTEM BOARD OF ADJUSTMENT**
**ARBITRATOR STEVEN M. BIERIG, NEUTRAL MEMBER**

| IN THE MATTER OF ARBITRATION BETWEEN: | GRIEVANT: CHRISTINE FINGER |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO<br><br>AND<br><br>UNITED AIRLINES, INC. | AFA GRIEVANCE NO. 064-42-2-558-19<br><br>IAH NO. 1173-19<br><br>ISSUE: ADMINISTRATIVE SEPARATION<br><br>ARB. NO. 20-152 |

**BEFORE:** Steven M. Bierig, Neutral Arbitrator
Eric E. Mennel, Company Representative
Ted Ruckert, Company Representative
Christian K. Hertneky, Union Representative
Kevin Lum, Union Representative

**APPEARANCES:**
**For AFA:** Peter Swanson
Senior Staff Attorney
pswanson@afanet.org

**For United Airlines:** Rachel Cowen
Dawn Peacock
McDermott Will & Emery
rcowen@mwe.com
dpeacock@mwe.com

**Location of Hearing:** Veritext
1 North Franklin Street, Suite 3000
Chicago, Illinois

**Dates of Hearing:** July 29, 2021

**Post-Hearing Briefs Exchanged:** November 16, 2021

**Date of Award:** March 17, 2022

**AWARD:**

**For the reasons stated in this Opinion and Award, the Board of Arbitration finds:**

**The Grievance is denied. The Company did not violate Sections 15.A.6.b and 15.E of the Contract when it administratively separated Grievant Christine Finger after she failed to fulfill all return-to-service requirements following the expiration of her 3-year Medical Leave of Absence.**



UNITED_005726

## I. INTRODUCTION

The Hearing in this matter took place on Thursday, July 29, 2021 at Veritext, located at 1 North Franklin Street, #3000 in Chicago, Illinois, commencing at 9:00 a.m. before the 5-member Board that consisted of United Airlines Representatives Eric E. Mennel and Ted Ruckert, Association of Flight Attendants Representatives Chris Hertneky and Kevin Lum, and the undersigned Neutral Chairman, who were duly selected to render a final and binding decision in this matter. At the Hearing, the parties were afforded a full opportunity to present such evidence and arguments as desired, including examination and cross-examination of all witnesses. A 203-page transcript of the Hearing was prepared. The parties filed Post-Hearing Briefs that were exchanged on November 16, 2021, at which time the evidentiary portion of the Hearing was declared closed.

## II. ISSUE

Did the Company violate the Contract when it administratively separated Grievant Christine Finger after she failed to fulfill all return-to-service requirements following the expiration of her 3-year Medical Leave of Absence?

If so, what is the appropriate remedy?

## III. RELEVANT CONTRACT LANGUAGE

### SECTION 15 – LEAVES OF ABSENCE

A. General

The following terms apply to all leaves of absence unless specifically stated otherwise in this Section.

***

6. Return to Work

***

b. Flight Attendants shall comply with all return to work guidelines established by the Company, including any required training and/or documentation.

***

E. Medical Leave

1. Leaves of absence required due to illness or non-occupational injury shall be granted upon written verification of disability from a qualified medical doctor. Any such leave may not exceed the lesser of:

   a. The period of disability, or

   b. Three (3) years, or

   c. The Flight Attendant's total length of active service.

2. At the end of the maximum period, the Flight Attendant will beadministratively terminated and removed from the System Seniority List.

3. For the purposes of pay and vacation step adjustments, Flight Attendants on Medical Leave will continue to accrue longevity for the duration of the Medical Leave up to the maximum leave in Paragraph E.1. above.

***

(Jt. Ex. 1)

## IV. STATEMENT OF FACTS

### A. Introduction

The instant case involves a dispute between United Airlines, Inc. (the "Company") and the Association of Flight Attendants-CWA, AFL-CIO (the "Union"). The Union contends that the Company violated the Joint Collective Bargaining Agreement (the "Contract") when it administratively separated Grievant Christine Finger ("Grievant") on June 28, 2019, after she failed to fulfill all return-to-service requirements following the expiration of her 3-year Medical Leave of Absence. (Jt. Ex. 2)

### B. Background

Generally, the key facts in this matter are undisputed. Houston-based Grievant was hired in 1984 by Legacy Carrier Continental Airlines prior to its merger with United. It is uncontested that the merger between



UNITED_005728

Continental and United took place in 2010, and the first Contract became effective on August 28, 2016. On August 3, 2014, Grievant began a Medical Leave of Absence due to an on-duty injury to her left ankle. At that time, Continental's pre-merger contract provided for a maximum of six years of Medical Leave. At the beginning of April 2016, Grievant took a light duty position as a recruiter at her Houston home base. However, due to reoccurring problems with her left ankle, Grievant returned to Medical Leave in May 2016. On September 29, 2016, the Company notified Grievant that under Section 15.E of the Contract, the maximum length of a Medical Leave of Absence was now three years, and that her current Medical Leave would expire on May 26, 2019. (Jt. Ex. 1, 2; Tr. 29-30, 34-36)

On April 19, 2019, Grievant received an email from the Flight Attendant Support Team ("FAST") giving her a May 23, 2019, return-to-work date and instructing Grievant to contact her Base Supervisor to obtain an updated Flight Attendant Manual. Grievant then met with her immediate Supervisor, Dominic Cordova, for a return-to-work briefing. Cordova provided Grievant with the "Leave of Absence Return to Work Checklist," which listed the following required tasks to complete prior to being returned to duty:

- Company Medical Clearance
- Uniform Requirements
- Ensure Passport is current and Obtain Required Visas
- Ensure TSA Crewmember badge is current Parking Badge / Secure parking badge/card
- Ensure FAOM / LINK is up-to-date
- Appearance Check with Base Supervisor
- Return to Work Briefing (at Base)

Following the Checklist are detailed explanations of each of the return-to-work tasks. Heading the explanations is the following caveat:

> **You cannot be returned to active status or awarded a schedule without confirmation that all conditions listed below have been met including obtaining medical clearance.**
>
> (emphasis in original)

In addition, the last page of the Checklist indicates:

> **<u>You will only be awarded a schedule if all of the following are met:</u>**
>
> 1. Medical clearance has been received, approved, and processed by FAST prior to 16:00 CST on the sixteenth (16th) of the month preceding the primary award.
>
> 2. Your clearance to RTW confirms a date prior to the first day of the schedule month.
>
> 3. You are fully qualified to fly or, if training is required, have enrolled in a class and training will be completed by the fifteenth (15th) of the current scheduled month.
>
> Once you have completed the RTW process, you are eligible to be awarded a schedule. If you did not bid, you will be assigned a schedule based on the lowest numbered line available at your seniority and status as a lineholder or reserve. …
>
> If the return to work process was not completed prior to the sixteenth (16th) of the month, you will not receive a schedule for the next month. …
>
> **Failure to Return from Leave of Absence**
>
> Failure to return to active duty before the lesser of: the period of disability, three (3) years, or the flight attendant's total length of active service will result in separation from the Company. You are expected to return to work at the end of any approved Leave of Absence. Failure to return may result in corrective action.
>
> (emphasis in original)

(Er. Ex. 7; Un. Ex. 2-3; Tr. 39, 41-45, 186)

Grievant testified that she participated in a requalification training class in Denver from June 3 to June 17, 2019. On June 16, Grievant fell while walking on a mock jetway, spraining her left ankle. Her instructors wanted to report the injury, but Grievant asked them not to and said she would be okay. Grievant iced her ankle that evening at her hotel. Grievant's ankle became very swollen and she had difficulty walking, but managed to report for the Core 4 Training the next morning on the final day of training. However, the Director of Training said the incident had to be reported as an on-the-job injury. Grievant initiated an On-the-Job Injury

(“OJI”) Claim on or about June 17, 2019, although the Company’s records reflect that it was officially filed on June 24, 2019. (Un. Ex. 4, 7; Tr. 46-47, 50-53, 187)

According to Grievant, on June 16, one of the instructors at the training class was teaching the Flight Attendants the trip bidding process, which had changed significantly since Grievant had gone on Leave. Grievant testified that because bidding for July trips closed at 9:00 a.m. on June 17, they were unable to get their bids accepted in time and were told that the FAST Team would contact them to build a schedule for the remainder of June and July. Grievant testified that between June 18 and 21, she added trips to her line upon return from training. Her first trip was scheduled for June 26. Grievant said that approximately four days later, Scheduling contacted her, and she was able to build a schedule for July, totaling 71 hours. When asked at the Hearing if her ankle was still injured or hurting at that time, Grievant admitted that when Scheduling contacted her, her physical capabilities were “still questionable.” (Un. Ex. 5; Tr. 54-58)

It is undisputed that sometime after Grievant returned to Houston on June 18, she was examined by her primary care physician, Dr. James Muntz, who told her that it would probably be four to six weeks before she could return to work. Grievant testified that she knew her first trip was scheduled for June 26. On June 18, Grievant sent an email to Cordova informing him that she had reinjured her left ankle. However, Cordova did not respond to her email until June 22. Cordova told Grievant that she should speak with Base Administrative Supervisor Aleta Stansbury. Grievant responded by indicating that said she had left Stansbury a voicemail message, but had not heard back. (Un. Ex. 6; Tr. 59-60, 62-63)

On June 22, 2019, Grievant emailed Cordova:

> I picked up the trips just because I wanted to make sure and have my required hours in that I needed to adjust for the month just in case I could fly. I was going to adjust tonight at 6:00 for July but my foot/ankle is killing me so I’m kind of like kidding myself at the moment. Denial. Finally giving in to getting a claim number on this, because I cannot walk.
>
> (Un. Ex. 6; Tr. 66)



UNITED_005731

Grievant testified that she made over 47 phone calls in an effort to determine how to proceed in light of her injury. One of those calls was to Sedgwick, the Company's Workers' Compensation carrier, who told Grievant that they had received her OJI Claim and that an adjuster would get back to her. Grievant said that when she spoke to Francisca in the Training Department, who was also one of Grievant's Trainers in Denver, Francisca indicated that she had documented the OJI for Sedgwick on June 20. Grievant's first trip was scheduled for June 26. Grievant testified that she called in sick on June 25, at least 12 hours prior to her 6:00 a.m. report time on June 26, to allow the Company sufficient time to replace Grievant. On June 27, Grievant emailed Cordova and informed him that she had called in sick for her trips that week. Grievant testified that she first heard back from Sedgwick about six days after she was separated on June 28. Grievant testified that she was paid for the June 26 trip sick call. (Jt. Ex. 2; Un. Ex. 8; Tr. 61, 72, 74-75, 82, 84-85)

On June 28, 2019, the Company sent Grievant a letter advising her that she was being administratively separated from the Company because she failed to complete the return-to-work process before calling in sick on June 26. (Jt. Ex. 2)

On July 1, Grievant and Local Union Council 42 President Elizabeth Hibbard met with Houston based Human Resources Director Tammy Holt. Prior to the meeting, Hibbard showed Grievant the Flight Attendant Leaves of Absence Packet ("LOAP"), dated February 2018, outlining the return-to-work process that included the following requirement:

> Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g., trip trade, personal drop (PTO), etc.)

The LOAP went on to indicate that "Until such time as you have completed these steps, you remain on inactive status." Grievant testified that she had never seen the LOAP before, and that Holt told her that she had also never seen that language. Grievant testified that she was not given the LOAP when she was undergoing the return-to-work process. Instead, Grievant relied upon the Checklist that Cordova gave her, which was a 2015 Worker's Compensation guideline that did not include the additional requirement in the LOAP. Grievant

testified that her return to work in 2019 occurred during the implementation of the merger between Continental and United. Grievant testified that she had fulfilled all return-to-work requirements when she finished her training. (Un. Ex. 3, 9; Tr. 89-95, 99)

Grievant acknowledged that she received a letter in September 2016, informing her that the duration of Medical Leave under Section 15.E of the Contract had been reduced to three years and that her Leave would expire on May 26, 2019. She also said that when she saw Dr. Muntz on June 18, she had already built her June schedule with the FAST Team. Grievant acknowledged that she did not work the June 26 trip, and that she did not utilize a trip trade or personal time off, but rather called in sick. Grievant acknowledged that when she called in sick for June 26, she knew she was not physically able to work on that day, and acknowledged that she was not physically capable of working on June 28 when she was administratively separated. Grievant did not dispute that she received Total Temporary Disability Workers' Compensation benefits from November 2019 through March 2021 in the amount of $76, 514.00. (Jt. Ex. 2; Er. Ex. 5; Tr. 105-106, 122-132, 142-143)

According to Grievant, at the meeting with Holt, Holt did not tell her that dropping a trip through sick leave did not constitute a schedule change. Hibbard testified that Grievant had not been given the correct information to ensure that she was requalified and on active status, specifically the requirement that she was at a minimum, required to utilize a contractual schedule change if she could not fly. Hibbard testified that if Grievant had realized that she only had to utilize a contractual schedule change while her sprained ankle healed, it would have been easy for her to avoid the Administrative Separation. Hibbard further testified that it was not until after Grievant's Administrative Separation that Hibbard became aware of the LOAP, which contained additional return-to-work steps. (Un. Ex. 9, 10; Tr. 140-141, 152-156)

According to Robert Krabbe, Director of Labor Relations-Flight, the merger between United and Continental occurred in 2010. The language in Section 15.E of the Contract regarding Medical Leaves of Absence was drawn primarily from the Legacy United Agreement, which allowed a maximum of three years. Krabbe testified that Section 15.A.6.b of the Contract requires Flight Attendants to comply with all return-to-work guidelines established by the Company. He said that the LOAP created in accordance with the terms of

the Contract is available on the Company's internal website. Krabbe testified that after the LOAP was drafted, it was sent to Jeff Heisey, MEC Secretary/Treasurer, for the Union's review and comment. The LOAP in effect during Grievant's 2019 return-to-work process had been issued in February 2018 and indicates the following:

> Flight attendants who are on a Leave of Absence are considered to be on inactive status. In order to end the leave and return to active status, you must complete the following steps in the following order:
>
> 1. Receive a medical clearance from United Medical (if required);
> 2. Attend any required training;
> 3. Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g. trip trade, personal drop (PTO), etc.)
>
> Until such time as you have completed these steps, you may remain on inactive status.

(Jt. Ex. 1; Er. Ex. 6; Tr. 170-176)

Further, according to Krabbe, the requirements that must be completed to end Leave and return to active status, including the third requirement specifying that Flight Attendants must either fly, sit a day in Reserve, or engage in a contractual schedule change, has been in effect since at least 2008 when he started with United. Krabbe explained that calling in sick does not constitute a contractual schedule change. While a contractual schedule change, such as trading trips, picking up trips, or a personal drop (PTO) is a negotiated flexibility in the Contract and subject to specific language and Rules, a sick call is simply unilateral and not dependent on any Rules. If the Flight Attendant calls in sick, the trip gets dropped regardless of whether Reserves are available. (Tr. 184-186)

Krabbe testified about a 2008 Letter of Decision he issued in response to the *Hughes-Crozier* grievance. In that case, a Flight Attendant was administratively separated at the end of her 3-year Medical Leave after she called in sick for her first flight following retraining. In his Letter of Decision, Krabbe specifically stated as follows:

> The AFA and the Company have a long standing agreed upon past practice that in order for a flight attendant to be considered "active", the flight attendant must either fly an ID; stand a day as Reserve/Call in Reserve (RSV/CLLR), or exercise a contractual scheduling flexibility (WOP, GWOP, trip trade, etc.). As you called on sick leave (ONSL) for your CLLR day beginning December 27, 2007 which was your first assignment after training you never returned to "active" status.
>
> Since you never completed all of your return to work requirements as established by past practice between the Company and AFA, the Company had no choice but to separate you when you called ONSL for you on December 27, 2007 assignment as you had already reached the maximum allowable time on a Medical Leave of Absence under Section 23.C.

Krabbe testified that the Union did not challenge the Letter and dropped the matter. Krabbe also testified regarding a 2017 grievance filed on behalf of Flight Attendant Susanna Kato over her Administrative Separation. Kato had obtained medical clearance and attended training, but called in sick for her first trip thereafter. She was administratively separated for exceeding her three years of Medical Leave. The Union filed a grievance that was withdrawn. (Er. Ex. 8, 9; Tr. 187-192)

## V. <u>POSITIONS OF THE PARTIES</u>

### A. <u>The Union</u>

The Union contends that Grievant complied with all procedures mandated by the Contract and the Company's Policies to return to work at the conclusion of her Medical Leave of Absence. First, the Union argues that the Company bears the burden to prove that it effectively communicated its Rules, which was not the case here. On May 23, 2019, Grievant met with her Houston Base Supervisor who gave her a "Leave of Absence Return to Work Checklist," which identified the requirements the employee must meet to be returned to active status. Grievant completed all the requirements and was provided with a schedule for the later part of June and all of July 2019.

However, the Company later added the requirement that Grievant had to "Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g. trip trade personal drop (PTO), etc.)," which was not identified in the original Checklist from her Supervisor. The Union notes that the Houston-based Human



UNITED_005735

Relations Manager was also unaware of this additional requirement prior to Grievant's Administrative Separation. The Company had similar, but not identical, return-to-work requirements in three separate documents. The LOAP added the "schedule change" language which is not contained in the OJI Packet. The Company also acknowledged that it would be logical for an employee coming back from a work-related injury to review the OJI packet for return-to-work requirements. Thus, Grievant complied with all the requirements identified in the LOAP.

However, assuming *arguendo*, that the Company is correct that the last requirement was in force, Grievant's sick call for her June 26, 2019 trip constitutes a contractual schedule change and thus, she properly completed the return-to-work process. The Union argues that this is supported by fact that the Company paid her sick time for the trip. The LOAP does not provide a clear definition of a contractual schedule change and the Contract contains no such term. The Union argues that the plain meaning of a contractual schedule change is simply a change to the employee's schedule permitted by the Contract. Section 13 provides the right to call in sick. Therefore, Grievant calling in sick and dropping her June 26 trip from her schedule was a schedule change permitted under the Contract. The Union rejects the Company's contention that calling in sick does not qualify as a schedule change because the employee has no obligation to find a replacement. Further, the Union argues a key fact that the Company ignored, in that Grievant was paid sick time for the June 26 trip, which could only occur if she was in active status.

Next, the Union rejects the Company's contention that the *Hughes-Crozier* Decision demonstrates a long-standing past-practice regarding contractual scheduling flexibility. Instead, the Union argues that since *Hughes-Crozier*, the Contract has come into existence and several return-to-work Policies have been issued; none of these Policies contain the term contractual scheduling flexibility. It is well established that past practices do not survive the implementation of successor contract provisions or written Policies that are contrary to the past practice. The Union also dismisses the Company's reliance on the *Kato* grievance. The Union contends that *Kato* was withdrawn for procedural and not substantive reasons, and therefore has no precedential value here.

Last, the Union rejects the Company's procedural objection to the Grievance being submitted through the Notice of Dispute ("NOD") process. The Union asserts that the NOD process was proper for challenging the Administrative Separation based on the Company's failure to provide Grievant with the LOAP. The Union rejects the Company's attempt to suggest that Grievant knew or should have known the return-to-work requirements in the LOAP because the Union had reviewed the LOAP prior to implementation. It was Management's responsibility to clearly communicate Company Policies to its employees, and it failed to do so.

The Union contends that the Grievance should be sustained and Grievant be reinstated to her position retroactive to June 28, 2019.

**B. <u>The Company</u>**

The Company asserts that the Union has not met its burden to prove that the Company violated the Contract. In this case, it is the Union, not the Company, that bears the burden. Grievant failed to fly a trip, sit a day of Reserve, or engage in a contractual schedule change to fulfill all the return-to-work requirements. Simply building a schedule and then calling in sick does not complete the return-to-work requirements.

The Company contends that calling in sick is not engaging in a contractual schedule change and does not complete the return-to work process. A Flight Attendant is merely notifying the Company that he/she is medically unable to work, at which point the Flight Attendant's responsibility to cover their trip ceases. In contrast, when Flight Attendants trade trips directly with one another or through the Open Time online trade system, the employee is obligated to work the trip if no one picks up the trip and there are insufficient reserves available. The Company argues that a Flight Attendant who returns from a Leave of Absence but calls in sick for their first trip, has not fulfilled the return-to-work requirements of the LOAP and may be administratively separated. The *Hughes-Crozier* and *Kato* grievances show that this has been the Policy and practice for over a decade.



UNITED_005737

The Company rejects the Union's defense that because Hibbard and Grievant were Legacy Continental Flight Attendants, they were unaware of the Company's LOAP practices. It is well established arbitral doctrine that Officers of the Union and Managers of the Company are responsible to know the contents of the Contract and that unfamiliarity with its terms and conditions is not a valid defense. Further, because this is a contract interpretation case and not a just cause matter, not only must the Union bear the burden of proof, but principles of equity do not apply.

Next, the Company argues that Grievant admitted that she was physically incapable of working at the time she called in sick for June 26. On June 18, after she reinjured her ankle, Grievant saw her medical provider, who advised her that she would probably be unable to work for four to six weeks. Grievant also expressed in an email to her immediate Supervisor that she was physically unable to work. Citing as controlling arbitral precedent between the parties, the Company argues that in the 1990 *DeSantis* Decision, Neutral Board Member Epstein upheld the grievant's Termination and found that even though she may have relied upon mistaken information from the Company regarding her return-to-work, the fact she admitted she was physically unable to at the time she called in sick made the fact that she received misinformation irrelevant.

Last, the Company notes further that on June 24, Grievant filed a Workers' Compensation Claim for which she was awarded Temporary Total Disability benefits for the period of August 23, 2019 through March 18, 2021. Grievant further alleged that her ankle injury rose to the level of a disability covered under the Americans With Disabilities Act.

The Company requests that the Grievance be denied.

## VI. DISCUSSION AND FINDINGS

### A. Introduction

After a complete and thorough review of all the evidence and arguments in this case, the Board finds that the Grievance must be denied. The Union has not met its burden to show the Company violated Section

15.E of the Contract when it administratively separated Grievant after her Medical Leave of Absence period expired.

**B. Discussion**

The Union contends that the Company violated the Contract when it administratively separated Grievant on June 28, 2019, after she failed to fulfill all return-to-service requirements following the expiration of her 3-year Medical Leave of Absence.

Grievant was hired in 1984 by Legacy Carrier Continental Airlines. On August 3, 2014, Grievant began a Medical Leave of Absence due to an on-duty injury to her left ankle. At the beginning of April 2016, Grievant returned to a light duty position and then returned to Medical Leave in May 2016. On September 29, 2016, the Company notified Grievant that the maximum length of a Medical Leave of Absence was now three years, and that her current Medical Leave would expire on May 26, 2019.

On April 19, 2019, Grievant received an email giving her a May 23, 2019, return-to-work date. Grievant then met with Dominic Cordova for a return-to-work briefing. Cordova provided Grievant with the Leave of Absence Return to Work Checklist.

Grievant participated in a requalification training class in Denver from June 3 to June 17, 2019. On June 16, Grievant fell while walking on a mock jetway, spraining her left ankle. Grievant iced her ankle that evening. Grievant's ankle became very swollen and she had difficulty walking, but managed to report for training the next morning. The Director of Training said the incident had to be reported as an on-the-job injury. Grievant initiated an OJI Claim on or about June 17, 2019.

Grievant testified that between June 18 and 21, she added trips to her line upon return from training. Her first trip was scheduled for June 26. When asked at the Hearing if her ankle was still injured or hurting at that time, Grievant admitted that when Scheduling contacted her, her physical capabilities were "still questionable."

After Grievant returned to Houston on June 18, she was examined by Dr. James Muntz, who told her that it would probably be four to six weeks before she could return to work. On June 18, Grievant sent an email to Cordova informing him that she had reinjured her left ankle. On June 22, Cordova told Grievant that she should speak with Base Administrative Supervisor Stansbury. Grievant testified that she made over 47 phone calls in an effort to determine how to proceed in light of her injury. One of those calls was to Sedgwick, the Company's Workers' Compensation carrier, who told Grievant that they had received her OJI Claim and that an adjuster would get back to her. Grievant's first trip was scheduled for June 26. On June 27, Grievant emailed Cordova and informed him that she had called in sick for her trips that week.

On June 28, 2019, the Company sent Grievant a letter advising her that she was being administratively separated from the Company because she failed to complete the return-to-work process before calling in sick for June 26.

On July 1, Grievant and Local President Hibbard met with Human Resources Director Holt. Prior to the meeting, Hibbard showed Grievant the LOAP outlining the return-to-work process that included the following requirement:

> Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g., trip trade, personal drop (PTO), etc.)

Grievant testified that she was not provided with the LOAP when she was undergoing the return-to-work process. Instead, Grievant relied upon the Checklist that Cordova gave her, which was a 2015 Worker's Compensation guideline. Grievant testified that she had fulfilled all return-to-work requirements when she finished her training. Grievant acknowledged that she received a letter in September 2016, informing her that the duration of Medical Leave under Section 15.E of the Contract had been reduced to three years and that her Leave would expire on May 26, 2019. Grievant acknowledged that she did not work the June 26 trip, and that she did not utilize a trip trade or personal time off, but rather called in sick. Grievant acknowledged that when she called in sick for June 26, she knew she was not physically able to work on that day, and that she



UNITED_005740

was not physically capable of working on June 28 when she was administratively separated. Grievant did not dispute that she received Total Temporary Disability Workers' Compensation benefits from November 2019 through March 2021.

According to Grievant, at the meeting with Holt, Holt did not tell her that dropping a trip through sick leave did not constitute a schedule change. Hibbard testified that Grievant had not been given the correct information to ensure that she was requalified and on active status. Hibbard further testified that it was not until after Grievant's Administrative Separation that Hibbard became aware of the LOAP.

According to Krabbe, the language in Section 15.E of the Contract regarding Medical Leaves of Absence was drawn primarily from the Legacy United Agreement. Krabbe testified that Section 15.A.6.b of the Contract requires Flight Attendants to comply with all return-to-work guidelines established by the Company. Krabbe testified that after the LOAP was drafted, it was sent to the Union for review. The LOAP in effect during Grievant's 2019 return-to-work process had been issued in February 2018.

According to Krabbe, the requirements that must be completed to end Leave and return to active status, including the requirement specifying that Flight Attendants must either fly, sit a day in Reserve, or engage in a contractual schedule change, has been in effect since at least 2008. Krabbe explained that calling in sick does not constitute a contractual schedule change. Krabbe testified about a 2008 Letter of Decision he issued in response to the *Hughes-Crozier* grievance. In that case, a Flight Attendant was administratively separated at the end of her 3-year Medical Leave after she called in sick for her first flight following retraining. Krabbe testified that the Union did not challenge the Letter and dropped the matter. Krabbe also testified regarding a 2017 grievance filed on behalf of Flight Attendant Susanna Kato over her Administrative Separation. Kato had obtained medical clearance and attended training, but called in sick for her first trip thereafter. She was administratively separated for exceeding her three years of Medical Leave. The Union filed a grievance that was withdrawn.

I note that this is a contract interpretation case and not a case of just cause. Grievant was not terminated, but rather was administratively separated. Thus, as this is a contract interpretation case, the burden is on the

Union to show that the Company violated Sections 15.A.6.b and 15.E of the Contract when it administratively separated Grievant when her Medical Leave of Absence expired before she completed the return-to-work process.

The Union essentially makes two arguments. First, Grievant complied with the "Leave of Absence Return to Work Checklist" given to her by Management, which did not contain the additional requirement that she "Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g., trip trade, personal drop (PTO), etc.)," as found in the LOAP. The Union argues that Grievant, her immediate Supervisor Cordova, Human Resources Director Holt in Houston, and Union Council 42 leadership were unaware that a separate LOAP, with the additional requirement, existed until after Grievant was separated on May 28, 2019. Therefore, the Union insists that Grievant completed the return-to-work process properly and that she should not be held responsible for a requirement that neither she nor the others in Houston had knowledge of on May 23, 2019.

Second, in the alternative, the Union argues that even though she was given the Return-to-Work Checklist and not the LOAP, Grievant nevertheless successfully completed the contractual schedule change requirement when she called in sick on June 25 for her June 26 flight. The Union contends that because sick leave is covered under terms of the Contract, dropping a trip by calling in sick is, by definition, a schedule change provided for in the Contract.

After a review of all the evidence and arguments in this case, I find neither of the Union's arguments sufficient to meet its burden of proof. First, I note that the evidence in the record reflects that a past practice between the Union and the Company exists, whereby a Flight Attendant returning from a Medical Leave of Absence must fulfill all requirements, including flying a trip, sitting a day in Reserve, or engaging in a contractual schedule change. The evidence shows that the practice of the parties involves considering the returning Flight Attendant active only after all requirements are satisfactorily completed. This is confirmed by the Company's decision in the *Hughes-Crozier* and *Kato* matters (See *infra*) While there is no dispute that Company personnel gave Grievant incomplete return-to-work information, there is no dispute that the LOAP

in effect in June 2019 specified all the required steps in the return-to-work process. Krabbe testified without rebuttal that he sent the LOAP to the Union's Secretary/Treasurer when it was first drafted to obtain the Union's comments. He also testified that the LOAP was available to all employees on the Company's internal website. Further, I note that Section 15.A.6.b of the Contract specifies:

> Flight Attendants shall comply with all return to work guidelines established by the Company, including any required training and/or documentation.

Section 15.A.6.b clearly requires compliance with all guidelines existing at the time that a Flight Attendant returns from a Medical Leave of Absence. In this case, the LOAP, which had been drafted in February 2018, was in place when Grievant returned to work in June 2019.

The Company submitted the 1990 *DeSantis* Decision in which Neutral Board Member Epstein held that, although the Company provided the grievant erroneous information about the return-to-work requirements, and inadvertently extended her Medical Leave of Absence, the grievant was physically unable to work upon the conclusion of the contractually mandated Medical Leave of Absence. Arbitrator Epstein indicated that the grievant's inability to work during her contractually mandated Leave of Absence and the clear language regarding the length of her Leave of Absence were significant and led to the grievant's termination.

Like *DeSantis*, In the instant case, Grievant admitted that she was physically unable to work on June 26, and for four to six weeks thereafter, and her maximum three years of Medical Leave expired on May 26. Even if Grievant had traded her June 26 trip, there is no evidence to show that Grievant could have been physically capable of working trips thereafter. This is further evidenced by the fact Grievant was awarded Worker's Compensation benefits from November 2019 through March 2021. Further, the LOAP in place in June 2019 was clear as to the requirements for return-to-work which Grievant could not fulfill.

I also am not persuaded by the Union's alternative argument that even if this Board finds that all the work requirements of the LOAP were sufficiently communicated to Grievant, she nonetheless complied with the last requirement that she fly a trip or engage in a contractual schedule change when she exercised her right under Section 13 to call in sick. The Union emphasizes that the Company paid her sick time pursuant to

the Contract. I note that Krabbe credibly testified as to the difference between a contractual schedule change, such as a trade, adding a trip, or dropping a trip using personal time off, versus calling in sick. I agree with his analysis. Essentially, calling in sick transfers responsibility for filling the trip from the Flight Attendant to the Company. Conversely, engaging in a trade is contingent on another Flight Attendant picking up the trip being offered. If no one picks up the trip, the Flight Attended seeking to trade is still obligated to fly the trip. If not, the Flight Attendant is still obligated to fly the trip. Therefore, calling in sick does not qualify as a contractual schedule change.

The Company cited its Decisions to deny the *Hughes-Crozier* grievance in 2008 and the *Kato* grievance in 2017. In those cases, grievants were administratively separated after calling in sick before making their first flights after requalification training. Those grievants had reached their maximum allowable time on Medical Leave when calling in sick. The Company responded that by calling in sick prior to either working the flight, or engaging in a contractual schedule change, those grievants had not returned to active status. After the Union received Krabbe's responses, the Union chose not to pursue the grievances.

I find that while the instant situation closely parallels *Hughes-Crozier* and *Kato*, it is well established that there are numerous reasons why a Union may decide not to pursue a grievance to Arbitration. Therefore, I do not find the fact that the Union chose to drop the grievances to be determinative here. However, in the instant case, I agree with the arguments made by the Company, which are the same it made in *Hughes-Crozier* and *Kato*. It also reinforces the past practice claim by the Company. I note that while the *Hughes-Crozier* matter was pre-merger, the *Kato* grievance took place after the merger and after the Contract was in place. Grievant calling in sick prior to her first flight after retraining was not a contractual schedule change and, further, at the time she called in sick, her three years maximum allowable Medical Leave had expired. The fact that Grievant was paid sick time for the June 26 trip is not determinative. However, it is determinative that on June 25, when Grievant called in sick, her Medical Leave had expired.

In view of the above analysis, I find that the Union has not sufficiently proven that the Company violated Sections 15.A.6.b and 15.E when it administratively separated Grievant on June 28. As noted above, I have

determined that a past practice existed that indicated that in addition to the other requirements, a Flight Attendant must either fly a trip, sit a day of Reserve or engage in a contractual schedule change prior to being returned to active service. This requirement was also present in the LOAP in effect at this time and was required by Section 15.A.6.b of the Contract. Grievant did not fulfill this last requirement for reinstatement. Further, when Grievant called in sick on June 25, this was not a contractual schedule change, regardless of her being paid for the time. Grievant knew on June 18 that she was physically unable to work in all probability for the next four to six weeks. Grievant's inability to work was confirmed by the Total Temporary Disability Workers' Compensation that she was paid between 2019 and 2021.

Therefore, the Union has not been able to meet its burden of proof. The Company did not violate the Contract when it administratively separated Grievant on June 28, 2019. The Grievance is denied.



UNITED_005745

## VII. AWARD

For the reasons stated in this Opinion and Award, the Board of Arbitration finds:

The Grievance is denied. The Company did not violate Sections 15.A.6.b and 15.E of the Contract when it administratively separated Grievant Christine Finger after she failed to fulfill all return-to-service requirements following the expiration of her 3-year Medical Leave of Absence.

Steven Bierig

Steven M. Bierig
Neutral Chairman
March 17, 2022

Eric E. Mennel
Company Representative

Christian K. Hertnecky
Union Representative

Ted Ruckert
Company Representative

Kevin Lum
Union Representative

UNITED

# Employee Profile

Employee Profile-View All

| | | | | | |
|---|---|---|---|---|---|
| **Name :** | Christine Finger | **Middle Name :** | No middle name on file | **Preferred Name (Nickname) :** | No preferred name on file |
| **Address :** | 3013 Sackett Street<br>Houston TX 77098 | **Home Phone :** | 832/656-6999 | **Personal Email:** | 1ladyfinger@gmail.com |
| | | **Personal Cell :** | No personal cell on file | **Date of Birth :** | July 15 |
| | | **Business Phone :** | No business phone on file | | |
| | | **Business Cell :** | No business cell on file | **Veteran Status :** | |

| | | | |
|---|---|---|---|
| **Employee ID / Alter Employee ID :** | 231679/0077H | **Employee Status :** | Retired |
| **Company Address Code :** | IAHSW | **Company Sen. / Adj. Service Date :** | 1984-10-13 |
| **Cost Center :** | 7886 INFLIGHT ASSIGNMENT-IAH | **Class / Bid Date :** | 1984-05-23 |
| **Job Code :** | 511123 | **Lead Class/Bid :** | Not applicable |
| **Job Title :** | Flight Attendant - Domestic | **Longevity Seniority Date :** | 1990-09-01 |
| **Division :** | 64 Inflight | **Pay Seniority Date :** | 1984-11-04 |
| **Reports To :** | Velez,Enrique | **Travel Seniority / Board Date :** | 1984-10-13 |
| **Supervisor of Others :** | No | **Furlough Recall Sen Date :** | Not Applicable |
| **Cost Center Manager :** | No | **Vacation Seniority Date :** | Not Applicable |
| **Level / Step :** | | **CBA / Craft :** | AFA |
| **Rehire Recommendation :** | No - Not Dependable | | |

| Effective Date | Action | Action Reason | Cost Center | Bus.Grp | Co. Addr. | Job Code | Grade | Job Level | Job Title | Status | WS | Empl Grp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019-06-28 | Retirement | Retirement | 7886 | UA/CAL | IAHSW | 511123 | 4FA | | Flight Attendant - Domestic | Retired | RF | Flight Attendants |
| 2019-05-23 | Return from Leave | Illness - Occupational | 7886 | UA/CAL | IAHSW | 511123 | 4FA | | Flight Attendant - Domestic | Active | RF | Flight Attendants |
| 2018-11-30 | Data Change | Change in Pay Group | 7886 | UA/CAL | IAHSW | 511123 | 4FA | | Flight Attendant - Domestic | Leave with Benefits | RF | Flight Attendants |
| 2018-09-24 | Job Reclassification | Job Reclassification | 7886 | UA/CAL | IAHSW | 511123 | 4FA | | Flight Attendant - Domestic | Leave with Benefits | RF | Flight Attendants |
| 2018-08-31 | Pay Rate Change | Union Pay | 7886 | UA/CAL | IAHSW | 512123 | ZZ | | Flight Attendant | Leave with Benefits | RF | Flight Attendants |
| 2017-08-30 | Pay Rate Change | Union Pay | 7886 | UA/CAL | IAHSW | 512123 | ZZ | | Flight Attendant | Leave with Benefits | RF | Flight Attendants |



CONFIDENTIAL

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2017-06-28 | Data Change | Change Dept Information | 7886 | UA/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Leave with Benefits | RF | Flight Attendants |
| 2016-08-29 | Pay Rate Change | Union Pay | 7886 | UA/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Leave with Benefits | RF | Flight Attendants |
| 2016-05-26 | Leave of Absence | Illness - Occupational | 7886 | UA/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Leave with Benefits | RF | Flight Attendants |
| 2016-04-26 | Return from Leave | Illness - Occupational | 7886 | UA/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Active | RF | Flight Attendants |
| 2015-06-05 | Leave of Absence | Illness - Occupational | 7886 | UA/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Leave with Benefits | RF | Flight Attendants |
| 2015-01-01 | Change of Pay System | Payroll Consolidation | 7886 | UA/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Active | RF | Flight Attendants |
| 2013-10-12 | Data Change | Conversion | 7886 | Z11/CAL | IAHSW | 512123 | ZZ | Flight Attendant | Active | RF | Flight Attendants |
| 2012-01-01 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2011-08-31 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2011-03-04 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2011-01-01 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2010-01-01 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2009-12-02 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2005-12-09 | Reactivate | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2005-09-24 | Inactivated | 70 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Inactive | F | CAFA |
| 2003-12-02 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2002-12-02 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2001-12-02 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2000-12-02 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 2000-04-01 | - | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 1999-08-01 | Reactivate | 03 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Active | F | CAFA |
| 1999-06-02 | - | 72 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Inactive | F | CAFA |
| 1998-12-24 | - | 72 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Inactive | F | CAFA |
| | - | 72 | 56340200 | Z11 | IAHNF | FA1500FIAH | F1 | Flight Attendant | Inactive | F | CAFA |



CONFIDENTIAL

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1998-06-02 | | | | | | | | |
| 1998-02-23 | - | 72 | 56340200 Z11 | IAHNF FA1500FIAH F1 | Flight Attendant | Inactive | F | CAFA |
| 1997-12-19 | - | 72 | 56340200 Z11 | IAHNF FA1500FIAH F1 | Flight Attendant | Inactive | F | CAFA |
| 1997-11-01 | - | 72 | 56340200 Z11 | IAHNF FA1500FIAH F1 | Flight Attendant | Inactive | F | CAFA |
| 1997-06-07 | Inactivated | 72 | 56340200 Z11 | IAHNF FA1500FIAH F1 | Flight Attendant | Inactive | F | CAFA |
| 1997-06-02 | - | UNSPE | 56340200 Z11 | IAHNF FA1500FIAH F1 | Flight Attendant | Active | F | CAFA |
| 1996-11-01 | - | UNSPE | 56340200 Z11 | IAHNF FA1500FIAH F1 | Flight Attendant | Active | F | CAFA |
| 1984-07-12 | Hired | UNSPE | 00000000 Z11 | 1001 | HISTORICAL POSITION | Active | F | CAFA |

## Passport : No Passport details found on file

## Visa Details : No Visa details found on file

## Emergency Contacts:

| Contact Name | Phone# |
|---|---|
| Eremea Jeannine | 713/292-1625 |

## Company Assets: No Company Asset details found on file

## Fingerprint Details:

| OPM Case # | Print Date | Date Closed |
|---|---|---|
| TSCFP12815904 | 2019-05-08 | 2019-05-08 |

Confidential - United Airlines



CONFIDENTIAL

**From:** Stansberry, Aleta
**Sent:** Thursday, June 27, 2019 5:02 PM EDT
**To:** Smith, Benita <Benita.Smith@sedgwick.com>
**Attachment(s):** "CHristina Finger U231679 injury OIS report August 3 2014.pdf"

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

OIS-351941 Created by Kushner, Terri on Aug 4, 2014 5:16 PM

Review

## Intake

**Important note!**
This reporting system has been developed for **Internet Explorer v7, 8, & 9, Firefox 5 & 6, and the iPad** browsers. Using newer versions is generally acceptable but may result in some unexpected behavior.

OIS Case Number
OIS-351941

### Occupational Injury Case

| Reported By | Title | Phone | Submitter |
|---|---|---|---|
| Kushner, Terri [IAHFO] | Supr - Inflight Admin & Suprt | +12815538561 | Manager |

### Employee Details

Subsidiary
◉ Continental ○ United

Employee ID
u231679

Sub-CO Employee ID
0077h

| Job Title | First Name | Middle | Last Name |
|---|---|---|---|
| Flight Attendant | CHRISTINE | | FINGER |
| **Employee Group** | **Department** | **Division Code** | **Manager Level** |
| FA | IAHSW | 64 | 99 |
| **Cost Center** | **Part Time/Full Time** | **Hire Date** | **Gender** |
| 7886 | F | 1984-10-13 | Female |

Work Contact

Work Phone

Work Email
Christine.Finger@united.com

Country
USA - United States

Street Address 1

Street Address 2

| City | State | Zip Code | County |
|---|---|---|---|
| Houston | Texas | | |

Home Contact

Primary Phone Number
(832)656-6999

Secondary Phone Number

Alternative Email

Country
0

Street Address 1
3013 SACKETT ST

Street Address 2

| City | State | Zip Code | County |
|---|---|---|---|
| HOUSTON | TX | 77098-201 | |

### Supervisor Information

Supervisor same as Case Submitter
○ Yes ◉ No

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Cordova, Dominic | Supervisor - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| +12815532785 | | dominic.cordova@united.com |

### Employment Status at Time of Report

Employee is Laid Off

Termination Date

○ Yes ◉ No ○ No Information

Employee is Furloughed?
○ Yes ◉ No ○ No Information

Employee on Leave of Absence?
○ Yes ◉ No ○ No Information

## Incident

OIS Case Number
OIS-351941

OSHA Report Link(s)
OSHAReport301.xls

### Incident Background

Injury Date
Aug 3, 2014

Injury Time
8:00 AM

Is this a late filing?
○ Yes ◉ No

Reported to Employer Date
Aug 4, 2014

Reported To Employer Time
11:59 PM

Time Employee Started Work
8/3/14 1:19 PM GMT(+0000)
8/3/14 1:19 PM UTC

Work Schedule: Start Time

Work Schedule: End Time

Work Schedule: Days Off

Days Worked Since Last Day Off
3

Last Day Worked
Jul 11, 2016

Was the injury in the course of working a military charter or CRAF flight?
○ Yes ◉ No ○ No Information

Is this claim being reported for incident only?
◉ Yes ○ No ○ No Information

Is this a Duty Time Injury?
◉ Yes ○ No ○ No Information

Is this an Audiometric Testing Case?
○ Yes ◉ No

### Injury Details

Injury Type
Specific Injury : Sprain

Incident Type
Struck against : Stationary or moving object

Source Causing Incident
Turbulence : Turbulence

Body Part(s) Affected
Lower Extremities : Foot, left

Specific Activity Engaged In When Incident Occurred
Food/Beverage Service

Equipment Involved
Food / Beverage Cart

Equipment Number

Airline Involved
UA

Incident Summary Statement
EMPLOYEE STRUCK LEFT FOOT AGAINST OPEN BAR CART DOOR

Detailed Narrative
Employee stated that as she was preparing the bar cart for service, she was restocking the bar cart when a tiny bit of turbulence hit the aircraft and she inadvertently struck her left foot against the open bar cart door. She continued to work with the pain. She notified the captain of the injury and he called for a cart, but the clinic was closed. She is trying to see a PCP or urgent cart Dr today as he left foot is very swollen and sore.

Attachments

### Incident Location

Location of Incident
Aircraft : Galley

Please Specify
stocking bar cart

Incident occurred on employer premises?
( ) Yes (•) No ( ) No Information

Did this occur at an Airport
( ) Yes (•) No ( ) No Information

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| B737 | 1212 | 731 | Inflight |

Departure Station
DCA

Arrival Station
IAH

Turbulence
(•) Yes ( ) No

Turbulence Type
Light

Was Captain Notified of Incident?
(•) Yes ( ) No

## Incident Location Contact

Incident Premises Contact Available?
( ) Yes ( ) No (•) No Information

## Medical Details

Initial Medical Treatment

Employee Treated at a UA Onsite Clinic
( ) Yes ( ) No (•) No Information

UA Onsite Clinic Location

Employee Hospitalized for Treatment
( ) Yes ( ) No (•) No Information

Medical Transportation
Unknown

Facility/Hospital Details

Physician's Name

Facility/Hospital Name

Phone Number

Country
USA - United States

Street Address 1

Street Address 2

City

Zip Code

County

Does this employee have a Pre-Designated physician on file?
( ) Yes ( ) No (•) No Information

## Incident's Impact

Employee lost time beyond date of injury due to incident
( ) Yes ( ) No (•) No Information

Is this Case Litigated?
( ) Yes (•) No

Employee Work Status After Incident
( ) Full Duty ( ) Restricted Duty ( ) Off Work (•) Unknown

Did this incident injure other employee(s)?
( ) Yes (•) No ( ) No Information

## Witness Information

## Investigation

OIS Case Number
OIS-351941

Linked Case(s)

Downloadable Forms

Add Related Case(s)

## Previously Provided Details

Injury Date
Aug 3, 2014

Injury Time
8:00 AM

Employee Injury Count
5

Injury Type
Specific Injury : Sprain

Incident Summary Statement
EMPLOYEE STRUCK LEFT FOOT AGAINST OPEN BAR CART DOOR

Location of Incident
Aircraft : Galley

Equipment Involved
Food / Beverage Cart

Equipment Number

## Investigation Questions

Was a drug and alcohol test performed?
Yes No

Human Factors Investigation Link

Go to Human Factor Investigation

Did a Post Injury Review occur?
Yes No

## Risk Assessment

| Risk Level | Risk Color | Risk Description | Risk Rank |
|---|---|---|---|
| 2A | | Limited Risk | 17 |

## Investigation Findings

Primary Root Cause

Secondary Root Cause

Corrective Actions Taken

Investigation Attachments

## Assignment

## FYI Notification

## UA Investigation Assessment

Investigation Evaluation Completed?
Yes No

Investigation Case Comment

# Data Updates

## Employee Information

Secondary Phone Number

Alternative Email

## Supervisor Information

Supervisor same as Case Submitter
Yes No

Select Supervisor

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Cordova, Dominic | Supervisor - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| +12815532785 | | dominic.cordova@united.com |

## Incident Background

Time Employee Started Work

8/3/14 1:19 PM GMT(+0000)
8/3/14 1:19 PM UTC

Work Schedule: Start Time | Work Schedule: End Time | Work Schedule: Days Off

Shift at Time of Incident
Unknown

Hours Worked on Last Day Worked

## Injury Details

Specific Activity Engaged In When Incident Occurred
Food/Beverage Service

Equipment Involved
Food / Beverage Cart

Equipment Number

Detailed Narrative
Employee stated that as she was preparing the bar cart for service, she was restocking the bar cart when a tiny bit of turbulence hit the aircraft and she inadvertently struck her left foot against the open bar cart door. She continued to work with the pain. She notified the captain of the injury and he called for a cart, but the clinic was closed. She is trying to see a PCP or urgent cart Dr today as he left foot is very swollen and sore.

## Incident Location

Location of Incident
Aircraft : Galley

Please Specify
stocking bar cart

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| B737 | 1212 | 731 | Inflight |

Departure Station
DCA

Arrival Station
IAH

Turbulence
(•) Yes ( ) No

Turbulence Type
Light

Was Captain Notified of Incident?
(•) Yes ( ) No

## OSHA Updates

Total Trans Duty Days:

Total Lost Time Days: 1,789

Request Review of OSHA Recordable Status
( ) Yes (•) No

| Work Status | Start Date | End Date | |
|---|---|---|---|
| Lost Time | Aug 4, 2014 | | Add and Save |

UNITED

Date: April 22, 2016

To: CHRISTINE FINGER - Flight Attendant / u231679

From: Krystle Mallett – Workers' Compensation and Transitional Duty

Subject: Transitional Duty (TD) Job Offer

Date of Injury: Aug 3, 2014

United Airlines has received your current work status from The Woodlands Sports Medicine Center releasing you to return to work with restrictions. A copy of a Work Status Report (DWC-73) from your physician is attached. United will only assign tasks consistent with your physical abilities, knowledge and skills and will provide training if necessary.

**Work Capabilities or Restrictions:** Body Movements - Stand : 8 hours or more; Lift/Carry - None; Push/Pull - Not Applicable; Additional Comments - Advised to take over the counter medication. Sedentary work.

**Transitional Duty Start Date:** Apr 23, 2016

**Assignment/Location:** Inflight Recruiting

**TD Hours or Schedule:** 10:30:00 AM - 7:00:00 PM **TD Days Off:** SU; M; F; SA

**Report to: Crystal Heckman 281.553.7312**

**Next Office Visit: Jun 8, 2015**

Medical and physical therapy appointments may be scheduled during your Transitional Duty shift when treating at an on-site United Airlines Health Clinic. It is your responsibility to notify the Transitional Duty (TD) Office immediately of any changes in your medical status that would prevent you from performing your TD assignment. In order for your work status and pay to be updated, provide copies of ESF and/or medical notes as you receive them to:

- Transitional Duty Office +12815538565; Fax 1-281-553-2205
- Gallagher Bassett Adjuster AVON JACKSON 1-800-328-2251
- Your Administrative Supervisor

**Attendance/Pay/Travel/Trades**

- Employees will be held accountable for attendance and tardiness while on Transitional Duty assignments.
- Refer to your contract for information regarding Pay and Travel.
- Trade privileges and overtime while on TD may be allowed if the work that must be performed is within your restrictions. Trade privileges and overtime processes vary by work groups. Please follow up with your Admin Supervisor..

Your refusal to report to your TD assignment may jeopardize your workers' compensation benefits and pay.

Acknowledgment of Transitional Duty placement:

Signature:________________________________ Date______________
CHRISTINE FINGER

**This section for Texas Based Flight Attendants Only:**

Attachments to this Transitional Duty Bona Fide Job Offer of Employment Include:

- Job Description for International Document
- Employee Packet incl. Wage Calculation
- DWC 73/ Work status

____ I have read and understand the requirements of the position and accept the position.

Signature:________________________________ Date______________
CHRISTINE FINGER

## IAH INFLIGHT RECRUITING PHONE LIST

| | |
|---|---|
| Christine Finger | x36621 |
| Tiffany Jones | x37330 |
| Barbara Wilson | x37305 |
| | |
| Sandi Martin | x39072 |
| Deggary Priest | x39063 |
| | |
| Nativity Dalton | x39057 |
| | |
| Tom Chisholm | |
| Tony Aquino | x37329 |
| Debbie Noonan | |
| | |
| Jane Zansler | x38587 |
| Dawn Hofsommer | x39077 |

Inflight Recruiting Appointment Schedule Lines 713-324-3936 or 281-553-7327
Interview Location Address: 4975 Wright Road, Houston, TX 77032
Email: inflight.recruiting@united.com

| | |
|---|---|
| Help Desk | x44357 |
| Shares Drive Address: Z Drive | \\sopcnaha01\deptvol1 |
| Generic Help Desk 1-847-700-5800 | |

| **Inflight Training Building Front Desk** | |
|---|---|
| Janice Witherspoon | x37300 |

| **Simulator Building Admin** | |
|---|---|
| Trish Machann | x38203 |
| Marylou Castillo | x38223 |
| Building Board Mail Address | IAHPS |

UNITED

Christine Finger
3013 Sackett
Houston TX 77098 USA

September 29, 2016

Dear Christine Finger

As part of the Joint Collective Bargaining Agreement ("JCBA"), certain changes have been made to the Leaves of Absence, including, but not limited to the maximum length of some leaves. Please carefully read all of the information in this letter as the maximum length of your leave of absence may be impacted.

Under the terms of Section 15.E of the JCBA, the duration of a Medical Leave may not exceed the shorter of:

- the period of disability;
- 3 years, or
- The Flight Attendant's total length of active service.

In order to transition Flight Attendants from the terms of the individual contracts to the terms of the JCBA, Flight Attendants on a Medical Leave as of the start of the September bid month will be entitled to the following:

1. A Flight Attendant who has been on a Medical Leave of Absence leave longer than three (3) years or her/his total length of active service on the start of the September bid month will be provided 180 days' to qualify and return to work.
2. A Flight Attendant with more than three (3) years of service who has been on a Medical Leave of Absence for fewer than three (3) years will have her/his leave expire upon reaching the three-year maximum duration or 180 days following the start of the September bid month, whichever is longer.
3. A Flight Attendant with less than three (3) years of service will have her/his leave expire upon reaching /her/his total length of active service or 180 days following the start of the September bid month, whichever is longer.

Our records show that you are currently on a Medical Leave (occupational or non-occupational) and that your leave of absence began on 5/26/2016. Under the above referenced terms, your leave will expire on 5/26/2019.

If you do not return to work prior to the expiration of your Medical Leave, your employment will be administratively terminated in accordance with Section 15.E.2..

If you have questions about any of the information in this letter or about the process to return to work, please immediately contact your supervisor.

Sincerely,

Mark Kilayko
Managing Director-Crew Resources and Base Services





CONFIDENTIAL

| TYPE OF LEAVE | DURATION | BID SENIORITYACCRUAL | PAY & VACATION LONGEVITY (STEPS) | VACATION & SICK PAY ACCRUAL | INSURANCE BENEFITS | PASS TRAVEL BENEFITS |
|---|---|---|---|---|---|---|
| MATERNITY | Up to 12 consecutive months | Duration | 270 days | None | Active rates for duration | Online passes for duration |
| PARENTAL | Up to 12 consecutive months | Duration | 180 days | None | Active rates for duration | Online passes for duration |
| ADOPTION | Up to 12 consecutive months | Duration | 180 days | None | Active rates for duration | Online passes for duration |
| FAMILY MEDICAL LEAVE | Up to 78 days in a 12-month period (block and/or intermittent) | Duration | Duration | Duration | Active rates for duration | As active employee for duration |



CONFIDENTIAL

# UNITED AIRLINES
# REQUEST FOR SURVEILLANCE FORM

Date: **December 14, 2015**

**To:** Karen Parker

**From:** Avon Jackson **Branch:** Houston 101

**Requestor:** Avon Jackson **Company Code:**

**Claim #:** **001534-117595-WC-01**

**Claimant Name:** **Christine Finger**

**Date of Accident:** **08.03.2014**

**Description of Injury**: Employee struck left foot against open bar cart door. A left knee was added later.

**Reason for the Surveillance:** Received a call from Karen with Dr. Lipscomb. States Dr. Lipscomb does not want to see the patient anymore. She's been harassing the staff and making all kind of demands. States it wasn't until Dr. Lipscomb advised he would not see her anymore. He recommended a discharge and full duty release. The claimant was upset indicating he was not looking out for the best interest. States she was going to file a malpractice lawsuit. Karen states Dr. Lipsomb attorney recommend they not take any calls from claimant, terminate claimant as a patient and not refer her to another physician. Karen, states Dr. Lipscomb feels she has something else going on and just doesn't want it part of it. I've spoken to the claimant several times and I get the impressions she's taking care of her ill mom.

**What prior surveillance has been requested?** No prior surveillance.

**Outcome:**

**Surveillance company:** Rapid Results Investigations

**Comments:** 3-day activity check with a budget of 2k

**Agreed/Disagreed:** **Date:**

UPLOADED
GB Bellaire
MAY 11 2017

NON-HANDLE.

Division use

FO&L
DATA DEPT.

**TEXAS DEPARTMENT OF INSURANCE**
**DIVISION OF WORKERS' COMPENSATION**

**Si prefiere hablar con una persona de habla hispana acerca de esta correspondencia o de su reclamo, sírvase llamar al 1-800-252-7031.**

May 10, 2017

NEW HAMPSHIRE INSURANCE CO
100 CONNELL DR STE 2100
BERKELEY HEIGH, NJ 07922-2741

C/O FLAHIVE OGDEN & LATSON
BOX NBR 19

Claim No: 14299865
Docket No: 14299865-01-CC
Carrier No: 001534117595WC01
Employee: CHRISTINE FINGER
Employer: UNITED AIRLINES INC
Date of Injury: August 3, 2014

RECEIVED
MAY 11 2017
BY
DATE FO&L RANDY REYES

**CONTESTED CASE HEARING:**
DATE: June 27, 2017
TIME: 10:30 AM
ON: 3 Issues

PLACE: TID-DIV WORKERS' COMPENSATION
5425 POLK, SUITE 130
ELIAS RAMIREZ BUILDING
HOUSTON, TX 77023
(800) 252-7031

RECEIVED
MAY 11 2017
FOL
DATA DEPT.

**THIS CLAIM HAS BEEN SET FOR A CONTESTED CASE HEARING**

Attached is a copy of the Benefit Review Officer's report from the Benefit Review Conference. Since all disputed issues were not entirely resolved at the Benefit Review Conference, a Benefit Contested Case Hearing will be held as indicated above.

The remaining unresolved disputed issue(s) are identified in the report along with each party's position on the issue(s). Any party may make a written response to the unresolved dispute identified in the Benefit Review Officer's report. The response must be sent to the Division no later than **20 days** after receiving this report and must be delivered to all other parties.

A party may contact the Contested Case Hearing Officer prior to a scheduled hearing regarding procedural issues, but communication with the Hearing Officer regarding facts, issues, laws, or rules related to the claim is not allowed. The Division has adopted additional rules regarding subpoenas and discovery in Chapter 142 of the Texas Workers' Compensation Rules that may be useful in preparation for the hearing.

No later than **15 days** after the Benefit Review Conference, all parties must exchange all medical reports, expert witness reports, witness statements, and any and all other documents that a party intends to offer into evidence at the hearing. All parties have a right to be represented by an attorney. If you are not currently represented but retain counsel for the Contested Case Hearing, advise your attorney to file the Letter of Representation with the Division field office handling the claim.

RECEIVED
MAY 12 2017
GALLAGHER BASSETT
COMPLIANCE-005

Failure to attend a Benefit Contested Case Hearing without good cause, as determined by the Hearing Officer, is an Administrative Violation. If the parties resolve the disputed issue by settlement or agreement, and if the settlement or agreement is approved by the Division, cancellation may be granted.

As an alternative to the Benefit Contested Case Hearing, the parties may mutually agree to resolve their dispute in an Arbitration proceeding as provided by the Texas Labor Code §410.004 and 410.104 through 410.121 and Chapter 144 of the Division Rules. An election to engage in Arbitration must be filed with the Division within **20 days** of the Benefit Review Conference. Once this election is made and filed with the Division, it is binding and irrevocable and the Contested Case Hearing will be cancelled.

If you have any questions concerning the Contested Case Hearing or Arbitration, please contact the customer service representative in the Field Office handling your claim as soon as possible.

Sincerely,

Texas Department of Insurance
Division of Workers' Compensation

5425 POLK, SUITE 130
ELIAS RAMIREZ BUILDING
HOUSTON, TX 77023
(800)252-7031

**THIS LETTER WAS ALSO SENT TO THE FOLLOWING:**

CHRISTINE FINGER
[redacted]
SPRING, TX 77380-1320

PAPPAS & SUCHMA PC
MARILYN J. ALLEN
818 TOWN AND COUNTRY BLVD STE
400
HOUSTON, TX 77024-4548

**INFORMATION COPIES WERE ALSO SENT TO:**

UNITED AIRLINES INC
1600 SMITH ST
HOUSTON, TX 77002-7362

OMBUDSMAN
HOUSTON, TX 77023

RECEIVED

MAY 12 2017

GALLAGHER BASSETT
COMPLIANCE-005

UPLOADED

JUL 11 2017
6B-Bellaire
FO&L
DATA DEPT.

NON HANDLE

Jackson

Division use

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION

**Si prefiere hablar con una persona de habla hispana acerca de esta correspondencia o de su reclamo, sírvase llamar al 1-800-252-7031.**

July 7, 2017

NEW HAMPSHIRE INSURANCE CO
12139 E STATE HIGHWAY 294
GRAPELAND, TX 75844-4629

C/O FLAHIVE OGDEN & LATSON
BOX NBR 19

DWC No: 14299865
Docket No: 14299865-01-CC
Carrier No: 001534117595WC01
Employee: CHRISTINE FINGER
Employer: UNITED AIRLINES INC

Date of
Injury: August 3, 2014

The Hearing Officer has reached a decision and entered an order in the above referenced claim. Copies of the decision and a fact sheet are attached explaining what to do if you want to appeal this Hearing Officer's decision or if the other party appeals the decision.

Please note that if the Carrier has been ordered to pay benefits in accordance with this decision, those benefits, unless otherwise noted, include both indemnity and medical benefits.

If you have questions or require assistance, please call 1-800-252-7031. To expedite the handling of requests for appeal and responses to requests for appeal, all correspondence should be addressed to the:

CHIEF CLERK OF PROCEEDINGS, HEARINGS
TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION
POST OFFICE BOX 17787
AUSTIN, TEXAS 78760-7787

RECEIVED
JUL 10 2017
FOL
DATA DEPT.

RECEIVED JUL 10 2017
CARRIER COPY RECEIVED
CARRIER'S AUSTIN REP
REP
BY FO&L-RANDY REYES
DATE

Sincerely,

Texas Department of Insurance
Division of Workers' Compensation

RECEIVED
JUL 12 2017
GALLAGHER BASSETT
COMPLIANCE-005

**THIS LETTER WAS ALSO SENT TO THE FOLLOWING:**

CHRISTINE FINGER
[redacted]
SPRING, TX 77380-1320

THE ROMERO LAW FIRM PC
CIPRIANO ROMERO
PO BOX 8595
BACLIFF, TX 77518-8595

DEAN G PAPPAS LAW FIRM PLLC
MARILYN J. ALLEN
818 TOWN AND COUNTRY BLVD STE
400
HOUSTON, TX 77024-4548

**INFORMATION COPIES WERE ALSO SENT TO:**

UNITED AIRLINES INC
1600 SMITH ST
HOUSTON, TX 77002-7362

RECEIVED

JUL 1 2 2017

GALLAGHER BASSETT
COMPLIANCE

CONFIDENTIAL
Tex. Labor Code
§402.083

# TEXAS DEPARTMENT OF INSURANCE
# DIVISION OF WORKERS' COMPENSATION
## HOUSTON EAST FIELD OFFICE
## HOUSTON, TEXAS

TDI/DWC
RECEIVED
JUL 01 2017
CHIEF CLERK OF
PROCEEDINGS

| | | |
|---|---|---|
| **CHRISTINE FINGER,** **CLAIMANT** | § | |
| | § | |
| **v.** | § | **DOCKET NO.** |
| | § | **HE-14299865-01-CC-HE47** |
| **NEW HAMPSHIRE INSURANCE CO.,** **CARRIER** | § | |
| | § | |

## DECISION AND ORDER

This case is decided pursuant to Chapter 410 of the Texas Workers' Compensation Act and the Rules of the Texas Department of Insurance, Division of Workers' Compensation. Based upon the agreement reached by the parties, the Hearing Officer determines that: the Claimant's compensable August 3, 2014 injury extends to and includes a lumbar sprain and strain, left hip labrum tear, femoral and acetabular impingement with anterior cortical bump along the anterior superior left femoral neck and subtle fraying of the anterior superior acetabular labrum, and peroneal nerve deficit involving the top of the left foot; and the Claimant reached maximum medical improvement (MMI) on the statutory date of August 8, 2016 with a 6% impairment rating (IR), per the report of the designated doctor (DD), Eliseo Cummings, D.C.

## STATEMENT OF THE CASE

A benefit review officer with the Division held a benefit review conference on April 25, 2017 to mediate resolution of the disputed issues. The parties were unable to reach an agreement. Accordingly, on June 27, 2017, Patrice Fleming-Squirewell, a Division hearing officer, held a contested case hearing to decide the following disputed issues:

1. Does the compensable injury of August 3, 2014 extend to and include lumbar sprain and strain, left hip labrum tear, femoral and acetabular impingement with anterior cortical bump along the anterior superior left femoral neck and subtle fraying of the anterior superior acetabular labrum and peroneal nerve deficit involving the top of the left foot?

2. What is the date of MMI?

3. What is the Claimant's IR?

RECEIVED
JUL 12 2017
GALLAGHER BASSETT
COMPLIANCE-005

CONFIDENTIAL
Tex. Labor Code
§402.083

## PARTIES PRESENT

Claimant appeared and was represented by Cipriano Romero, attorney. Carrier appeared and was represented by Marilyn Allen, attorney.

## AGREEMENT

The parties reached an oral agreement. The agreement resolves only the issues to be decided at this hearing. The agreement does not resolve all issues with regard to this claim and is not a settlement.

In this decision, this **Agreement** section includes findings of fact and the **Decision** section constitutes the conclusions of law.

The Hearing Officer found:

A. Carrier delivered to Claimant a single document stating the true corporate name of Carrier, and the name and street address of Carrier's registered agent, which was admitted into evidence as Hearing Officer's Exhibit Number 2.

The parties stipulated as follows:

1. The Texas Department of Insurance, Division of Workers' Compensation, has jurisdiction to hear this case.

2. Venue was proper in the Houston East Field Office of the Texas Department of Insurance, Division of Workers' Compensation.

3. On August 3, 2014, Claimant was the employee of United Airlines, Inc., Employer.

4. On August 3, 2014, Employer had workers' compensation insurance coverage with New Hampshire Insurance Co., Carrier.

5. On August 3, 2014, the Claimant sustained a compensable injury while in the course and scope of her employment with United Airlines, Inc.

6. Dr. Eliseo Cummings is the DD who addressed the issues of extent of injury, MMI and IR.

7. Statutory MMI fell on August 8, 2016 in this case.

RECEIVED

JUL 12 2017

GALLAGHER BASSETT
COMPLIANCE-005

CONFIDENTIAL
Tex. Labor Code
§402.083

The parties agreed as follows:

1. The Claimant's compensable August 3, 2014 injury extends to and includes a lumbar sprain and strain, left hip labrum tear, femoral and acetabular impingement with anterior cortical bump along the anterior superior left femoral neck and subtle fraying of the anterior superior acetabular labrum, and peroneal nerve deficit involving the top of the left foot..

2. The Claimant reached MMI on the statutory date of August 8, 2016 with a 6% IR, per the report of the DD, Dr. Cummings.

**DECISION**

Per the parties' agreement:

The Claimant's compensable August 3, 2014 injury extends to and includes a lumbar sprain and strain, left hip labrum tear, femoral and acetabular impingement with anterior cortical bump along the anterior superior left femoral neck and subtle fraying of the anterior superior acetabular labrum, and peroneal nerve deficit involving the top of the left foot. The Claimant reached MMI on the statutory date of August 8, 2016 with a 6% IR, per the report of the DD, Dr. Cummings.

**ORDER**

The Carrier is **ORDERED** to pay benefits in accordance with this decision, the Act and the implementing Rules. Accrued but unpaid income benefits, if any, shall be paid in a lump sum together with interest as provided by law.

The true corporate name of the Carrier is **NEW HAMPSHIRE INSURANCE COMPANY**, and the name and address of its registered agent for service of process is

**CORPORATION SERVICE COMPANY**
**211 EAST 7TH STREET, STE. 620**
**AUSTIN, TX 78701**

Signed this 28th day of June, 2017.

Patrice Fleming-Squirewell

Patrice Fleming-Squirewell
Hearing Officer

RECEIVED

JUL 12 2017

GALLAGHER BASSETT
COMPLIANCE-005

Jackson

UPLOADED

AUG 07 2017
6B- Bellaire
FO&L
DATA DEPT.

**Texas Department of Insurance**

**Division of Workers' Compensation**
7551 Metro Center Drive, Suite 100, MS-35 • Austin, Texas 78744-1645
512-804-4020 • 512-804-4021 fax • www.tdi.texas.gov

**8/3/2017**

# NON HANDLE

| | |
|---|---|
| DWC Docket No: | **14-299865-01** |
| Employee: | **CHRISTINE FINGER** |
| Employer: | **UNITED AIRLINES INC** |
| Date of Injury: | **AUGUST 3, 2014** |

001534117595 WC01

**NEW HAMPSHIRE INSURANCE CO**
**c/o FLAHIVE OGDEN & LATSON, REP BOX 19**

The attached document was received by the Texas Department of Insurance, Division of Workers' Compensation ("Division"). The Division is unable to determine if it was served on the party or parties as required. This document is being forwarded to you in compliance with the Division's Rule 143.3(b) or 143.4(b). The transmittal of the attached document constitutes service pursuant to Texas Labor Code §410.202 (a) and (b).

Sincerely,

Tiffany Duarte
Chief Clerk of Proceedings

CARR...
CAR...
REP
BY RECEIVED
DATE
AUG 04 2017

FO&L RANDY REYES

HEARINGS MAIL PLACED IN AUSTIN REP BOX
AUG 03 2017

RECEIVED
AUG 04 2017
FOL
DATA DEPT

RECEIVED
AUG 08 2017
GALLAGHER BASSETT
COMPLIANCE-005

TEXAS DEPARTMENT OF INSURANCE
333 Guadalupe, Austin, Texas 78701 ★ PO Box 149104, Austin, Texas 78714-9104
(512) 676-6000 | (800) 578-4677 | TDI.texas.gov | @TexasTDI

## Facsimile Cover Sheet

**Date:** August 01, 2017 9 **Page(s)** (including cover)

This facsimile (fax), including any accompanying documents, may contain confidential or privileged information intended only for the use of the person to whom this fax is addressed. If you are not the addressee, you are strictly prohibited from reviewing, disclosing, copying, distributing or taking any action in reliance on information contained in this fax. If you received this fax in error, please immediately notify the sender at the telephone or fax number listed below.

**To:** Chief_Clerk_of_Proceedings
TDI-DWC
Fax Number: 5128044021 Phone Number:

**From:** Isaac Sanchez

Fax Number: 956-447-4586 Phone Number: 36554

**Ref:** Claimant's Request for Review

**Comments:** Christine Finger v New Hampshire Insurance Co.
Docket No.
HE-14299865-01-CC-HE47

TDI/DWC
RECEIVED
AUG 01 2017
CHIEF CLERK
OF PROCEEDINGS

RECEIVED
AUG 08 2017
GALLAGHER BASSETT
COMPLIANCE-005

www.tdi.texas.gov

August 1, 2017

Chief Clerk of Proceedings
Texas Department of Insurance
Division of Worker's Compensation
P O Box 17787
Austin, Texas 78760-7787

Dear Sir / Madam:

My name is Christine Finger, and I am 58 years old. I have worked as a flight attendant for 33 years, in a job that I love, and hope to return to, to finish out my flying career, and retire with the tenure based pension, which I have worked so hard to achieve.

On August 3, 2014, during turbulence, I was injured on a flight. My life, my entire world has been flipped upside down since that unfortunate accident, and what I have experienced throughout the almost 3 years, to the date of this letter, has been reprehensible and shameful. I can honestly say that I feel because of the inequities and breakdowns, delay of proper medical treatment, within the WC network I am required to utilize--my injuries only worsened and were compounded into what I believe, were completely preventable, certainly minimized.

In an Article dated March 6, 2017, entitled Why Worker's Compensation is Especially Needed Now: Report from WCRI Conference, it references the need for a credible system for injured workers, especially as other social safety nets including job security, employer funded pensions and health insurance are being weakened. Numerous reports accuse the industry of failing too many injured workers. **These reports allege that the worker's compensation system is not living up to the "grand bargain" promised workers: that they would be taken care of in the event of a workplace injury in exchange for giving up their right to sue their employer for the injury.**

It is with a heavy heart, a lot of endless months/years, of physical and emotional pain, frustration and anger and disbelief that I write this request for Review on my recent CCH, date of June 27, 2017. For, having been immersed into what I consider to be one of the most insidious processes I've ever experienced, I felt that finally, by reaching my CCH, my case would be heard by a Hearing Officer, who would review the facts, the history and ensure that orders could finally be executed once and for all. I believe that my case has been riddled with indignities, inaccuracies unfairness, and even lies, and that during my CCH, that "justice would be served" and I would have that "day of reckoning" and finally be able to put this misfortunate experience to rest, and dedicate all my efforts to healing and recovering fully, to where I can return to that life, where I am productive and happy.

That, however, to my dismay and shock did not occur, as you will see from my narrative in my Request for Review . I guess, I can say, regrettably, that it is only "befitting " that from conception to ending, my case has been mishandled and because of negligence, oversights, and now what I consider to be flagrant violations of judicial misconduct,violations of fiduciary duties, on behalf of both Hearing Officer Patrice Squirewell, and my ex-attorney, Mr. Cipriano Romero , I was not afforded that "day of justice" where my case was HEARD-- for, it was never

RECEIVED
AUG 08 2017
GALLAGHER BASSETT
COMPLIANCE-065

HEARD at all. 3 years of endless hours of phone calls, emails, doctors visits, PT, out of pocket expenses, to push my "care" through this system, so that I could receive what I am entitled to by law, was reduced to a coerced signing of an agreement by a Hearing Officer, that I never was even introduced to,and would remain nameless to me, other than her name being referenced on my paperwork. How does this happen?

Please note as a flight attendant, I have been in extreme cases of emergencies, extreme dire situations, from being struck by lightning, and experiencing rapid decompression, to emergency landings, with no landing gear and foamed runways. Medical Emergencies on board, from minor to life threatening, anaphylactic shock allergic reactions, to personally performing over approximately 100 cases of CPR and utilized the AED Defibrillator on a handful of occasions. I have experience the aftermath of 9/11 in the airline industry and the stress of the new definition of terrorism which plagues my industry on a daily basis. Stress on monumental levels, to the everyday levels of the traveling public being confined in a pressurized tube. I handle stress. I can tell you, that my experience in HOs' Squirewell's courtroom, was truly one of the most stressful situatons I have ever been in, and as I stated, I TRULY defaulted to a victim of Stockholm Syndrome, and not only signed under distress/duress...but in true "hostage/victim" manner, hugged their necks before leaving the courtroom, for their "mercy upon me."

How can this happen? How can it be allowed to happen?

Behavior that my own attorney, in his own words, of participating in over 20 years of WC hearings, stated her behavior, this proceeding, was **"Unprecedented!"** It is my hope and prayer, that by making the conduct that transpired, during this CCH, a **"Precedent"** that no one else will have to go through what I experienced, and sign off on an agreement, because the HO and even my attorney, were "phoning it in" and truly had no desire to see justice prevail in this case.

Therefore I am respectfully petitioning the Appeals Panel on my behalf, due to the injustice I feel was rendered by HO Squirewell, for not abiding by proper procedures and not even hearing my case, which are clear violations of her Duties as Presiding HO/ Judge.Coupled with the inappropriate, and actions worthy of malpractice discipline of my now fired attorney, Mr. Cipriano Romero, I pray for relief of the binding agreement, and a re-hearing be granted by a different HO, where I will receive an impartial and fair hearing. I will finally have my day in court-- where my evidence will be heard !

For the reasons stated above a d what you will read in my formal appeal, I respectfully request that the Decision and Order of the Hearing Officer issued in this matter, be overturned.

Thank you, from the bottom of my heart, for your time and consideration.

Respectfully,

Christine D. Finger
[redacted]
Spring, Texas 77380
[redacted]

RECEIVED

AUG 08 2017

GALLAGHER BASSETT
COMPLIANCE-005

TEXAS DEPARTMENT OF INSURANCE
**DIVISION OF WORKERS' COMPENSATION**
BEFORE THE APPEALS PANEL
AUSTIN, TEXAS

| | | |
|---|---|---|
| **CHRISTINE FINGER,** | § | |
| **CLAIMANT** | § | |
| | § | |
| **v.** | § | **DOCKET NO.** |
| | § | **HE-14299865-01-CC-HE47** |
| | § | |
| **NEW HAMPSHIRE INSURANCE** | § | |
| **COMPANY** | § | |
| **CARRIER.** | § | |

**CLAIMANT'S REQUEST FOR REVIEW**

TO THE HONORABLE MEMBERS OF THE APPEALS PANEL:

**I.**

My name is Christine Finger. I am the Claimant in this matter. I am filing this Request for Review because I disagree with certain Findings of Fact, Conclusions of Law and other specific matters regarding the Decision and Order issued by the Hearing Officer in this matter. I am listing each disagreement separately below, which I believe substantiate good and sufficient cause to be relieved of the Benefit Dispute Agreement. Additionally, I am providing information regarding the discovery of new evidence which provides good cause for relief of agreement.

**II.**

I disagree with Findings of Fact Number 1 & 2 and the Conclusion of Law because the evidence establishes a good cause reason to relieve me from the effects of the agreement. On June 23, 2017, four days prior to the Contested Case Hearing, I was informed by the law offices of Mr. Loren Klitsas that the attorney who was going to represent me during the hearing had a family emergency and wasn't going to be able to attend the hearing. Mr. Klitsas retained Mr. Cipriano Romero to represent me during the Contested Case Hearing that was scheduled for June 27, 2017. Mr. Romero called me Friday evening, June 23, 2017. During our conversation I



RECEIVED

AUG 08 2017

GALLAGHER BASSETT
COMPLIANCE-A85

informed him that I would not agree to the terms of the agreement as noted on the Decision and Order. I informed Mr. Romero that due to the fact that he knew nothing about my case, the Contested Case Hearing scheduled for June 27, 2017 should be continued so that I could have more time to confer with my attorney of record in order to prepare for the Contested Case Hearing. On Monday, June 26, 2017, Mr. Romero emailed me to report that a Motion for Continuance had been submitted on my behalf. On the morning of June 27, 2017, I was provided with a copy of the Motion for Continuance and I was informed that the hearing officer had denied my request. A review of the Motion for Continuance revealed factual errors and I informed Mr. Romero that I had retained Mr. Klitasas, not Mr. Romero, and that due to the last minute assignment of Mr. Romero, the circumstances should be sufficient to justify a Motion for Continuance. Mr. Romero stated that he would argue for the continuance at the outset of the hearing.

Prior to the Contested Case Hearing, a brief discussion involving the Hearing Officer, the Carrier Representative, and Mr. Romero, occurred in the hallway outside of the hearing chambers. The question regarding an agreement was posed by the Hearing Officer. The parties informed the Hearing Officer that an agreement had not been reached. The Hearing Officer then was commenting in exasperated inflection of her voice, "How it was that the parties could not reach an agreement, in this case?" Soon thereafter, Mr. Romero informed me that the resolutions had been withdrawn by the Carrier Representative. I commented that I was not in agreement with the resolutions and wasn't considering accepting anyway. Upon entering the Hearing Chambers, the Hearing Officer questioned why I was not willing to agree to the resolutions on the basis that the Carrier was giving me everything that I wanted. The Hearing Officer then asked what more I wanted. After further questioning regarding my decision to not accept the agreement, the Hearing Officer read the resolutions of the agreement and indicated that I stood to lose all or some of the resolutions. As a result of the manner in which the Hearing Officer was questioning me, and the subsequent berating that I underwent at the hands of Mr. Cipriano Romero in the hallway, I felt pressured into signing the document. Even though my intention was to request a continuance of the Contested Case Hearing, I felt pressured into signing the agreement. Additionally, it

was my perception the Judge did not wish to hear my case. As a result, I am seeking relief from the effects of the agreement entered into with the Carrier and approved by the Division on June 28, 2017.

Benefits for a compensable signed written agreement made in accordance with Section 410.029 is binding on the insurance carrier and an injured worker through the conclusion of all matters relating to the claim, who is represented by an attorney, unless the agreement is set aside by the Division or a court based upon a finding of:

1. Fraud;
2. Newly discovered evidence; or
3. Other good and sufficient cause.

It is my argument that other good and sufficient cause exists to relieve me from the effects of the agreement because I was under an exceeding amount of duress resulting from the incessant and unmannerly questioning from the Hearing Officer and the confrontational reprimand from Mr. Cipriano Romero during an unplanned discussion in the hallway which resulted in unwelcomed physical contact and intimidating posturing on his behalf.

On the matter of newly discovered evidence, I submit to the Appeals Panel that I was not afforded a Designated Doctor examination by the Division of Workers' Compensation as a result of the improper denial of a Letter of Clarification. The Letter of Clarification was requested to allow the Designated Doctor the opportunity to rate the entire compensable injury which resulted from "deep peroneal nerve with excision of intra-neural mass and implantation into proximal muscle, exploration of left superficial peroneal nerve with segmental resection and implantation into regional muscle, and creation and application of posterior below-knee splint". However, the Benefit Review Officer denied the Letter of Clarification on the basis that the "request appears to be for reconsideration of MMI/IR after surgery that was performed after statutory maximum medical improvement." However, the request for the Letter of Clarification clearly denotes the reason for the Letter of Clarification to be "for any impairment related to the left deep peroneal nerve mass consistent with neuroma".



RECEIVED
AUG 08 2017
GALLAGHER BASSETT
COMPLIANCE 035



08/01/2017 4:09PM (GMT-05:00)
8-10-2017 001534117695WC01 44201710051930774

CONFIDENTIAL UNITED_003787

III.

Other Matters - In addition to the above, I would like for the Appeals Panel to consider the following:

I believe that the Hearing Officer did not afford me a full and fair hearing. For example, the Hearing Officer immediately came into the chambers and held up the Benefit Dispute Agreement and stated, without initiating the hearing or any introductions or oath, "What is it you want Ms. Finger? They've given you everything that you want." Please note that this offer had been withdrawn by the insurance carrier. I had been notified of the withdrawal by my former attorney, Cipriano Romero, prior to entering the chambers. The withdrawal of the Benefit Dispute Agreement, was also confirmed by the Carrier Representative, Ms. Allen, who stated that she withdrew the Benefit Dispute Agreement out of respect for the fact that she expressed that she knew that I deserved my day in Court.

I also believe that the Hearing Officer failed to maintain an unbiased position on the disputed issues. The Hearing Officer entered the chambers and held up the Benefit Dispute Agreement and read the extent of injury resolutions out loud at least five times. During the reading of the agreement, the Hearing Officer was holding a copy of the agreement in her left hand while reading from a copy that was placed on her desktop. The Hearing Officer held the agreement out to me so that I could see it and was shaking the agreement emphatically as she repeatedly read the extent of injury conditions out loud. After repeatedly reading the resolutions out loud, the Hearing Officer asked me, "Are you sure you don't want to accept this?" I answered, "Yes, I am sure." She then said, "You realize that by going forward, you could lose some of this, or all of this. You could lose everything." The Hearing Officer said, "They've given you everything that you want. What is it that you want?" It is important to note that the Hearing Officer never said that there was a potential to not lose any portion of the issues. After, I said, "No, not everything. There is still the MMI and Impairment Rating dispute." Then the Hearing Officer said, "Let's look at that. Your MMI date is August 8, 2016. That is not going to change." I said, "You mean, August 3, 2016." The Hearing Officer said, "Your statutory MMI is five days past the date of injury because that is the date that you start receiving benefits." I then said, "I thought because of my initial delay of





RECEIVED

AUG 08 2017

GALLAGHER BASSETT



8-10-2017 001534117595WC01 44201710051930774

CONFIDENTIAL UNITED_003788

treatment and Doctor Naik's report stating the statutory MMI should be pushed back a couple of months because of the delay and improper care, that it was a consideration. But after further research, it is my understanding that extending the MMI date is based upon when it is a brain or spinal injury. So I am in agreement with the statutory MMI date of June 8, 2016." However, I raised the impairment rating issue considering I had undergone microsurgery. I said, "I still have not been afforded my right to have a treating physician. Therefore, I have not had an opportunity for an alternative certification of the impairment rating."

By immediately entering the chambers without any introduction or formal hearing preliminaries, the Hearing Officer clearly showed a bias and that the Hearing Officer had already determined the outcome of the proceeding. Additionally, I believe that the Hearing Officer did not write a decision and order that was based solely on an impartial weighing of the evidence presented following current legal precedent. I submit that the Contested Case Hearing was essentially concluded before it was started. There was no introduction, no preliminaries, no oath, and no submission of exhibits. I submit that I was not afforded a fair and impartial hearing. As a result, I submit that the Hearing Officer failed to refrain from presiding over a proceeding in which the impartiality of the hearing Officer might reasonably be questioned.

IV.

For the reasons stated above, I respectfully request that the Decision and Order of the Hearing Officer issued in this matter be overturned and that the Appeals Panel grant relief of the Benefit Dispute Agreement.



Form OMB-12E

RECEIVED

AUG 08 2017

GALLAGHER BASSETT 08/01/2017 4:09PM (GMT-05:00)
COMPLIANCE-005

Respectfully submitted,

X
Claimant Signature

August 1 2017
Date

TDI/DWC
RECEIVED
AUG 01 2017
CHIEF CLERK
OF PROCEEDINGS

Print Claimant's Current Contact Information below:

Name: Christine Finger
Address: [redacted]
Houston, TX 77098-2015
Phone #: [redacted]

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 1st day of, August 2017, served a copy of the foregoing "Claimant's Request for Review" to the required parties listed below in the manner checked.

DWC:

**Chief Clerk of Proceedings**
**Texas Department of Insurance**
**P.O. Box 17787**
**Austin, Texas 78744-7787**

↓

Certified Mail/ Return-Receipt
Hand delivery
Courier (Fed Ex, UPS, etc.)
X Fax (512) 804-4021

Carrier or Certified Self Insured:
(or legal representative at CCH)

**Marilyn J. Allen, Esq.**
**Law Firm of Dean G. Pappas**
**818 Town & Country Blvd., Ste. 400**
**Houston, TX 77024-4548**

↓

Certified Mail/ Return-Receipt
Hand delivery
Courier (Fed Ex, UPS, etc.)
X Fax at 713-914-6201

Other Party (if any):

↓

Certified Mail/ Return-Rept
Hand delivery
Courier (Fed Ex, UPS, etc.)
Fax at ( )

X
Claimant Signature

[Make sure to check the appropriate boxes above]

RECEIVED
AUG 08 2017
GALLAGHER BASSETT
COMPLIANCE-005
001534117595WC01

## Sedgwick Claims Management Services, Inc.

To: SIR

Fax: 2103321590

From: McLeod, Devon

Fax:

Date: October 04, 2017

Subject: Christine Finger

---

***CONFIDENTIALITY NOTE***

The information contained in the facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us immediately by calling the number listed above and return the original message to us at the address above by the United States Postal Service.

UPLOADED
OCT 04 2017
Sedgwick San Antonio
FO&L
DATA DEPT.

NON HANDLE

# TEXAS DEPARTMENT OF INSURANCE
# DIVISION OF WORKERS' COMPENSATION

**Si prefiere hablar con una persona de habla hispana acerca de esta correspondencia o de su reclamo, sírvase llamar al 1-800-252-7031.**

October 2, 2017

NEW HAMPSHIRE INSURANCE CO
PO BOX 25974
OVERLAND PARK, KS 66225-5974

C/O FLAHIVE CGDEN & LATSON
BOX NBR 19

**Appeal No:** 171854
**Docket No:** 14299865-01-A1
**Carrier No:** 001534117595WC01
**Employee:** CHRISTINE FINGER
**Employer:** UNITED AIRLINES INC

**Date of Injury:** August 3, 2014

After review by the Appeals Panel this Notice is the decision filed with the Deputy Commissioner of Hearings regarding the matters in dispute and in response to a request for review by the Appeals Panel of the Hearing Officer's Decision and Order. Accordingly, this constitutes notice that the Hearing Officer's Decision and Order signed on June 28, 2017 became final on the date listed at the top of this notice under the provisions of §410.169 or §410.204(c) of the Texas Labor Code. If the Hearing Officer's Decision and Order became final under §410.169, a notice of untimely appeal is enclosed.

If you are not satisfied with this decision and desire to have the dispute resolved in court, then you must file a lawsuit in the appropriate district court not later than the 45th day after the date on which the Division of Workers' Compensation mailed the parties the decision of the Appeals Panel pursuant to Labor Code, Section 410.252. A copy of any such lawsuit must be filed simultaneously with the CHIEF CLERK OF PROCEEDINGS, TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION, P.O. BOX 17787, AUSTIN, TEXAS, 78760-7787.

Claimants that are not represented by an attorney may consult with an attorney of their choice for further assistance.

Sincerely,

TEXAS DEPARTMENT OF INSURANCE
DIVISION OF WORKERS' COMPENSATION

RECEIVED
OCT 03 2017
FO&L RANDY REYES

OCT 02 2017

**THIS LETTER WAS ALSO SENT TO THE FOLLOWING:**

CHRISTINE FINGER
[redacted]
HOUSTON, TX 77098-2015

DEAN G PAPPAS LAW FIRM PLLC
MARILYN J. ALLEN
818 TOWN AND COUNTRY BLVD STE 400
HOUSTON, TX 77024-4548

**INFORMATION COPIES WERE ALSO SENT TO:**

UNITED AIRLINES INC
1600 SMITH ST
HOUSTON, TX 77002-7362

UNITED

**U.S. Mail**

April 19, 2019

Christine Finger
26 Lazy Lane
The Woodlands, TX 77380

Location: IAHSW
Empl ID: u231679

**Subject: Occupational Return to Work Full Duty**

Dear Christine,

You have been medically cleared to return to your full duty assignment effective May 23, 2019. However, there may be additional requirements you need to comply with prior to your return.

**Airport Operations/Technical Operations:**

If you have not been absent from work (i.e. transitional duty), please report to your normal full duty assignment on the effective date specified above. If you have been absent from work, prior to returning, it is your responsibility to contact your local management immediately to initiate the return to work process and complete the following tasks, if applicable:

- Schedule recurrent training
- Fingerprint clearance
- Drug testing
- Receive an Airport I.D. badge
- An updated parking hangtag

**Inflight:**

If you are a Flight Attendant, you will be contacted by the FAST and advised of any additional actions you must take to bring your TSA mandates and training requirements up to date. If your training has lapsed while on your Leave of Absence, you will be notified and scheduled in the first available training class.

If you have any questions or need further assistance, please contact the Employee Service Center (ESC) at 877-UAL-ESC9 (877-825-3729).

Sincerely,

ESC Staff Representative
Employee Service Center- WHQMW

UNITED

A STAR ALLIANCE MEMBER

P.O. Box 06649
Chicago, IL 60606-0649

FIRST CLASS
U.S. POSTAGE
**PAID**
UNITED
AIRLINES

Christine Finger
26 Lazy Lane
The Woodlands, TX 77380

UNITED

**Federal Express Tracking Number/Certified Mail:** 775013701908

April 19, 2019

Christine Finger
26 Lazy Lane
The Woodlands, TX 77380

Location: IAHSW
Empl ID: u231679

**Subject: Reasonable Accommodation Program - Accommodation Not Required**

Dear Christine,

As discussed in our conversation on April 18, 2019 , an accommodation is not required at this time as you are able to perform all the essential functions of your current position as outlined in your job description.

Specifically, based on medical documentation received by United's Medical Department, your treating health provider has listed your restrictions as:

Cleared to Return to Work Full Duty

Should the above listed restrictions change, please keep us apprised. If you have questions, please do not hesitate to contact a RAP Administrator at 877-UAL-ESC9 (877-825-3729).

Sincerely,

RAP Specialist
Employee Service Center - WHQMW

cc: OPCMD - Medical Department

UNITED

A STAR ALLIANCE MEMBER

P.O. Box 06649
Chicago, IL 60606-0649

FIRST CLASS
U.S. POSTAGE
**PAID**
UNITED
AIRLINES

Christine Finger
26 Lazy Lane
The Woodlands, TX 77380

UNITED

# Inflight Services

# Flight Attendant Leaves of Absence (LOA) Packet

For the most current LOA packet, refer to the United Airlines intranet: *Flying Together > Inflight Services > Inflight Administration (FAST) > Leave of Absence*

***Please note: this document will be periodically updated as needed to reflect the current contract processes as we get validation of those processes.*

Revised February 2019

# TABLE OF CONTENTS:

**NOTE**: Information on **Family Medical Leave** is not covered here but a can be found on *Flying Together*. Maternity LOA info for LHR and FRA can be obtained in the LHRSW and FRASW base offices only.


| | |
|---|---|
| PRIOR TO LEAVE OF ABSENCE | 2 |
| ADOPTION LEAVE OF ABSENCE | 3 |
| MATERNITY LEAVE OF ABSENCE | 5 |
| MILITARY LEAVE OF ABSENCE | 10 |
| MEDICAL LEAVE OF ABSENCE | 12 |
| OCCUPATIONAL LEAVE OF ABSENCE | 15 |
| PARENTAL LEAVE OF ABSENCE | 21 |
| PERSONAL LEAVE OF ABSENCE | 23 |
| COMPANY-OFFERED LEAVE OF ABSENCE | 25 |
| GENERAL POLICIES | 27 |
| DURING THE LEAVE OF ABSENCE | 29 |
| BENEFITS AND PRIVILEGES | 30 |
| RETURN FROM LEAVE OF ABSENCE | 35 |
| *Appendices:* | |
| APPENDIX A | 40 |
| APPENDIX B | 42 |
| APPENDIX C | 44 |
| APPENDIX D | 46 |
| APPENDIX E | 48 |
| APPENDIX F | 50 |
| APPENDIX G | 52 |
| APPENDIX H | 55 |
| APPENDIX I | 58 |
| APPENDIX J | 60 |
| APPENDIX K | 63 |

# ❖ OCCUPATIONAL LEAVE OF ABSENCE

## Qualifications and Conditions for Occupational Leave of Absence

You will automatically be placed on an Occupational Leave of Absence for an approved injury/illness claim on the seventeenth (17th) day after exhausting all applicable sick leave hours. You may, however, request an Occupational LOA prior to exhausting your sick leave hours. However, once you have selected this option, you may not revert to the use of your personal sick bank. Occupational LOAs are managed by the Employee Service Center (ESC). The ESC will accept all paperwork from your initial evaluation. Information should include medical facts, treatment plan, office visits, work status, work restrictions, etc. After the initial evaluation, an employee status form (ESF) is to be provided to the ESC after each doctor visit (see Appendix F). The ESC will review your documentation, forward to Sedgwick, support your continued absence, request additional information or support your return to work. Please fax all documents to the ESC at (847) 700-9533 or submit through the Help Hub portal (helphub.ual.com). If you are located at a hub, you will be reassigned from your supervisor to the Supervisor of Administration and Support for the duration. Once you have been cleared to return to work, you will be reassigned to your group supervisor.

For additional information on Occupational Leaves, please refer to the Workers' Compensation Guide found via *Flying Together > Inflight Services > Inflight Administration (FAST) > Documents for all Flight Attendants > Important Information > Worker's Compensation Guide* or follow this link:
https://flyingtogether.ual.com/web/content.jsp?SID=WC_MgndCare&path=documents/FA_WC_Guide.pdf

## Length of Leave of Absence

Per the Agreement, Section 15.E.1, the maximum time allowed for an Occupational Medical LOA may not exceed the lesser of:

a. The period of disability, or

b. Three (3) years, or

c. The flight attendant's total length of active service.

## Communication during Leave of Absence

You are to remain under a physician's care and provide the ESC follow-up documentation at specific intervals according to your treatment plan. You will receive follow-up letters from United based on the medical information submitted by your physician to the ESC. If the ESC deems the documentation insufficient, a letter will be sent along with an ESF explaining what is required to substantiate your continued absence or a return to work.

## Income Protection

The following outlines the types of income protection and options you will be afforded during an Occupational LOA:

**Initial Benefits:** You will be paid sick leave from your occupational injury sick bank and/or your personal sick bank while Sedgwick/AIG investigates the claim and determines its compensability up to 25% of lost time monetary value. If the claim is determined compensable, you can continue to utilize your Occupational Injury sick bank and/or your personal sick bank hours to supplement the State Temporary or Total Disability (TTD) payments up to a value of lost time as shown on your schedule. If you do not have available hours in your sick

leave bank while the claim is being investigated, or upon acceptance, you will have no income protection during the period.

**Disability Benefits:** If you are temporarily or permanently disabled because of a work-related injury/illness, United will provide you with disability pay (TTD) as mandated by your state's Workers' Compensation laws. TTD is a percentage of your average weekly wage up to a state-mandated maximum. Sedgwick/AIG will inform you of the TTD amount you are eligible to receive.

**Supplemental Sick Bank Pay Options:** You may use your accrued sick leave to supplement your state TTD payments. To determine the amount of supplemental sick pay, you may choose from the following on the Employee Pay Option Letter:

**Option 1 (Default)** – Supplement my Workers' Compensation pay with hours from my occupational and/or non-occupational sick leave bank up to the value of my monthly awarded line of flying.

**Option 2** – Supplement my Workers' Compensation pay with hours from my occupational and/or non-occupational sick leave bank up to seventy-one (71) hours.

**Option 3** – Supplement my Workers' Compensation pay with hours from my occupational and/or non-occupational sick leave bank up to one hundred (100) hours.

**Option 4** – Be placed on Occupational Leave of Absence and receive only Workers' Compensation with no additional paid sick hours from my occupational and/or non-occupational sick leave bank. *No hours drawn from your Occupational or Non-Occupational sick bank toward supplemental sick payments.*

In most cases, these hours will be paid entirely on your mid-month paycheck only.

If you choose to use one of the Supplemental Sick Bank Pay options, and the amount of your TTD payments meets or exceeds your Supplemental Sick bank calculations, you will not draw hours from your sick leave banks toward supplemental sick payment. Supplemental sick leave payments for Workers' Compensation injuries will be used to supplement Workers' Compensation lost time benefits up to 100% of pay for the period of lost time.

Pay Options #2 and #3 will not go into effect until the first **full** month that you are out on occupational leave.

You may also elect **not** to use your occupational or non-occupational sick leave banks (Option #4) to supplement your state TTD. When you make this election, you will be placed on an Occupational Leave of Absence. Once placed on leave, this election cannot be rescinded. Medical and/or dental coverage will continue throughout your Occupational Leave provided you continue to pay your employee contributions. For specific information, please contact the Benefits Service Center at 1-800-651-1007.

For questions pertaining to Occupational Supplemental Sick Payments, please contact a Flight Crew Support Team member at 1-800-358-5463 Option 5, Option 1 or submit a service request via Flying Together > Employee Services > Help Hub or helphub.ual.com. Once you get to Help Hub, go to Employee Services > Employee Services Home > Pay > Pay Register > Payable Hours Inquiry.

Flight attendants who would like to confirm their specific TTD payments must contact their assigned Sedgwick/AIG Claims Examiner.

**Direct Deposit:** Flight attendants who will be out of work are eligible to receive payment for Worker's Compensation lost time benefits through direct deposit from our Third-Party Administrator (TPA), Sedgwick. Direct deposit must be made to a financial institution in the United States that accepts electronic deposits in U.S. dollars. Please contact your assigned Sedgwick/AIG Claims Examiner, and they will assist you in setting up the process.

**Salary Continuance:** As a flight attendant, you have two accrued sick leave banks that can be used for occupational sick leave purposes. You may use accrued sick leave to provide full salary during periods when the treating physician verifies that you are temporarily totally disabled and unable to work due to a work-related injury/illness, or be placed on an Occupational Leave of Absence (LOA) and receive the state disability benefit of 66 2/3 of your average weekly

wage. **Once the election is made to go on an LOA status, you cannot revert to your personal sick leave bank.**

When utilizing your sick leave bank, you have a choice to be paid your monthly awarded line value, a minimum of seventy-one (71) hours or a maximum of one hundred (100) hours (choose one). You will need to submit a Pay Acknowledgement Letter via ***Flying Together > Employee Services > Help Hub***. Once you get to Help Hub, go to ***Employee Services > Employee Services Home > Pay > Pay Option Acknowledgement Letter***. Your OI supplemental sick calculations are based on your pay option

You will automatically be placed on a Leave of Absence for an occupational injury/illness on the 17th day after exhaustion of all applicable sick leave hours. In addition, you may request to be placed on an Occupational Medical LOA prior to exhausting sick leave hours. Per the contract, Section 15 of JCBA: A flight attendant shall retain and accrue seniority for a period not to exceed three (3) years.

**Long Term Disability (LTD) Plan:** If you are enrolled in the Flight Attendant LTD plan, you may be eligible for additional benefits. Please check with your LTD insurance representative for information regarding these benefits. Requests may be made after the one hundred eightieth (180th) day of disability. Benefits begin on the two hundred seventy-first (271st) day of disability, provided you qualify. You must file the request form electronically. Log onto Flying Together (https://FT.ual.com), go to the My Info tile, and input your personal information to be submitted to your supervisor for validation of the information.

*Leaves of absence required due to illness or non-occupational injury shall be granted upon written verification of disability from a qualified medical doctor. Any such leave may not exceed the lesser of (a) the period of disability, or (b) three (3) years, or (c) the Flight Attendant's total length of active service. At the end of the maximum period, the Flight Attendant will be administratively terminated and removed from the system seniority list.*

**Follow up Doctor and Therapy Appointments:** When you return to regular duty, you may still require medical care. Medical appointments will not be considered a basis for paid sick leave unless your doctor can provide documentation showing that he/she does not maintain office hours outside of your scheduled work hours or on your RDOs. (See United's People Policies under Paid Sick Leave.)
For more detailed information regarding Workers' Compensation Pay, please reference the WC Guide on Flying Together.

*Note: The above summarizes how certain benefits of yours are affected by your Occupational LOA. Although United expects to continue to offer these benefits, the Company reserves the right to modify, reduce, change or terminate all or any part of any of these benefit plans (subject to the terms of the collective Bargaining Agreement). This summary is not meant to supersede any plan documents which govern these benefits. In case of conflict, the actual plan documents always control.*

*This packet should not be relied upon as legal advice or as an accurate summary of any one state's Workers' Compensation laws. Rather it should be used as a guide to the general system of Workers' Compensation utilized in the U.S. If you have a question that is not answered in this packet, please refer to your Base Supervisor.*

*It is important for you to be aware of your responsibilities. If, however, you find that additional assistance is needed, please feel free to contact the employee service center (ESC) or a member of the Workers' Compensation staff.*

## Availability of Reasonable Accommodation Process (RAP)

If you are suffering a long-term disability (generally 90-days or longer), you have the option to pursue the possibility of reasonable accommodation any time prior to the expiration of the three (3) year Occupational LOA

period. If you would like to pursue this option, you should contact the Employee Service Center or your supervisor. You will be asked to submit an updated ESF form, as well as a Functional Capacity Evaluation ("FCE") form to the ESC. After OPCMD has a clear understanding of your limitations or restrictions, an assessment of functional capabilities (AFC) will be completed and you will be contacted to set up an appointment to discuss possible accommodations.

## Transfer on File

Review your current transfer request to determine if you still desire the requested transfer. Transfer requests remain on file until it is removed, accepted, or denied by you. Per Section 15.A.5, a flight attendant on a Leave of Absence may request and be granted a transfer; a flight attendant on Medical Leave shall continue in leave status following the award of a voluntary transfer. If a transfer is awarded during your LOA and you decline or are unable to respond, you will be prohibited for three (3) months from the date of decline before another request can be submitted.

## Seniority and Longevity Accrual

Per the Agreement, Section 15.E.3, for the purposes of pay and vacation step adjustments, flight attendants on Medical Leave will continue to accrue longevity and bid seniority for the duration of the Medical Leave up to the maximum leave per section 15.E.1 as detailed above. That provision provides that if you are unable to return to active status within the three (3) year maximum allowance, your name will be removed from the system seniority list and you will be administratively terminated from the Company.

## Update the Employee Service Center (ESC) Regarding your Condition

The Company reserves the right to require medical reports or a medical examination at regular intervals. You are to provide information and/or reports from your treating physician to the ESC as requested during your leave. You may receive treatment by a physician of your choice, however, please be aware that you are only allowed treatment by one physician at a time. You may also choose to treat with Concentra. Concentra Medical Centers (or Affiliates) is the contracted medical provider for the Company and has facilities throughout the United States.

Medical updates provided by Concentra or your treating physician are to be submitted on an ESF Form and faxed to the ESC at (847) 700-9533 or submit through the Help Hub portal (helphub.ual.com). The fax number is confidential and will only be used by authorized personnel at the ESC and OPCMD. If you choose to be treated by Concentra after your initial visit, you will not need to complete an additional authorization to treat form. Rather, you will need only complete your treatment regimen with Concentra, and they will ensure that your status updates are forwarded to the ESC Occupational Administrators.

## Employee Leisure Travel*

You remain eligible for space available leisure pass travel on United and United Express for the duration of the leave. The Company reserves the right to request documentation from your treating physician indicating travel will not hinder or exacerbate your injury/illness. Travel privileges include your eligible pass riders and buddies as well as myUAdiscount. Other airline/interline travel is not available while on a Leave of Absence including all reciprocal cabin seat agreements with other airlines.

## Emergency Travel*

Emergency travel requests from employees on a Medical Leave will be reviewed on a case-by-case basis for authorization by appropriate base leadership. Employee eligibility for emergency travel requires a need to

travel within forty-eight (48) hours of qualified emergency (death or critical illness/injury) of an immediate family member. Go to *Flying Together > Travel > Types of Travel > Emergency Travel* for more information.

* **Please note:** As always, boarding priority, service charges, and other elements of the pass travel programs are subject to change at any time based on company policy.

## Insurance

Medical, dental and/or vision insurance will continue for you and your dependents (if applicable) throughout your Occupational Leave, provided you pay your employee contributions. You will be responsible to pay the monthly amount that is normally deducted from your paycheck. You will receive a notification letter from the United Airlines Benefit Center with payment details. (Note: if you fail to pay for your coverage by the invoice due date during your leave, coverage will be terminated, and you will be unable to re-enroll until (1) you return to active status, or (2) January 1 annual enrollment period begins. Open enrollment typically begins in early to mid-October and runs for a few weeks. You must re-enroll during that time frame in order to be eligible for insurance.)

If you opt not to continue coverage while on Medical Leave, you will be eligible to re-enroll in your insurance benefits upon return to active status. When you return to work, you will have forty-five (45) days in which to make changes to your benefits. If you do not make an election upon returning to work you will be reinstated in your last-elected benefits (including any COBRA elections).

Should you have a "qualifying event" such as a divorce, spouse losing medical coverage from his or her employer, conceive/birth/adopt a child, or any other qualifying event while on leave, you will have forty-five (45) days from the date of the event in which to enroll for eligible coverage. You can complete a qualified status change on our website, *Flying Together > Employee Services > Benefits,* or by contacting the United Airlines Benefits Center.

Company paid basic life insurance and personal accident insurance (PAI) continues for the entire period of the Occupational Leave. Group Universal Life continues provided you pay the premiums directly to Securian Life. Please refer to page 31 of this document for more information.

## Obtain Medical Clearance

When you are ready to return to work from your Occupational LOA, you must be cleared by your treating physician and the ESC Occupational Administrators before attending training and/or returning to active status. You may be asked by the ESC to provide additional information from your treating physician to support attending training and/or returning to active status. Once you are cleared to return to work, the ESC with notify FAST of your return to work status. When clearance is received by FAST, you will be contacted to initiate your return to work, which includes, but is not limited to, validating all TSA mandates and/or training requirements.

## General Policies

### 1. Vacation Pay

Please note that under the terms of Section 12.A.2 a flight attendant shall receive full vacation accrual if she/he has one hundred twenty (120) hours or more of paid activity in each quarter of the twelve (12) month period ending in the August schedule month prior to the vacation year. Please review carefully the terms of Section 12.A.8. to determine how your Occupational LOA will impact future vacation accruals. If you are on an Occupational LOA during the annual bidding process, which is October through December, you must submit a bid during the open bid periods, as outlined in Section 12.C.2 of the Agreement. The vacation bid

package can be found on *Flying Together* > *Inflight Services* > *Crew Scheduling* > *Vacations.*

If you do not bid, an open vacation will be assigned as outlined in the Vacation Bid Package. Vacation occurring during your Occupational LOA will be paid consistent with the provisions of Section 12 of the Agreement.

**2. Returning from an Occupational LOA**

If you are on an Occupational LOA, contact the Employee Service Center (ESC) Occupational Team thirty (30) days prior to your estimated return to work date, or as soon as you have been released by your treating physician to begin the process of returning to work. You are expected to return to work as soon as you are able. If you are unable to return to work due to a different medical condition, you will be transitioned to a Non-Occupational LOA.

**3. Request for Family Medical Leave**

If you would like your occupational injury/illness absence to be considered under FML, please contact the ESC at 877-825-3729 to check your eligibility.

If you have additional questions about the above information, please contact your supervisor or the ESC.

## ❖ PARENTAL LEAVE OF ABSENCE

### Qualifications and Conditions for Leave of Absence

Per Section 15.G of the Agreement, a flight attendant who has not taken Maternity Leave in conjunction with a

## ❖ RETURN FROM LEAVE OF ABSENCE

Flight attendants who are on a leave of absence are considered to be on inactive status. In order to end the leave and return to active status, you must complete the following steps in the following order:

1. Receive a medical clearance from United Medical (if required);
2. Complete a DOT Staffing Clearance if LOA is over 365 calendar days;
3. Attend any required training;
4. Fly a trip, sit a day of Reserve, or engage in a contractual schedule change (e.g. trip trade, personal drop (PTO), etc.)

Until such time as you have completed these steps, you remain on inactive status.

Prior to attending any required training, you must complete the Return to Work process. The process includes:

- Medical clearance (from a medical leave of absence): Employee Service Center (ESC), contact: 877-825-3729
- Staffing administration (background check, drug testing, fingerprints, etc.), contact: 346-265-3672 or staffingadministration@united.com
- Badging, contact: FAST to request updated badge when returning from LOA
- e FAOM, contact: the Administration Supervisor in your Base.

Depending on the length of your absence, you may not require some of the above processes. FAST will contact you once your return to work clearance is received and all of the above processes pertaining to your return, have been completed. FAST will discuss Inflight requirements and schedule you for the first available training class.

**If you are on an Adoption, Extended Maternity, Parental, Personal or Company Offered Leave of Absence**, contact FAST a minimum of thirty (30) days prior to your return to work date to begin the process. You will not be returned to active status or awarded a LOF without confirmation from FAST that all return to work requirements listed below are met.

**If you are on a Military Leave of Absence**, contact FAST to give notice of your intent to return to work as soon as possible. You will be provided time off required by law after the expiration of your military service.

*If your Military Leave of Absence is:*

- Thirty (30) days or less – provide notice of your intent to return to work by reporting no later than the beginning of the first full regularly scheduled work period on the first full calendar day following: (1) the completion of military service; and (2) your return to your residence; and (3) an eight (8) hour rest period.
- Thirty-one to one hundred eighty (31-180) days – submit an application for reemployment* within fourteen (14) days of return from service unless a greater period is otherwise provided by law.
- More than one hundred eighty (180) days – submit an application for reemployment* within ninety (90) days of return from service.

United will consider extension of your leave if circumstances beyond your control prevent a return to work before your Leave of Absence expires. You will not be returned to active status without confirmation that all conditions for return to work are met. You will be returned to your assigned base, provided you return on or before the expiration date of your leave. Upon return, present documentation to FAST which states you have satisfactorily completed your period of military service.

*Application for reemployment is governed by Uniformed Services Employment and Reemployment Rights (USERRA). A flight attendant on Military Leave of Absence is guaranteed return to the flight attendant position as if s/he remained continuously employed provided certain conditions are met. The application process is fulfilled via written or verbal advisement from the employee of her/his intent to return (and actual return) on a specified date.

**If you are on a Maternity (ninety (90) days or less) or Medical Leave of Absence**, contact FAST thirty (30) days prior to your estimated return to work date to begin the return to work process. You are expected to return to work as soon as able.

**You cannot be returned to active status or awarded a schedule without confirmation that all conditions listed below have been met including obtaining medical clearance:**

### ✓ Obtain TSA Fingerprint Clearance

If your Leave of Absence exceeded one (1) year and your fingerprint clearance is more than a year old, your fingerprints must be resubmitted before return to work or training. If your last fingerprint submission was in a format allowing United to resubmit them on your behalf, FAST will do so. If prints are not in a format for resubmission, you will be contacted and advised on how to resubmit fingerprints. No action is required on your part for resubmission of your prints unless advised otherwise.

If required to retake fingerprints, FAST will advise you of the fingerprint facilities. Two (2) forms of government issued ID are required (i.e. passport, driver's license, certified birth certificate, or social security card) when prints are taken. FAST will advise when your fingerprint clearance is received. You then become eligible to receive your updated TSA Crewmember Badge. If any clearance issues occur during the process, you will be contacted by FAST with additional instructions.

### ✓ Update Passport / Visas

You are required to carry a valid passport and necessary visas on all flight assignments. If not already accomplished, obtain a valid passport prior to returning. If your PRC visa is expiring within forty-five (45) days, a MUST READ notification on CCS will be sent with directions on renewal. The process for renewal (and a copy of the email) can be found in *Flying Together > Inflight Services > My Work Tools.* Click Visa Letters and Process for Instructions. If you are returning from a Medical or Maternity Leave of Absence, you must have cleared UALMD (even if not yet returned) prior to submitting for renewal. If returning from any other type Leave of Absence, you need to be within forty-five (45) days of returning to duty prior to submitting for renewal. Ensure passport/visa information is on file at United prior to your first work assignment.

The TSA requires the name on your passport is identical to the name on Company information.

### ✓ Update Your Electronic Flight Attendant Operations Manual (eFAOM)

Prior to attending training or your first flight assignment, you need to ensure your eFAOM (LINK) is updated (revisions and bulletins were placed in your mail-folder during your leave). If you have any questions about your LINK, please contact FAST LINK Support. Your manual will be inspected upon return to training or flying to ensure it complies with FAR 121.137.

### ✓ Comply With All Necessary Training Requirements

Per Section 15.A.6 of the Agreement, when a flight attendant is returning to work from a Leave of Absence and requires training in order to return to flight status, the Company shall make training available within forty-five (45) days of the flight attendant's acknowledgement or notice of return from leave. In the event that the Company does not make training available commencing by the forty-fifth (45th) day, the flight attendant will be paid as if in active service beginning on the forty-sixth (46th) day or the flight attendant's expected date of return, whichever is later.

Flight attendants on an Adoption, COLA, Maternity (without medical complications), Parental, Personal or Special COLA for less than twelve (12) months who do not provide required advance notification to permit the scheduling of training will not return to pay status until all required training is completed.

### ✓ Continuing Qualification Training (CQ)

The training that you will be required to attend before returning to active flying depends upon 1) the date you last attended training, 2) your training month, and 3) the date your qualifications lapsed. For example, if you have an October training month you may attend training in September, October, or November. In this example you last attended training in October. Your qualifications lapsed on December 1, which is one (1) day after the last calendar day of your November "grace" month. When determining required training, calculate from the last calendar day of your training month in the year your qualification lapsed. All training months except for June and November have a grace month.

If you failed to attend training in your training DUE month, during the twenty-four (24) month period immediately following the last calendar day of your training month, you can reestablish your qualifications in one of two ways:

1. Attending CQ in your grace month
   - The first month in this twenty-four (24) month sequence is known as your GRACE month. Attending a CQ training class during your grace month maintains your qualifications.

2. Attending a Requalification Training Class (RQL classes listed below)

**RQL1** (Currently a two to four (2-4) day training class)
If you fail to attend training in your "grace" month, your qualifications lapse and you must attend RQL1 training during one of the subsequent twenty-three (23) months. For example, if you have an October training month and you last attended training in October 2015, your grace month is November and your qualifications lapse on December 1, 2016. You may attend training in your grace month or you may use the subsequent twenty-three (23) months of the two (2) year period which began on the last calendar day of your training month or until October 31, 2018 to attend RQL1.

**RQL2** (Currently an eight (8) day training class, excluding days off)
Once your qualifications have lapsed and you have not attended training during the twenty-four (24) month period which began the last calendar day of your training month in the year your qualifications lapsed, you must attend RQL2 training on or before the last day of the thirty-sixth (36th) month of the period which began on the last calendar day of your training month in the year your qualifications lapsed. Using the same example above, your training month is October, you last attended training in October 2015, and your qualifications have lapsed. If you do not attend RQL1 during the period from December 1, 2016 through October 31, 2018, you will need to attend RQL2 during the period covered from November 1, 2018 through October 31, 2019.

**RQL3** (Currently a thirteen (13) day training class, excluding days off)
Once your qualifications have lapsed and you have not attended RQL1 or RQL2 and more than thirty-six (36) months from the last calendar day of your training month in the year your qualifications lapsed has passed, attendance at RQL3 is required. Using the example above, your training month is October, you last attended training in October 2015 and your qualifications have lapsed, attendance at RQL3 is required on November 1, 2019 or later.

Note: if you return from a Leave of Absence within your current annual training requirement cycle, you will be scheduled for training based on your "must go" or "due" month.

### ✓ Miscellaneous Additional Training

You are required to be equipment, service and ditching qualified on all aircraft flown by your base. The equipment transition training is in addition to RQL1 or RQL2. If you attend RQL3, you do not need separate equipment transition classes as you will complete all equipment classes at RQL3.

## Uniform and Appearance

It is anticipated you will return to work with a complete uniform. Alterations/replacements are your responsibility unless a new uniform has been issued. You will receive one alteration voucher for a new uniform piece. Additionally, if you have an outstanding balance on uniform items the payments will be suspended while on a Leave of Absence and reinstated upon return to active status.

## Bid for Schedule

Flight attendants are encouraged to submit bids via CCS.

Bid packages are available in CCS: CCS > Bidding > Bid Packages.

***You will only be awarded a schedule if all of the following are met:***

**1.** Medical clearance has been received, approved, and processed by FAST prior to 16:00 CST on the sixteenth(16th) of the month preceding the primary award.

**2.** Your clearance to RTW confirms a date prior to the first day of the schedule month.

**3.** You are fully qualified to fly or, if training is required, have enrolled in a class and training will be completed by the fifteenth (15th) of the current schedule month.

Once you have completed the RTW process, you are eligible to be awarded a schedule. If you did not bid, you will be assigned a schedule based on the lowest numbered line available at your seniority and status as a lineholder or reserve (A, B Letter pertains to international bases and HNL only).

If the return to work process was not completed prior to the sixteenth (16th) of the month, you will not receive a schedule for the next month. Please contact the FAST Administration team at FLT LINE Options 4, then 7, then 2, Monday through Friday, 0800-1600 CST.

## Failure to Return from Leave of Absence

Failure to return to active duty before the lesser of: the period of disability, three (3) years, or the flight attendant's total length of active service will result in separation from the Company. You are expected to return to work at the end of any approved Leave of Absence. Failure to return may result in corrective action.

## Medical Clearance

If returning from a Leave of Absence other than Medical or Maternity and unable to return due to your own medical condition, you will accrue seniority as outlined in Section 15.E.1 of the Agreement (Medical Leave) not to exceed the lesser of: the period of disability, three (3) years, or the flight attendant's total length of active service. The three (3) years begins on the first day you are medically unable to return to work. An absence certificate will be required at specific intervals as directed by OPCMD or your supervisor. Refer to Section 20.D of the Agreement for the negotiated process should there be a disagreement over your ability to work. Contact your base supervisor if you have any questions concerning this provision.

Message

| | |
|---|---|
| **From**: | Cleverly, Susan [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=49B4E644B5B84349A9B327181142B461-U080348] |
| **Sent**: | 5/20/2019 3:58:15 PM |
| **To**: | Cordova, Dominic [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=37dd6969a2a649648dd1b3da9982b9eb-u240442] |
| **CC**: | Krabbe, Bob [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=424c7043b8b74c88b7cb88e95cdbda3a-u287032]; FAST Inflight Admin [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=91059491f27d42a3b64a08e35053e9ae-FAST-Inflig]; Schultz, Carol [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e092e960fd354fc880396b59c3b1ccb4-u071974]; Merritt, Mary [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=997a41f148da4b2d8e3704b7a3aef45e-u272186] |
| **Subject**: | RE: Move RQL 3 to July?? |

Thanks Dom!

**Susan Cleverly**
Manager – Inflight Administration, Flight Attendant Support Team

United I 233 S. Wacker Drive I Chicago, IL 60606
Tel 872 825 5525 I susan.cleverly@united.com

---

**From:** Cordova, Dominic
**Sent:** Monday, May 20, 2019 3:20 PM
**To:** Cleverly, Susan <Susan.Cleverly@united.com>
**Cc:** Krabbe, Bob <Bob.Krabbe@united.com>; FAST-Inflight-Admin <FAST-Inflight-Admin@united.com>; Schultz, Carol <carol.schultz@united.com>; Merritt, Mary <Mary.Merritt@united.com>
**Subject:** Re: Move RQL 3 to July??

I just got off the phone with her.

Leave her in that class we have her scheduled in.
I stressed to her the timing of her being out (3 years) and the fact that she is supposed to come to the first available slot.
She understands and will figure everything out before her June class.

Thank you everyone!

Dom-
Sent from my iPhone

On May 20, 2019, at 3:07 PM, Cleverly, Susan <Susan.Cleverly@united.com> wrote:

> Yes and that's the class she is scheduled for. The next class is July 05.
>
> **Susan Cleverly**
> Manager – Inflight Administration, Flight Attendant Support Team
>
> United I 233 S. Wacker Drive I Chicago, IL 60606
> Tel 872 825 5525 I susan.cleverly@united.com

From: Krabbe, Bob
Sent: Monday, May 20, 2019 2:52 PM
To: FAST-Inflight-Admin <FAST-Inflight-Admin@united.com>; Cordova, Dominic <Dominic.Cordova@united.com>
Cc: Cleverly, Susan <Susan.Cleverly@united.com>; Schultz, Carol <carol.schultz@united.com>; Merritt, Mary <Mary.Merritt@united.com>
Subject: RE: Move RQL 3 to July??
Importance: High

Is there a RQL 3 class in June?

**Bob Krabbe**
Director, Labor Relations – Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606
Tel 872 825 1036 | Cell 224 287 2247 | Bob.Krabbe@united.com
united.com

From: FAST-Inflight-Admin
Sent: Monday, May 20, 2019 2:04 PM
To: Cordova, Dominic <Dominic.Cordova@united.com>
Cc: Cleverly, Susan <Susan.Cleverly@united.com>; Schultz, Carol <carol.schultz@united.com>; Merritt, Mary <Mary.Merritt@united.com>; Krabbe, Bob <Bob.Krabbe@united.com>
Subject: RE: Move RQL 3 to July??
Importance: High

Hi Dom,

I'm copying in Bob Krabbe since this FA was on Occupational LOA from 05/26/16-05/22/19 and is close to her 3 years of being on LOA. The process is to place them in the next available training class which is 06/02/19. I don't believe the type of training she needs is offered every month, I will let Sue advise.

Regards, Mary
FAST

From: Cordova, Dominic
Sent: Monday, May 20, 2019 1:50 PM
To: FAST-Inflight-Admin <FAST-Inflight-Admin@united.com>
Cc: Cleverly, Susan <Susan.Cleverly@united.com>; Schultz, Carol <carol.schultz@united.com>
Subject: Move RQL 3 to July??
Importance: High

Christine Finger is supposed to go to CQ for 20 days starting June 2, 2019. She is released as of May 23.

Her Mom is having Back surgery as of tomorrow and then stints put in, in two weeks. Can she push this training to July as this is really a bad time for her? She is the only care giver for her mom who is years old. She spoke with Carol in Fast about this situation.

Please let me know ASAP.

Thanks,
Dom-

CZMSI U231679 CHRISTINE FINGER MAY19 IAH 00000 C R:
02318 FA C
DT CDE SCHED START END BLKT PAYT TBPOS DT CDE SCHED START END BLKT
PAYT TBPOS
02 WKCP 0001 LHA01 18 * LHA01
03 * LHA01 19 * LHA01
04 * LHA01 20 * LHA01
05 * LHA01 21 * 2400 0000 LHA01
06 * LHA01 22 XSCK 0001 0002 0000 LHA01
07 * LHA01 23 MSG 0001 2400 0000 LHA01
08 * LHA01 24 MSG 0001 2400 0000 LHA01
09 * LHA01 25 MSG 0001 2400 0000 LHA01
10 * LHA01 26 MSG 0001 2400 0000 LHA01
11 * LHA01 27 MSG 0001 2400 0000 LHA01
12 * LHA01 28 MSG 0001 2400 0000 LHA01
13 * LHA01 29 MSG 0001 2400 0000 LHA01
14 * LHA01 30 MSG 0001 2400 0000 LHA01
15 * LHA01 31 MSG 0001 2400 0000 LHA01
16 * LHA01 01 MSG 0001 2400 0000 LHA01
17 * LHA01 02 HJ015B 1542 LHT01
MTDBK PRJBK FLTMX MTDPY CRDT SKBANK ADD P DEADHD N:
9500 3200 NXT EMP?
E26 CONTR 1/7 WA02

Dominic Cordova
Base Supervisor, Inflight Services

United Airlines | Post Office Box 60307 | IAHNF
Houston, Tx 77205 | Tel. 281-553-2785
mailto: dominic.cordova@united.com
*Confidentiality Note: This E-Mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this E-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.*

Message

**From:** Christine Finger [redacted]
**Sent:** 6/17/2019 7:24:38 AM
**To:** Cordova, Dominic [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=37dd6969a2a649648dd1b3da9982b9eb-u240442]
**Subject:** #ITSOFFICIAL!!!!

Good morning sweet supervisor,

Had CQ yesterday, and passed with flying colors!!!!
Wanted to thank you again for everything, and hope you had a wonderful Father's day yesterday!!!

Will be in touch.
Just wanted to say Good Morning.. And Immmmmm Baaaack!!!!

Sweetest grin

God bless
Xos

Message

**From:** Christine Finger [redacted]
**Sent:** 6/18/2019 12:35:15 PM
**To:** Cordova, Dominic [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=37dd6969a2a649648dd1b3da9982b9eb-u240442]
**Subject:** RE: OJI.. Important..! Christine Finger #U231679

Dear Dominic,

Good morning.. just got back in from DEN late last night , was stuck in the airport for 6 hours with all the weather.. Ugh.. Got home around 200.

And, unfortunately, the last day of training when we were doing our EMEs, I was stepping out of the 2L door to get debriefed with my crew, and I didn't think the "drop down step" to the white stand ( fake jetway) where instructor and crew were sitting waiting for me, was so high!
I stepped with my RIGHT foot, ( good ankle ALWAYS)... But because it was LOWER (than I thought , drop down was prob 10-14 ins? Idk)... Very steep..I caught myself coming down on my LEFT ankle ( injured ankle) and so IMMEDIATELY , I went down. Didn't fall forward. Collapsed straight down on left ankle.

Instructor, Francisca was sitting in front of me and it was LOUD , startling fall of course.
She helped me up and asked me if I was okay and I told her I was fine.. That it will be fine...
Everyone in the fwd part of the " Mock up". A/ c, getting debriefed also heard the loud "bang"... commented to me... and said "someone fell" and they all said, "oh no...we know who that was!!!"
Ugh.

Anyway we were finished with the day and I went back to the hotel, had bought a ankle support brace @ Wal Mart, and iced it and elevated it for the rest of the night. Then, yesterday my last day of class , we had to ice it and keep it elevated also all day...!!!
Denise, the instructor for CORE 4 notified Carrie, LEAD of training-- and she came into the classroom where I was icing it and we told her about it.
She said she hadn't heard and as yesterday was Sunday even so, usually she will hear.. I told her that Francisca WANTED to document it but I told her that I was the one that said it would be okay...NOT HER FAULT!!
(*****I had initially told Francisca, day of occurrence, it would be fine-- I think out of "disbelief" and shock, that on the last day of the 15 days REQUAL, I "step off" out of the mock up wrong!!!!?? AFTER all Emerg drills/ etc of 15 days of door, and emergency drills, and then, just STEP DOWN to a "drop" incorrectly , and I was embarrassed and didn't want to disrupt the class of everyone trying to leave... And I truly thought it'd be ok!!?) She asked me REPEATEDLY If I wanted her to document, and I said, it will be ok!
Not her FAULT.. I insisted..
BELIEVING AND HOPEFUL..
But, it was THROBBING and hurting and swollen!!!

Commuting home yesterday, with a long commute with my suitcases to the airport and being stuck there for almost 6 hours it was extremely painful. I wore the brace, but it was swollen and PAINFUL by the time I got home @ 200 a.m.
I'm certain "pressurization" only exacerbated the swelling also!

I called the FAST team last night even, but couldn't get thru.

I was told I DOCUMENT and call it in.. However, after being on HOLD for 45 mins, I spoke with a representative, Kim, just now, 12:01 pm... And she told me to call my Supv, and that you report!!???
And change status to document the new injury , since I am coming off of existing OJI status??
Thus, the detailed email !?
I am totally confused.

Therefore i an trying to provide the above documentation , so you will be able to tell them what happened?!
Idk.
I was just told to " document it"..jic.

Also, Carrie , lead at DENTK , and instructor, Francisca, came by during class and said, after I spoke with Carrie, she said she was going to document, because she knew it was bad and should have insisted we put ice on it , starting the day before!!
Ugh. I'm sorry I don't have/ remember their last names?.

Anyway, please let me know you received this, and if I need to do anything else-- NOT TRYING to drop it on you-- just getting mixed info!!

Thank you for your time and help, Dominic .

Signed,

in DISBELIEF,

Christine Finger
U 231679

[redacted]

Review

## Intake

**Important note!**
This reporting system has been developed for **Internet Explorer v7, 8, & 9, Firefox 5 & 6, and the iPad** browsers. Using newer versions is generally acceptable but may result in some unexpected behavior.

OIS Case Number
OIS-396835

### Occupational Injury Case

| Reported By | Title | Phone | Submitter |
|---|---|---|---|
| -1 | | | Unknown |

### Employee Details

| Subsidiary | Employee ID | Sub-CO Employee ID |
|---|---|---|
| (●) Continental ( ) United | u231679 | 0077h |

| Job Title | First Name | Middle | Last Name |
|---|---|---|---|
| Flight Attendant - Domestic | CHRISTINE | | FINGER |

| Employee Group | Department | Division Code | Manager Level |
|---|---|---|---|
| FA | IAHSW | 64 | 99 |

| Cost Center | Part Time/Full Time | Hire Date | Gender |
|---|---|---|---|
| 7886 | F | 1984-10-13 | Female |

Work Contact

| Work Phone | Work Email |
|---|---|
| | Christine.Finger@united.com |

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| USA - United States | PO BOX 60106 | |

| City | State | Zip Code | County |
|---|---|---|---|
| Houston | Texas | | |

Home Contact

| Primary Phone Number | Secondary Phone Number | Alternative Email |
|---|---|---|
| 832-656-6999 | | |

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| 0 | 26 LAZY LANE | |

| City | State | Zip Code | County |
|---|---|---|---|
| THE WOODLANDS | TX | 77380 | |

### Supervisor Information

Supervisor same as Case Submitter
( ) Yes (●) No

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Velez, Rick | Supv - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| | | Rick.Velez@united.com |

### Employment Status at Time of Report

| Employee is Laid Off | Termination Date |
|---|---|

○ Yes ◉ No ○ No Information

Employee is Furloughed?
○ Yes ◉ No ○ No Information

Employee on Leave of Absence?
○ Yes ◉ No ○ No Information

## Incident

OIS Case Number
OIS-396835

OSHA Report Link(s)
OSHAReport301.xls

## Incident Background

Injury Date
Jun 16, 2019

Injury Time
3:00 PM

Is this a late filing?
○ Yes ◉ No

Reported to Employer Date
Jun 16, 2019

Reported To Employer Time
12:00 AM

Time Employee Started Work

Work Schedule: Start Time

Work Schedule: End Time

Work Schedule: Days Off

Days Worked Since Last Day Off
0

Last Day Worked

Was the injury in the course of working a military charter or CRAF flight?
○ Yes ○ No ◉ No Information

Is this claim being reported for incident only?
○ Yes ◉ No ○ No Information

Is this a Duty Time Injury?
◉ Yes ○ No ○ No Information

Is this an Audiometric Testing Case?
○ Yes ◉ No

## Injury Details

Injury Type
Specific Injury : Contusion or Bruise

Incident Type
Slip, trip, fall : Entering or Exiting

Source Causing Incident
Objects : Object on floor

Body Part(s) Affected
Lower Extremities : Ankle, left

Specific Activity Engaged In When Incident Occurred
Not Applicable

Equipment Involved
Not Applicable

Equipment Number
Training

Airline Involved
UA

Incident Summary Statement
EE WAS EXITING MOCK AIRCRAFT AND FELL INJURING LEFT ANKLE . LEFT ANKLE HAS HAD SURGERY BEFORE AND IT IS SWOLLEN AND HURTING. EE DID SEEK TREATMENT.

Detailed Narrative

Attachments

## Incident Location

Location of Incident
Training : Training Center

Please Specify
TRAINING CENTER DENVER

Incident occurred on employer premises?

Yes No No Information

Did this occur at an Airport

Yes No No Information

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| Aircraft Not Involved | | | |

Departure Station

Arrival Station

Turbulence

Yes No

## Incident Location Contact

Incident Premises Contact Available?

Yes No No Information

Premises Contact Details

First Name

Middle

Last Name

Work Phone

Work Email Address

Incident Address Details

Location Name
TRAINING CENTER DENVER

Country
USA - United States

Street Address 1
UNITED AIRLINES/ATTN:MGR

Street Address 2

City
Houston

State

Zip Code
77205

County

## Medical Details

Initial Medical Treatment

Employee Treated at a UA Onsite Clinic

Yes No No Information

UA Onsite Clinic Location

Employee Hospitalized for Treatment

Yes No No Information

Medical Transportation
Unknown

Facility/Hospital Details

Physician's Name

Facility/Hospital Name

Phone Number

Country
USA - United States

Street Address 1

Street Address 2

City

Zip Code

County

Does this employee have a Pre-Designated physician on file?

Yes No No Information

Initial Physician Details

Work Phone
7137954847

Fax

Is initial physician who treated incident injury known?

Yes No No Information

Country
USA - United States

Street Address 1
6550 FANNIN STREET

Street Address 2

City

State

Zip Code

County

## Incident's Impact

Employee lost time beyond date of injury due to incident

Yes No No Information

Is this Case Litigated?

Yes No

Employee Work Status After Incident
( ) Full Duty ( ) Restricted Duty ( ) Off Work (•) Unknown

Did this incident injure other employee(s)?
( ) Yes (•) No ( ) No Information

## Witness Information

## Investigation

OIS Case Number
OIS-396835

Linked Case(s)

Downloadable Forms

Add Related Case(s)

Occupational Injury Case # OIS-351941 (Review)

### Previously Provided Details

Injury Date
Jun 16, 2019

Injury Time
3:00 PM

Employee Injury Count
5

Injury Type
Specific Injury : Contusion or Bruise

Incident Summary Statement
EE WAS EXITING MOCK AIRCRAFT AND FELL INJURING LEFT ANKLE . LEFT ANKLE HAS HAD SURGERY BEFORE AND IT IS SWOLLEN AND HURTING. EE DID SEEK TREATMENT.

Location of Incident
Training : Training Center

Equipment Involved
Not Applicable

Equipment Number
Training

### Investigation Questions

Was a drug and alcohol test performed?
( ) Yes (•) No

Human Factors Investigation Link

Go to Human Factor Investigation

Did a Post Injury Review occur?
( ) Yes (•) No

### Risk Assessment

| Risk Level | Risk Color | Risk Description | Risk Rank |
|---|---|---|---|
| 2A | | Limited Risk | 17 |

### Investigation Findings

Primary Root Cause
fall

Secondary Root Cause
situational awareness

Corrective Actions Taken
Pending - Admin termination due to failed to return to work and fly first trip per contract 15.E.1&2.

Investigation Attachments

Christine Finger 231679 Admin term June 28 2019.pdf

Christine Finger 231679 Injury investigation packet June 16 2019.pdf

### Assignment

### FYI Notification

## UA Investigation Assessment

Investigation Evaluation Completed?

Yes No

Investigation Case Comment

EE was Admin terminated on 6/28/19 due to failing to return per the contract 15.E.1&2 following 3 year absences max leave.

## Approval(s)

Approval Date
Jul 2, 2019 12:40 AM

Approver
Stansberry, Aleta [IAHSW]

# Data Updates

## Employee Information

Secondary Phone Number

Alternative Email

## Supervisor Information

Supervisor same as Case Submitter

Yes No

Select Supervisor

| Subsidiary | Name | Title |
| --- | --- | --- |
| Continental | Velez, Rick | Supv - Base |

| Work Phone | Mobile Phone | Work Email |
| --- | --- | --- |
| | | Rick.Velez@united.com |

## Incident Background

Time Employee Started Work

Work Schedule: Start Time

Work Schedule: End Time

Work Schedule: Days Off

Shift at Time of Incident
Day

Hours Worked on Last Day Worked

## Injury Details

Specific Activity Engaged In When Incident Occurred
Not Applicable

Equipment Involved
Not Applicable

Equipment Number
Training

Detailed Narrative

## Incident Location

Location of Incident
Training : Training Center

Please Specify
TRAINING CENTER DENVER

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
| --- | --- | --- | --- |
| Aircraft Not Involved | | | |

Departure Station

Arrival Station

Turbulence

Yes No

## OSHA Updates

Total Trans Duty Days:

Total Lost Time Days:

Request Review of OSHA Recordable Status

Yes No

| Work Status | Start Date | End Date | |
|---|---|---|---|
| Full Duty | Jun 17, 2019 | | Add and Save |

CZMSU U231679 C FINGER JUN19 IAH 00000 MU
02311 QUAL FA FA JS

| DT | CDE | SCHED | START | END | BLKT | PAYT | TBPOS | DT | CDE | SCHED | START | END | BLKT | PAYT | TBPOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | | MSG | 0001 | 2400 | | 0000 | LHA01 | 15 | | * | | | | | LHN01 |
| 02 | | LVN | 0001 | 2400 | | | LHN01 | 16 | | * | | | | | LHN01 |
| 02 | | LV | 0002 | 2400 | | | LHN01 | 17 | | * | | 1911 | 0000 | 3900 | LHN01 |
| 02 | | HJ015C | 1542 | | | | LHN01 | 18 | | MSG | 0001 | 2400 | | 0000 | LHA01 |
| 03 | | * | | | | | LHN01 | 19 | | MSG | 0001 | 2400 | | 0000 | LHA01 |
| 04 | | * | | | | | LHN01 | 20 | | MSG | 0001 | 2400 | | 0000 | LHA01 |
| 05 | | * | | | | | LHN01 | 21 | | MSG | 0001 | 2400 | | 0000 | LHA01 |
| 06 | | * | | | | | LHN01 | 22 | | | | | | | LHA01 |
| 07 | | * | | | | | LHN01 | 23 | | | | | | | LHA01 |
| 08 | | * | | | | | LHN01 | 24 | | | | | | | LHA01 |
| 09 | | * | | | | | LHN01 | 25 | | | | | | | LHA01 |
| 10 | | * | | | | | LHN01 | 26 | | WKOI | 0644 | | | | LHA02 |
| 11 | | * | | | | | LHN01 | 27 | | * | | 1915 | | 1156 | LHA02 |
| 12 | | * | | | | | LHN01 | 28 | | TERM | 0001 | | | | LHM01 |
| 13 | | * | | | | | LHN01 | 29 | | * | | | | | LHA01 |
| 14 | | * | | | | | LHN01 | 30 | | * | | 2400 | | 0000 | LHA01 |

MTDBLK PRJBLK AVLBLK MTDPAY LN VL PY GR SKBANK PYCAP
1156 1156 5559
E26 CONTR 1/7 WA02

07/06/19 00:27:09

EMPLOYEE NUMBER: U231679 NAME: C FINGER BID PERIOD: JUN 19

| P GUAR/ PAY FROM | C GUAR/ TO | SCHED | CDE -- MESSAGE --------- | TBPOS | ---- UPDATED BY --- SCHEDR | DATE | TIME |
|---|---|---|---|---|---|---|---|
| | | | | | CZ22620 | 170519 | 1238 |
| | | | | | CZ22620 | 170519 | 1238 |
| 010619 | 010619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 020619 | 020619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 030619 | 030619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 040619 | 040619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 050619 | 050619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 060619 | 060619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 070619 | 070619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 080619 | 080619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 090619 | 090619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 100619 | 100619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 110619 | 110619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 120619 | 120619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 130619 | 130619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 140619 | 140619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 150619 | 150619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 160619 | 160619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 170619 | 170619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 180619 | 180619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 190619 | 190619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 200619 | 200619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 210619 | 210619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 220619 | 220619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 230619 | 230619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 240619 | 240619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 250619 | 250619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 260619 | 260619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 270619 | 270619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 280619 | 280619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 290619 | 290619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 300619 | 300619 | MSG | MSG CHK COMMENT SCREEN | | V761293 | 180519 | 1238 |
| 020619 | 020619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 030619 | 030619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 040619 | 040619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 050619 | 050619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 060619 | 060619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 070619 | 070619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 080619 | 080619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 090619 | 090619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 100619 | 100619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 110619 | 110619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 120619 | 120619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 130619 | 130619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 140619 | 140619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 150619 | 150619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 160619 | 160619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 170619 | 170619 | RMSG | 435 REMOVE MSG | | U365240 | 200519 | 1121 |
| 00000 | 02643 | GUAR | 076 CHNG GUAR | | U365240 | 200519 | 1121 |
| | | | | | U365240 | 200519 | 1121 |
| | | | | | U365240 | 200519 | 1121 |
| 020619 | 170619 | HJ015B | 730 PICKUP | | U365240 | 200519 | 1121 |

07/06/19 00:27:09

EMPLOYEE NUMBER: U231679 NAME: C FINGER BID PERIOD: JUN 19

| PAY | P GUAR/ FROM | C GUAR/ TO | SCHED | CDE | -- MESSAGE --------- | TBPOS | ---- UPDATED BY --- SCHEDR | DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|
| | 020619 | 170619 | | | | LH FT01 | U365240 | 200519 | 1121 |
| | | | | | | | U356435 | 170619 | 1422 |
| | | | | | | | U356435 | 170619 | 1422 |
| | 020619 | 170619 | HJ015B | 077 | MODIFY PAIRING | | U356435 | 170619 | 1422 |
| | 020619 | 170619 | HJ015C | 730 | PICKUP | | U356435 | 170619 | 1422 |
| | 02643 | 03359 | GUAR | 076 | CHNG GUAR | | V781615 | 180619 | 2135 |
| | 260619 | 260619 | RMSG | 435 | REMOVE MSG | | V781615 | 180619 | 2137 |
| | 270619 | 270619 | CNFL | 099 | SYSTEM DROP CONFLIC | | V781615 | 180619 | 2137 |
| | 260619 | 270619 | H1032 | 705 | PRG ADD-MU/WORKWITH | | V781615 | 180619 | 2137 |
| | 260619 | 270619 | | | | LH FA02 | V781615 | 180619 | 2137 |
| | 03359 | 03791 | GUAR | 076 | CHNG GUAR | | V781615 | 190619 | 2033 |
| | 290619 | 290619 | RMSG | 435 | REMOVE MSG | | V781615 | 190619 | 2035 |
| | 300619 | 300619 | CNFL | 099 | SYSTEM DROP CONFLIC | | V781615 | 190619 | 2035 |
| | 290619 | 300619 | H0906 | 705 | PRG ADD-MU/WORKWITH | | V781615 | 190619 | 2035 |
| | | | | | | | V778978 | 210619 | 1914 |
| | 03791 | 04182 | GUAR | 076 | CHNG GUAR | | V755179 | 210619 | 1914 |
| | 280619 | 280619 | RMSG | 435 | REMOVE MSG | | V755179 | 210619 | 1914 |
| | 280619 | 280619 | H0734 | 705 | PRG ADD-MU/WORKWITH | | V755179 | 210619 | 1914 |
| Y | 280619 | 280619 | | 705 | PRG ADD-MU/WORKWITH | | V755179 | 210619 | 1914 |
| | 280619 | 280619 | | | | LH FP01 | V755179 | 210619 | 1914 |
| | 220619 | 220619 | RMSG | 435 | REMOVE MSG | | V755179 | 210619 | 1915 |
| | 230619 | 230619 | RMSG | 435 | REMOVE MSG | | V755179 | 210619 | 1915 |
| | 240619 | 240619 | RMSG | 435 | REMOVE MSG | | V755179 | 210619 | 1915 |
| | 250619 | 250619 | RMSG | 435 | REMOVE MSG | | V755179 | 210619 | 1915 |
| | 04182 | 03075 | GUAR | 076 | CHNG GUAR | | V782141 | 250619 | 1648 |
| | | | | | | | V782141 | 250619 | 1648 |
| | | | | | | | V782141 | 250619 | 1648 |
| | 260619 | 270619 | CNFL | 092 | SYSTEM DROP DEC GUA | | V782141 | 250619 | 1650 |
| | 280619 | 280619 | CNFL | 092 | SYSTEM DROP DEC GUA | | V782141 | 250619 | 1650 |
| | 260619 | 270619 | WKSK | 318 | SICK OCCURRENCE | | V782141 | 250619 | 1650 |
| Y | 260619 | 270619 | CNFL | 092 | SYSTEM DROP DEC GUA | | V782141 | 250619 | 1650 |
| | 280619 | 280619 | WKSK | 318 | SICK OCCURRENCE | | V782141 | 250619 | 1650 |
| Y | 280619 | 280619 | CNFL | 092 | SYSTEM DROP DEC GUA | | V782141 | 250619 | 1650 |
| | 03075 | 02643 | GUAR | 076 | CHNG GUAR | | V782141 | 280619 | 1432 |
| | 290619 | 300619 | CNFL | 092 | SYSTEM DROP DEC GUA | | V782141 | 280619 | 1435 |
| | 290619 | 300619 | WKSK | 318 | SICK OCCURRENCE | | V782141 | 280619 | 1435 |
| Y | 290619 | 300619 | CNFL | 092 | SYSTEM DROP DEC GUA | | V782141 | 280619 | 1435 |
| | 280619 | 280619 | CNFL | 099 | SYSTEM DROP CONFLIC | | U307274 | 010719 | 0832 |
| Y | 280619 | 280619 | CNFL | 099 | SYSTEM DROP CONFLIC | | U307274 | 010719 | 0832 |
| | 290619 | 300619 | CNFL | 099 | SYSTEM DROP CONFLIC | | U307274 | 010719 | 0832 |
| Y | 290619 | 300619 | CNFL | 099 | SYSTEM DROP CONFLIC | | U307274 | 010719 | 0832 |
| | 280619 | 300619 | TERM | 530 | TERMINATION | | U307274 | 010719 | 0832 |
| | 02643 | 03359 | GUAR | 076 | CHNG GUAR | | U333804 | 020719 | 0815 |
| | 260619 | 270619 | CNFL | 099 | SYSTEM DROP CONFLIC | | U333804 | 020719 | 0816 |
| Y | 260619 | 270619 | CNFL | 099 | SYSTEM DROP CONFLIC | | U333804 | 020719 | 0816 |
| | 260619 | 270619 | WKOI | 514 | WORKER COMP, 100% | | U333804 | 020719 | 0816 |
| Y | 260619 | 270619 | CNFL | 092 | SYSTEM DROP DEC GUA | | U333804 | 020719 | 0816 |
| | 020619 | 020619 | LVN | 833 | LINE VALUE NEG ADJ | | U196697 | 030719 | 1115 |
| | 020619 | 020619 | LV | 894 | PAY CLAIM OTHER | | U196697 | 030719 | 1116 |

07/06/19 00:27:09

EMPLOYEE NUMBER: U231679 NAME: C FINGER BID PERIOD: JUN 19

ADDED HJ015B FOR RQL3 AT DENTK....ES20MAY 1322C
*****JUNE****
RTW EFF 5/23/19 - HRC0039266
LINE TO HOLD - IAH - LINE HOLDER - DOM/INTL
MIN HOURS -26:02
VACATION - NONE
PER FA ADDED H1032/26JUN FOR RTW PARTIAL BUILD PF/18JUN19/2335HDT
PER FA ADDED H0906/29JUN FOR RTW PARTIAL BUILD PF/19JUN19/2233HDT
RTW FULLY LINE BUILT AAC/21JUN19/2103HDT
318-062619 PERFA PLCD WKSK DOI=16JUN19 FOR H1032/26JUN H0734/28JUN VGS/25JUN
318-062919 FA CALLED IN WKSK DOI=16JUN19 FOR H0906 V.SIENES 28JUN/191634
CORRECT PAY FOR TRNG 39:00 TW

07/06/19 00:27:09

Message

**From**: Stansberry, Aleta [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=4AB31C69A31444B1AE6F8FD8F1D47E29-U222936]
**Sent**: 6/28/2019 12:40:42 PM
**To**: Clark, Sabrina [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e25b4fe1a277497fba043930d1c4398e-u247766]
**Subject**: RE: ***Important ***Christine Finger

Ok Im on a call

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

-----Original Message-----
From: Clark, Sabrina
Sent: Friday, June 28, 2019 12:34 PM
To: Stansberry, Aleta <Aleta.Stansberry@united.com>
Subject: RE: ***Important ***Christine Finger

Aleta,

Let's call her and let her know it's being Federal Expressed to her house effective date of today. We will have to show Term on her schedule. I don't want her to see this before she knows.

Thanks,
Sabrina

-----Original Message-----
From: Stansberry, Aleta
Sent: Thursday, June 27, 2019 6:26 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>; Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; [redacted]
Subject: RE: ***Important ***Christine Finger

[redacted]

[redacted]

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

-----Original Message-----
From: Krabbe, Bob
Sent: Thursday, June 27, 2019 6:10 PM
To: Stansberry, Aleta <Aleta.Stansberry@united.com>; Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; [redacted]
Subject: RE: ***Important ***Christine Finger

[redacted]

Bob Krabbe
Director, Labor Relations - Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606 Tel 872 825 1036 | Cell 224 287 2247 | Bob.Krabbe@united.com united.com

-----Original Message-----
From: Stansberry, Aleta
Sent: Thursday, June 27, 2019 6:06 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>; Clark, Sabrina <Sabrina.Clark@united.com>

Cc: Holt, Tammy <Tammy.Holt@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; [redacted]
Subject: RE: ***Important ***Christine Finger

Ok thanks, I will make those changes.

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

-----Original Message-----
From: Krabbe, Bob
Sent: Thursday, June 27, 2019 5:45 PM
To: Stansberry, Aleta <Aleta.Stansberry@united.com>; Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; [redacted]
Subject: RE: ***Important ***Christine Finger

[redacted]

[redacted]

Bob Krabbe
Director, Labor Relations - Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606 Tel 872 825 1036 | Cell 224 287 2247 |
Bob.Krabbe@united.com united.com

-----Original Message-----
From: Stansberry, Aleta
Sent: Thursday, June 27, 2019 5:03 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>; Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; [redacted]
Subject: RE: ***Important ***Christine Finger

Do you have any changes I need to make to the letter?

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

-----Original Message-----
From: Krabbe, Bob
Sent: Thursday, June 27, 2019 4:40 PM
To: Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; Brown, Marcus <marcus.brown@united.com>
Subject: RE: ***Important ***Christine Finger

There is no investigation needed because there is no rule violation, she just came to the end of her leave. We can just administratively separate her.

Bob Krabbe
Director, Labor Relations - Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606 Tel 872 825 1036 | Cell 224 287 2247 |
Bob.Krabbe@united.com united.com

-----Original Message-----
From: Clark, Sabrina
Sent: Thursday, June 27, 2019 4:35 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; Brown, Marcus <marcus.brown@united.com>
Subject: RE: ***Important ***Christine Finger

Bob,

I am assuming we go ahead and withhold her from service and send our HR 48 hr. notice? We'll set up a meeting for her early next week.

Thanks,
Sabrina

-----Original Message-----
From: Krabbe, Bob
Sent: Thursday, June 27, 2019 4:30 PM
To: Clark, Sabrina <Sabrina.Clark@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>; Cavanagh, Elizabeth <Elizabeth.Cavanagh@united.com>; Merritt, Mary <Mary.Merritt@united.com>; Brown, Marcus <marcus.brown@united.com>
Subject: RE: ***Important ***Christine Finger

Sabrina,

It doesn't look like she went active, so she is separated. To go active, she would need to sit a day of Reserve, fly a trip or engage in a contractual schedule change. I looks like she just built the line, then called in sick. As such, her leave was not broken and since she is past the three year mark, she has exceeded her maximum leave length and gets separated.

I expect a fight from her, but this is straight contract.

Bob Krabbe
Director, Labor Relations - Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606 Tel 872 825 1036 | Cell 224 287 2247 | Bob.Krabbe@united.com united.com

-----Original Message-----
From: Clark, Sabrina
Sent: Thursday, June 27, 2019 3:45 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>
Cc: Holt, Tammy <Tammy.Holt@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>; Heckman, Crystal <Crystal.Heckman@united.com>
Subject: FW: ***Important ***Christine Finger

Bob,
Christine Finger completed her training, however has not flown a trip. She called in a WKCP stating she reinjured herself during training (left ankle). She picked up her required hours, but they have been dropped WKCP 6/26-6/28. Her next scheduled trip is 6/29. Her Admin. Term date was 5/25/19. What is our next course of action?

Thanks,
Sabrina

-----Original Message-----
From: Clark, Sabrina
Sent: Tuesday, May 28, 2019 12:57 PM
To: Krabbe, Bob <Bob.Krabbe@united.com>
Subject: RE: ***Important ***Christine Finger

Bob,
Thanks for the clarification. That is not how he presented it. What are the ramifications if she goes next month? Does she stay inactive until she goes, or is she now active once she starts the process?

Thanks for your assistance as always.

Sabrina

-----Original Message-----
From: Krabbe, Bob
Sent: Tuesday, May 28, 2019 12:24 PM
To: Clark, Sabrina <Sabrina.Clark@united.com>
Subject: RE: ***Important ***Christine Finger

Sabrina,

Thanks for the heads up.

I am a bit concerned that Dominic is sharing with a flight attendant his consultation with me. When he and I reviewed the situation with him, I made clear it is Inflight's decision. We reviewed the fact that she has been out for three years and that the next class isn't until July and he made the decision that she should stay in the class.

Bob Krabbe

Director, Labor Relations - Flight

United | Corporate Support Center
233 S. Wacker Drive, 25th Floor WHQLR | Chicago, IL 60606 Tel 872 825 1036 | Cell 224 287 2247 |
Bob.Krabbe@united.com united.com

-----Original Message-----
From: Clark, Sabrina
Sent: Tuesday, May 28, 2019 11:52 AM
To: Krabbe, Bob <Bob.Krabbe@united.com>
Subject: FW: ***Important ***Christine Finger

Bob,
You may hear directly from Christine Finger. She has already called here 3 times before she was transferred to me. I explained that she would have to go to CQ on June 2. Now she's saying her mom's surgery has been moved up. I told her that may be out of her control, but her administrative term date has passed, therefore CQ cannot be delayed. Dominic told her he spoke to you, and her CQ cannot be postponed, which I confirmed with her, however she is persistent. So she may send you an e-mail.

Take care.
Sabrina

-----Original Message-----
From: Cordova, Dominic
Sent: Tuesday, May 28, 2019 10:01 AM
To: Clark, Sabrina <Sabrina.Clark@united.com>
Subject: ***Important ***Christine Finger

Christine might try and contact you. She was almost administered terminated, (3days). She has CQ in DEN starting June 2nd.

She asked if she could move her CQ. Bob Crabby was involved and the administration dept. They said no, and the next class won't be until July.

She is trying to push her CQ back again even though I told her it cannot be done. She said in an e-mail that Josh Raygo said it shouldn't be a problem, but he didn't know the background. Her mom is having surgery.

Dom-
Sent from my iPhone

Message

**From:** Stansberry, Aleta [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=4AB31C69A31444B1AE6F8FD8F1D47E29-U222936]
**Sent:** 6/27/2019 4:22:29 PM
**To:** Krabbe, Bob [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=424c7043b8b74c88b7cb88e95cdbda3a-u287032]
**CC:** Merritt, Mary [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=997a41f148da4b2d8e3704b7a3aef45e-u272186]; Clark, Sabrina [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=e25b4fe1a277497fba043930d1c4398e-u247766]; Heckman, Crystal [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=ac565fc83a75486d9dc80b41cd61c2e3-u237252]
**Subject:** Christine Finger
**Attachments:** CHristina Finger U231679 injury OIS report August 3 2014.pdf; Christine Finger OIS injury report June 2019.pdf

EE Max leave date was 5/25/19, she was released to return to full duty on 5/23/19, and was in the return to work process. She was scheduled for Re-Qual training starting 6/2/19. She claimed a re-injruy of previous injury from August 2014. I have attached both claims, I just received the new claim. She failed to return for her first trips on 6/26/19. I have attached all the informaiton. Would this be a violation of sections 15 E Meidcal leave, 1. B. as she failed to meet the 3 year max leave. Can we admin Terminate? I am trying to complete the new injury claim at this time. Please let me know asap, so that I can get back with Sedgwick and complete my investigations.

| File Number | LastName | FirstName | SPVRNAME | Completed / Mailed date and who | Base | SUB | start date | max leave date | RTW/TERM | Date of rtw/term |
|---|---|---|---|---|---|---|---|---|---|---|
| U231679 | Finger | Christine | Aleta Stansberry | 9/29/16 HDQ | IAH | CO | 05/26/16 | 05/25/19 | In RTW process | Pending |



**Inflight Records**

Work History dates and times are shown in local base time for the Flight Attendant

| | |
|---|---|
| Time Zone | Central Standard Time |
| Pending Item | No |
| Work History Description | Returned From Leave Of Absence |
| Start Date | 5/23/2019 |
| Absence Notification Date | |
| Pairing Number | |
| Flight Number | |
| Pairing Value | |
| Absence Days | |
| Duty Time | |
| Points | 0.0 |
| Open Item | No |
| Comments | Comments are required for this Work History item<br>Comment maximum length is 5,000 characters.<br>[illegible]<br>[illegible] (manual entry) |

```
CZMSU    U231679      CHRISTINE FINGER                  MAY19 IAH 00000      R:
02311 FA        C
DT CDE SCHED    START END BLKT PAYT TBPOS DT CDE SCHED    START END BLKT PAYT TBPOS
02     WKCP     0001                LHA01 18     *                            LHA01
03      *                           LHA01 19     *                            LHA01
04      *                           LHA01 20     *                            LHA01
05      *                           LHA01 21     *              2400      0000 LHA01
06      *                           LHA01 22     XSCK     0001 0002       0000 LHA01
07      *                           LHA01 23     MSG      0001 2400       0000 LHA01
08      *                           LHA01 24     MSG      0001 2400       0000 LHA01
09      *                           LHA01 25     MSG      0001 2400       0000 LHA01
10      *                           LHA01 26     MSG      0001 2400       0000 LHA01
11      *                           LHA01 27     MSG      0001 2400       0000 LHA01
12      *                           LHA01 28     MSG      0001 2400       0000 LHA01
13      *                           LHA01 29     MSG      0001 2400       0000 LHA01
14      *                           LHA01 30     MSG      0001 2400       0000 LHA01
15      *                           LHA01 31     MSG      0001 2400       0000 LHA01
16      *                           LHA01 01     MSG      0001 2400       0000 LHA01
17                                  LHA01 02     HJ015C   1542                 LHT01
MTDBK PRJBK FLTMX MTDPY  CRDT        SKBANK ADD P DEADHD        N:    UPDATE  ?
            9500                       3200   457                 NXT EMP? _
E26 CONTR 1/7 WA02
```

```
CZMSU    U231679      CHRISTINE FINGER                  JUN19 IAH 00000    C R:
02311 FA        C
DT CDE SCHED    START END BLKT PAYT TBPOS DT CDE SCHED    START END BLKT PAYT TBPOS
01     MSG      0001 2400      0000 LHA01 17     *              1911 0000 0000 LHT01
02     HJ015C   1542                LHT01 18     MSG      0001 2400       0000 LHA01
03      *                           LHT01 19     MSG      0001 2400       0000 LHA01
04      *                           LHT01 20     MSG      0001 2400       0000 LHA01
05      *                           LHT01 21     MSG      0001 2400       0000 LHA01
06      *                           LHT01 22                                   LHA01
07      *                           LHT01 23                                   LHA01
08      *                           LHT01 24                                   LHA01
09      *                           LHT01 25                                   LHA01
10      *                           LHT01 26     WKSK     0644                 LHA02
11      *                           LHT01 27     *              1915      1156 LHA02
12      *                           LHT01 28     WKSK     0835 2055       0631 LHP01
13      *                           LHT01 29     H0906    1848                 LHA01
14      *                           LHT01 30     *              0615 0712 0712 LHA01
15      *                           LHT01 01     H0757    0841 2102 0908 0908 LHA01
16      *                           LHT01 02                                   LHA01
MTDBK PRJBK FLTMX MTDPY  CRDT        SKBANK ADD P DEADHD          N: Y  UPDATE  ?
       712  9500          712          1333                       NXT EMP?
E26 CONTR 1/7 WA 0825 02
```

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

OIS-351941 Created by Kushner, Terri on Aug 4, 2014 5:16 PM

Review

## Intake

**Important note!**
This reporting system has been developed for **Internet Explorer v7, 8, & 9, Firefox 5 & 6, and the iPad** browsers. Using newer versions is generally acceptable but may result in some unexpected behavior.

OIS Case Number
OIS-351941

### Occupational Injury Case

| Reported By | Title | Phone | Submitter |
|---|---|---|---|
| Kushner, Terri [IAHFO] | Supr - Inflight Admin & Supri | +12815538561 | Manager |

### Employee Details

| Subsidiary | Employee ID | Sub-CO Employee ID |
|---|---|---|
| ◉ Continental ◯ United | u231679 | 0077h |

| Job Title | First Name | Middle | Last Name |
|---|---|---|---|
| Flight Attendant | CHRISTINE | | FINGER |
| **Employee Group** | **Department** | **Division Code** | **Manager Level** |
| FA | IAHSW | 64 | 99 |
| **Cost Center** | **Part Time/Full Time** | **Hire Date** | **Gender** |
| 7886 | F | 1984-10-13 | Female |

Work Contact

| Work Phone | Work Email |
|---|---|
| | Christine.Finger@united.com |

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| USA - United States | | |

| City | State | Zip Code | County |
|---|---|---|---|
| [redacted] | [redacted] | | |

Home Contact

| Primary Phone Number | Secondary Phone Number | Alternative Email |
|---|---|---|
| [redacted] | | |
| **Country** | **Street Address 1** | **Street Address 2** |
| 0 | [redacted] | |

| City | State | [redacted] | County |
|---|---|---|---|
| [redacted] | [redacted] | | |

### Supervisor Information

Supervisor same as Case Submitter
◯ Yes ◉ No

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Cordova, Dominic | Supervisor - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| +12815532765 | | dominic.cordova@united.com |

### Employment Status at Time of Report

| Employee is Laid Off | Termination Date |
|---|---|

◯ Yes ◉ No ◯ No Information

Employee is Furloughed?
◯ Yes ◉ No ◯ No Information

Employee on Leave of Absence?
◯ Yes ◉ No ◯ No Information

## Incident

OIS Case Number
OIS-351941

OSHA Report Link(s)
OSHAReport301.xls

### Incident Background

Injury Date
Aug 3, 2014

Injury Time
8:00 AM

Is this a late filing?
◯ Yes ◉ No

Reported to Employer Date
Aug 4, 2014

Reported To Employer Time
11:59 PM

Time Employee Started Work
8/3/14 1:19 PM GMT(+0000)
8/3/14 1:19 PM UTC

Work Schedule: Start Time

Work Schedule: End Time

Work Schedule: Days Off

Days Worked Since Last Day Off
3

Last Day Worked
Jul 11, 2016

Was the injury in the course of working a military charter or CRAF flight?
◯ Yes ◉ No ◯ No Information

Is this claim being reported for incident only?
◉ Yes ◯ No ◯ No Information

Is this a Duty Time Injury?
◉ Yes ◯ No ◯ No Information

Is this an Audiometric Testing Case?
◯ Yes ◉ No

### Injury Details

Injury Type
Specific Injury : Sprain

Incident Type
Struck against : Stationary or moving object

Source Causing Incident
Turbulence : Turbulence

Body Part(s) Affected
Lower Extremities : Foot, left

Specific Activity Engaged In When Incident Occurred
Food/Beverage Service

Equipment Involved
Food / Beverage Cart

Equipment Number

Airline Involved
UA

Incident Summary Statement
EMPLOYEE STRUCK LEFT FOOT AGAINST OPEN BAR CART DOOR

Detailed Narrative
Employee stated that as she was preparing the bar cart for service, she was restocking the bar cart when a tiny bit of turbulence hit the aircraft and she inadvertently struck her left foot against the open bar cart door. She continued to work with the pain. She notified the captain of the injury and he called for a cart, but the clinic was closed. She is trying to see a PCP or urgent cart Dr today as he left foot is very swollen and sore.

Attachments

### Incident Location

Location of Incident
Aircraft : Galley

Please Specify
stocking bar cart

Incident occurred on employer premises?
◌ Yes ◉ No ◌ No Information

Did this occur at an Airport
◌ Yes ◉ No ◌ No Information

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| B737 | 1212 | 731 | Inflight |

Departure Station: DCA

Arrival Station: IAH

Turbulence
◉ Yes ◌ No

Turbulence Type: Light

Was Captain Notified of Incident?
◉ Yes ◌ No

## Incident Location Contact

Incident Premises Contact Available?
◌ Yes ◌ No ◉ No Information

## Medical Details

Initial Medical Treatment

Employee Treated at a UA Onsite Clinic
◌ Yes ◌ No ◉ No Information

UA Onsite Clinic Location

Employee Hospitalized for Treatment
◌ Yes ◌ No ◉ No Information

Medical Transportation: Unknown

Facility/Hospital Details

Physician's Name

Facility/Hospital Name

Phone Number

Country: USA - United States

Street Address 1

Street Address 2

City

Zip Code

County

Does this employee have a Pre-Designated physician on file?
◌ Yes ◌ No ◉ No Information

## Incident's Impact

Employee lost time beyond date of injury due to incident
◌ Yes ◌ No ◉ No Information

Is this Case Litigated?
◌ Yes ◉ No

Employee Work Status After Incident
◌ Full Duty ◌ Restricted Duty ◌ Off Work ◉ Unknown

Did this incident injure other employee(s)?
◌ Yes ◉ No ◌ No Information

## Witness Information

## Investigation

OIS Case Number: OIS-351941

Linked Case(s)

Downloadable Forms

Add Related Case(s)

## Previously Provided Details

| Injury Date | Injury Time | Employee Injury Count |
|---|---|---|
| Aug 3, 2014 | 8:00 AM | 5 |

Injury Type: Specific Injury : Sprain

Incident Summary Statement
EMPLOYEE STRUCK LEFT FOOT AGAINST OPEN BAR CART DOOR

Location of Incident
Aircraft : Galley

| Equipment Involved | Equipment Number |
|---|---|
| Food / Beverage Cart | |

## Investigation Questions

Was a drug and alcohol test performed?
◯ Yes ◯ No

Human Factors Investigation Link
[Go to Human Factor Investigation]

Did a Post Injury Review occur?
◯ Yes ◯ No

## Risk Assessment

| Risk Level | Risk Color | Risk Description | Risk Rank |
|---|---|---|---|
| 2A | | Limited Risk | 17 |

## Investigation Findings

Primary Root Cause

Secondary Root Cause

Corrective Actions Taken

Investigation Attachments

## Assignment

## FYI Notification

## UA Investigation Assessment

Investigation Evaluation Completed?
◯ Yes ◯ No

Investigation Case Comment

# Data Updates

## Employee Information

| Secondary Phone Number | Alternative Email |
|---|---|
| | |

## Supervisor Information

Supervisor same as Case Submitter
◯ Yes ◯ No

[Select Supervisor]

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Cordova, Dominic | Supervisor - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| +12815532785 | | dominic.cordova@united.com |

## Incident Background

Time Employee Started Work

8/3/14 1:19 PM GMT(+0000)
8/3/14 1:19 PM UTC

| Work Schedule: Start Time | Work Schedule: End Time | Work Schedule: Days Off |
|---|---|---|
| | | |

Shift at Time of Incident
Unknown

Hours Worked on Last Day Worked

## Injury Details

Specific Activity Engaged In When Incident Occurred
Food/Beverage Service

Equipment Involved
Food / Beverage Cart

Equipment Number

Detailed Narrative
Employee stated that as she was preparing the bar cart for service, she was restocking the bar cart when a tiny bit of turbulence hit the aircraft and she inadvertently struck her left foot against the open bar cart door. She continued to work with the pain. She notified the captain of the injury and he called for a cart, but the clinic was closed. She is trying to see a PCP or urgent cart Dr today as he left foot is very swollen and sore.

## Incident Location

Location of Incident
Aircraft : Galley

Please Specify
stocking bar cart

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| B737 | 1212 | 731 | Inflight |

Departure Station
DCA

Arrival Station
IAH

| Turbulence | Turbulence Type | Was Captain Notified of Incident? |
|---|---|---|
| ◉ Yes ○ No | Light | ◉ Yes ○ No |

## OSHA Updates

Total Trans Duty Days:

Total Lost Time Days: 1,789

Request Review of OSHA Recordable Status
○ Yes ◉ No

| Work Status | Start Date | End Date | |
|---|---|---|---|
| Lost Time | Aug 4, 2014 | | Add and Save |

OIS-396835 Created by System on Jun 22, 2019 6:45 PM

Review

## Intake

**Important note!**
This reporting system has been developed for **Internet Explorer v7, 8, & 9, Firefox 5 & 6, and the iPad** browsers. Using newer versions is generally acceptable but may result in some unexpected behavior.

OIS Case Number
OIS-396835

### Occupational Injury Case

| Reported By | Title | Phone | Submitter |
|---|---|---|---|
| -1 | | | Unknown |

### Employee Details

| Subsidiary | Employee ID | Sub-CO Employee ID |
|---|---|---|
| ◉ Continental ◯ United | u231679 | 0077h |

| Job Title | First Name | Middle | Last Name |
|---|---|---|---|
| Flight Attendant - Domestic | CHRISTINE | | FINGER |
| **Employee Group** | **Department** | **Division Code** | **Manager Level** |
| FA | IAHSW | 64 | 99 |
| **Cost Center** | **Part Time/Full Time** | **Hire Date** | **Gender** |
| 7686 | F | 1984-10-13 | Female |

Work Contact

| Work Phone | Work Email |
|---|---|
| | Christine.Finger@united.com |

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| USA - United States | [redacted] | |

| City | State | Zip Code | County |
|---|---|---|---|
| [redacted] | [redacted] | | |

Home Contact

| Primary Phone Number | Secondary Phone Number | Alternative Email |
|---|---|---|
| [redacted] | | |
| **Country** | **Street Address 1** | **Street Address 2** |
| 0 | [redacted] | |

| City | State | Zip Code | County |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | |

### Supervisor Information

Supervisor same as Case Submitter
◯ Yes ◉ No

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Velez, Rick | Supv - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| | | Rick.Velez@united.com |

### Employment Status at Time of Report

| Employee is Laid Off | Termination Date |
|---|---|
| | |

◌ Yes ◉ No ◌ No Information

Employee is Furloughed?
◌ Yes ◉ No ◌ No Information

Employee on Leave of Absence?
◌ Yes ◉ No ◌ No Information

## Incident

OIS Case Number
OIS-396835

OSHA Report Link(s)
OSHAReport301.xls

### Incident Background

Injury Date
Jun 16, 2019

Injury Time
3:00 PM

Is this a late filing?
◌ Yes ◉ No

Reported to Employer Date
Jun 16, 2019

Reported To Employer Time
12:00 AM

Time Employee Started Work

Work Schedule: Start Time

Work Schedule: End Time

Work Schedule: Days Off

Days Worked Since Last Day Off
0

Last Day Worked

Was the injury in the course of working a military charter or CRAF flight?
◌ Yes ◌ No ◉ No Information

Is this claim being reported for incident only?
◌ Yes ◉ No ◌ No Information

Is this a Duty Time Injury?
◉ Yes ◌ No ◌ No Information

Is this an Audiometric Testing Case?
◌ Yes ◉ No

### Injury Details

Injury Type
Specific Injury : Contusion or Bruise

Incident Type
Slip, trip, fall : Entering or Exiting

Source Causing Incident
Objects : Object on floor

Body Part(s) Affected
Lower Extremities : Ankle, left

Specific Activity Engaged In When Incident Occurred
Not Applicable

Equipment Involved
Not Applicable

Equipment Number
Training

Airline Involved
UA

Incident Summary Statement
EE WAS EXITING MOCK AIRCRAFT AND FELL INJURING LEFT ANKLE . LEFT ANKLE HAS HAD SURGERY BEFORE AND IT IS SWOLLEN AND HURTING. EE DID SEEK TREATMENT.

Detailed Narrative

Attachments

### Incident Location

Location of Incident
Training : Training Center

Please Specify
TRAINING CENTER DENVER

Incident occurred on employer premises?

◯ Yes ◯ No ◉ No Information

Did this occur at an Airport

◯ Yes ◯ No ◉ No Information

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| Aircraft Not Involved | | | |

Departure Station

Arrival Station

Turbulence

◯ Yes ◉ No

## Incident Location Contact

Incident Premises Contact Available?

◉ Yes ◯ No ◯ No Information

Premises Contact Details

First Name

Middle

Last Name

Work Phone

Work Email Address

Incident Address Details

Location Name
TRAINING CENTER DENVER

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| USA - United States | UNITED AIRLINES/ATTN:MGR | |

| City | State | Zip Code | County |
|---|---|---|---|
| Houston | | 77205 | |

## Medical Details

Initial Medical Treatment

Employee Treated at a UA Onsite Clinic

◯ Yes ◉ No ◯ No Information

UA Onsite Clinic Location

Employee Hospitalized for Treatment

◯ Yes ◯ No ◉ No Information

Medical Transportation
Unknown

Facility/Hospital Details

Physician's Name

Facility/Hospital Name

Phone Number

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| USA - United States | | |

City

Zip Code

County

Does this employee have a Pre-Designated physician on file?

◯ Yes ◯ No ◉ No Information

Initial Physician Details

Work Phone
7137954847

Fax

Is initial physician who treated incident injury known?

◯ Yes ◯ No ◉ No Information

| Country | Street Address 1 | Street Address 2 |
|---|---|---|
| USA - United States | 6550 FANNIN STREET | |

City

State

Zip Code

County

## Incident's Impact

Employee lost time beyond date of injury due to incident

◯ Yes ◯ No ◉ No Information

Is this Case Litigated?

◯ Yes ◉ No

Employee Work Status After Incident
Full Duty | Restricted Duty | Off Work | Unknown

Did this incident injure other employee(s)?
Yes | No | No Information

## Witness Information

## Investigation

| OIS Case Number | Linked Case(s) | Downloadable Forms |
|---|---|---|
| OIS-396835 | | |

Add Related Case(s)

### Previously Provided Details

| Injury Date | Injury Time | Employee Injury Count |
|---|---|---|
| Jun 16, 2019 | 3:00 PM | 5 |

Injury Type
Specific Injury : Contusion or Bruise

Incident Summary Statement
EE WAS EXITING MOCK AIRCRAFT AND FELL INJURING LEFT ANKLE . LEFT ANKLE HAS HAD SURGERY BEFORE AND IT IS SWOLLEN AND HURTING. EE DID SEEK TREATMENT.

Location of Incident
Training : Training Center

| Equipment Involved | Equipment Number |
|---|---|
| Not Applicable | Training |

### Investigation Questions

Was a drug and alcohol test performed?
Yes | No

Human Factors Investigation Link
Go to Human Factor Investigation

Did a Post Injury Review occur?
Yes | No

### Risk Assessment

| Risk Level | Risk Color | Risk Description | Risk Rank |
|---|---|---|---|
| 2A | | Limited Risk | 17 |

### Investigation Findings

Primary Root Cause

Secondary Root Cause

Corrective Actions Taken

Investigation Attachments

### Assignment

Add Assignment

### FYI Notification

Send FYI

### UA Investigation Assessment

Investigation Evaluation Completed?
◯ Yes ◯ No

Investigation Case Comment

## Data Updates

### Employee Information

| Secondary Phone Number | Alternative Email |
|---|---|

### Supervisor Information

Supervisor same as Case Submitter
◯ Yes ◯ No

Select Supervisor

| Subsidiary | Name | Title |
|---|---|---|
| Continental | Velez, Rick | Supv - Base |

| Work Phone | Mobile Phone | Work Email |
|---|---|---|
| | | Rick.Velez@united.com |

### Incident Background

Time Employee Started Work

| Work Schedule: Start Time | Work Schedule: End Time | Work Schedule: Days Off |
|---|---|---|

| Shift at Time of Incident | Hours Worked on Last Day Worked |
|---|---|
| Day | |

### Injury Details

Specific Activity Engaged In When Incident Occurred
Not Applicable

| Equipment Involved | Equipment Number |
|---|---|
| Not Applicable | Training |

Detailed Narrative

### Incident Location

| Location of Incident | Please Specify |
|---|---|
| Training : Training Center | TRAINING CENTER DENVER |

Aircraft Details

| Aircraft Type | Flight Number | Nose Number | Phase of Operation |
|---|---|---|---|
| Aircraft Not Involved | | | |

| Departure Station | Arrival Station |
|---|---|

Turbulence
◯ Yes ◯ No

### OSHA Updates    Total Trans Duty Days:    Total Lost Time Days:

Request Review of OSHA Recordable Status
◯ Yes ◯ No

| Work Status | Start Date | End Date |
|---|---|---|
| Full Duty | Jun 17, 2019 | |

Add and Save

Message

| | |
|---|---|
| **From:** | Stansberry, Aleta [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=30CF3AE58DDA4CF88059195CC08B1A05] |
| **Sent:** | 6/28/2019 10:23:32 PM |
| **To:** | Finger, Christine [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=E7D4156E4E234D79BA27F3F099C6C0E8] |
| **CC:** | Heckman, Crystal [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=9DD2C4BFAF6B435CB46DDB2DB0E0B745]; Clark, Sabrina [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=B442D282B420400B82C46B0EE5E6E308]; dwheeling@unitedafa.org; ELIZABETH HIBBARD (ehibbard@unitedafa.org) [ehibbard@unitedafa.org]; FA.Processing [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=CBFBACAB5672496DB5B7790D832D8543]; ESC-AdminSupport [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=B753840D13084FCBBA6B5396FEF984FB]; Curtis, Lee [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=303DF7F43BF34B9A9B108E1B60590515] |
| **Subject:** | Christine Finger 231679 Admin Terminations June 28 2019 |
| **Attachments:** | Christine Finger 231679 Admin term June 28 2019.pdf |

Attached is the Admin termination letter issued today in accordance with Section 15.E 1&2 Leave of Absence, exceeded Max Leave 3 years.

A copy of this letter has been placed in you P-file and Fedex to your home address on file. The following items need to be returned. Please contact me to make an appointment to return these items.

- United Airlines Identification Badge $100.00
- Parking Badge or Parking Tags (if applicable) $50.00
- ISM/Purser Duty Free Key (if applicable) $50.00
- Cabin Key $7.00
- Link

United Airlines may contact you regarding any outstanding balances you may owe the Company upon your release. I you have any questions please feel free to contact me.

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

UNITED

**SENT VIA FEDERAL EXPRESS**

6/28/19

[redacted]

Dear Christine,

This letter is in regard to your current inactive status with United Airlines. On 9/26/16 you were sent a business letter indicating changes to the leave of absence policy, including, but not limited to the maximum length of some leaves per the Joint Collective Bargaining Agreement (JCBA). The JCBA states in relevant part:

*Section 15.E 1&2: "Leaves of Absence required due to illness or non- occupational injury shall be granted upon written verification of disability from a qualified medical doctor. Any such leave may not exceed the lesser of; (a) the period of disability, or (b) three (3) years, or (c) the flight attendant's total length of active service. While on this type of leave, the flight attendant accrues seniority for all purposes. At the end of the maximum period, the flight attendant will be administratively terminated and removed from the System Seniority List."*

Company records reflect you have been on a medical leave of absence beginning 5/26/16. As indicated in the September 29, 2016 business letter <u>if you do not return to work prior to the expiration of your Medical leave, your employment with United Airlines will be administratively terminated in accordance with Section 15.E.1&2.</u>

You submitted a release to return to full duty effective 5/23/19 and you attended training from <6/2/19> to <6/17/19. Following your training, you called in sick for your first trip assignment as a result, you have exceeded the maximum contractual duration for a medical leave. Pursuant to the terms of Section 15.E.1 and 15.E.2, you are therefore administratively terminated from United Airlines effective with the date of this letter and you have been removed from the United Airlines Flight Attendant System Seniority List.

Please return the following items within 72 hours of receipt of this letter to the address below, or the following charges will be accessed:

- United Airlines Identification Badge $100.00
- Parking Badge or Parking Tags (if applicable) $50.00
- ISM/Purser Duty Free Key (if applicable) $50.00
- Cabin Key $7.00

Additionally, United Airlines may contact you regarding any outstanding balances you may owe the Company upon your release. If you have any questions, feel free to contact me.

Christine, I wish you the very best in your future endeavors.

Sincerely,

Aleta Stansberry- Supervisor Inflight Service
Aleta.Stansberry@United.com
IAHSW

cc: Personnel File U231679
Crystal Heckman -Base Director IAHSW
Sabrina Clark - Base Manager IAHSW
AFA – Denny Wheeling, LEC President dwheeling@unitedafa.org
AFA – Elizabeth Hibbard, LEC Grievance Chairperson ehibbard@unitedafa.org
FA.processing@united.com
ESC-adminsupport@united.com

UNITED

Christine Finger
[redacted]
September 29, 2016

Dear Christine Finger

As part of the Joint Collective Bargaining Agreement ("JCBA"), certain changes have been made to the Leaves of Absence, including, but not limited to the maximum length of some leaves. Please carefully read all of the information in this letter as the maximum length of your leave of absence may be impacted.

Under the terms of Section 15.E of the JCBA, the duration of a Medical Leave may not exceed the shorter of:

- the period of disability;
- 3 years, or
- The Flight Attendant's total length of active service.

In order to transition Flight Attendants from the terms of the individual contracts to the terms of the JCBA, Flight Attendants on a Medical Leave as of the start of the September bid month will be entitled to the following:

1. A Flight Attendant who has been on a Medical Leave of Absence leave longer than three (3) years or her/his total length of active service on the start of the September bid month will be provided 180 days' to qualify and return to work.
2. A Flight Attendant with more than three (3) years of service who has been on a Medical Leave of Absence for fewer than three (3) years will have her/his leave expire upon reaching the three-year maximum duration or 180 days following the start of the September bid month, whichever is longer.
3. A Flight Attendant with less than three (3) years of service will have her/his leave expire upon reaching /her/his total length of active service or 180 days following the start of the September bid month, whichever is longer.

Our records show that you are currently on a Medical Leave (occupational or non-occupational) and that your leave of absence began on 5/26/2016. Under the above referenced terms, your leave will expire on 5/26/2019.

If you do not return to work prior to the expiration of your Medical Leave, your employment will be administratively terminated in accordance with Section 15.E.2..

If you have questions about any of the information in this letter or about the process to return to work, please immediately contact your supervisor.

Sincerely,

Mark Kilayko
Managing Director-Crew Resources and Base Services





Highly Confidential

| TYPE OF LEAVE | DURATION | BID SENIORITYACCRUAL | PAY & VACATION LONGEVITY (STEPS) | VACATION & SICK PAY ACCRUAL | INSURANCE BENEFITS | PASS TRAVEL BENEFITS |
|---|---|---|---|---|---|---|
| MATERNITY | Up to 12 consecutive months | Duration | 270 days | None | Active rates for duration | Online passes for duration |
| PARENTAL | Up to 12 consecutive months | Duration | 180 days | None | Active rates for duration | Online passes for duration |
| ADOPTION | Up to 12 consecutive months | Duration | 180 days | None | Active rates for duration | Online passes for duration |
| FAMILY MEDICAL LEAVE | Up to 78 days in a 12-month period (block and/or intermittent) | Duration | Duration | Duration | Active rates for duration | As active employee for duration |





Highly Confidential

Message

**From**: Holt, Tammy [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=95A204543C874F1BAB201A71AF8EB511]
**Sent**: 6/29/2019 11:35:15 AM
**To**: Elizabeth Hibbard [ehibbard@unitedafa.org]
**CC**: Stansberry, Aleta [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=30CF3AE58DDA4CF88059195CC08B1A05]; Heckman, Crystal [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=9DD2C4BFAF6B435CB46DDB2DB0E0B745]
**Subject**: Re: Christine Finger 231679 Admin Terminations June 28 2019

Hi Elizabeth - I have family in town, but we can talk further on Monday...you may want to reach out to the MEC too.
Tammy
Sent from my iPhone

On Jun 29, 2019, at 10:57 AM, Elizabeth Hibbard <ehibbard@unitedafa.org> wrote:

> Tammy,
>
> Can we discuss this on the phone? I am shocked and confused. 832-465-7173
>
> Thank you-
>
> Elizabeth
>
> Sent from Elizabeth's iPhone
>
> On Jun 29, 2019, at 08:54, Holt, Tammy <Tammy.Holt@united.com> wrote:
>
>> Hi Elizabeth - that is correct, if she has begun the RTW process prior to the end of her Admin Term date, she can exceed the 3 year LOA date. This provides that she will not be termed on that date if she has initiated her RTW. She did and was not termed on the 3 year effective LOA date. That is what we discussed.
>>
>> Now she is unable to fly her trip because she said she re-injured her ankle (training is not flying). Since she failed to fly a trip, she has now exceeded her date and the Admin Term is processed.
>>
>> Tammy
>>
>> Sent from my iPhone
>>
>> On Jun 29, 2019, at 8:18 AM, Elizabeth Hibbard <ehibbard@unitedafa.org> wrote:
>>
>>> Aleta,
>>>
>>> That is not true as she was paid for the training. We were told by Tammy Holt and I believe that Tammy also verified this information. Our understanding was that as long as she had begun the return to work process by the 3 year mark, that she was safe. I believe that she also got this information in wrong. I am very concerned because we assisted her

with the RTW process to ensure she was not going to be administratively terminated.

Elizabeth

Sent from Elizabeth's iPhone

On Jun 28, 2019, at 20:04, Stansberry, Aleta <Aleta.Stansberry@united.com> wrote:

> Training is not active work.
>
> IAH Supervisor Base Administration
> Aleta.Stansberry@United.com
> Phone #: 281-553-1229
> FAX #:281-553-1224 and 1194
>
> ---
>
> **From:** Elizabeth Hibbard <ehibbard@unitedafa.org>
> **Sent:** Friday, June 28, 2019 7:58 PM
> **To:** Stansberry, Aleta <Aleta.Stansberry@united.com>
> **Subject:** Re: Christine Finger 231679 Admin Terminations June 28 2019
>
> Hi Aleta,
>
> Christine attended requal training and is back...so I'm very concerned about this letter. Please advise.
>
> Thank you-
>
> Elizabeth
>
> Sent from Elizabeth's iPhone
>
> On Jun 28, 2019, at 17:23, Stansberry, Aleta <Aleta.Stansberry@united.com> wrote:
>
>> Attached is the Admin termination letter issued today in accordance with Section 15.E 1&2 Leave of Absence, exceeded Max Leave 3 years.
>>
>> A copy of this letter has been placed in you P-file and Fedex to your home address on file. The following items need to be returned. Please contact me to make an appointment to return these items.
>>
>> - United Airlines Identification Badge $100.00
>> - Parking Badge or Parking Tags (if applicable) $50.00

- ISM/Purser Duty Free Key (if applicable) $50.00
- Cabin Key
  $7.00
- Link

United Airlines may contact you regarding any outstanding balances you may owe the Company upon your release. I you have any questions please feel free to contact me.

IAH Supervisor Base Administration
Aleta.Stansberry@United.com
Phone #: 281-553-1229
FAX #:281-553-1224 and 1194

<Christine Finger 231679 Admin term June 28 2019.pdf>

Message

**From**: Heckman, Crystal [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=9DD2C4BFAF6B435CB46DDB2DB0E0B745]
**Sent**: 7/12/2019 8:14:15 AM
**To**: Jarrett Beto [jbeto@unitedafa.org]
**CC**: FA.Processing [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=CBFBACAB5672496DB5B7790D832D8543]; ELIZABETH HIBBARD [ehibbard@unitedafa.org]; Cc: [grievance@unitedafa.org]; Celeste Peterson [cpafa@unitedafa.org]; Jordan, Brenda [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=9C90CF8EE42F4DE4880ED5A028BDAA09]; Stansberry, Aleta [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=30CF3AE58DDA4CF88059195CC08B1A05]; IAHSW Mgrs [/O=UNITED/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GRP-IAHSW-MGRS.UNITED.COM]; Holt, Tammy [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=95A204543C874F1BAB201A71AF8EB511]; Whittaker, Dean [/O=UNITED/OU=EXTERNAL (FYDIBOHF25SPDLT)/CN=RECIPIENTS/CN=68366BB413C14B39B29DA016A6F2906D]
**Subject**: RE: Request to Step 1- Finger, Christine **Revised**
**Attachments**: image003.png; image004.jpg

**Importance**: High

Good morning Jarrett,

I have received your request for a Step 1 Appeal in regards to the Administrative Discharge of Christine Finger. Unfortunately, I will have to reject the appeal as this would be a contract grievance. Please be advised I am unable to hear the appeal for Ms. Finger.

Best regards,

**Crystal Heckman**
Inflight Services Base Director

WIN AS ONE
**United**

United | George Bush Intercontinental Airport | United mail code IAHSW | P.O. Box 60307, Houston TX 77205
Tel (281) 553-1404 | united.com

---

**From:** Jarrett Beto <jbeto@unitedafa.org>
**Sent:** Wednesday, July 10, 2019 2:06 PM
**To:** Heckman, Crystal <Crystal.Heckman@united.com>
**Cc:** FA.Processing <FA.Processing@united.com>; ELIZABETH HIBBARD <ehibbard@unitedafa.org>; Jarrett Beto <jbeto@unitedafa.org>; Cc: <grievance@unitedafa.org>; Celeste Peterson <cpafa@unitedafa.org>; Jordan, Brenda <Brenda.Jordan@united.com>; Stansberry, Aleta <Aleta.Stansberry@united.com>
**Subject:** Request to Step 1- Finger, Christine **Revised**

Crystal,

Attached is the appeal for Christine Finger. Thanks!

Sincerely,

Jarrett Beto

Grievance Chairperson
Association of Flight Attendants
Council 42 Houston- United Airlines
855-423-2424 EXT 4

Confidentiality Note:

This e-mail and any attachments are confidential and may be protected by legal privilege. Be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify me immediately by returning it and deleting this copy from your system. Thank you for your cooperation.

June 8, 2022

Mr. Steven Bierig
Attorney-Arbitrator-Mediator
P.O. Box 438
Highland Park, IL 60035
Phone 847-236-103
Fax 847-236-1021
Email arb438@comcast.net

**RE: UAL and AFA GRIEVANCE Christine Finger NO 064-42-2-558-19 (Arb No 20-152)**

Mr. Bierig,

My name is Christine Finger and it has been almost a year to the date of the above referenced arbitration hearing on July 29, 2021. You issued a ruling on March 17, 2022.

First and foremost, I want to apologize to you, because as you will soon see, this was an extremely detailed undertaking and it took several weeks for me to prepare. Initially, I misspelled your name, and addressed you as Mr. Beirig. I am so truly sorry. I had already printed out some of the documentation, and could not go back in to correct all of the pages and try to meet my **90 day deadline of June 17, 2022.**

I have not had any legal representation with regards to what I'm forwarding to you, so I must submit everything for your review, "pro se." I appreciate any and all latitude.

Please accept this letter as my written request that **I wish to APPEAL** the arbitration award of **March 17, 2022 ARB . No. 20-152 (UAL and AFA Grievance NO 064-42-2-558-19)** As I do not have legal representation, I would like to also ask for an extension of the **90 day deadline set forth in the Illinois Uniform Arbitration Act in order to retain legal counsel.**

**"If you are dissatisfied with the arbitration award, you must file a motion to vacate, modify or correct the award within 90 days of receiving the award. 710 ILCS 5/12 (b) and 710 ILCS 5/13 (a).**

**Our judicial system is predicated on the rights of individuals to have their cases heard. It is my Due Process.**

**Due Process** has been described by eminent practitioners as being both a **precondition of arbitration** and the procedural cornerstone of the **rule of law.** "It serves as the shield protecting **fundamental procedural rights and was transposed into arbitration because arbitral tribunals issue binding decisions that determine parties' substantive rights. Such is the importance of due process in arbitration that its absence forms the basis for challenging**

**an award under national arbitration statutes and for resisting enforcement under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards 1958. (**The New York Convention)

The concept of **due process** affects: a tribunal's procedural discretion is largely unfettered **save for the requirements to observe due process, and a failure to do so is ONE OF ONLY A FEW WIDELY RECOGNIZED GROUNDS FOR SETTING ASIDE AN AWARD OR REFUSING TO ENFORCE IT.**

If **due process has been breached, a party may (1) seek redress before the court in the same jurisdiction as the seat of the arbitration to have the award REMITTED BACK TO THE TRIBUNAL FOR RECONSIDERATION, SET ASIDE OR ANNULLED** or (2) challenge the award at the enforcement stage in an appropriate jurisdiction.

I am humbly asking that **ARB NO 20-152 award be remitted back to the tribunal for your reconsideration, set aside or annulled based upon the findings set forth that my DUE PROCESS WAS BREACHED DURING MY SBA HEARING ON JULY 29, 2021 .**

**Due process, a course of legal proceedings according to rules and principles that have been established in a system of jurisprudence for the enforcement and protection of private rights. Most specifically:**

1. **It was my Due Process to have my case heard.**
2. A union owes a **Duty of Fair Representation** to all of the workers it represents. This duty **requires that the union act fairly, impartially, and without ill will or discrimination when pursuing a worker's grievance.**
3. **A Breach of Duty of Fair Representation occurs when the Union acts based on improper motivation or in a manner which is arbitrary, perfunctory, or inexcusably neglectful.**
4. **Preamble ABA :** Recognizes the importance of promulgating a **code of ethics that emphasizes the conduct, competency, knowledge, professionalism, integrity, objectivity and responsibility of each person qualifying as a candidate for certification.**
5. **ABA Model Rules of Professional Conduct are a set of rules and commentaries on the ethical and professional responsibilities of members of the legal profession in the United States.**
6. A lawyer owes a **Fiduciary duty to a client. The lawyer is obligated to take all actions and give all advice that will benefit the client and to use professional skill and energy to protect the client's interest. ABA Model Rule 2.** A lawyer acting as an advocate in an adjudicative proceeding has an obligation to **present the client's case with persuasive force.**
7. **ABA Model Rule 3.4: A lawyer may not "unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. " Dec. 29, 2005**

8. A person commits the federal crime of tampering with evidence when he or she knowingly alters, conceals, falsifies or destroys any record, document or tangible object with the intent to interfere with an investigation, possible investigation or other proceedings by the federal government. (18 U.S.C 1519)
9. Evidence: Includes any physical object, thing or material relevant to an actual or pending criminal or civil trial, investigation or legal proceedings. Documents, computers, photographs, emails,texts, hard drives, flash drives . This covers every kind of physical object that might be produced in any kind of legal trial, proceeding, or investigation. It also includes digital images and video recordings.
10. Actions that can trigger an "evidence tampering" charge include: " To ALTER, destroy, conceal or remove a thing or item with the purpose of hiding the truth or making an item unavailable for a proceeding or investigation.
11. Tampering with or Fabricating Evidence Offense covers ALTERING, destroying or concealing any evidence that has to do with an ongoing investigation, court proceeding.
12. To be convicted of Evidence Tampering, prosecution must prove beyond reasonable doubt that one "DELIBERATELY AND KNOWINGLY" concealed, destroyed, or otherwise ALTERED evidence."
13. Spoliation of Evidence is the INTENTIONAL, reckless or negligent withholding, hiding, ALTERING, fabricating or DESTROYING of evidence relative to a legal proceeding. Spoliation also occurs when someone with an obligation to preserve evidence with regards to a legal claim NEGLECTS to do so or intentionally fails to do so. The failure to preserve potentially relevant evidence for an ONGOING OR FORESEEABLE LITIGATION IS KNOWN AS SPOLIATION.
14. The party having control over the evidence had an obligation to preserve it when it was destroyed, OR ALTERED.
15. An ALTERATION is a modification made to a document by physical, chemical, or mechanical means including, but not limited to, OBLITERATIONS, additions, over writings or ERASURES.
16. Penalties for the unlawful or accidental removal, defacing, ALTERATION, or destruction of federal records or the attempt to do so, include a fine, imprisonment, or both. (18 U.S.C 641 and 2071)
17. ALTERATIONS include ERASURES, charring, indented writing, additional markings, as well as OBLITERATIONS WITH THE INTENT TO IMPAIR ITS VERITY, LEGIBILITY, or availability as evidence in an investigation or official proceeding.
18. The act of altering records is an example of document falsification, which is a white collar crime.
19. An EXHIBIT refers to a document or paper that is PRESENTED DURING A COURT HEARING or trial. It can also be given to : Persons taking deposition, Auditors, ARBITRATORS.
20. Professional Misconduct means unethical or illegal conduct by an attorney in contradiction with the established rules of professional conduct. It is usually punishable with disciplinary measures by his/her licensing body.

21. **The American Bar Associations' Model Rules of Professional Misconduct states that a lawyer "shall not knowingly make a false statement of material fact."**
22. **It is Professional Misconduct for a lawyer to (c ) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. This misconduct has resulted in a substantial injury to the client, the public, the legal system or the profession.**

**Details of the above allegations with regards to how they pertain to my Arbitration SBA Hearing 20-152 on July 29, 2021 are detailed in the pages forwarded to you, for your review and consideration, Mr. Bierig. I have also enclosed an Affidavit.**

**Most specifically:**

- **On July 12, 2021** I flew to ORD and met with Mr. Peter Swanson, AFA Attorney and Ms. Kim Johnson, AFA Grievance Chairperson @ AFA Headquarters, 6250 N. River Road, Rosemont, ILL 60018 for my initial prep meeting for my upcoming **SBA Hearing in 2 weeks, July 29, 2021.**
- Upon entering the conference room, Mr. Swanson proceeded to re- introduce himself, as we had only talked via phone and ZOOM twice. We had had one ZOOM meeting prior on **June 10, 2021,** a few emails and phone conversations prior to this scheduled trip. . I had received **email confirmation from Ms. Maria Torre on May 15, 2021** that my case (IAH-01172-2019) was confirmed to be heard before the SBA on **July 29, 2021. Peter Swanson, AFA Senior Staff Attorney will be the attorney assigned to your case and assisting Peter will be Kimberly Johnson, MEC -Grievance Vice Chairperson-Discipline.**
- **Mr. Michael Hickey, AFA Senior Staff Attorney had been my attorney on file, since October 18, 2019, and I never received notification from AFA that he was no longer my attorney representing me, or there was going to be substitution of counsel, until Maria Torre's email dated May 15, 2021, introducing Mr. Peter Swanson.**
- Mr. Swanson again stated that he was **AFA Attorney for our regional carriers (commuters) Most notably, Frontier Airlines, etc, and that he was not familiar with , nor worked with United's JCBA. He stressed that he has a lot of catching up to do, but he felt confident that along with Ms Johnson's assistance with regards to the JCBA, he would be up to speed and ready for our arbitration hearing.**
- Mr. Swanson and Ms. Johnson had their laptops in front of them, with sticky notes and he proceeded to tell me that they were going to need to ask me a lot of questions and will be typing as I speak,because other than the 4 page NOD ( which Ms. Johnson handed me a copy of at that time) **AFA had no internal documentation from the company with regards to my termination, ie. , employment history, work record, etc.** Mr. Swanson then asked if I had brought any information which he requested in his email on **July 2, 2021.** (which reads in part: In preparation for our meeting on July 12, we will need all the documentation you have regarding your communications ( or attempts to communicate) with United management between **June 17 and June 26,**

**2019.** This would include emails, phone logs, voice messages, notes of any oral conversations, etc),

- I proceeded to unzip my flight attendant roller board suitcase and presented **both Mr. Swanson and Ms Johnson with 2 white binders that I had painstakingly prepared, each contained 209 pages of documentation surrounding my termination, in chronological order and timeline.**
- **Most critical to these binders were "screenshots" that I was able to take from United's Crew Communications Systems (CCS) which was United's entire operational internal website. Each employee had a User ID # and PW to access.**
- **It is United's policy that immediately upon Termination, an Employee is DENIED ACCESS to CCS , and all employee records/ work history/ employment.** It was only by the "Grace of God" and an "oversight" on I believe Aleta Stanbury's behalf, that she did not deny that access, so I immediately went in and started taking screenshots of all the documentation. Soon thereafter, I could no longer access CCS.
- **These screenshots were invaluable because it had ACTUAL employment documentation of my RTW process, my Work History, Training, the OJI which occurred in DEN Training Dept, 2 points issued for "sick call" now as disciplinary step, MASTER SCHEDULES (which shows every transaction, contractual schedule changes,during the month completed by f/a) Reinstatement of my OJI and Sick Banks to 35:00 hours for pay, Documentation of my sick hours used for the pairing on June 26, which I had to call in "sick " for, Pay stubs for the month, Projected pay for my month of July flying. Internal comments on Reason for Termination by Aleta Stansbury.**
- **AND MOST ESPECIALLY, SCREENSHOTS OF THE 9 TRIP TRADES, CONTRACTUAL SCHEDULE CHANGES, I ENGAGED IN WITH UNITED'S FAST TEAM, STARTING ON JUNE 20, 2019 AFTER LEAVING DEN TRAINING DEPT. AND COMPLETION OF F/A REQUALIFICATION.**
- **These screenshots showed the dates of the TRIP TRADES I had engaged with from OPEN TIME ( not between flight attendant-to-flight attendant)) It showed the date, the pairing #, the flight #s, and broke down our schedule by flight and hour/ time on ground,the CREW LISTS PER THEIR POSITIONS, and even Hotel Layover Information. Time of Layover, and Time of Total Pay for Trip Hours, and Per Diem.**
- This binder also contained **call logs** from the moment I left DEN Training Dept, realizing my ankle was sprained and the attempts to call Inflight, FAST Team, my Supervisor, Dominic Cordova; Aleta Stansbury, IAH Inflight Base Administrative Secy; Reasonable Accommodation Process Dept; Sedgwick , United's TPA for OJI: and **emails addressed to the above. Along with LOA handbooks, WC handbooks, OJI handbooks per United's JCBA.** There was also an 80 page letter I had written Mr. Bob Krabbe with all of the above documentation, on **July 15, 2019** pleading for my job back.
- Mr. Swanson and Ms. Johnson stated they were in "shock " and Mr. Swanson said he wasn't expecting this, and had never seen anything like it or anyone be so prepared.
- Also, during this initial meeting, Mr. Swanson and Ms. Johnson asked me if I had made any "social media" posts regarding United or my termination. I told them that the only

5

posts I ever made were during **June of 2019** on my personal FB page. Mr. Swanson and Ms. Johnson asked to see them and I told them I didn't even know how to go that far back on FB. (almost 2 years to the date.) Ms. Johnson then asked to see my phone and I handed it to her across the table. She found them and handed my phone to Mr. Swanson. Mr. Swanson scrolled through the 2 week posts that were from while I attended REQUAL Training in DEN. He told Mr. Johnson " I don't have any problem with these, as they're all extremely flattering and praiseworthy. It's like a United campaign !" He handed my phone back to Ms. Johnson and she scrolled through and read them. She told Mr. Swanson that she thought they should be **deleted.** Again, Mr. Swanson told her he didn't have any issues/ problems with them. They were all positive. They went back and forth discussing the posts for a moment, and then….

- Next thing I know Ms. Johnson says, **" I'm deleting them anyway." And within a few minutes, she says, "DONE" and hands me back my phone stating they're DELETED.** I remember being extremely sad, because these were a milestone and happy memories of finally being able to return to work after fighting so hard to get back . Even though now, after being fired, they were bittersweet.- **I knew they were gone forever.**

- He also stated again, that because he wasn't **familiar with United's JCBA and work rules, he was going to have to immerse himself of the weekend and my notebook binder and that he had a lot of work to do.**
- **I asked Mr. Swanson what about putting in for a Continuance, as MY SBA HEARING WAS 2 WEEKS AWAY, and he was just now being assigned to take over my case.**
- **Mr. Swanson stated that "once arbitration has been scheduled, AFA would not cancel an arbitration or put in for a continuance, because they were so backed up from COVID.** Mr. Swanson once again, reassured me he would be prepared.

**ABA MODEL RULE 1.1 : A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, THOROUGHNESS AND PREPARATION REASONABLY NECESSARY FOR THE REPRESENTATION.**

I am not certain of when Mr. Peter Swanson was "assigned to my grievance." The last time I had any communication with Mr. Michael Hickey, my assigned AFA attorney was **February 8, 2021. I was blindsided on May 18, 2021 when Maria Torre emailed me stating that Mr. Peter Swanson is now assigned to my case. I was never told by AFA why the substitution of counsel, however, I believed it was because of the contentious and outspoken conflict I had with regards to Mr. Ken Diaz ( and ultimately Mr. Michael Hickey, when I pressed for answers) about the lies Ken Diaz told me surrounding my NOD, going all the way back to October 2019. Mr. Diaz told me he had pulled my NOD on October 17, 2019 from being heard at the DRChearing from Maria Torre and was going to hand walk my case through to mediation or arbitration, personally. On December 20, 2019**

6

**last email I received from Ken Diaz confirmed Michael Hickey was waiting on medical records, once received , WE WILL SCHEDULED YOU TO COME TO OUR OFFICE IN ORD SO WE CAN PLAN FOR YOUR CASE.**

**I never heard from Mr. Ken Diaz again, from December 20, 2019 , up until this day, June 8, 2022.**

**February 3, 2021, Mr. Michael Hickey confirmed in our federal lawsuit that my NOD ( Notice of Dispute) is and ALWAYS HAS BEEN awaiting a decision from the DRC. It was still active, and had never been pulled.**

**I continued to press Mr. Hickey / AFA-MEC / Ken Diaz for answers and transparency. Instead, I received notification of : Change in Representation on May 18, 2021.**

**Mr. Swanson had only approximately 6 weeks to prepare for my SBA hearing on July 29, 2021. This, in conjunction with his other "legal responsibilities" and contractual obligations he told me he had with upcoming hearings already scheduled for some of his Frontier flight attendants.**
**Approximately 4 ZOOM calls and 2 SBA hearing prep meetings, ONE being the day before my SBA hearing, July 28, 2021, were the only interaction I had with Mr. Swanson.**

**SBA PREP MEETING ON JULY 28, 2021**

During this pre-arbitration meeting on **July 28, 2021,** with Mr. Swanson and Ms Johnson, it was extremely disorganized **with none of the documents prepared as Exhibits, for me to go over.**We were trying to sort through the paperwork as the meeting progressed and Mr. Swanson would present apage to me, and then put a sticky note on it. He would then pass the page to Ms. Johnson., who was also placing sticky notes on them. Mr. Swanson kept telling Ms. Johnson and Maria Torre who would come in and go out of the conference room, grabbing documents that had been "**slated for Exhibits with the colored sticky notes"** that he was going to have to sort through them all again that evening and make final determinations. **To the best of my recollection we slated approximately 40-50 pages to be entered as Exhibits.** Again, I have not read the transcript, and I do not have access to how many **exhibits were entered during my SBA hearing and his direct examination. I am estimating there were around 20 ( from recollection)**

**Many of the exhibits prepared and referenced the day before the SBA hearing, July 28, 2021 were not presented to me. There were a lot of critical pages missing, most critical were the entire JULY schedule showing pairings which I had screenshot and even enclosed again with the FedEx box that had been overnighted on July 26, 2021, when Peter asked me to send EVERYTHING I HAD AND ALL ORIGINALS TO AFA.**

7

**Most notably, it was during this pre-arbitration meeting, that all of my documents on July 28, 2021 still had all of my handwritten notes and documentation on them. When I left the AFA office that afternoon and had finished our prep meeting, they all had been presented and reviewed with me, as such. They were in the original form with which I had presented them in the binders to AFA.**

**These were SIGNIFICANT HANDWRITTEN NOTES ON EACH PAGE. NOTATIONS ,AND REFERENCES THAT WERE FACT BUILDING FOR MY CASE. Conversations, Times, People, Arguments of Dispute, and Arguments/ Documentation that Evidenced my case development. HANDWRITTEN NOTES THAT I HAD PAINSTAKINGLY DOCUMENTED OVER THE COURSE OF 2 YEARS TO SUBSTANTIATE FACTS SURROUNDING MY CASE.**

**This notation of my "handwriting on my documents" is referenced in one of the exhibits that Ms. Cohen presented to me during cross examination ( from an 80 page letter that I had written Mr. Bob Krabbe begging for my job in 2019)**
**Ms. Cohen asked me during her "cross exam" as I received the exhibit, "Do I recognize this document, and is the handwriting on this document mine?" I answered , "Yes"**
(Again, I have not read the transcript for exact wording of Ms. Cohen)

**I left all my documents, (except for my copy of my white binder) copies and originals with Mr. Swanson, Ms. Johnson and Maria Torre, which were to be entered as EXHIBITS IN A LEGAL PROCEEDING the next day.**

**During Direct examination, I was given a few documents that referenced the paperwork I had received during my RTW interview with my Supervisor, Mr. Dominic Cordova.**
**I read from then, as Mr. Swanson asked.**

**However, it was when I was asked to read the next documents of my Work History. I recall "going on record" that "I CAN'T EVEN READ THIS, AND THEY'RE MY DOCUMENTS"**
**I was totally confused, as they were all so "FADED AND WHITEWASHED OUT". I REALIZED AT THAT MOMENT THAT AFA-MEC, Mr. Peter Swanson, Ms Johnson and Maria Torre had ALTERED MY DOCUMENTS**
**I looked over at the 3 of them, and repeated, "I can't even read these." I was in SHOCK. I FELT SABOTAGED AND UNSETTLED. WHY WOULD THEY DELETE ALL OF MY CRITICAL INFORMATION? No one looked at me, except Maria Torre looked up quickly and shook her head no and then looked back down. I continued to try and struggle to make out the "discipline points assigned" Ms. Aleta Stansbury's reason for termination. "Did not fly a trip." The June pairing on June 26th, 2021.**

**It is my testimony and statement of fact that by DELETING, ALTERING, AND OBLITERATING MY PAPERWORK SUBMITTED AS EVIDENCE TO BE USED AS EXHIBITS IN A LEGAL PROCEEDING, THE NIGHT BEFORE, THAT AFA VIOLATED MY DUE PROCESS OF LAW.**

ABA Model Rule 3:4 A lawyer may not "unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. Dec. 29, 2005

A person commits the federal crime of "tampering with evidence" when he or she KNOWINGLY ALTERS, conceals, falsifies or destroys ANY RECORD, DOCUMENT OR TANGIBLE OBJECT, with the INTENT to interfere with an investigation, possible investigation, or other proceedings by the federal government. (18 USC 1519)

EVIDENCE includes any physical object, thing or material relevant to AN ACTUAL OR PENDING CRIMINAL OR CIVIL TRIAL, INVESTIGATION OR LEGAL PROCEEDINGS.

TAMPERING WITH EVIDENCE , FABRICATING EVIDENCE OFFENSE includes: to ALTER, destroy, conceal or remove a thing or item with the purpose of hiding the truth or MAKING AN ITEM UNAVAILABLE FOR A PROCEEDING OR INVESTIGATION.

SPOLIATION OF EVIDENCE is the INTENTIONAL, reckless or negligent withholding, hiding, ALTERING, fabricating or destroying of evidence RELEVANT TO A LEGAL PROCEEDING.

The failure to preserve potentially relevant evidence for an ongoing or foreseeable litigation is known as Spoliation. The party having control over the evidence had an obligation to preserve it when it was destroyed OR ALTERED.

Attorney Misconduct means unethical or illegal conduct by an attorney in contradiction with the established rules of professional conduct.

I believe my AFA attorney Mr. Peter Swanson and AFA MEC Officers Ms. Kim Johnson and Maria Torre are guilty of unethical and illegal conduct.

I believe that they DELIBERATELY AND KNOWINGLY ALTERED DOCUMENTS PRESERVED FOR A LEGAL HEARING THE NIGHT BEFORE.

I believe that their actions of ALTERING,DEFACING, DELETING, ERASING AND OBLITERATING MY DOCUMENTS, as WELL AS WITHHOLDING OF DOCUMENTS submitted as Exhibits, caused substantial damage to my Case .

I BELIEVE MY RIGHT TO DUE PROCESS WAS VIOLATED .

MY DUE PROCESS WAS BREACHED BY AFA-MEC AND MR. SWANSON'S REPRESENTATION.

**I AM ASKING TO HAVE THE AWARD REMITTED BACK TO YOU, THE TRIBUNAL FOR RECONSIDERATION, TO BE SET ASIDE OR ANNULLED BASED UPON THE INFORMATION PRESENTED IN THESE DOCUMENTS.**

**BECAUSE OF THE ABOVE REFERENCED VIOLATIONS OF MY DUE PROCESS OF LAW, BY AFA-MEC AND ITS REPRESENTATIVES, I WISH TO APPEAL THE RULING OF ARB AWARD NO-20-152 . i WISH TO SUBMIT THIS MOTION TO VACATE, MODIFY OR CORRECT THE AWARD WITHIN 90 DAYS OF RECEIVING THE AWARD. (MARCH 17, 2022) 710 ILCS 5/12 (b) and 710 (a)**

**I humbly submit all of the following to you, for your consideration.**

I have also contacted the **Attorney Registration and Disciplinary Commission of Illinois. Their offices are closed due to COVID. (217) 525-5297 (800) 922 8757. P.O BOX 1330, Springfield, ILL 62706-1330.**

**I will be mailing a copy of all of this paperwork, and filing a formal complaint against Mr. Peter Swanson for his conduct, to the above address, as FEDEX does not deliver to PO Boxes.**

**I have prepared "hard copies" for you, Mr. Swanson, and Ms. Cohen and will FEDEX or mail them to you, at your notification of a physical address, you'd like me to send them to. I'm sorry to send all of this to you via scan email, but the only address I had for you was also a POBox .**

**I will not be silenced, Mr.Bierig. I will not have all of this misconduct/ wrongdoing/ lies covered up.**
**I am broken. But, I will not give up.**
**I leave this with you. Please ensure justice and my Due Process is restored.**

**A FANATIC IS A MAN THAT DOES WHAT HE THINKS THE LORD WOULD DO IF HE KNEW THE FACTS OF THE CASE. –Finely Peter Dunne**

**Respectfully submitted,**

**FANATIC,**
**Christine D. Finger 1Ladyfinger@gmail.com**

10

# Possible claim number: 30192905849-0001~~Peer review/ PLN 11 faxed to PTP

Subject: 30192905849-0001~~Peer review/ PLN 11 faxed to PTP
From: Campbell, Aryn <Aryn.Campbell@sedgwick.com>
To: Dropfilemedicalvocational <Dropfilemedicalvocational@sedgwicksir.com>
Date and Time: 3/15/2021 2:33:40 PM
CC:

**From:** Campbell, Aryn
**Sent:** Monday, March 15, 2021 1:33 PM
**To:** 'Dr. Varner (Business Fax)_'
**Subject:** Disability/Extent of Injury Dispute - PLN 11 30192905849-0001 - FINGER, CHRISTINE - 06/16/2019

Please see the attached peer review and PLN 11 disputing extent of injury for Christine Finger. Please advise when release from care and MMI can be anticipated.

**Aryn Campbell** | Claims Representative

**Sedgwick**

EMAIL Aryn.Campbell@Sedgwick.com

DIRECT 972-372-6150
www.sedgwick.comCaringcounts®

genex

**Uma Erard, DO**
P.O. Box 707
Schertz, TX 78154
800-455-4948

**Date:** 03/11/2021

**Claim Number:** 30192905849-0001
**RE:** Christine Finger
**Date of Injury:** 06/16/2019
**GENEX Case #:** TD0VCN

**Description of Injury:**
The claimant is a now 61-year-old female who was exiting a mock aircraft on 06/16/2019 and fell, injuring her left ankle.

**Medical Records Reviewed:**

1) 04/08/2016, MRI Lumbar Spine, Jack Baker, MD
2) 04/08/2016, MRI Left Hip, Jack Baker, MD
3) 08/22/2019, Orthopedics Letter, Kevin Varner, MD
4) 08/23/2019, E-Mail, Christine Finger
5) 09/10/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
6) 09/16/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
7) 09/18/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
8) 09/20/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
9) 09/25/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
10) 09/27/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
11) 10/09/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT
12) 10/11/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

13) 10/16/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

14) 10/23/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

15) 10/25/2019 Orthopedic Consultation Letter, Kevin Varner, MD

16) 10/30/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

17) 11/01/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

18) 11/04/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

19) 11/08/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

20) 11/11/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

21) 11/15/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

22) 11/20/2019, Physical Therapy Evaluation, Leisa Rajotte, MPT

23) 01/27/2020, Physical Therapy Evaluation, Leisa Rajotte, MPT

24) 02/01/2020, MRI Left ankle, Spencer Chang, MD

25) 02/03/2020, Physical Therapy Evaluation, Leisa Rajotte, MPT

26) 02/28/2020, Physical Therapy Evaluation, Leisa Rajotte, MPT

27) 03/02/2020, Physical Therapy Evaluation, Leisa Rajotte, MPT

28) 03/11/2020, Physical Therapy Evaluation, Leisa Rajotte, MPT

29) 03/13/2020, Physical Therapy Evaluation, Leisa Rajotte, MPT

30) 06/12/2020, Orthopedic Evaluation, Steven Perez, PA

31) 06/29/2020, Physical Therapy Evaluation, Jennifer Joseph, DPT

32) 07/02/2020, Physical Therapy Evaluation, Jennifer Joseph, DPT

33) 07/07/2020, Work Note, Kevin Varner, MD

34) 08/14/2020, Orthopedic Evaluation, Steven Perez, PA

35) 08/14/2020, Work Status Report, Steven Perez, PA

36) 01/21/2021, MRI Left Lower Extremity, Devon Divito, MD

**Summary:** The claimant is a now 61-year-old female with an occupational claim from 06/16/2019. The mechanism of injury is detailed as the claimant was exiting a mock aircraft on 06/16/2019 and fell, injuring her left ankle.

On 04/08/2016, the claimant had an MRI of the lumbar spine, which showed a posterior and rightward disc protrusion of 4 mm causing foramina stenosis (right greater than left) at L3-L4, and a posterior disc bulge measuring 2.5 mm without stenosis at levels L4-L5.

On 04/08/2016, the claimant had an MRI of the left hip that demonstrated minimal joint effusion and fraying and irregularity of the anterior superior labrum with suggestion of a femoral acetabular impingement. There was a mild to moderate tear of the inferior labrum and articular cartilage.

On 08/22/2019, the claimant had an Orthopedics Letter which stated she had a consultation that day and was referred for physical therapy with a diagnosis of metatarsalgia, hammertoes of the second and third toes and left foot contusion in 2014, left deep perineal neuritis, possible anterior tarsal tunnel, left gastrocnemius contracture and possible left anterior ankle cyst over the flexor digitorum longus tendon.

On 08/23/2019, the claimant sent an e-mail to document her swelling of her ankle.

On 09/10/2019, the claimant had a physical therapy evaluation which demonstrated pain, weakness, and decreased range of motion with decreased tolerance to functional activities.

On 09/16/2019, the claimant had a physical therapy evaluation which demonstrated pain, weakness, and decreased range of motion with decreased tolerance to functional activities.

On 09/18/2019, the claimant had a physical therapy evaluation which demonstrated improvement in her ability to bear weight on the left lower extremity. She still had decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 09/20/2019, the claimant had a physical therapy evaluation with decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving. There was documented progress of improved functional tolerance.

On 09/25/2019, the claimant had a physical therapy evaluation with decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 09/27/2019, the claimant had a physical therapy evaluation which demonstrated decreased antalgic with gait. She had decreased range of motion affecting functional

activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 10/09/2019, the claimant had a physical therapy evaluation which demonstrated significant improvements with gait and decrease in pain. Problems still included decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 10/11/2019, the claimant had a physical therapy evaluation which reported decreased pain and improved ankle joint mobility and dorsiflexion. Problems included decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 10/16/2019, the claimant had a physical therapy evaluation which reported steady progress and relief for continued problems of decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 10/23/2019, the claimant had a physical therapy evaluation which reported excellent progress for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 10/25/2019 the claimant had an Orthopedic Consultation Letter stating that she should complete the remaining ten physical therapy sessions and return for reevaluation of her left ankle injury.

On 10/30/2019, the claimant had a physical therapy evaluation reporting decreased pain for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 11/01/2019, the claimant had a physical therapy evaluation for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 11/04/2019, the claimant had a physical therapy evaluation and reported tightness of the joint for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 11/08/2019, the claimant had a physical therapy evaluation which reported claimant having difficulty with prolonged weight bearing for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 11/11/2019, the claimant had a physical therapy evaluation reporting improved functional activity tolerance without an increase in pain. Her problems include decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 11/15/2019, the claimant had a physical therapy evaluation which noted steady progress for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 11/20/2019, the claimant had a physical therapy evaluation, and presented with redness and inflammation but improved joint mobility. Her problems included decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 01/27/2020, the claimant had a physical therapy evaluation to begin another course of therapy for decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 02/01/2020, the claimant had an MRI left ankle showing edema in the lager fat pad indicating tendinitis with mild Achilles paratenonitis.

On 02/03/2020, the claimant had a physical therapy evaluation and tolerated 25% weight bearing and continued therapy for decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 02/28/2020, the claimant had a physical therapy evaluation for decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 03/02/2020, the claimant had a physical therapy evaluation decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 03/11/2020, the claimant had a physical therapy evaluation. Decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 03/13/2020, the claimant had a physical therapy evaluation which demonstrated improved ankle mobility. She continued treatment for decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 06/12/2020, the claimant had an orthopedic evaluation for follow up for a left ankle sprain. Her symptoms were stable but also included numbness in her ankle. On

examination she has a hammertoe of her second and third toe at the proximal interphalangeal joints. There was 5 degrees of dorsiflexion at the ankle joint when the knee is flexed, and some dysesthesia at the anterior ankle. There was tenderness along the insertional Achilles tendon and thickening at the non-insertional portion. She also has tenderness at the anterior ankle. Voltaren gel was recommended as well as continuation of therapy.

On 06/29/2020, the claimant had a physical therapy evaluation with decreased tenderness and improvement with gait mechanics and continued treatment for her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 07/02/2020, the claimant had a physical therapy evaluation with improvement in range of motion from her decreased range of motion affecting functional activities, decreased stride length, and decreased tolerance to functional activities such as walking, sitting, or driving.

On 07/07/2020, the claimant had a Work Note stating she was still off work as of 07/07/2020.

On 08/14/2020, the claimant had an orthopedic evaluation for follow up for her left ankle complaining of toe cramping, pain in the bottom of her foot and numbness on the top of her foot. On physical exam it was noted to have second and third hammertoe, 10 degrees of dorsiflexion when the knee was flexed, and neutral dorsiflexion when knee is in extension, tenderness at the 2nd webspace, and tenderness at the insertion of the Achilles tendon. MRI and nerve conduction studies were recommended at this time.

On 08/14/2020, the claimant had a Work Status Report stating that she could return to work without restrictions.

On 01/21/2021, the claimant had an MRI left lower extremity demonstrating acute on chronic sesamoiditis, mild hallux metatarsophalangeal and hallux metatarsal sesamoids joint osteoarthritis and chondrosis with degenerative subchondral cystic changes in the first metatarsal.

**Questions:**

**1. Please identify the specific diagnoses that the alleged work-related incident was a substantial factor in bringing about, without which such conditions would not have occurred? Please explain your opinion.**

The specific diagnoses that the alleged work-related incident was a substantial factor in bringing about, without which such conditions would not have occurred is a left ankle sprain and gastrocnemius contracture based on subjective and objective findings on physical exam. The claimant reported swelling, pain and weakness which was supported by objective findings on exam of decreased strength and weakness, as well as decreased range of motion and gait deviations which are all consistent with ankle sprain. Limited ankle dorsiflexion that improves with knee flexion is consistent with contracture.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**2. Please identify all of the specific diagnoses or conditions from which the claimant currently suffers. (Please specifically address ALL of the findings in the MRI/diagnostic testing, if applicable.) Of those diagnoses or conditions, was the alleged work-related incident a substantial factor in bringing about any of the diagnoses or conditions, without which they would not have occurred? If so, please identify those conditions. In responding to this question, please explain your opinion, including explaining why the diagnosis or condition is or is not related to the work-related incident as well as addressing other probable causes of the diagnosis or condition.**
The claimant suffers from second and third hammertoes, chronic sesamoiditis, neuroma of the second and third webspace, left peroineal neuritis, anterior tarsal tunnel syndrome, left anterior ankle cyst, Achilles' tendonitis, left ankle sprain, and gastrocnemius contracture.

The work-related incident was a substantial factor in the left ankle sprain and gastrocnemius contracture, secondary to conditioning, or immobilization related to the work-related sprain. Thus, the work-related mechanism of injury caused the left ankle sprain and the gastrocnemius contracture.

The second and third hammertoes, chronic sesamoiditis, neuroma of the second and third webspace, left peroineal neuritis, anterior tarsal tunnel syndrome, left anterior ankle cyst, and Achilles' tendonitis are chronic and degenerative in nature. These conditions occur over time due to aging, everyday wear and tear and overuse.

The 01/21/2021 MRI left lower extremity findings included: acute on chronic sesamoiditis, mild hallux metatarsophalangeal and hallux metatarsal sesamoids joint osteoarthritis and chondrosis with degenerative subchondral cystic changes in the first metatarsal. None of these findings are causally related to the work-related injury that took place on 06/16/2019.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**3. Did the compensable work injury of 06/06/2019 exacerbate, accelerate, or in any way worsen the claimant's pre-existing condition(s)? If yes, what conditions were exacerbated and to what extent?**
The injury on 06/16/2019 could plausibly have caused a temporary flare-up/exacerbation of the pre-existing chronic and degenerative changes to the left foot/ankle. The inflammation and edema associated with the sprain injury caused a flare-up of the underlying chronic and degenerative changes. There is no evidence of

any permanent worsening of the pre-existing conditions due to the work injury. Any exacerbation would have long since reached resolution at this juncture now greater than 1 year postdate of injury.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**4. Is the current medical treatment to date reasonable, necessary, and appropriate for the compensable injury?**
The medical treatment rendered consisting of physical therapy, medications, activity/work modifications, and routine follow up office visits, and imaging were reasonable and appropriate for the work-related injury. However, the most recent office visits is from August 2020, which is near 7 months ago. There is no indication of what if any current treatment is being rendered to the clamant aside for the most recent MRI, which showed findings unrelated to the 06/16/2019. There are no objective examination findings detailed to show what the claimant's current functional or medical status is, and if there are deficits, are the deficits consistent with the gastrocnemius contracture. Without updated objective information, it cannot be definitively determined that any current medical treatment is reasonable, appropriate or necessary for the compensable injury.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**5. To aid in formulating a possible treatment plan and possible treatment agreement, under the appropriate treatment guidelines (ODG) what future medical care would be reasonable and necessary to treat the compensable injury or any aggravation/ exacerbation?**
No future treatment is supported specific to the work-related sprain based on the available records.

The most recent office visits is from August 2020, which is near 7 months ago. There is no indication of what if any current treatment is being rendered to the clamant aside for the most recent MRI, which showed findings unrelated to the 06/16/2019. There are no objective examination findings detailed to show what the claimant's current functional or medical status is, and if there are deficits, are the deficits consistent with the gastrocnemius contracture. Without updated objective information, it cannot be definitively determined that any current medical treatment is reasonable, appropriate or necessary for the compensable injury. The compensable sprain would have resolved at this juncture.

if there are continued deficits consistent with this contracture, then surgical recession is supported. If surgery is deemed necessary then 3-4 month postoperative recovery

period is supported with postoperative physical therapy, office visits, NSAID use for pain and inflammation.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**6. What is the anticipated recovery time for the compensable injury?**
The compensable sprain would have resolved at this juncture. Based on the ODG, sprains have anticipated resolve with conservative care over 6-8 weeks post initiation of treatment following the injury. In this case, the claimant suffered a gastrocnemius contracture due immobility and deconditioning following the ankle sprain. This delayed resolution of the compensable injury. However, there is no objective evidence to suggest that the sprain is not resolved at this time. The gastrocnemius contracture is not detailed in any recent records. However, if there are continued deficits consistent with this contracture, then surgical recession is reaosnabela and supported. If surgery is deemed necessary then resolution is expected at 3-4 month postoperatively.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**7. Is the claimant's ongoing disability/inability to work related to the compensable injury? Please explain your opinion.**
No, the claimant's current complaints are neurologic in nature and are related to the neuromas demonstrated on MRI. The need for off work status, is opined due to non-cork related chronic and degenerative conditions to the foot/ankle a seen on MRI.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**8. What are the conditions that are compensable to the 08/03/2014 claim?**
Left peroneal neuritis, and anterior tarsal tunnel syndrome are compensable to the 08/03/2014 claim.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**9. Is any of the current treatment reasonable/related to the compensable injury from 08/03/2014?**

The most recent office visits is from August 2020, which is near 7 months ago. There is no indication of what if any current treatment is being rendered to the clamant aside for the most recent MRI, which showed chronic and degenerative findings. There are no objective examination findings detailed to show what the claimant's current functional or medical status is. However, it is opined that Her continued complaints of difficulty standing, and numbness are likely related to residual neuritis from her 2014 injury.
She also has neuromas in her 2nd and 3rd webspace and Achilles' tendonitis, which are all chronic conditions.

**References:**
Official Disability Guidelines (ODG), Treatment Index, 18th Edition (web), 2020, Ankle and Foot Chapter.

**Findings Related to Compensable Injury:**
Left ankle sprain.
Gastrocnemius contracture.

**Findings Unrelated to Compensable Injury:**
Neuroma.
Left perineal neuritis.
Anterior Tarsal Tunnel Syndrome.
Achilles' tendonitis.

**Conclusion:** The claimant is a now 61-year-old female flight attendant who suffered an alleged injury on 06/16/2019 to her left ankle. The specific diagnoses that the alleged work-related incident was a substantial factor in bringing about, without which such conditions would not have occurred is a left ankle sprain and gastrocnemius contracture based on subjective and objective findings on physical exam. The claimant reported swelling, pain and weakness which was supported by objective findings on exam of decreased strength and weakness, as well as decreased range of motion and gait deviations which are all consistent with ankle sprain. Limited ankle dorsiflexion that improves with knee flexion is consistent with contracture. Her continued complaints of difficulty standing, and numbness are likely related to residual neuritis from her 2014 injury. She also has neuromas in her 2nd and 3rd webspace and Achilles' tendonitis, which are all chronic conditions.

I attest that I hold appropriate licensure/credentials that typically manages the medical condition, procedure, treatment, or issues under review and maintain current knowledge to render a determination. I received my medical degree from Nova Southeastern University College of Osteopathic Medicine. I completed my Orthopedic Surgery Residency at Dwight D. Eisenhower Army Medical Center in Augusta, GA and my Foot and Ankle Surgery Fellowship at Harborview Medical Center in Seattle, WA. I hold active and unrestricted Michigan and Texas licenses. I have experience producing Peer Reviews supported by evidence-based medicine and have experience with worker's compensation claims. I am Board Certified in Orthopedic Surgery.

Uma Erard

Uma Erard, DO
Board of Orthopedic Surgery
License: 5101025448 MI
License: Q9010 TX

*Note to providers for Worker's Compensation cases under the jurisdiction of Texas: Official Disability Guidelines (ODG) and Pressley Reed Medical Disability Advisor disability guidelines are the primary sources used for this review along with other sources of evidence based literature, guidelines and standards, if necessary.*

*If a peer review results in a denial of care due to matters of liability, causation, compensability, relatedness, extent of injury or other administrative issues, you have the right to request dispute resolution through the Division of Workers Compensation by requesting a BRC, CCH or appeal panel consideration. This should be directed to the insurance carrier.*

*This report is a clinical assessment of documentation and the opinions are based on the information available. These opinions and/or recommendations do not constitute a determination for the purposes of utilization review nor should these opinions and/or recommendations be used to make a determination as to medical necessity without complying with applicable rules. Any approvals or denials of medical necessity must be processed by a formal utilization review as outlined in the adopted rules regarding Title 28 Texas Administrative Code Chapter 19, Subchapter U effective as of 2/20/13.*

======================================================================

Claim Number : 30192905849-0001 Date Loss : 06/16/2019
Client : 6925 - United Continental Holdings Inc
Account : 1534 - United Continental Holdings Inc
Unit : 7886 - IAHSW-FLT ATTENDNTS - IAHSW
Claimant : FINGER, CHRISTINE

======================================================================

------------------------------ TRANSACTION TOTALS ------------------------------

Total by
--------
Paycode: 102 Individual/Multiple
Provider: 0 0
Print Date Begin: ?
Print Date End: ?
Service Date Begin: ?
Service Date End: ?

| Pay Date | St. | Payee | Cd. | Amount | Check # | From | Thru |
|---|---|---|---|---|---|---|---|
| 03/18/2021 | SYS | CHRISTINE FINGE | 102 | 536.00 | 122900921 | 03/12/2021 | 03/15/2021 |
| 03/11/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122899302 | 03/05/2021 | 03/11/2021 |
| 03/04/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122897780 | 02/26/2021 | 03/04/2021 |
| 02/25/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122896394 | 02/19/2021 | 02/25/2021 |
| 02/18/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122894884 | 02/12/2021 | 02/18/2021 |
| 02/11/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122893347 | 02/05/2021 | 02/11/2021 |
| 02/04/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122891819 | 01/29/2021 | 02/04/2021 |
| 01/28/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 122889983 | 01/22/2021 | 01/28/2021 |
| 01/21/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 121645455 | 01/15/2021 | 01/21/2021 |
| 01/14/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 121644010 | 01/08/2021 | 01/14/2021 |
| 01/07/2021 | SYS | CHRISTINE FINGE | 102 | 938.00 | 121642403 | 01/01/2021 | 01/07/2021 |
| 12/31/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 121641122 | 12/25/2020 | 12/31/2020 |

12/23/2020 SYS CHRISTINE FINGE 102 938.00 121639561 12/18/2020
12/24/2020
12/17/2020 SYS CHRISTINE FINGE 102 938.00 121638330 12/11/2020
12/17/2020
12/10/2020 VSY CHRISTINE FINGE 102 -1,876.00 115962020 07/03/2020
07/16/2020
12/10/2020 VSY CHRISTINE FINGE 102 -1,876.00 115962020 08/21/2020
09/03/2020
12/10/2020 SYS CHRISTINE FINGE 102 938.00 121637004 12/04/2020
12/10/2020
12/10/2020 SYS CHRISTINE FINGE 102 3,752.00 121637005 07/03/2020
09/03/2020
12/03/2020 SYS CHRISTINE FINGE 102 938.00 121635504 11/27/2020
12/03/2020
11/25/2020 SYS CHRISTINE FINGE 102 938.00 121634242 11/20/2020
11/26/2020
11/19/2020 SYS CHRISTINE FINGE 102 938.00 121632953 11/13/2020
11/19/2020
11/12/2020 SYS CHRISTINE FINGE 102 938.00 121631418 11/06/2020
11/12/2020
11/05/2020 SYS CHRISTINE FINGE 102 938.00 121629867 10/30/2020
11/05/2020
10/29/2020 SYS CHRISTINE FINGE 102 938.00 121628285 10/23/2020
10/29/2020
10/22/2020 SYS CHRISTINE FINGE 102 938.00 121626864 10/16/2020
10/22/2020
10/15/2020 SYS CHRISTINE FINGE 102 938.00 121625503 10/09/2020
10/15/2020
10/09/2020 VSY CHRISTINE FINGE 102 -2,814.00 121624093 07/17/2020
08/06/2020
10/08/2020 VSY CHRISTINE FINGE 102 -938.00 115947187 07/17/2020
07/23/2020
10/08/2020 VSY CHRISTINE FINGE 102 -938.00 115948705 07/24/2020
07/30/2020
10/08/2020 SYS CHRISTINE FINGE 102 938.00 121624224 10/02/2020
10/08/2020
10/08/2020 SYS CHRISTINE FINGE 102 1,876.00 121624313 07/17/2020
07/30/2020
10/07/2020 SYS CHRISTINE FINGE 102 2,814.00 121624093 07/17/2020
08/06/2020
10/02/2020 VSY CHRISTINE FINGE 102 -938.00 115954879 08/21/2020
08/27/2020
10/02/2020 VSY CHRISTINE FINGE 102 -938.00 115956433 08/28/2020
09/03/2020
10/02/2020 SYS CHRISTINE FINGE 102 1,876.00 115962020 07/03/2020
07/16/2020
10/02/2020 SYS CHRISTINE FINGE 102 1,876.00 115962020 08/21/2020
09/03/2020
10/02/2020 SYS CHRISTINE FINGE 102 938.00 115962021 09/04/2020
09/10/2020
10/02/2020 SYS CHRISTINE FINGE 102 938.00 115962021 09/11/2020
09/17/2020
10/02/2020 SYS CHRISTINE FINGE 102 938.00 115962021 09/18/2020
09/24/2020

Pay Date   St. Payee           Cd.        Amount Check #     From
Thru
---------- --- --------------- ---   ----------- -------- ---------------
------


=========================================================================
======
Claim Number : 30192905849-0001                          Date Loss :
06/16/2019
Client       : 6925      - United Continental Holdings Inc
Account      : 1534      - United Continental Holdings Inc
Unit         : 7886      - IAHSW-FLT ATTENDNTS - IAHSW
Claimant     : FINGER, CHRISTINE
=========================================================================
======

------------------------------ TRANSACTION TOTALS -----------------------
------

| Pay Date | St. | Payee | Cd. | Amount | Check # | From | Thru |
|---|---|---|---|---|---|---|---|
| 10/02/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115962021 | 09/25/2020 | 10/01/2020 |
| 09/24/2020 | VSY | CHRISTINE FINGE | 102 | -938.00 | 115944094 | 07/03/2020 | 07/09/2020 |
| 09/24/2020 | VSY | CHRISTINE FINGE | 102 | -938.00 | 115945681 | 07/10/2020 | 07/16/2020 |
| 09/02/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115956433 | 08/28/2020 | 09/03/2020 |
| 08/26/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115954879 | 08/21/2020 | 08/27/2020 |
| 08/19/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115953367 | 08/14/2020 | 08/20/2020 |
| 08/12/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115951687 | 08/07/2020 | 08/13/2020 |
| 08/05/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115950156 | 07/31/2020 | 08/06/2020 |
| 07/29/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115948705 | 07/24/2020 | 07/30/2020 |
| 07/22/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115947187 | 07/17/2020 | 07/23/2020 |
| 07/15/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115945681 | 07/10/2020 | 07/16/2020 |
| 07/08/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115944094 | 07/03/2020 | 07/09/2020 |
| 07/01/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115942571 | 06/26/2020 | 07/02/2020 |
| 07/01/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115942572 | 06/19/2020 | 06/25/2020 |
| 06/17/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115939013 | 06/12/2020 | 06/18/2020 |
| 06/10/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 115937449 | 06/05/2020 | 06/11/2020 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 06/03/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 113218651 | 05/29/2020 | 06/04/2020 |
| 05/27/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 113217119 | 05/22/2020 | 05/28/2020 |
| 05/20/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 113215632 | 05/15/2020 | 05/21/2020 |
| 05/13/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112839363 | 05/08/2020 | 05/14/2020 |
| 05/06/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112837675 | 05/01/2020 | 05/07/2020 |
| 04/29/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112259571 | 04/24/2020 | 04/30/2020 |
| 04/22/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112257810 | 04/17/2020 | 04/23/2020 |
| 04/15/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112255414 | 04/10/2020 | 04/16/2020 |
| 04/08/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112253860 | 04/03/2020 | 04/09/2020 |
| 04/01/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112252387 | 03/27/2020 | 04/02/2020 |
| 03/25/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112250795 | 03/20/2020 | 03/26/2020 |
| 03/18/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112248880 | 03/13/2020 | 03/19/2020 |
| 03/11/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112246948 | 03/06/2020 | 03/12/2020 |
| 03/04/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112245107 | 02/28/2020 | 03/05/2020 |
| 02/26/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112243214 | 02/21/2020 | 02/27/2020 |
| 02/19/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112241150 | 02/14/2020 | 02/20/2020 |
| 02/18/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112240944 | 10/04/2019 | 10/10/2019 |
| 02/18/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112240945 | 10/11/2019 | 10/17/2019 |
| 02/12/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112239283 | 02/07/2020 | 02/13/2020 |
| 02/05/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112237134 | 01/31/2020 | 02/06/2020 |
| 02/03/2020 | VSY | CHRISTINE FINGE | 102 | -938.00 | 104745768 | 10/04/2019 | 10/10/2019 |
| 02/03/2020 | VSY | CHRISTINE FINGE | 102 | -938.00 | 104747621 | 10/11/2019 | 10/17/2019 |
| 01/29/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112235450 | 01/24/2020 | 01/30/2020 |
| 01/22/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112233814 | 01/17/2020 | 01/23/2020 |
| 01/15/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 112231973 | 01/10/2020 | 01/16/2020 |
| 01/08/2020 | SYS | CHRISTINE FINGE | 102 | 938.00 | 104770182 | 01/03/2020 | 01/09/2020 |
| 12/31/2019 | SYS | CHRISTINE FINGE | 102 | 938.00 | 104768124 | 12/27/2019 | 01/02/2020 |

| | | | | | |
|---|---|---|---|---|---|
| 12/24/2019 | SYS CHRISTINE FINGE 102 | 938.00 | 104766528 | 12/20/2019 | 12/26/2019 |
| 12/18/2019 | SYS CHRISTINE FINGE 102 | 938.00 | 104764994 | 12/13/2019 | 12/19/2019 |
| 12/11/2019 | SYS CHRISTINE FINGE 102 | 938.00 | 104763093 | 12/06/2019 | 12/12/2019 |
| 12/04/2019 | SYS CHRISTINE FINGE 102 | 938.00 | 104760845 | 11/29/2019 | 12/05/2019 |
| 11/27/2019 | SYS CHRISTINE FINGE 102 | 938.00 | 104759351 | 11/22/2019 | 11/28/2019 |

```
Pay Date   St. Payee           Cd.        Amount Check #     From
Thru
---------- --- --------------- ---   ----------- -------- ---------------
------

Date: 07/28/2021  1:41pm            User: shepherc              Page:
3
===========================================================================
======
Claim Number : 30192905849-0001                          Date Loss :
06/16/2019
Client       : 6925      - United Continental Holdings Inc
Account      : 1534      - United Continental Holdings Inc
Unit         : 7886      - IAHSW-FLT ATTENDNTS - IAHSW
Claimant     : FINGER, CHRISTINE
===========================================================================
======

------------------------------ TRANSACTION TOTALS -----------------------
------

11/20/2019 SYS CHRISTINE FINGE 102        938.00   104757141 11/15/2019
11/21/2019
11/13/2019 SYS CHRISTINE FINGE 102        938.00   104755351 11/08/2019
11/14/2019
11/06/2019 SYS CHRISTINE FINGE 102        938.00   104753440 11/01/2019
11/07/2019
10/30/2019 SYS CHRISTINE FINGE 102        938.00   104751494 10/25/2019
10/31/2019
10/23/2019 SYS CHRISTINE FINGE 102        938.00   104749641 10/18/2019
10/24/2019
10/16/2019 SYS CHRISTINE FINGE 102        938.00   104747621 10/11/2019
10/17/2019
10/09/2019 SYS CHRISTINE FINGE 102        938.00   104745768 10/04/2019
10/10/2019
10/02/2019 SYS CHRISTINE FINGE 102        938.00   104743842 09/27/2019
10/03/2019
09/25/2019 SYS CHRISTINE FINGE 102        938.00   101888048 09/20/2019
09/26/2019
09/18/2019 SYS CHRISTINE FINGE 102        938.00   101885798 09/13/2019
09/19/2019
09/11/2019 SYS CHRISTINE FINGE 102        938.00   101883751 09/06/2019
09/12/2019
09/05/2019 SYS CHRISTINE FINGE 102        938.00   101882919 08/23/2019
08/29/2019
09/05/2019 SYS CHRISTINE FINGE 102        938.00   101882920 08/30/2019
09/05/2019

Benefit Type                   Pay Code    Pay From      Pay Through
Benefit Total
------------------------------ ----------- ------------- ------------- --
-----------
```

| | | | | |
|---|---|---|---|---|
| Temporary Total Disability | 102 | 08/23/2019 | 03/15/2021 | 76,514.00 |

| | |
|---|---|
| Total Payments Found: | 100 |
| Payments to Date: | 76,514.00 |
| Scheduled: | 0.00 |
| Total 1st Party Deductibles: | 0.00 |
| Total Cost to Date: | 76,514.00 |

Totals By Category:

| | Indemnity | Medical | Expense | Totals |
|---|---|---|---|---|
| Paid: | 76,514.00 | 0.00 | 0.00 | 76,514.00 |
| Scheduled: | 0.00 | 0.00 | 0.00 | 0.00 |

UNITED

A STAR ALLIANCE MEMBER ™

October 14, 2008

**Letter of Decision**

**ORD 148-08**

Constance Hughes-Crozier
5580 La Jolla Blvd #511
La Jolla, CA 92037 USA

Sent via Federal Express

Dear Ms Hughes-Crozier:

On Wednesday, October 8, 2008 a review hearing was conducted at your request pursuant to the terms of 26.C.2 of the Agreement to review the facts surrounding your administrative separation from United Airlines. Present at the hearing, in addition to you, were Vicki Hammer on behalf of the Company and me, Robert Krabbe, acting as Hearing Officer.

After a brief review of the hearing process, the hearing was opened and you presented your facts in the case, followed by a presentation by the Company and a period of rebuttal for both sides. I will briefly review the facts presented by each side, along with relevant documents, followed by my decision.

At issue is whether you were improperly separated from United Airlines effective December 27, 2007 pursuant to the terms of 23.C of the Collective Bargaining Agreement.

**Grievant's Position**

You opened the hearing by presenting a number of exhibits, which I will chronicle separately. You indicated that you were separated on December 27, 2007 despite the fact that you had actually returned to work on the date specified in the written directive from the Company, October 17, 2007. You provided copies of the Absence Certificate (G-1) showing the medical release by your doctor.

You pointed out that according to the terms set out in the Leave of Absence packet, an individual must be back by the designated date of return by way of clearing medical, which you did. You also indicated that you completed all of the items on the return to work check list and thus returned to A1 status.

You also pointed out that once you were shown back on active status in the computer, things started to happen. You completed paperwork for pass travel deductions and even received a refund from ADP that was Company initiated, all because you were back to active status. You also received letters from the Company to foreign consulates indicating that you are a flight attendant and requesting that they issue you visas in order to fly into their country.

You also talked about what occurred when you attended re-qualification training. You were initially scheduled to attend training in November, which you did. While in training, you were not feeling well and went to Concentra to be seen, with the expectation that you would be seen and return to class in a relatively short amount of time. It took longer than anticipated at Concentra and, as a result, you missed too much class time so you needed to be rescheduled to attend another class in December.

You did complete training in December, however following class on December 21, you slipped and fell after leaving the AFA office, chipping your tooth, scratching your right thumb and knuckle and hitting your head. Despite your injuries, you completed training the next day and returned home. You indicated that as it was the weekend before the Christmas holiday and Christmas Eve was on Monday it was difficult to get an appointment to be seen. You got into the doctor as soon as you could, however until you were examined, the doctor was not willing to release you to fly. You indicated that you could have flown with just the broken tooth, however it was the neck and shoulder injury that were of concern.

Finally, you indicated that you worked very hard to be able to return to work. You were out as a result of an injury covered by Worker's Compensation. You "put off and put off" thumb surgery, but finally had it and worked very hard in physical therapy to rebuild and strengthen so that you could get full clearance to return to work because that's what you really wanted to do. You also indicated that you didn't know that there was the requirement to fly your first flight. You had never seen that any where in writing.

**Company Position**

You had been on voluntary furlough since January 31, 2003 and you were recalled from voluntary furlough on October 18, 2004. Due to a medical condition, you could not return to work and were placed on an extended furlough due to medical reasons beginning October 18, 2004.

The Company pointed out that per the Flight Attendant Agreement, Section 23 C. **"When leaves of absence are granted due to occupational or non-occupational illness or injury, a Flight Attendant shall retain and accrue seniority for a period not to exceed three (3) years.** Your three years began on the effective date of your recall, October 18, 2004.

The Company has a long-standing practice that certain criteria that must be met in order for a flight attendant to be returned to active status:

The first step is to be cleared by Company Medical. Based on the medical status form your October 15, 2007 Concentra visit, you were cleared by Medical effective October 15, 2007.

Once Medical notifies the Flight Attendant Service Center (FASC) that a flight attendant is cleared, the FASC begins the process to return to the flight attendant to active status. This process begins by placing the individual on an S7 status, as happened in your case. While this shows you as active in the system, this is not a true reflection of your status.

In order to meet regulatory requirements, including fingerprinting, Criminal History Record Check (CHRC) and visa application requirements, we need to be able to show that an individual is on an active status. This is not, however, reflective of the individual's actual status as this is

done prior to actually processing the fingerprints or requesting the CHRC, and is prior to any federal or company required training.
Once the individual is placed on S7 status, we begin to process the CHRC, visa applications and assess whether training is necessary. In your case, all of those things were done prior to your attending training in November.

It was determined that you required training and you were scheduled to attend in November, 2007, however you were unable to complete training as you became ill. You were subsequently scheduled to attending training beginning December 18, 2007.

Once training is completed, whether a flight attendant is awarded a line of flying (LOF) or required to contact Advanced Schedule Planning (ASP) to build a LOF, the expectation is for the flight attendant to return to work immediately.

The AFA and the Company have a long standing agreed upon past practice that in order for a flight attendant to be considered "active", the flight attendant must either fly an ID; stand a day as Reserve/Call in Reserve (RSV/CLLR), or exercise a contractual scheduling flexibility (WOP, GWOP, trip trade, etc.). As you called on sick leave (ONSL) for your CLLR day beginning December 27, 2007 which was you first assignment after training, you never returned to "active" status.

Since you never completed all of your return to work requirements as established by past practice between the Company and AFA, the Company had no choice but to separate you when you called ONSL for you December 27, 2007 assignment as you had already reached the maximum allowable time on a Medical Leave of Absence under Section 23.C.

**Decision**

I have carefully reviewed all of the documents provided by you, along with my notes from the hearing of both party's positions.

As presented in the hearing, the Company has a long standing practice of requiring Flight Attendants to either work their first scheduled trip upon completion of training, or exercise one of their contractual scheduling flexibilities (WOP, GWOP, trip trade, etc.) in order to return to active status. Further, this practice is both known and accepted by the Flight Attendant's bargaining representative, AFA.

The central point of your case is that no where does this practice appear in writing. Past practice, however, does not have to appear in writing to make it both enforceable and defensible. A "past practice" is nothing more than the way things have been done. Such practice does not have to be written down in a collective bargaining agreement, but can arise on the basis of regular, repeated action by management.

It is generally accepted that the existence of the following four factors will indicate that a past practice exists:

1. The practice was clear and applied consistently.
2. The practice was not a special, one-time benefit or meant at the time as an exception to a general rule.
3. Both the union and management knew the practice existed and management agreed with the practice or, at least, allowed it to occur.

4. The practice existed for a substantial period of time and occurred repeatedly.

In your case, all of these factors exist.

After careful consideration, I find that the Company acted properly when you were separated at the end of the maximum of three (3) years of Medical Leave of Absence, pursuant to the terms of 23.C of the Agreement, therefore the grievance is denied.

In the event that you are dissatisfied with this decision, a written appeal under the provision of Section 26.C.3 of the agreement may be made, within thirty (30) days, to the United Airlines Flight Attendant System Board of Adjustment.

Sincerely,

Robert T. Krabbe
Consultant, Labor Strategy

Cc: ORDSW – Tony Nicastro
WHQUN – Maria Hovanesian
WHQUN – Vicki Hammer

**ASSOCIATION of FLIGHT ATTENDANTS - CWA, AFL-CIO, CMI AIRLINES**

# GRIEVANCE FORM

Grievant(s) Name(s): Susanna Kato Date: 05March'17

Employee # U240499 Base: GUM AFA Grievance # 56-65-01-01-17

Address: P.O. BOX 22434, GMF BARRIGADA GUAM 96921

Phone: I) 671-646-1425 II) ______

E-Mail: mykittypop@gmail.com Initials: ______

By initialing above, the grievant authorizes the AFA to communicate with him/her by e-mail regarding this grievance.

Delivered to: Clarissa Perez Location: GUM Inflt
(Company Designee)

**Statement of Grievance:** (Include a brief statement of facts including **date of occurrence**.)

Susanna Kato was unfairly terminated on March 3rd. After traveling to the east coast, during winter season (a big difference from Guam's warm weather), she attended and passed the required training in Newark, and was on her way to returning to flying, as ordered by management. Unfortunately, because of the long travel, drastic change in weather/timezone and the stress of the training she undertook, Susanna became ill upon her return home. With a valid doctor's note, on Feb 21st, she was forced to call in sick for a reserve assignment. Her union reps REPEATEDLY asked local management for guidance if Susanna's sick call will be an issue w/ her return to work order. Such guidance was not made available at all before Feb 25th. On March 3rd, a meeting was called to issue Susanna an unfair administrative termination.

**Applicable Contract Section(s):** (State the specific contract section violated or other basis for grievance.)

Management's failure to give proper and timely guidance to employee. Rendering a harsh discipline without regard to extenuating circumstances, by not having a fair investigation prior (CMI CBA sec 20, new JCBA sec 23)

**Relief Sought:** (The AFA reserves the right to request all available remedies at any point during the grievance/SBA process.)

Cease and desist. Restore Susanna Kato in her flight attendant position immediately.

The grievant authorizes the Association of Flight Attendants – CWA, AFL-CIO to act as his/her designee in the disposition of this grievance and by so authorizing the grievance to be filed on his/her behalf, grants the AFA the right to obtain all information necessary to process the grievance.

Grievant's Signature: ______

Union Representative: (print) Jose C Torres (signature) ______

It is requested that copies of all correspondence related to this grievance be sent to the grievant and the Union Officer/Designee at the AFA Local Council or the ###AFA Master Executive Council (MEC address listed below).