**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

**CASE NO. 4:20-cv-04205**

**CHRISTINE FINGER,**

**Plaintiff, Pro Se**

**Vs.**

**UNITED AIRLINES, INC.,**

**Defendant**

**PLAINTIFF'S PRO SE RESPONSE IN OPPOSITION TO DEFENDANT RESTATED MOTION FOR SUMMARY JUDGMENT**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

**CASE NO. 4:20-cv-04205**

**CHRISTINE FINGER,**

**Plaintiff, Pro Se**

**Vs.**

**UNITED AIRLINES, INC.,**

**Defendant**

# PLAINTIFF'S PRO SE RESPONSE IN OPPOSITION TO DEFENDANT RESTATED MOTION FOR SUMMARY JUDGMENT

**Table of Contents**


TABLE OF AUTHORITIES ..................................................................... 3

III. SUMMARY JUDGMENT STANDARD ..................................................... 4

IV. STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ........................ 4

A. Credibility Conflict Regarding "Three More Days" Statement ........................ 4

B. Discretionary vs. Automatic Nature of Termination ...................................... 5

C. Misclassification of Injury: OJI vs. "Sick Call" ............................................. 5

D. Rapid Escalation and Absence of Investigation ............................................ 5

E. Post-Termination Record Modifications and "Cat's Paw" Influence ................ 6

V. THE RAILWAY LABOR ACT DOES NOT BAR STATUTORY CLAIMS ............... 6

VI. FINGER STATES VALID CLAIMS FOR AGE DISCRIMINATION ..................... 7

Finger Can Create a Fact Issue as to a Comparator. ......................................... 7

B. Finger Can Create a Fact Issue as to Pretext. ................................................. 7

VII. FINGER STATES VALID CLAIMS FOR DISABILITY DISCRIMINATION .................. 8
VIII. FINGER STATES VALID CLAIMS FOR RETALIATION ............................................. 8
Finger Can Create a Fact Issue as to Protected Activity or Causation. ......................................... 8
B. Finger Can Create a Fact Issue as to Pretext. ................................................................... 8
IX. CONCLUSION ........................................................................................................... 9

**TABLE OF AUTHORITIES**
**Supreme Court Cases**

***Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)**

***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)**

***Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)**

***Staub v. Proctor Hospital*, 562 U.S. 411 (2011)**

**Fifth Circuit Cases**

***Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008)**

***EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014)**

***Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2000)**

**Other**

**Authorities**

***Said v. National Railroad Passenger Corp. (Amtrak)*, 390 F.Supp.3d 46 (D. D.C. 2019)**

Plaintiff served United Airlines as a flight attendant for over thirty years with an outstanding record. Following a severe on-the-job injury in 2014, she spent several years in recovery. After surgery and a long rehabilitation process, she was cleared to return to full duty in May 2019. She successfully completed her required requalification training in June 2019. On the final day of training, June 16, 2019, she suffered an occupational reinjury.

United seeks to frame this case as a mechanical administrative separation required by a collective bargaining agreement ("CBA"). However, the record demonstrates that United's decision-makers exercised considerable discretion, ignored internal HR guidance, misclassified her injury report, and rushed her termination within one hour of internal consultation to prevent her from returning to active status. These actions reflect a predetermined intent to terminate a senior, disabled employee. Because a reasonable jury could find that United's stated reason for termination is pretextual, summary judgment is improper.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if no genuine issue of material fact exists. A dispute is "genuine" if a reasonable jury could return a verdict for the non-moving party. In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. **Under the Supreme Court's holding in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), credibility determinations and the weighing of evidence are functions reserved solely for the jury.**

## IV. STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

### A. Credibility Conflict Regarding "Three More Days" Statement

Plaintiff has consistently testified that on May 29, 2019, during her return-to-work interview, Supervisor Aleta Stansberry stated, "**Three more days, and I would have had you**". This statement was made just days after the theoretical three-year leave deadline of May 26, 2019, and reveals a predatory intent to terminate Plaintiff's career rather than facilitate her return. In her January 30, 2026 deposition, Stansberry denied making the statement. This direct conflict in

sworn testimony regarding a statement of intent is a classic credibility determination that must be resolved by a jury.

**B. Discretionary vs. Automatic Nature of Termination**

United contends that termination was automatic once the calendar hit the three-year mark. This is contradicted by United's own internal Human Resources guidance. On April 16, 2019, HR Director Tammy Holt stated in writing: "**If the FA is in the RTW process prior to the 3 year admin term date, they will not be automatically terminated**". Plaintiff had initiated the return-to-work process and was attending training. The fact that management debated whether to terminate her proves the action was discretionary, not mechanical.

**C. Misclassification of Injury: OJI vs. "Sick Call"**

United's justification for termination hinges on the claim that Plaintiff "called in sick" for her first trip post-training. However, the internal email record from June 27, 2019, acknowledges that Plaintiff "**called in a WKCP [Workers' Compensation] stating she reinjured herself during training**". Within 45 minutes, Labor Relations Director Bob Krabbe recharacterized this as a "sick call" to manufacture a justification for separation. Plaintiff was subsequently paid Temporary Total Disability benefits for 18 months, confirming that United's own systems eventually recognized the absence as occupational, not a mere "sick call".

**D. Rapid Escalation and Absence of Investigation**

The timeline of June 27, 2019, demonstrates an unprecedented rush to terminate.

- **3:45 PM:** Sabrina Clark notifies Bob Krabbe of Plaintiff's WKCP injury report.
- **4:30 PM:** Krabbe responds that "she is separated" and anticipates a "fight from her".
- **4:40 PM:** Krabbe states "**there is no investigation needed**".

- **5:23 PM:** The termination letter is issued. The decision to end a 35-year career without a contractual investigation, within 58 minutes of an injury report, supports a strong inference of retaliatory intent.

**E. Post-Termination Record Modifications and "Cat's Paw" Influence**

Plaintiff has presented evidence that internal records were modified after her separation. Internal Work History records show that on July 12, 2019—two weeks after termination—**Rick Velez** was inserted as her supervisor in the system, modified by Dorota Karpierz. Plaintiff never reported to Velez and he was not involved in her training. Furthermore, Aleta Stansberry's title on the termination letter ("Supervisor Inflight Services") contains a unique hyperlink not found in any other contemporaneous document where she is identified only as an administrative secretary. This raises a material issue regarding whether her authority was retroactively altered to justify the termination.

## V. THE RAILWAY LABOR ACT DOES NOT BAR STATUTORY CLAIMS

**United argues that the Court lacks jurisdiction because of a System Board arbitration award, relying on cases like *Said v. Amtrak.* However, this Court already rejected that argument in 2021. The RLA precludes only "minor disputes" involving CBA interpretation. The Supreme Court in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), held that the RLA does not preempt causes of action to enforce rights independent of the CBA.**

**Further, as established by the Fifth Circuit in *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008), statutory discrimination claims are not precluded even if the court must refer to the CBA, provided there is no disagreement over its interpretation. Defendant's reliance on *Said v. Amtrak*—which is a 7th Circuit and now 5th Circuit**

**consideration—is misplaced because it cannot override the controlling Fifth Circuit precedent in *Carmona*. Plaintiff challenges the discriminatory and retaliatory *manner* in which procedures were applied, not the *meaning* of the contract. Under *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), arbitration findings cannot waive or foreclose federal discrimination claims.**

VI. FINGER STATES VALID CLAIMS FOR AGE DISCRIMINATION

**Defendant argues Finger cannot state a claim for age discrimination (ADEA/TCHRA). However, Plaintiff has identified younger flight attendants who were allowed to remain on leave past the three-year threshold. Under the controlling Fifth Circuit authority of *Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2000), a plaintiff can prove pretext by showing that the employer's explanation is unworthy of credence.**

Finger Can Create a Fact Issue as to a Comparator.

**United's claim that there are no comparators is refuted by evidence of younger employees treated more favorably regarding leave thresholds.**

B. Finger Can Create a Fact Issue as to Pretext.

**The "three more days" comment by Supervisor Stansberry—the person who initiated the termination letter—constitutes direct evidence of ageist animus. This predetermined intent to "get" Plaintiff reveals that the CBA was used as a pretextual shield for age discrimination.**

VII. FINGER STATES VALID CLAIMS FOR DISABILITY DISCRIMINATION

**Under the ADA, United was required to engage in an interactive process regarding Plaintiff's documented disability and active Reasonable Accommodation Process ("RAP") file.**

**A. Finger Can Create a Fact Issue as to Her Qualification or Causation. The Fifth Circuit in *EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014), held that a causal nexus exists when an employer's reaction to a disability event is to determine if the employee can be terminated. United's immediate question—"Can we admin terminate?"—following her reinjury report is direct evidence of this prohibited reaction.**

**B. Finger Can Create a Fact Issue as to Pretext. United's rush to reclassify an occupational injury as a "sick call" within 45 minutes to manufacture a justification for termination proves that the administrative separation was not mechanical, but a discretionary act of discrimination.**

VIII. FINGER STATES VALID CLAIMS FOR RETALIATION

**Plaintiff engaged in protected activity by reporting a workplace injury and participating in the RAP process. Temporal proximity here is measured in minutes, supporting a strong inference of retaliatory intent.**

Finger Can Create a Fact Issue as to Protected Activity or Causation.

**Within one hour of reporting an injury that would have reset her leave status, United terminated her 35-year career.**

B. Finger Can Create a Fact Issue as to Pretext.

**Under the "Cat's Paw" theory established by the Supreme Court in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), United is liable because Stansberry's animus and control**

**over the termination narrative influenced the final decision to authorize separation without investigation. The selective enforcement of policies and post-termination modification of records further demonstrate that the stated reasons for termination are a sham.**

## IX. CONCLUSION

United Airlines terminated a 35-year veteran employee within one hour of her reporting a new occupational injury. The record is replete with evidence that this was not a mechanical application of a contract, but a targeted, discretionary act. **Under controlling Supreme Court and Fifth Circuit law**, summary judgment must be denied.

Dated: March 13, 2026

Respectfully submitted,

By: CF

**Christine Finger,**
**Plaintiff Pro Se**
47 North High Oaks Circle
The Woodlands, Texas 77380
Phone: (832) 656-6999
Email: 1Ladyfinger@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

**CASE NO. 4:20-cv-04205**

**CHRISTINE FINGER,**

**Plaintiff, Pro Se**

**Vs.**

**UNITED AIRLINES, INC.,**

**Defendant**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT RESTATED MOTION FOR SUMMARY JUDGMENT**

cont'd for Exhibits
and motion Arguments -
asking for 3 day extension

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

CHRISTINE FINGER,

Plaintiff, Pro Se

v.

UNITED AIRLINES, INC.,

Defendant

Case No. 4:20-cv-04205

HONORABLE JUDGE HANEN

PLAINTIFF'S RESPONSE TO DEFENDANT'S RESTATED MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR BRIEF EXTENSION TO FILE SUPPORTING EXHIBITS

INTRODUCTION

Comes Now, Plaintiff Pro Se, Christine Finger and respectfully submits this Response in Opposition to Defendant's Restated Motion for Summary Judgment and Request for Brief Extension to File Supporting Exhibits. This case presents multiple genuine disputes of material fact arising from Defendant's misclassification of Plaintiff's documented Occupational Injury ("OJI"), selective enforcement of policies, shifting

explanations, altered declarations, and direct evidence of retaliatory motive. Under controlling Supreme Court and Fifth Circuit authority, these disputes preclude summary judgment.

Plaintiff respectfully acknowledges the Court's patience and grace throughout this unusually long and procedurally complex litigation. Plaintiff has worked continuously to prosecute her statutory claims despite extraordinary obstacles, including Defendant's failure to answer the Complaint for nearly five years. Had Plaintiff's former counsel not alerted Defendant to its default minutes before the December 2024 mediation, Plaintiff would have been entitled to default judgment. The Court has afforded the parties multiple opportunities to clarify the record, and Plaintiff is sincerely grateful for that consideration. This request for a brief extension is not made lightly; it is made because, under the circumstances and the length and complexity of the effort required to reconstruct the record, it is the only fair and reasonable path to ensure that the Court has a complete and accurate evidentiary foundation on which to rule.

This entire lawsuit rests on a single fabricated premise: United intentionally misclassified Plaintiff's June 16, 2019 OJI as a "sick call." That misclassification triggered the false narrative that Plaintiff had "failed to return to work," had "exceeded the 3-year LOA limit," and was therefore "administratively separated." But United's own records—including WKCP coding, the opening of a new OJI claim, and the payment of eighteen months of OJI wage-replacement benefits—prove that Plaintiff was ACTIVE and injured in the line of duty. A flight attendant who is truly inactive, separated, or on a sick call cannot receive OJI benefits. The misclassification was not an error; it was the foundation of the pretext.

Plaintiff's statutory claims arise under the ADA, ADEA, and Title VII—major federal civil-rights statutes that exist independently of the Collective Bargaining Agreement ("CBA"). The Supreme Court has repeatedly held that statutory discrimination and retaliation claims are not precluded by grievance procedures, arbitration, or CBA mechanisms. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) (statutory rights are "distinct from contractual rights" and cannot be waived by arbitration); *Barrentine v. Arkansas-Best Freight*, 450 U.S. 728 (1981) (statutory rights "are independent of the collective bargaining process"); *McDonald v. City of West Branch*, 466 U.S. 284 (1984) (arbitration decisions have no preclusive effect on federal civil-rights claims). The Fifth Circuit applies these principles directly in the airline context: ADA and Title VII claims are not precluded by the Railway Labor Act unless resolution of the claim requires interpreting a disputed CBA term. *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008).

Here, Plaintiff's claims do not require interpreting the CBA. They require examining United's own conduct: misclassification, pretext, retaliatory motive, falsified declarations, and selective enforcement. The term "ACTIVE" is not a negotiated contractual classification; it is an internal administrative status used by United to determine whether a flight attendant may bid, build a schedule, attend training, or receive OJI benefits. Evaluating whether United misclassified Plaintiff's status does not implicate the CBA or the System Board of Adjustment.

The record contains direct evidence of retaliatory motive. Shortly before Plaintiff returned to training, Base Administrative Secretary Aleta Stansberry stated: "Three more days and I would have had you." Plaintiff understood this as a reference to Stansberry's efforts to time Plaintiff out under the 3-year LOA window. In her 2026 deposition, Stansberry denied making the statement. This creates a clear credibility dispute on a material fact—one that cannot be resolved on summary judgment. Under *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000), when an employer's explanation is false or contradicted, a jury may infer discrimination or retaliation.

Defendant's motion also ignores the extensive evidence of selective enforcement. United did not uniformly apply the 3-year LOA rule. Other flight attendants—including Bettencourt—were permitted to return after extended absences. Plaintiff was singled out, and the only distinguishing factor was her protected activity and her documented OJI.

Defendant further relies on declarations that have changed over time, contain retroactive edits, or contradict internal emails. Concerns regarding the accuracy and reliability of United's sworn declarations are not new. In 2025, the parties litigated multiple motions addressing the authenticity and completeness of United's declarations (Dkts. 134–141). Plaintiff does not seek to revisit those matters; they are referenced solely to demonstrate a documented pattern of evidentiary irregularities that bear directly on pretext and credibility.

Since her attorneys withdrew on February 19, 2025, Plaintiff has litigated this matter entirely on her own. She has filed more than one hundred motions, coordinated and scheduled multiple depositions, issued Rule 45 subpoenas to non-party witnesses in Washington, D.C., and responded to numerous protective-order motions. Plaintiff did not receive the January 30, 2026 deposition transcript until February 14, 2026, and did not receive her deposition exhibits until March 4, 2026, despite repeated follow-up requests. Plaintiff has incurred substantial personal expense, including replacement computers following repeated data-loss events and thousands of dollars in PACER fees, in order to understand and respond to the evolving record. Despite these obstacles, Plaintiff has continued to prosecute her statutory claims diligently and without interruption.

Given the volume of late-produced materials, the timing of the deposition transcript and exhibits, and Plaintiff's pro se status, a short extension is necessary to ensure that the Court has a complete evidentiary foundation. Plaintiff respectfully requests a brief three-day extension to finalize and file her supporting exhibits. Plaintiff is not seeking delay; she seeks only the opportunity to present the core statutory claims and evidence of pretext essential to a fair adjudication of this matter.

For all these reasons, and for those set forth below, Defendant's Motion for Summary Judgment must be denied.

## INTRODUCTION

Defendant's Introduction presents an incomplete and misleading account of the factual record. Defendant asserts that "the underlying facts have remained the same," but the record demonstrates the opposite. The factual landscape of this case changed dramatically as a result of Defendant's delayed, piecemeal, and incomplete productions—productions that occurred years after Plaintiff's separation and long after the 2021 System Board of Adjustment hearing.

Plaintiff did not have access to internal emails, metadata, FAST/CCS administrative records, or the underlying OJI documentation at the time of arbitration. Plaintiff was forced to rely solely on personal screenshots because Defendant withheld the internal records that would have disproven the "sick call" narrative. Defendant did not produce the 5,600-page internal document set until Labor Day weekend 2021, after the SBA hearing had already concluded. Even more critical evidence—including the July 2019 AFA emails, the internal grievance-blocking communications, and the metadata showing retroactive alterations to Plaintiff's records—was not produced until February 7, 2024, when successor counsel released the "continuing email threads" that prior counsel had withheld under claims of privilege.

These late-produced materials fundamentally altered the factual record. They revealed:

- the intentional misclassification of Plaintiff's documented OJI as a "sick call";
- the opening of a new OJI claim and the payment of eighteen months of OJI benefits;
- the retroactive insertion of a new "supervisor" into Plaintiff's work history;
- the shadowed header replacing Aleta Stansberry's name;
- the contradictory declarations of Krabbe and Stansberry;
- the selective enforcement of the 3-year LOA rule;
- the internal emails showing grievance obstruction; and

- the pre-training statement, "Three more days and I would have had you," followed by a complete denial in deposition.

None of this evidence was available to Plaintiff during the SBA hearing, and none of it supports Defendant's assertion that "the facts remained the same." Defendant's introduction omits the extensive record of withheld evidence, altered declarations, and shifting explanations that now form the core of Plaintiff's statutory claims.

Defendant's introduction also ignores the extraordinary procedural history of this case. Defendant failed to answer the Complaint for nearly five years. Plaintiff respectfully notes that, but for her former counsel notifying Defendant of its default minutes before the December 2024 mediation, Plaintiff would have been entitled to default judgment. Defendant's prolonged failure to answer, followed by years of incomplete productions and evidentiary inconsistencies, underscores why the Court's careful review of the full record is essential.

For these reasons, Defendant's Introduction cannot be accepted as an accurate summary of the factual record. The evidence now before the Court—much of which was produced years late—creates multiple genuine disputes of material fact that preclude summary judgment.

## II. STATEMENT OF MATERIAL FACTS

Plaintiff submits the following material facts that are genuinely disputed and preclude summary judgment. These facts are supported by United's own documents, deposition testimony, internal emails, call logs, OJI records, FAST/CCS administrative data, and workers' compensation files. When viewed in the light most favorable to Plaintiff, they establish multiple genuine disputes regarding the reason for Plaintiff's termination, the accuracy of United's stated explanations, and the presence of discriminatory and retaliatory motive.

### A. Plaintiff's June 16, 2019 Injury Was an Occupational Injury (OJI), Not a Sick Call

1. On June 16, 2019, Plaintiff sustained an on-the-job injury while performing her duties as a flight attendant.
2. United coded the injury as WKCP, opened a new OJI claim, and Plaintiff received eighteen months of OJI wage-replacement benefits.
3. A flight attendant who is "inactive," "separated," or on a "sick call" cannot receive OJI benefits.
4. United's own OJI records confirm that Plaintiff was treated as an ACTIVE employee with an open OJI claim.

5. United's misclassification of this OJI as a "sick call" is contradicted by every internal document produced in discovery.

**B. Plaintiff Remained in ACTIVE Status Throughout 2019–2020**

6. FAST and CCS reflected Plaintiff as ACTIVE, not separated.
7. Plaintiff built her July 2019 schedule and picked up trips — actions only possible for an ACTIVE flight attendant.
8. Plaintiff was never notified that she had been placed on any form of "inactive" status.
9. Plaintiff's ability to bid, build a schedule, and receive OJI benefits is incompatible with Defendant's narrative of inactivity.

**C. United Blocked Plaintiff's Grievance and Misrepresented Her Status to the Union**

10. Internal AFA emails produced in 2024 show that Plaintiff attempted to file a grievance, but United blocked the grievance process.
11. United told the Union that Plaintiff was "inactive" and "not eligible" to grieve — a statement contradicted by FAST/CCS and OJI records.
12. The Union relied on United's misclassification and refused to process Plaintiff's grievance.
13. These emails were withheld until February 7, 2024, when successor counsel produced the "continuing email threads" previously withheld under claims of privilege.

**D. United Retroactively Altered Plaintiff's Records and Submitted Contradictory Declarations**

14. Plaintiff's FAST/CCS administrative header was altered to remove Aleta Stansberry's name and replace it with a shadowed header.
15. A new "supervisor" was retroactively inserted into Plaintiff's work history — a person who had never supervised Plaintiff.
16. Krabbe's and Stansberry's declarations contain contradictions regarding:
- who made the separation decision,
- when the decision was made,
- whether Plaintiff was ACTIVE,
- and whether Plaintiff attempted to return.
17. These contradictions create credibility disputes that cannot be resolved on summary judgment.

**E. United Selectively Enforced the 3-Year LOA Rule**

18. United asserts that Plaintiff was separated for exceeding the 3-year LOA limit.
19. But United did not uniformly enforce this rule.
20. Comparator Bettencourt — a younger, non-injured flight attendant — was permitted to return after exceeding the same limit.
21. Other flight attendants were also permitted to return after extended absences.
22. Plaintiff was singled out, and the only distinguishing factor was her protected activity and documented OJI.

**F. Direct Evidence of Retaliatory Motive**

Shortly before Plaintiff returned to training, Base Administrative Secretary Aleta Stansberry stated:

23. "Three more days and I would have had you."
24. Plaintiff understood this as a reference to Stansberry's efforts to time Plaintiff out under the 3-year LOA window.
25. In her 2026 deposition, Stansberry denied making the statement.
26. This creates a clear credibility dispute on a material fact — one that must be resolved by a jury.

**G. United Withheld Critical Evidence for Years**

27. United did not produce the 5,600-page internal document set until Labor Day weekend 2021 — after the SBA hearing.
28. United did not produce the July 2019 AFA emails, grievance-blocking communications, or metadata showing retroactive alterations until February 7, 2024.
29. Plaintiff did not receive the January 30, 2026 deposition transcript until February 14, 2026.
30. Plaintiff did not receive her deposition exhibits until March 4, 2026, despite repeated follow-up requests.
31. These delays materially affected Plaintiff's ability to prepare her response.

**H. Defendant Failed to Answer the Complaint for Nearly Five Years**

32. Defendant did not answer the Complaint until December 2024.
33. Plaintiff would have been entitled to default judgment had her former counsel not alerted Defendant to its default minutes before mediation.
34. Defendant's prolonged failure to answer, followed by years of incomplete productions, underscores the need for careful judicial review of the full record.

## I. Plaintiff Has Litigated Diligently Despite Extraordinary Obstacles

35. Since her attorneys withdrew on February 19, 2025, Plaintiff has litigated this matter entirely on her own.
36. Plaintiff has filed more than one hundred motions, coordinated depositions, issued Rule 45 subpoenas to non-party witnesses in Washington, D.C., and responded to protective-order motions.
37. Plaintiff incurred substantial personal expense, including replacement computers following repeated data-loss events and thousands of dollars in PACER fees.
38. Plaintiff has continued to prosecute her statutory claims diligently and without interruption.

## III. REBUTTAL TO DEFENDANT'S STATEMENT OF FACTS

Plaintiff respectfully submits the following rebuttal to Defendant's Statement of Alleged Undisputed Facts. Defendant's factual assertions are incomplete, misleading, or contradicted by the record. These disputes are material and preclude summary judgment.

A. Rebuttal to Defendant's ¶15 — "Plaintiff failed to return to work and exceeded the 3-year LOA limit."

Defendant's assertion is contradicted by its own records.

Plaintiff did not "fail to return to work."

1. FAST and CCS reflected Plaintiff as ACTIVE, not separated. Plaintiff built her July 2019 schedule and picked up trips—actions only possible for an ACTIVE flight attendant.

Plaintiff did not exceed the 3-year LOA limit.

2. Plaintiff was on an OJI, not an LOA. OJI time does not count toward the 3-year LOA limit. United's own OJI records confirm that Plaintiff was treated as an ACTIVE employee with an open OJI claim.

United's misclassification created the false LOA narrative.

3. United intentionally coded Plaintiff's June 16, 2019 injury as a "sick call," despite opening a new OJI claim and paying eighteen months of OJI benefits. A flight attendant on a "sick call" cannot receive OJI benefits.

Internal emails contradict Defendant's position.

4. The July 2019 AFA emails—produced only in 2024—show that Plaintiff attempted to return and attempted to grieve, but United blocked the grievance by falsely stating she was "inactive."

For these reasons, Defendant's ¶15 is not undisputed and cannot support summary judgment.

B. Rebuttal to Defendant's ¶16 — "The System Board of Adjustment already determined the facts."

This assertion is legally and factually incorrect.

The SBA did not have access to the evidence now before the Court.

1. United withheld critical documents—including internal emails, metadata, grievance-blocking communications, and the 5,600-page internal record—until years after the SBA hearing.

The SBA relied on incomplete and inaccurate information.

2. The SBA accepted United's "sick call" narrative because United withheld the OJI records proving Plaintiff was ACTIVE.

Supreme Court authority prohibits preclusion.

3. Under *Alexander v. Gardner-Denver*, *Barrentine*, and *McDonald*, arbitration decisions have no preclusive effect on federal statutory claims.

Fifth Circuit authority is directly on point.

4. Under *Carmona v. Southwest Airlines*, ADA and Title VII claims are not precluded by the RLA unless resolution requires interpreting a disputed CBA term. Plaintiff's claims do not.

The SBA did not adjudicate ADA, ADEA, or Title VII claims.

5. It adjudicated only a contractual grievance based on incomplete information.

Thus, Defendant's ¶16 is legally irrelevant and factually incorrect.

C. Rebuttal to Defendant's ¶17 — "Plaintiff was inactive and therefore properly separated."

This assertion is contradicted by United's own administrative and workers' compensation records.

Plaintiff was ACTIVE.

1. FAST and CCS reflected Plaintiff as ACTIVE. Plaintiff built her schedule and picked up trips.

OJI benefits prove ACTIVE status. United paid Plaintiff eighteen months of OJI wage-replacement benefits.

2. A flight attendant who is "inactive," "separated," or on a "sick call" cannot receive OJI benefits.

United's internal records contradict its litigation position.

3. The OJI claim file, WKCP coding, and internal communications all confirm Plaintiff was treated as ACTIVE.

United retroactively altered Plaintiff's records.

4. The shadowed header and insertion of a new "supervisor" raise credibility concerns that must be resolved by a jury.

United selectively enforced the 3-year rule.

5. Comparator Sherri Bettencourt and others were permitted to return after exceeding the same limit.

For these reasons, Defendant's ¶17 is disputed and cannot support summary judgment.

D. Additional Rebuttal to Defendant's Remaining Factual Assertions

To the extent Defendant asserts that:

- Plaintiff "failed to communicate,"
- Plaintiff "was not eligible to grieve,"
- Plaintiff "was properly separated," or
- Plaintiff "was inactive,"

each assertion is contradicted by:

- FAST/CCS ACTIVE status,
- OJI records,

- internal emails showing grievance obstruction,
- the July 2019 AFA communications,
- the eighteen months of OJI benefits,
- the late-produced metadata showing retroactive edits,
- and the contradictory declarations of Krabbe and Stansberry.

These disputes are material and must be resolved by a jury.

**IV. LEGAL STANDARD**

Summary judgment is appropriate only when the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view all evidence in the light most favorable to the non-movant and draw all reasonable inferences in her favor.

A. The Supreme Court Requires Courts to Credit the Non-Movant's Evidence

In *Tolan v. Cotton*, 572 U.S. 650 (2014), the Supreme Court reaffirmed that courts must not weigh evidence, resolve credibility disputes, or draw inferences against the non-movant at summary judgment. The Court emphasized that "the evidence of the nonmovant is to be believed" and that courts must "draw all justifiable inferences in her favor."

This principle is central here. Plaintiff's claims turn on credibility disputes, contradictory declarations, withheld evidence, and competing interpretations of United's internal records. Under *Tolan*, these disputes must be resolved by a jury.

B. When an Employer's Explanation Is False, a Jury May Infer Discrimination or Retaliation

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court held that once a plaintiff establishes a prima facie case and produces evidence that the employer's stated reason is false, a jury may infer discrimination or retaliation. The Court explained that "proof that the defendant's explanation is unworthy of credence is one form of circumstantial evidence that is probative of intentional discrimination."

Here, United's explanations have shifted repeatedly:

- misclassification of an OJI as a "sick call,"
- contradictory declarations,
- retroactive edits to FAST/CCS records,
- selective enforcement of the 3-year rule,
- grievance obstruction, and

- the "Three more days and I would have had you" statement followed by a complete denial.

Under *Reeves*, these credibility disputes alone preclude summary judgment.

C. Arbitration Does Not Preclude Federal Statutory Claims

The Supreme Court has repeatedly held that arbitration decisions under a collective bargaining agreement do not bar or limit an employee's ability to pursue federal statutory claims:

- *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)
- *Barrentine v. Arkansas-Best Freight*, 450 U.S. 728 (1981)
- *McDonald v. City of West Branch*, 466 U.S. 284 (1984)

These cases establish that:

1. Statutory rights are independent of contractual rights.
2. Arbitration lacks the procedural safeguards of federal court.
3. Arbitration decisions have no preclusive effect on federal discrimination claims.
4. Courts must independently evaluate statutory claims.

Thus, the 2021 System Board of Adjustment decision does not control this case.

D. The Fifth Circuit Applies These Principles in Airline Cases

In *Carmona v. Southwest Airlines Co.*, 536 F.3d 344 (5th Cir. 2008), the Fifth Circuit held that ADA claims are not precluded by the Railway Labor Act unless resolution of the claim requires interpreting a disputed CBA term. Claims involving discrimination, retaliation, or pretext do not require CBA interpretation and therefore remain within federal jurisdiction.

Plaintiff's claims turn on:

- Misclassification, pretext, retaliatory motive, selective enforcement, credibility disputes, and altered records.

None of these issues require interpreting the CBA.

**E. Summary Judgment Is Particularly Inappropriate Where Motive and Credibility Are Central**

The Fifth Circuit has repeatedly held that summary judgment is inappropriate where the case turns on motive, intent, or credibility:

- *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015)
- *Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2000)
- *Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003)

This case is built on:

- contradictory declarations, retroactive edits, withheld evidence, selective enforcement, and direct retaliatory statements.

These are classic jury questions.

**F. All Reasonable Inferences Must Favor Plaintiff**

***Under Rule 56, Tolan, and Reeves, the Court must:***

- credit Plaintiff's evidence, resolve all doubts in her favor, refrain from weighing credibility, and deny summary judgment where factual disputes exist.

Because the record contains extensive disputes regarding Plaintiff's status, the reason for her separation, the accuracy of United's explanations, and the credibility of its witnesses, summary judgment is inappropriate.

**V. ARGUMENT**

A. United's Misclassification of Plaintiff's OJI as a "Sick Call" — Combined With Shifting Explanations and Contradictory Status Codes — Is Overwhelming Evidence of Pretext

United's summary-judgment motion depends entirely on the assertion that Plaintiff "failed to return to work" and "exceeded the 3-year LOA limit." This assertion is false and rests on United's misclassification of Plaintiff's June 16, 2019 Occupational Injury ("OJI") as a "sick call." United's own records contradict this narrative and reveal a pattern of shifting explanations, inconsistent status codes, and retroactive alterations that constitute classic evidence of pretext under *Reeves* and Fifth Circuit law.

1. United's internal systems coded Plaintiff's injury as WKCP and WKSK-DOI — both OJI codes, not sick leave

United's internal systems reflected:

- WKCP — Workers' Compensation Pending
- WKSK-DOI — Workers' Compensation / Sick-related to Date of Injury

Both codes are OJI-related classifications, not sick leave.

These codes triggered:

- the opening of a new OJI claim, Sedgwick's involvement, and eighteen months of OJI wage-replacement benefits.

A flight attendant who is "inactive," "separated," "retired," or on a "sick call" cannot receive OJI benefits.

United's own systems prove Plaintiff was treated as an ACTIVE employee with an open OJI claim.

2. Plaintiff had recently completed the Reasonable Accommodation Process (RAP), had documented restrictions, and could self-accommodate — confirming ADA coverage and federal jurisdiction

Plaintiff had recently completed United's Reasonable Accommodation Process ("RAP") following her prior OJI and had documented medical restrictions, all of which United acknowledged. Plaintiff was able to self-accommodate and perform the essential functions of her job without further accommodation, making her a qualified individual with a disability under the ADA. United's knowledge of Plaintiff's disability, her RAP status, and her ability to self-accommodate further confirm that the classification of her June 16, 2019 injury—whether OJI or "sick call"—is a factual dispute grounded in United's own administrative and workers' compensation records, not a matter requiring interpretation of any CBA term.

The question of whether Plaintiff's injury was an OJI or a "sick call" is a factual dispute wholly independent of the CBA, and therefore squarely within the Court's jurisdiction under *Gardner-Denver* and *Carmona*.

3. Plaintiff was not denied access to training — she had already completed training and requalified

United's narrative implies Plaintiff "failed to return" or "failed to complete training."

This is false.

- Plaintiff completed her requalification training.
- Plaintiff passed all required modules.

- Plaintiff was requalified.
- The injury occurred after training, on the last day, during the final practical component.

The Training Department:

- documented the injury,
- insisted on filing the OJI report,
- and confirmed Plaintiff had completed all required training.

This destroys United's claim that Plaintiff "failed to return" or "failed to complete training."

4. Plaintiff begged Training not to file the OJI report immediately because she feared retaliation — and that fear was reasonable

Plaintiff had:

- just returned from a prior OJI, recently completed the RAP process,
- had documented restrictions, could self-accommodate,
- and feared retaliation for reporting a second OJI so soon.

Plaintiff initially begged Training not to report the incident, out of fear of retaliation from just returning from a documented Occupational Leave

This context is critical:

- Plaintiff's fear of retaliation was reasonable.
- Plaintiff had just navigated RAP accommodations.
- Plaintiff was still under medical restrictions.
- Plaintiff was able to self-accommodate — a protected ADA activity.
- Plaintiff's injury occurred during required training, not personal time.

This supports both ADA and retaliation claims.

5. United provided multiple contradictory reasons for Plaintiff's separation — a hallmark of pretext

United has alternated between at least three different explanations:

1. Separated
2. Retired
3. Terminated for exceeding the 3-year LOA limit

These explanations are mutually inconsistent and unsupported by the record.

The Supreme Court and Fifth Circuit repeatedly hold that shifting explanations are strong evidence of pretext:

- *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000)
- *Burton v. Freescale*, 798 F.3d 222 (5th Cir. 2015)
- *Nasti v. CIBA Specialty Chemicals*, 492 F.3d 589 (5th Cir. 2007)

United's inability to maintain a consistent explanation is itself evidence that the stated reason is false.

6. The misclassification directly caused the false LOA narrative

Once United coded the OJI as a "sick call," it created a cascade of false conclusions:

- Plaintiff was "inactive."
- Plaintiff "failed to return."
- Plaintiff "exceeded the 3-year LOA limit."
- Plaintiff was "administratively separated."

But these conclusions are all false because they depend on the false premise that Plaintiff was on a "sick call."

Correct the misclassification, and the entire separation rationale collapses.

7. Under *Reeves*, a false explanation is itself evidence of discrimination or retaliation

The Supreme Court held that when an employer's explanation is false, a jury may infer discrimination or retaliation.

Here, United's explanation is contradicted by:

- WKCP and WKSK-DOI codes,
- OJI claim records,
- Sedgwick payments,
- FAST/CCS ACTIVE status,
- Training Department documentation,
- internal emails,
- grievance-blocking communications,
- contradictory separation reasons,
- and retroactive edits to Plaintiff's records.

This is overwhelming evidence of pretext.

### B. United's Suppression, Withholding, and Fragmentation of Critical Evidence Is Independent Evidence of Pretext

United's summary-judgment motion depends on a record that United itself prevented Plaintiff from accessing for years. The evidence now before the Court—OJI records, internal emails, metadata, FAST/CCS administrative data, grievance-blocking communications, and contradictory declarations—was not produced until long after Plaintiff's separation, long after the SBA hearing, and in many cases not until 2024–2026. This pattern of suppression is not only improper; it is direct evidence of pretext under *Reeves*, *Burton*, and Fifth Circuit law.

1. United withheld the 5,600-page internal record until after the SBA hearing

United did not produce the 5,600-page internal document set until Labor Day weekend 2021, after the System Board of Adjustment hearing had already concluded. This production contained:

- FAST/CCS administrative data,
- internal communications about Plaintiff's status,
- OJI-related documentation,
- and records contradicting the "sick call" narrative.

The SBA never saw this evidence.

Plaintiff never had access to it.

United relied on its absence.

**2. United withheld the July 2019 AFA emails and grievance-blocking communications until February 7, 2024**

These emails revealed that Plaintiff attempted to file a grievance, that United told the Union she was "inactive," and that United blocked the grievance on that basis. The Union relied on United's misclassification because United's Director of Labor Relations, Robert Krabbe, submitted a January 21, 2021 declaration stating that Plaintiff had exceeded the three-year LOA limit and that her grievance had been denied at Step One and not pursued further. This declaration—submitted to the EEOC and relied upon in the EEOC's evaluation and in the initial stages of this lawsuit—was based entirely on the false "sick call" classification. Krabbe later changed his declaration in March 2021 after being

challenged by AFA Senior Staff Attorney Michael Hickey, but United never corrected the record with the EEOC or with this Court. The EEOC's findings and the early litigation posture were therefore built on a materially false premise created by United's own misclassification and misrepresentations.

3. The SBA never saw the real record because United and the Union falsely claimed no documents existed

Plaintiff further notes that the System Board of Adjustment never saw the real record because United and the Union represented that no company documents existed. Plaintiff was told repeatedly that her personnel file, OJI records, IR documentation, Charter Department records, and internal communications were "archived" or "no longer available" because more than two years had passed since her termination. As a result, Plaintiff went into arbitration with no company documents whatsoever, relying solely on the contemporaneous screenshots she preserved immediately after being locked out of United's systems. Plaintiff did not receive any internal company records until Labor Day weekend 2021, when United produced a 5,600-page document dump—two years after her termination and long after the SBA hearing had concluded. Plaintiff did not receive any additional internal records until 2023, when a limited set of emails and administrative data was produced in discovery. Thus, the SBA's decision was based on an incomplete and misleading record created by United's withholding of documents, not on the evidence now before this Court.

4. United withheld metadata showing retroactive alterations to Plaintiff's records

The metadata produced in 2024–2025 revealed:

- retroactive edits to Plaintiff's FAST/CCS header,
- removal of Aleta Stansberry's name,
- insertion of a new "supervisor" who never supervised Plaintiff,
- and changes to Plaintiff's status codes.

These alterations were never disclosed to the SBA, the Union, or Plaintiff.

Retroactive edits to employment records are classic evidence of pretext and bad faith.

5. United withheld the OJI documentation that disproved the "sick call" narrative

United did not produce:

- the WKCP and WKSK-DOI codes,
- the OJI claim file,

- Sedgwick payment records,
- or the Training Department's injury documentation

until years after Plaintiff's separation.

These documents prove:

- Plaintiff was ACTIVE,
- Plaintiff sustained an OJI,
- Plaintiff completed training, and
- Plaintiff did not exceed the 3-year LOA limit.

United's failure to produce these records earlier prevented Plaintiff from rebutting the false narrative at the SBA and during the early stages of litigation.

6. Plaintiff did not receive the January 30, 2026 deposition transcript until February 14, 2026, and did not receive her exhibits until March 4, 2026

Despite repeated follow-up requests, Plaintiff received:

- the transcript two weeks late, and the exhibits more than a month late.

These delays materially affected Plaintiff's ability to prepare her summary-judgment response and required Plaintiff to reconstruct the record under extreme time pressure.

The Court has been patient and gracious in allowing Plaintiff to address these late productions, and Plaintiff is grateful for that consideration.

7. United's pattern of withholding and fragmentation is itself evidence of pretext

The Fifth Circuit recognizes that:

- withholding evidence,
- providing incomplete records,
- altering documents,
- and shifting explanations

are all independent evidence of pretext.

See *Burton v. Freescale*, 798 F.3d 222 (5th Cir. 2015).

United's conduct fits this pattern precisely:

- critical documents withheld for years, metadata showing retroactive edits,

- contradictory declarations, grievance obstruction, and multiple inconsistent separation reasons.

A jury is entitled to infer discriminatory or retaliatory motive from this pattern.

8. Because the suppressed evidence fundamentally changes the factual record, summary judgment is inappropriate

United's motion relies on a record that United itself prevented Plaintiff from accessing.

The evidence now before the Court:

- contradicts United's stated reasons, exposes inconsistencies, reveals retroactive alterations, and demonstrates selective enforcement.

Under *Reeves*, *Tolan*, and Fifth Circuit precedent, these disputes must be resolved by a jury.

9. The July 2019 AFA emails prove Plaintiff's grievance was never heard, contradicting Krabbe's sworn declaration

The July 2019 AFA emails also show that Plaintiff's grievance was never heard, never denied at Step One, and never processed—contrary to what United later represented. The grievance form lists Aleta Stansberry, not Crystal Hoelscher, as the "supervisor" assigned to the appeal, and both Stansberry and Sabrina Clark were listed as the company representatives for the hearing. Yet no hearing ever occurred. Despite this, Krabbe's January 21, 2021 declaration falsely stated that Plaintiff's grievance "was denied at the first step of the grievance" and that "AFA declined to pursue the grievance to the next level." That statement is demonstrably false. Former AFA President Elizabeth Hibbard confirmed that Plaintiff's grievance was never accepted, never heard, and that AFA "certainly would have pursued the disciplinary appeal had United not rejected it." Hibbard further confirmed that United processed and heard an identical grievance for comparator Sherri Bettencourt during the same period. This selective treatment, combined with the false grievance history in Krabbe's declaration, is powerful evidence of manipulation, obstruction, and retaliatory motive under *Staub*.

**C. United's Altered, Contradictory, and Retroactively Corrected Declarations Create Classic Jury Questions of Credibility and Pretext**

United relies heavily on sworn declarations from its managers and administrative personnel. But those declarations have changed over time, contain material inconsistencies, contradict internal emails, and are undermined by metadata showing

retroactive edits to Plaintiff's records. Under *Reeves*, *Tolan*, and Fifth Circuit precedent, these credibility disputes must be resolved by a jury.

1. Krabbe's January 2021 declaration was materially false — and United relied on it at the EEOC and in this lawsuit

In January 2021, United's Director of Labor Relations, Robert Krabbe, submitted a sworn declaration stating:

- Plaintiff exceeded the 3-year LOA limit, was properly separated,
- Plaintiff's grievance had been denied at Step One, and the grievance was not pursued further.

This declaration was submitted to the EEOC and formed the foundation of the EEOC's evaluation and the early posture of this lawsuit.

But the declaration was false, because:

- Plaintiff did not call in sick, but was on reported/documented OJI.
- Plaintiff was ACTIVE in FAST/CCS,
- Plaintiff had completed training,
- Plaintiff had attempted to file a grievance with the AFA,
- but United had blocked the grievance by falsely labeling her "inactive."

The declaration was based entirely on the misclassification of Plaintiff's OJI as a "sick call."

2. Krabbe changed his declaration in March 2021 — but United never corrected the EEOC or the Court's records.

After AFA Senior Staff Attorney Michael Hickey challenged the accuracy of Krabbe's January declaration, Krabbe issued a revised declaration in March 2021.

The revised declaration:

- changed the description of her status, stating that indeed the AFA considered her to be active at the time of separation, and that there was an ongoing dispute.
- changed the grievance history, stating that it was "denied at the first step of the grievance process."
- And that AFA "declined to pursue the grievance to the next level."

United never corrected the EEOC record. United never corrected the federal court record.

United never disclosed to Plaintiff that the original declaration was false.

This is textbook evidence of pretext.

3. Stansberry's statements also changed — contradicting both her own emails and Plaintiff's testimony

Aleta Stansberry:

- was the IAH Base Administrative Secretary, handled Plaintiff's status,
- communicated with the Union, and was involved in the grievance obstruction.

Plaintiff testified that Stansberry stated:

"Three more days and I would have had you."

This statement is direct evidence of retaliatory motive.

In her 2026 deposition, Stansberry denied making the statement.

But her denial is contradicted by:

- Plaintiff's sworn testimony in Doc. 226-2 dated 10/7/2023.
- Plaintiff's original complaint, as well as her amended complaint.
- Plaintiff's Statement of Form.
- Plaintiff's letter to Bob Krabbe, dated July 15, 2019.

This is a classic credibility dispute that cannot be resolved on summary judgment.

4. The declarations contradict internal emails and administrative records

United's declarations assert:

- Plaintiff was inactive, Plaintiff failed to return, Plaintiff exceeded the 3-year LOA limit, Local AFA did not accept Plaintiff's grievance, and Plaintiff was properly separated.

But internal emails show:

- United blocked the grievance,
- United told the Union she was "inactive,"
- United knew she was ACTIVE in FAST/CCS,
- and United knew she was on an OJI.

The declarations are contradicted by United's own documents.

5. Metadata shows retroactive edits to Plaintiff's records — contradicting the declarations

Metadata produced in 2024–2025 revealed:

- retroactive edits to Plaintiff's FAST/CCS header,
- removal of Stansberry's name,
- insertion of a new "supervisor,"
- and changes to Plaintiff's status codes.

These edits contradict the declarations and raise serious questions about:

- Accuracy, authenticity, and credibility.

Retroactive edits to employment records are classic evidence of pretext.

6. Under *Reeves*, these contradictions alone defeat summary judgment

The Supreme Court held that when an employer's explanation is false or inconsistent, a jury may infer discrimination or retaliation.

Here, United's declarations:

- changed over time, contradict internal emails, contradict metadata,
- contradict OJI records, contradict FAST/CCS,
- contradict the Training Department's documentation, and
- contradict Plaintiff's testimony.

These are material credibility disputes.

Taken together, these shifting explanations, altered declarations, retroactive edits, and internal contradictions create classic credibility disputes that cannot be resolved on summary judgment. Under *Reeves*, *Tolan*, *Laxton*, *Burton*, and controlling Fifth Circuit authority, when an employer's explanation is inconsistent, contradicted by internal documents, or shown to be false, a jury is entitled to disbelieve the employer and infer retaliation or discrimination. United's declarations are not merely imperfect—they are internally inconsistent, contradicted by contemporaneous records, and in several instances demonstrably false. These credibility issues alone require denial of summary judgment. These credibility problems are further amplified by the fact that United's decisionmaker relied on tainted, incomplete, and manipulated information supplied by biased subordinates—triggering classic cat's paw liability under *Staub*.

**D. United Is Liable Under the Cat's Paw Doctrine Because Biased Subordinates Manipulated the Decisionmaker Through False Information, Misclassification, and Withheld Records**

Even if United argues that Director of Labor Relations Robert Krabbe was the "ultimate decisionmaker," United is still liable under the cat's paw doctrine because the adverse action was proximately caused by the discriminatory and retaliatory actions of subordinate employees who manipulated the process. Under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), an employer is liable when a biased subordinate performs an act motivated by animus that is intended to cause an adverse action, and that act is a proximate cause of the ultimate decision. That is exactly what occurred here.

1. Stansberry controlled the flow of information, misclassified Plaintiff, and set the false narrative in motion

Aleta Stansberry:

- controlled Plaintiff's administrative status, controlled injury reporting,
- controlled OJI documentation, controlled communications with the Union,
- controlled FAST/CCS entries, and controlled what information reached Krabbe.

Her actions included:

- coding Plaintiff as "inactive,"
- misclassifying the OJI as a "sick call,"
- blocking the grievance by telling the Union Plaintiff was "not eligible," and
- altering Plaintiff's administrative records.

These were intentional acts designed to create a false basis for separation.

2. United inserted Rick Velez as a "dummy supervisor" to divert documents away from Plaintiff's actual supervisor, Dominic Cordova

The record shows:

- Plaintiff's actual supervisor was Dominic Cordova,
- Cordova was on vacation during the week of the injury,
- Plaintiff had been communicating with him before he left,
- Cordova told Plaintiff to "make sure you contact Aleta," and
- Immediately after he left, United inserted Rick Velez as Plaintiff's "supervisor."

Velez had never supervised or ever contacted Plaintiff regarding her OJI status.

This served two purposes:

1. To bypass Cordova, who knew Plaintiff was ACTIVE, had completed training, and had just returned from OJI.
2. To route all documents through Stansberry, ensuring that only her version of events reached Krabbe.

This is classic cat's paw manipulation: the biased subordinate controls the information pipeline.

3. Stansberry altered her title solely for the termination letter, with Krabbe's authorization.

Every contemporaneous document—including internal emails, handbooks, administrative forms, and all communications before and after June 27, 2019—identifies Stansberry as IAH Base Administration (or Base Administrative Secretary).

The only document in which her title appears as "Supervisor, Inflight Services" is Plaintiff's termination letter.

That letter contains a visible "***HYPERLINK***" artifact in the title block, proving the title was manually altered.

The redacted June 27, 2019 email thread shows Stansberry asking Krabbe what "changes" she should make to the document. The only "change" that appears in the final version is the upgraded title. All subsequent emails—including those sent the very next morning—revert to her true title, IAH Base Administration.

This supports a reasonable inference that Krabbe authorized Stansberry to change her title solely to create the appearance that she had supervisory authority to issue Plaintiff's termination letter. This is direct evidence of manipulation and retaliatory intent under *Staub*.

4. Stansberry testified in her January 30, 2026 deposition that Krabbe had unilateral authority to override all 3-year LOA separations, with no investigation required.

Stansberry also testified that Krabbe had full authority to override all three-year LOA separations, and that when he exercised that authority:

- no investigation was required, no HR-48 meeting was required, and
- no JCBA due-process protections applied.

This testimony establishes that Krabbe's decision was not the product of a neutral administrative process but rather the direct result of a subordinate's misclassification and escalation, combined with Krabbe's willingness to override all contractual safeguards without review.

This is precisely the type of unchecked, subordinate-driven influence that *Staub* identifies as cat's paw liability.

5. The rapid escalation of termination occurred within 48 minutes of Stansberry and Clark alerting Krabbe to Plaintiff's new WKCP in their email thread.

The timeline is undisputed: In Email timeline, Page 13 Doc 226, Plaintiff reported a new WKCP OJI.

- Sabrina Clark and Aleta Stansberry immediately alerted Krabbe.
- Within 48 minutes, Krabbe approved "ADMIN TERMINATE."
- Krabbe declared that no investigation was necessary.
- AFA was not contacted.
- No review of OJI / RAP records occurred.
- No contact with Plaintiff occurred.
- No contact with Cordova occurred.

This is not a neutral administrative process.

This is a rapid, retaliatory escalation triggered by biased subordinates.

Under *Staub*, when a decisionmaker relies on tainted information supplied by a biased subordinate, the employer is liable.

6. Stansberry expressed retaliatory animus: "Three more days and I would have had you."

Plaintiff testified that Stansberry stated:

"Three more days and I would have had you."

This statement:

- was made immediately after Plaintiff returned from 2016 OJI
- was made during the period Stansberry was tracking Plaintiff's 3-year window,
- reflects an intent to "time out" Plaintiff, and
- is direct evidence of retaliatory motive.

Stansberry denied making the statement in her deposition, creating a classic credibility dispute that must be resolved by a jury.

7. Krabbe relied entirely on the tainted information supplied by Stansberry and Clark

Stansberry admitted she did not independently verify Plaintiff's Reasonable Accommodation Status.

This is the exact scenario *Staub* addresses:

a biased subordinate manipulates the decisionmaker by feeding false information.

8. The grievance-blocking was part of the cat's paw chain

The July 2019 AFA emails show:

- Grievance was denied at AFA (local level).
- Stansberry told the Union Plaintiff was "inactive,"
- the Union relied on that misrepresentation, and
- the grievance was blocked.

This is a continuous chain of causation under *Staub*.

9. United falsified the grievance history, and the July 2019 AFA emails prove the grievance was never heard

The grievance form lists Aleta Stansberry as the "supervisor" assigned to the appeal, and both Stansberry and Sabrina Clark were listed as the company representatives for the hearing. Yet no hearing ever occurred.

Despite this, Krabbe's January 21, 2021 declaration falsely stated that Plaintiff's grievance "was denied at the first step of the grievance" and that "AFA declined to pursue the grievance to the next level." Former AFA President Elizabeth Hibbard confirmed that Plaintiff's grievance was never accepted, never heard, and that AFA "certainly would have pursued the disciplinary appeal had United not rejected it." Hibbard further confirmed that United processed and heard an identical grievance for comparator Sherri Bettencourt during the same period.

This selective treatment, combined with the false grievance history in Krabbe's declaration, is powerful evidence of manipulation, obstruction, and retaliatory motive under *Staub*.

10. Retroactive edits to Plaintiff's records further demonstrate manipulation

Metadata shows:

- removal of Stansberry's name from the History header,
- insertion of a new "supervisor," and
- retroactive changes to Plaintiff's status codes.

These edits occurred after Plaintiff attempted to return and before Krabbe issued his declaration. This is evidence of concealment, manipulation, and intent to influence the outcome.

11. Under Staub, Zamora, and Fifth Circuit precedent, these disputes must go to a jury

The Fifth Circuit has repeatedly held that cat's paw liability applies when:

- a subordinate harbors animus,
- performs an act intended to cause an adverse action, and
- the decisionmaker relies on that act.

Every element is satisfied here.

12. Stansberry did not complete the OIS investigation until July 2, 2019 — five days after Plaintiff was terminated

Stansberry did not complete the Occupational Injury System (OIS) investigation until July 2, 2019 at 12:40 a.m., five days after Plaintiff's termination was issued.

The OJI paperwork shows that United received Plaintiff's injury June 16, 2019 documentation on June 22 and June 24. Despite having the documents in her possession, Stansberry left the OIS investigation marked "Not Closed" until 12:40 a.m. on July 2, 2019—long after Plaintiff had already been terminated effective June 28, 2019. This means:

- the OJI investigation was still open at the time of termination,
- Stansberry had not completed her investigation for the OIS report
- the injury had not been classified,
- Sedgwick had not activated the claim,
- and Krabbe approved "ADMIN TERMINATE" before any investigation was complete.

This is direct evidence that the termination decision was made without the required OJI review, and that Stansberry's delay and post-termination completion of the OIS report

were part of the manipulated chain of events that proximately caused the adverse action under *Staub*.

E. United's Selective Enforcement and Comparator Evidence Independently Establish Pretext

Even if United's stated reasons were facially legitimate, the record shows that United enforced its policies inconsistently and treated similarly situated employees more favorably than Plaintiff. Selective enforcement is powerful evidence of pretext under Fifth Circuit law, particularly where the employer deviates from established procedures or applies rules differently to different employees. *Laxton*, *Burton*, and *Nasti* all recognize that disparate treatment of comparators is independently sufficient to defeat summary judgment. The evidence here shows precisely that.

1. United processed and heard an identical grievance for comparator Sherri Bettencourt — but refused to hear Plaintiff's

Former AFA President Elizabeth Hibbard confirmed that United accepted, processed, and heard an identical grievance for comparator Sherri Bettencourt during the same period in 2019. Bettencourt's grievance involved the same contractual provisions, the same administrative department, and the same procedural steps. Yet United refused to accept Plaintiff's grievance, falsely labeled her "inactive," and blocked the grievance from being heard at Step One.

This disparate treatment is not a minor procedural difference — it is a complete denial of contractual rights for Plaintiff, while granting those rights to a similarly situated comparator. Under Fifth Circuit precedent, this alone is sufficient to create a jury question of pretext.

2. United enforced the three-year LOA rule against Plaintiff — but not against other flight attendants with similar or longer absences

The record shows that multiple flight attendants exceeded the three-year administrative window but were not terminated. Some were granted extensions, some were returned to duty, and some were permitted to complete training or OJI processes without discipline. Plaintiff, by contrast, was terminated within 48 minutes of Clark and Stansberry reporting a new OJI to Krabbe , despite being ACTIVE in FAST/CCS and having completed requalification training.

This inconsistent enforcement of the same rule is classic evidence of pretext.

3. United applied the "inactive" designation only to Plaintiff — despite knowing she had completed training and was ACTIVE in FAST/CCS

Internal records show:

- Plaintiff had completed requalification training,
- Plaintiff was ACTIVE in FAST/CCS,
- Plaintiff had returned from OJI, and
- Plaintiff had built her June and July schedules.

Yet Krabbe and Stansberry labeled her "inactive" solely for the purpose of blocking her grievance and triggering the three-year separation. Other employees with similar administrative statuses were not labeled "inactive," and none were denied access to the grievance process.

This selective use of the "inactive" designation is evidence of manipulation and pretext.

4. United required a "supervisor" signature only for Plaintiff's termination — and fabricated one

Plaintiff's termination letter was only signed by:

Aleta Stansberry, Supervisor Inflight Service

- using a manually altered title,
- containing a "***HYPERLINK***" artifact,
- and reverting back to her true title the very next day of IAH Base Administration.

This deviation from standard practice is powerful evidence of pretext.

5. United bypassed the HR-48 investigation only for Plaintiff

Stansberry testified that Krabbe had authority to override the three-year LOA rule without any investigation, and that he exercised that authority here. But the record shows that other employees received:

- HR-48 meetings,
- fact-finding interviews,
- union representation,
- and opportunities to respond.

Plaintiff received none of these protections. The Fifth Circuit has repeatedly held that deviations from normal procedures are evidence of pretext.

6. United's selective enforcement aligns with the retaliatory animus expressed by Stansberry

Plaintiff testified that Stansberry stated:

"Three more days and I would have had you."

This statement reflects:

- tracking of Plaintiff's three-year window, once in the last 90 days of 3 years.
- intent to "time out" Plaintiff, and
- motive to selectively enforce the rule against her.

The fact that United enforced the rule against Plaintiff — but not against others — is consistent with this retaliatory motive.

7. United suppressed comparator evidence from the Kato/Crozier arbitration, where Krabbe served as United's labor expert

United's selective enforcement is further demonstrated by comparator evidence revealed in the Kato and Crozier arbitration, where Robert Krabbe personally appeared as United's labor representative and expert witness. During that arbitration, Krabbe was aware of two additional comparators — Indy Persaud-Santo and Michelle Hagan — who, like Plaintiff, did not return to active status within the same administrative period. Kato later learned that neither Persaud-Santo nor Hagan suffered any adverse action, despite exceeding the same return-to-work window that United claims was "mandatory" and "strictly enforced" against Plaintiff.

This evidence is significant because:

- Krabbe personally knew of these comparators,
- United did not disclose them in Plaintiff's arbitration or EEOC proceedings, and
- United treated these comparators more favorably, allowing them to remain employed.

The fact that United relied on the Kato/Crozier arbitration in its SBA filings — while suppressing comparator evidence from that very arbitration — demonstrates selective enforcement and intentional concealment. There is another IAH based "comparator" who did not return to REQUAL for 39 months, yet was allowed to exceed 3 year Limit.

8. Under Fifth Circuit law, this comparator evidence independently defeats summary judgment

The Fifth Circuit has repeatedly held that:

- treating similarly situated employees differently,
- enforcing rules inconsistently, or
- deviating from standard procedures

is independent evidence of pretext requiring a jury trial.

Here, United:

- heard Bettencourt's grievance but refused to hear Plaintiff's,
- enforced the three-year rule against Plaintiff but not others,
- fabricated a supervisor title only for Plaintiff's termination,
- bypassed HR-48 only for Plaintiff,
- selectively applied the "inactive" designation, and
- suppressed comparator evidence from the Kato/Crozier arbitration.

This is not neutral enforcement — it is targeted, inconsistent, and retaliatory.

Shifting Explanations for Plaintiff's Separation Demonstrate Pretext
Employment discrimination claims are analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green. Under this framework, once an employer articulates a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff may demonstrate that the stated reason is pretextual.
The Supreme Court has explained that when a factfinder determines that an employer's explanation is false or unworthy of credence, it may reasonably infer that the employer is concealing the true motive. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000). Consistent with this principle, the Fifth Circuit has repeatedly held that shifting or inconsistent explanations for an employment decision constitute evidence of pretext sufficient to defeat summary judgment. See Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 237 (5th Cir. 2015); see also Gee v. Principi, 289 F.3d 342, 347–48 (5th Cir. 2002) (recognizing that inconsistent explanations may support a reasonable inference that the employer's stated reason is pretextual). Courts within the Southern District of Texas regularly apply this rule when evaluating summary judgment in employment discrimination cases.

Here, United Airlines has offered multiple and materially inconsistent characterizations of Plaintiff's separation, describing the action at different times as an administrative separation, a retirement in its EEOC position statement, and elsewhere as a termination. These classifications represent materially distinct employment actions under United's own policies and the governing collective bargaining agreement. Such shifting explanations permit a reasonable

factfinder to conclude that the employer's stated justification is not the true reason for the decision but rather a post-hoc explanation created after the fact.

Moreover, summary judgment is improper where competing inferences exist regarding the employer's motives. At the Rule 56 stage, courts must view the evidence in the light most favorable to the nonmoving party and may not resolve credibility disputes. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Finally, an employer may be liable where a decisionmaker relies on information supplied by subordinate employees whose actions influenced the decision. See Staub v. Proctor Hospital, 562 U.S. 411, 422 (2011). Where, as here, the termination decision relied on information provided by other managerial actors, a jury may reasonably conclude that the employer acted upon inaccurate or biased information when authorizing Plaintiff's separation.

Accordingly, because the record demonstrates shifting explanations and disputed facts surrounding Plaintiff's separation, genuine disputes of material fact exist and summary judgment must be denied

CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, United's motion for summary judgment cannot be resolved on the present record. The evidence described in this brief — including contradictory declarations, retroactive edits, misclassification of Plaintiff's administrative status, grievance-blocking, selective enforcement, comparator evidence, and subordinate-driven misconduct under *Staub* — raises numerous genuine disputes of material fact that must be evaluated by a jury under *Reeves*, *Tolan*, and controlling Fifth Circuit precedent.

Plaintiff further acknowledges and sincerely appreciates the Court's patience and understanding throughout this unusually compressed and technically challenging period. Despite diligent efforts, Plaintiff has experienced repeated and documented system failures — including upload crashes, corrupted files, and loss of access to the electronic filing system — which have prevented her from completing the upload of her supporting exhibits. These exhibits consist of screenshots, emails, metadata, and administrative records already referenced in this brief and already in United's possession. A brief extension will allow Plaintiff to file the exhibits in an organized, judge-ready format without prejudice to any party. Plaintiff did not receive a copy of Stansberry deposition transcript, Jan 30, 2026, until February 14, 2026 and due to shipping issues did not receive her EXHIBITS until March 4, 2026. (verified by Rose Court Reporter) Plaintiff will file the exhibits for this motion promptly upon restoration of full ECF access, and **respectfully requests three (3) days to do so.** United will still have its full response period thereafter.

WHEREFORE, Plaintiff respectfully prays that the Court:

1. DEFER ruling on United's Motion for Summary Judgment until Plaintiff has a fair opportunity to file her supporting exhibits;
2. GRANT Plaintiff a brief extension of three (3) days to file those exhibits, in light of documented technical failures and in the interest of a complete and accurate record;
3. ACCEPT Plaintiff's forthcoming exhibits as part of the summary-judgment record; and
4. AWARD such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

March 13, 2026


/s/ Christine Finger

Plaintiff, Pro Se

47 N. High OaksCircle

The Woodlands, Texas

1Ladyfinger@gmail.com

832-656-6999

CERTIFICATE OF SERVICE

I certify that on March 13, 2021 a true and correct copy of the foregoing was served via CM/ECF and by email on counsel listed below.

Amit K. Misra
The Misra Legal Group, P.C.
639 Heights Boulevard
Houston, Texas 77007
T: 832-723-4776 | F: 832-476-9656
Email: amit@misralegal.com

/s/ Christine Finger
Christine Finger, Pro Se
47 North High Oaks Circle
The Woodlands, Texas 77380
1LadyFinger@gmail.com | 832-656-6999