**CIVIL ACTION NO. 4:20-cv-04205**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**CHRISTINE FINGER,**
Plaintiff, Pro Se

v.

**UNITED AIRLINES, INC.,**
Defendant.

# PLAINTIFF'S SUPPLEMENTAL NOTICE OF SEPTEMBER 6, 2026 GOOGLE CHROME SYSTEM OUTAGE, RESULTING FILE LOSS AND GEEK SQUAD SYSTEM RESTORATION, RENEWED MOTION FOR EXTENSION THROUGH SEPTEMBER 14, 2026, AND REQUEST FOR EXPEDITED CONSIDERATION

**TO THE HONORABLE JUDGE ANDREW S. HANEN:**

COMES NOW Plaintiff Christine Finger, proceeding pro se, and respectfully submits this Supplemental Notice and Renewed Motion concerning a **new and unforeseen technical failure arising on September 6, 2026**, while Plaintiff was actively working to complete the remaining summary-judgment exhibits.

On September 6, Plaintiff experienced a significant failure involving **Google Chrome during a period in which contemporaneous Downdetector reports reflected a widespread Google/Chrome service disruption**. Plaintiff attaches the contemporaneous Downdetector screenshot as supporting documentation.

The failure substantially disrupted Plaintiff's computer access while numerous documents and working files associated with the summary-judgment exhibit project were open and actively being organized. Plaintiff immediately contacted **Geek Squad technical support** and spent approximately **three hours working remotely with Geek Squad technicians, continuing until approximately 1:30 a.m. on September 7, 2026**, in an effort to restore the system and recover her work.

During that remote-support session, Geek Squad took remote control of Plaintiff's computer and was required to **remove and reinstall Google Chrome and restore/reconfigure the affected system access**. Although browser functionality was ultimately restored, the process resulted in the loss of numerous active working files and documents in the condition in which Plaintiff had organized and prepared them. Plaintiff consequently must now **locate, reopen, reconstruct, reorganize, and in many instances restart documents and exhibit-reference work that had already been substantially completed**.

Plaintiff can document both the lengthy Geek Squad support session and the related telephone activity and will attach the available call/chat documentation.

This is not a minor delay associated merely with uploading completed exhibits. Plaintiff's remaining submission requires extensive manual reconstruction and cross-referencing of hundreds of pages of evidence drawn from thousands of pages of discovery. The September 6 outage and resulting system restoration therefore caused the loss of substantial active work at the precise point Plaintiff was attempting to complete the record for filing.

Plaintiff respectfully submits that this **new technical event was wholly unforeseen, occurred outside Plaintiff's reasonable control, and materially changes the feasibility of the previously requested September 8 alternative deadline**. Plaintiff therefore renews and respectfully urges her pending request for an extension through **September 14, 2026**, while continuing to work diligently and intending to file sooner if reasonably possible.

This new circumstance arose after Plaintiff's prior extension filings and materially affects Plaintiff's ability to complete the exhibit submission by the previously requested September 8 alternative date.

## I. PROCEDURAL POSTURE

1. By prior Order, the Court established August 31, 2026 as Plaintiff's deadline to complete the supplemental summary-judgment exhibit filing.
2. Before that deadline expired, Plaintiff timely filed Dkt. 254 requesting a three-day extension through September 3, 2026. Defendant expressly agreed that request was unopposed.
3. Plaintiff thereafter requested additional time through September 7, 2026. Defendant's counsel again expressly advised Plaintiff that United would not oppose that extension.
4. Following Plaintiff's unexpected September 1, 2026 HCA evaluation and diagnosis of a new viral infection requiring additional prescribed medications, Plaintiff requested the additional week through September 14. *United opposed only that additional period.*
5. Plaintiff filed Dkt. 255 as a **Partially Opposed Supplemental Motion**, accurately explaining that United did not oppose September 7 but opposed the additional week through September 14.
6. Plaintiff thereafter filed Dkt. 257 to correct Defendant's characterization of the conference history, cure the inadvertently blank HCA exhibit, and explain that September 7 was Labor Day. Plaintiff alternatively requested at minimum through September 8, the first business day after the already-unopposed September 7 date.
7. Plaintiff subsequently filed her limited supplemental response addressing the collateral medical allegations introduced through Defendant's Dkt. 256.
8. Plaintiff has continued working toward completion throughout these filings.

## II. A NEW AND UNFORESEEN TECHNICAL FAILURE OCCURRED SEPTEMBER 6

9. On September 6, 2026, while Plaintiff was actively working on the summary-judgment evidentiary materials, Plaintiff experienced a serious failure involving Google Chrome and her browser-based working environment.
10. This problem occurred during a period in which widespread Google-associated service disruptions were being reported by users. Plaintiff contemporaneously reviewed Downdetector, which reflected a significant spike in reported outages, and preserved a screenshot of those reports.
11. Plaintiff will attach that contemporaneous Downdetector screenshot as **Exhibit A**.
12. Plaintiff immediately contacted Geek Squad technical support in an effort to preserve and restore the system and her work.
13. Plaintiff spent approximately **three hours** working with Geek Squad support, continuing until approximately **1:30 a.m. on September 7, 2026**.
14. During that process, Google Chrome had to be removed and reinstalled and portions of Plaintiff's system and browser environment had to be reconfigured.
15. Plaintiff will attach her available Geek Squad support documentation, chat/session information, and telephone records reflecting the extended technical-support session as **Exhibit B**.
16. Although browser functionality was ultimately restored, Plaintiff discovered that active files and working materials she had been using and organizing for the summary-judgment submission were no longer available in their prior working state.
17. Plaintiff is consequently required to reconstruct substantial portions of work that had already been completed, including locating, reopening, reorganizing, cross-referencing, and rebuilding materials intended for the exhibit filing.
18. This failure was unforeseen, was not caused by Plaintiff's lack of diligence, and arose while Plaintiff was continuing to work toward completion.

Contemporaneous reporting on September 6 documented widespread user-reported disruptions involving Google Search, Gmail, YouTube, and other Google-associated services; Plaintiff's own Downdetector screenshot is the better exhibit for the filing because it reflects what she observed at the time.

**III. THE LOSS OF PLAINTIFF'S ACTIVE WORK IS PARTICULARLY PREJUDICIAL BECAUSE UNITED'S DISCOVERY RECORD REQUIRES MANUAL BATES-BY-BATES RECONSTRUCTION**

19. Plaintiff's remaining task is not merely uploading a completed stack of exhibits.
20. Plaintiff must manually identify, compare, organize, and cross-reference an unusually complicated discovery record in which United produced the same communications and documents repeatedly under different Bates numbers and, in material instances, in differing forms.
21. A representative example is the June 28–29, 2019 email thread involving Aleta Stansberry, Elizabeth Hibbard, Tammy Holt, and Bob Krabbe.
22. Variations of that thread appear throughout United's production under numerous Bates numbers, including **UNITED_005296, UNITED_005308, UNITED_004372, UNITED_004360, UNITED_005300, UNITED_005303, UNITED_005390, UNITED_005311, UNITED_004363, UNITED_005314, and UNITED_004369**, among others.
23. Those produced versions do not uniformly contain the same header or intervening-message information.
24. For example, the June 29, 2019 8:54 a.m. Tammy Holt email appears at **UNITED_005296** with **Bob Krabbe expressly displayed as a BCC recipient**, while numerous other versions displaying the same substantive Holt communication do not display Krabbe as a BCC recipient.
25. A similar discrepancy exists concerning the later Holt communication: **UNITED_005308** displays Krabbe as BCC, while **UNITED_004360** does not display him.
26. **UNITED_005311** separately contains Krabbe's intervening communication to Holt—"You might suggest she reach out to the MEC"—which is not reproduced within several later renderings of the continuing thread.
27. Likewise, **UNITED_005314** and **UNITED_004369** preserve Hibbard's 8:23 a.m. correction email, while other produced versions of the continuing thread omit that intervening communication.

28. Plaintiff raised these production irregularities with Defendant's counsel long before the present extension dispute, including identifying Bates-stamped examples of missing and differing portions of the June 29 email thread. Plaintiff's prior correspondence identified, among others, UNITED_004360, 005303, 005308, 005300, 004363, 005390, 004372, 005314, and 004369.
29. Thus, when Plaintiff cites one factual proposition in her summary-judgment response, she cannot simply locate "the email." She must determine **which Bates-stamped version contains the particular header, recipient, BCC, omitted communication, or other information relevant to that proposition**.
30. The termination letter presents the same difficulty. United produced multiple versions of the same termination document and related records at different Bates locations, requiring Plaintiff to compare formatting, signature/title information, surrounding communications, and related records to determine which version supports each evidentiary point.
31. The September 6 technical failure therefore does not merely require Plaintiff to reopen several documents. It requires Plaintiff to reconstruct a **Bates-specific evidentiary map connecting factual propositions to particular versions of repeatedly produced records**.

## IV. PLAINTIFF HAS TAKEN EXTRAORDINARY STEPS AND INCURRED SUBSTANTIAL EXPENSE TO COMPLETE THE RECORD

32. Plaintiff has not relied solely on her own efforts.
33. In an attempt to complete and organize the massive evidentiary submission, Plaintiff retained outside legal-document assistance and provided scanned exhibit materials for purposes of breaking down and organizing the exhibits for integration with the summary-judgment argument.
34. Plaintiff paid approximately **$1,700** for that assistance.
35. Plaintiff will attach documentation of that expenditure as **Exhibit C**.
36. Despite that substantial expenditure, the outside effort did not result in a usable completed submission, and Plaintiff was required to resume the detailed reconstruction herself.

37. Plaintiff identifies this expenditure not to seek reimbursement, but as concrete evidence of her diligence and the extraordinary efforts she has undertaken to comply with the Court's deadline.
38. Plaintiff has personally reviewed thousands of pages, reconstructed Bates references, scanned and organized hard-copy exhibits, retained and paid outside assistance, learned the CM/ECF filing system while proceeding pro se, and immediately obtained professional technical support when the September 6 system failure occurred.
39. These are not the actions of a litigant disregarding the Court's deadlines.

**V. THE CONTINUING COLLATERAL INTERVENTION BY AN ADVERSE NONPARTY HAS CREATED AN ADDITIONAL AND UNFORESEEN DIVERSION OF THE LIMITED TIME AVAILABLE**

40. Plaintiff also respectfully advises the Court of an additional circumstance affecting the limited time available to complete the summary-judgment record.
41. Defendant's Dkt. 256 introduced approximately thirty pages of collateral allegations supplied by Deborah Swan, Plaintiff's adverse litigant in a separate state-court lawsuit.
42. Plaintiff was consequently required to divert time from completing the United evidentiary submission to address allegations concerning Plaintiff's medical treatment and credibility.
43. The communications did not end with Dkt. 256.
44. After Plaintiff addressed those matters in her subsequent federal filing, Ms. Swan continued contacting Defendant's counsel late on September 4 and again on September 5, analyzing Plaintiff's newly filed federal papers and expressly urging United to compare Plaintiff's state and federal representations and use purported "cross-docket" inconsistencies in this proceeding.
45. Ms. Swan's September 5 communication expressly urged United to place Plaintiff's statements "side by side" and challenged the explanation Plaintiff had only just filed in this Court.

46. Her preceding communication similarly provided extensive commentary concerning Plaintiff's physicians, appointments, treatment, filings, and claimed restrictions, and expressly stated that she believed United and Judge Hanen should evaluate Plaintiff's federal representations through the collateral state-court material she supplied.
47. Plaintiff respectfully submits that this continuing collateral advocacy has materially diverted the precise time she is seeking in order to complete the case actually before this Court.
48. Plaintiff is also deeply concerned by the extent to which an adverse nonparty is compiling, discussing, and circulating information concerning Plaintiff's physicians, medical appointments, treatment, and medical history.
49. Plaintiff has already placed substantial medical information on the public docket in an effort to substantiate prior requests for relief.
50. Plaintiff respectfully submits that she should not be required to continue placing increasingly private medical information into the public record merely because an adverse third party questions documented medical circumstances.
51. If the Court desires additional confirmation concerning Plaintiff's September 1 viral diagnosis, present treatment, or other medical circumstances relevant to the pending extension, Plaintiff is willing to submit appropriate physician documentation **under seal, in camera if directed by the Court, or through another protected procedure ordered by the Court**, with service and notice as the Court requires.
52. Plaintiff does **not** request that the Court restrict Ms. Swan's speech or prohibit her from communicating with Defendant.
53. Plaintiff requests only the narrower case-management protection that, **to the extent Defendant intends to rely upon additional accusations or materials supplied by Ms. Swan, those matters be presented formally on the docket with notice to Plaintiff and a fair opportunity to respond**, rather than requiring Plaintiff continually to defend against rolling off-docket allegations while attempting to complete her summary-judgment evidence.

Federal courts possess inherent authority to manage their proceedings and achieve orderly and expeditious disposition of cases, although such authority must be exercised with restraint. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991).

## VI. RULE 6 AND THE EQUITABLE FACTORS SUPPORT THE REQUESTED LIMITED EXTENSION

54. Federal Rule of Civil Procedure 6(b)(1)(A) authorizes the Court, for good cause, to extend a deadline when a timely request is made before the applicable period expires.
55. Plaintiff timely sought relief before expiration of the August 31 deadline through Dkt. 254 and continued to seek the additional relief while that timely request remained pending.
56. To the extent the Court determines Rule 6(b)(1)(B) applies to any portion of the presently requested relief, Plaintiff alternatively establishes excusable neglect.
57. Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), the inquiry is equitable and considers all relevant circumstances, including prejudice, length of delay, the reason for the delay, whether the circumstances were within the movant's control, and good faith. Rule 6 currently preserves the good-cause/excusable-neglect distinction.
58. **Prejudice to Defendant is minimal.** Defendant previously agreed not to oppose an extension through September 7. Defendant has requested additional time for its own reply and objections if Plaintiff receives additional time, and Plaintiff has expressly stated she does not oppose a corresponding extension.
59. **The requested delay is short.** Plaintiff seeks only through September 14 and will file sooner if reasonably able.
60. **The reasons are substantial and largely outside Plaintiff's reasonable control.** *They include the newly diagnosed September 1 viral infection, the unexpected September 6 technical failure, the loss of active working materials requiring reconstruction, and continuing collateral diversion caused after Defendant introduced an adverse nonparty's allegations into the extension dispute.*

61. **Plaintiff has acted in good faith.** She timely protected the original deadline, continuously communicated with Defendant, incurred substantial personal expense for outside assistance, continued working through medical circumstances, and immediately sought professional technical assistance when the September 6 failure occurred.
62. The September 8 alternative Plaintiff previously requested was proposed before the September 6 technical failure.
63. In light of the resulting loss and reconstruction work, Plaintiff respectfully advises the Court that she can no longer responsibly represent that the extensive submission can be reconstructed and completed by September 8.
64. Plaintiff therefore respectfully requests the short extension already sought through **September 14, 2026**.

**CONCLUSION**

Plaintiff recognizes the Court's concern regarding repeated extensions and does not make this request lightly.

The present circumstances, however, involve a convergence of documented and unforeseen events: a new viral illness diagnosed September 1; a significant September 6 technical failure requiring approximately three hours of professional support and reconstruction of active working materials; an unusually complicated Bates-stamped discovery record requiring manual comparison of repeated and differing document versions; substantial unsuccessful expenditure for outside assistance; and continuing diversion caused by collateral allegations introduced through an adverse nonparty.

Plaintiff has continued working throughout these circumstances and has taken extraordinary steps to complete the record.

Denying the brief extension at this stage would risk preventing the Court from receiving the organized evidentiary materials necessary to evaluate the material factual disputes already presented in Plaintiff's summary-judgment Response.

**PRAYER**

WHEREFORE, Plaintiff Christine Finger respectfully requests that the Court:

1. Grant Plaintiff's deadline to file the remaining supplemental summary-judgment exhibits through **September 14, 2026**;
2. Accept and consider the supporting documentation concerning the September 6 technical failure and Plaintiff's efforts to complete the record;
3. Permit Defendant **ten days following Plaintiff's completed exhibit filing** to submit its reply brief and evidentiary objections, consistent with Defendant's request;
4. Permit Plaintiff, if the Court determines additional medical documentation is necessary, to seek appropriate protected filing procedures under seal rather than publicly disclose additional private medical information; and
5. Grant Plaintiff all other relief, at law or in equity, to which she may be justly entitled.

Because the pending deadline is immediate and today is the Labor Day federal holiday, Plaintiff respectfully requests **expedited consideration**.

Respectfully submitted,

**/s/ Christine Finger**
Christine Finger
Plaintiff, Pro Se
47 N. High Oaks Circle
The Woodlands, Texas 77380
832-656-6999
1LadyFinger@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 7, 2026, a true and correct copy of the foregoing was served through the Court's CM/ECF system and by email upon counsel for Defendant:

Amit K. Misra
The Misra Legal Group, P.C.
639 Heights Boulevard
Houston, Texas 77007
amit@misralegal.com

**/s/ Christine Finger**
Christine Finger, Pro Se