**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CHRISTINE FINGER,** | § | |
| | § | |
| ***Plaintiff*** | § | |
| | § | |
| **v.** | § | **Case No. 4:20-cv-04205** |
| | § | |
| **UNITED AIRLINES, INC.** | § | |
| | § | |
| ***Defendant*** | § | |

---

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF RESTATED MOTION FOR SUMMARY JUDGMENT**

---

Defendant United Airlines, Inc. ("UA") files this reply brief in support of its restated motion for summary judgment, Dkt. 225, as to all claims filed by Plaintiff Christine Finger ("Finger").

## I. INTRODUCTION

1. Finger has filed a meandering, 45-page response to UA's restated motion for summary judgment. Dkt. 234-2. Inexplicably, she divides her response into two segments, one of nine pages and the other of 35. *Id*. After several months of delay, Finger finally filed 317 pages of so-called summary judgment evidence on the Court's October 6 deadline, Dkt. 265 with 15 exhibits, and an additional 539 pages on October 7, Dkt. 266 with 16 exhibits. Her evidentiary filing includes an additional 51-page brief. Dkt. 265. Across all these pleadings, Finger makes and remakes the same stale arguments which fail to create issues of material fact which preclude summary judgment. The Court can only imagine why a run-of-the-mill, single plaintiff, employment discrimination lawsuit requires 856 pages of exhibits to create a fact issue to avoid

summary judgment. Quite simply, there is no there there. Even with her voluminous exhibits, Finger cannot and does not proffer any evidence to show that UA administered its process for a flight attendant to return to work from a medical leave in an inconsistent manner or that it otherwise discriminated against her because of her age or disability or retaliated against her. The Court must firmly and finally put an end to this dispute by granting UA's motion for summary judgment in its entirety.

## II. FINGER'S NINE-PAGE RESPONSE FAILS TO AVOID SUMMARY JUDGMENT.

### A. Finger Fails to Refute UA's Statement of Undisputed Facts.

2. In its motion, UA clearly lays out undisputed facts from the summary judgment record; identifies the elements for each of Finger's claims; and demonstrates that Finger cannot create a fact issue either as to each element or as to pretext. In her nine-page response, Finger attempts to demonstrate that disputed facts exist but without citing any summary judgment evidence. (Dkt. 234-2 at 4-6). UA considers each of her arguments below.

3. *"Three More Days" Statement*. Dkt. 234-2 at 4-5. Finger alleges that Aleta Stansberry evinced her intent to terminate Finger by stating that, "Three more days, and I would have had you." Stansberry allegedly made this statement when Finger began her return-to-work process with only three days remaining in her three-year medical leave of absence. For purposes of summary judgment, the Court may presume that Stansberry made this statement. *This is an immaterial fact and does not help Finger avoid summary judgment*. Finger should have expected that UA was counting the days until her medical leave lapsed. After all, UA has an obligation to comply with the terms of the applicable collective bargaining agreement which limits medical leaves to three years. It charged Stansberry with the task of tracking medical leaves for flight attendants. Given this context, the Court should not find Stansberry's purported statement to be

actionable. It does not demonstrate any discriminatory intent based on Finger's age or disability. It only reflects UA's policy: had Finger *not* begun the return-to-work process before her three-year medical leave of absence expired, UA would have administratively separated her from employment.

4. *Discretionary v. Automatic Nature of Termination*. Dkt. 234-2 at 5. Finger alleges that Tammy Holt stated, "If the [Flight Attendant] is in the [return-to-work] process prior to the 3 year admin term date, they will not be automatically terminated." For purposes of summary judgment, the Court may presume that Holt made this statement. *This is an immaterial fact and does not help Finger avoid summary judgment.* The statement does not demonstrate that Finger's subsequent administrative separation for failing to *fulfill* all return-to-work requirements resulted from a discriminatory intent based on Finger's age or disability. It only reflects UA's policy. In fact, Finger began the return-to-work process before her three-year medical leave of absence expired, and UA did not automatically terminate her. Rather, UA only administratively separated her from employment after she failed to *fulfill* all return-to-work requirements by not flying a trip, sitting a day of reserve, or making a contractual schedule change.

5. *Misclassification of Injury*. Dkt. 234-2 at 5. Finger alleges that UA classified her reinjury as a sick call rather than as an OJI "to manufacture a justification for separation." For purposes of summary judgment, the Court may presume that UA categorized the absence resulting from Finger's reinjury as a "sick call" rather than an "on-the-job injury." *This is an immaterial fact*. Finger cannot proffer any evidence which shows that *how* UA classified Finger's reinjury had any bearing on her administrative separation. She has no basis to argue any distinction between an on-the-job injury and a sick call. She cannot proffer any evidence that UA deems one to support administrative separation deems the other as the basis for yet another medical leave of absence.

6. *Rapid Escalation and Absence of Investigation*. Dkt. 234-2 at 5-6. Finger alleges that UA decided to separate her from employment within 58 minutes of learning of her reinjury. For purposes of summary judgment, the Court may presume that UA made its separation decision within an hour. *This is an immaterial fact*. Finger cannot proffer any evidence which shows that UA had a contractual or other obligation to spend more time deliberating its interpretation of the CBA or otherwise conduct some investigation before making its separation decision. UA did not need additional time or additional facts to learn that, with her reinjury, Finger did not fulfill all return-to-work requirements by flying a trip, sitting a day of reserve, or making a contractual schedule change.

7. *Post-Termination Record Modification*. Dkt. 234-2 at 6. Finger alleges that UA modified certain records after Finger's administrative separation. For purposes of summary judgment, the Court may presume that UA modified records to identify Rick Velez as her supervisor and to identify Aleta Stansbery as a supervisor in Finger's separation letter. *These are immaterial facts*. Regardless of whom UA identified as Finger's supervisor, Finger failed to fulfill all return-to-work requirements by not flying a trip, sitting a day of reserve, or making a contractual schedule change.

**B. Finger Makes an Inapposite Argument About Subject-Matter Jurisdiction.**

8. In its separate motion to dismiss for lack of subject-matter jurisdiction and supporting reply brief, UA sets forth its arguments for why the Court lacks subject-matter jurisdiction of Finger's claims. For whatever reason, Finger chooses to state arguments related to subject-matter jurisdiction in her response to UA's motion for summary judgment. Dkt. 234-2 at 6-7. UA will not address those arguments in this reply brief and directs to the Court to its separate briefing.

**C. Finger Fails to Create Issues of Material Fact as to All Elements of Her Age Discrimination Claims and as to Pretext.**

9. As to her age discrimination claims, Finger still fails to create a fact issue as to the essential element of having a comparator. She states without any citation to the summary judgment record that she has identified younger flight attendants whom UA allowed to remain on medical leave past the three-year threshold. Dkt. 234-2 at 7. She later references "Comparator Bettencourt – a younger, non-injured flight attendant." *Id.* at 17. This Court granted summary judgment in favor of UA in Case No. 4-19-cv-02981, *Sherri Bettencourt v. United Airlines, Inc.* and may take judicial notice of the same. The Court found that Bettencourt sustained a lumbar strain while working, that she immediately began a medical leave of absence, and that UA terminated Bettencourt's employment after her three-year medical leave of absence expired. *See* Ex. 1. Finger's assertion that UA treated Bettencourt differently than Finger is simply false.

10. Finger still fails to create a fact issue as to pretext. She offers without any citation to the summary judgment record the purported "three more days" comment by Aleta Stansberry. As explained above, this statement does not evince any discriminatory intent, much less direct evidence of anti-age animus. It does not tend to show that UA's stated reason for Finger's administrative separation – her failure to fulfill all return-to-work requirements by flying a trip, sitting a day of reserve, or making a contractual schedule change – is false.

**D. Finger Fails to Create Issues of Material Fact as to All Elements of Her Disability Discrimination Claims and as to Pretext.**

11. As to her disability discrimination claims, Finger makes an inapposite argument stating that the ADA required UA to engage in the reasonable accommodation process following her reinjury. First, Finger has not pleaded a failure-to-accommodate claim. *See* Dkt. 216-1 at ¶¶204-12. Second, the ADA only requires employers to make reasonable accommodations for known physical or mental limitations of otherwise *qualified* employees. 42 U.S.C.

§12112(b)(5)(A) (emphasis added). To the extent that the Court chooses to read a failure-to-accommodate claim into Finger's second amended complaint, she must allege that (1) she is a *qualified* individual with a disability; (2) the disability and its consequential limitations were known by her employer; and (3) her employer failed to make reasonable accommodations for such known limitations. Feist v. Louisiana, 730 F.3d 450, 452 (5th Cir. 2013) (emphasis added). Given the nature of Finger's reinjury – she received worker compensation wage replacement benefits for eighteen months after her reinjury – she was not qualified to work as a flight attendant, and her disability did not merit the reasonable accommodation process.

12. Finger still fails to create a fact issue as to her qualification. Dkt. 234-2 at 8. She does not dispute that she received wage replacement benefits for eighteen months after her reinjury. Clearly, Finger could not work as a flight attendant and was not qualified during her period of temporary total disability.

13. Finger still fails to create a fact issue as to causation. Dkt. 234-2 at 8. Her cited case, EEOC v. LHC Group, 773 F.3d 688 (5th Cir. 2014), does not require that an employer ignore its neutral policies because an employee has a disability. UA determined that Finger did not fulfill the return-to-work process because she cancelled her first scheduled trip after completing her training. UA did not ask, "Can we administratively terminate Finger because she reinjured herself?" Rather, UA asked, "Can we administratively terminate Finger because she cancelled her scheduled trip and did not otherwise fulfill the return-to-work requirements?"

14. Finger still fails to create a fact issue as to pretext. Dkt. 234-2 at 8. Finger has no basis to argue any distinction between an on-the-job injury and a sick call. She cannot proffer any evidence that UA deems one to support administrative separation deems the other as the basis for yet another medical leave of absence.

**E. Finger Fails to Create Issues of Material Fact as to All Elements of Her Retaliation Claims and as to Pretext.**

15. As to her retaliation claims, Finger still fails to create a fact issue as to protected activity. As explained in UA's underlying motion, reporting a workplace injury is not ADA protected activity.

16. Finger still fails to create a fact issue as to causation. She fails make any argument as to the but-for causation required for a retaliation clam.

17. Finger still fails to create a fact issue as to pretext. She cites Staub v. Proctor Hospital for its proposition of cat's paw liability: if a supervisor performs an act motivated by discriminatory animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable. As explained above, Aleta Stansberry's purported comment does not constitute evidence of discriminatory animus. At most, Stansberry made a statement of UA's practice requiring a flight attendant to begin the process to return to work before expiration of the three-year medical leave of absence. Importantly, Stansberry as a supervisor did not perform any act other than issue the administrative separation letter. She did not take any step which prevented Finger from performing any of the steps of the return-to-work process. In fact, without dispute, Finger performed all the steps of the return-to-work process except for flying a trip, sitting a day of reserve, or engaging in a contractual schedule change.

**III.**
**FINGER'S 35-PAGE RESPONSE FAILS TO AVOID SUMMARY JUDGMENT.**

**A. In Her Introduction, Finger Posits a New Theory that UA "Misclassified" Her Reinjury.**

18. Finger begins her second, 35-page response by putting a forward a new theory for her case. She alleges that UA intentionally misclassified her reinjury as a sick call rather than an

on-the-job injury. Dkt. 234-2 at 12. She does not and cannot offer any evidence from any UA witness regarding the alleged import of the two classifications. She uses this argument to segue into a more familiar contention, namely that she was an "active" flight attendant. Again, she does not and cannot offer any evidence from any UA witness regarding the alleged import of being "active."

**B. Finger Offers Her Own Statement of Material Facts Without Any Citation to the Summary Judgment Record.**

19. In her Statement of Material Facts, Finger identifies 26 facts under six headings. Below, UA identifies those facts which have no support in the record and which the Court may simply disregard as baseless allegations —

20. Fact No. 3. *A flight attendant who is "inactive, "separated," or on a "sick call" cannot receive OJI benefits.* This statement is false. Finger has not offered any evidence from any UA witness regarding flight attendant eligibility for worker compensation and other benefits related to an on-the-job injury and cannot do so.

21. Fact No. 5. *United's misclassification of this OJI as a "sick call" is contradicted by every internal document produced in discovery.* This statement is false. Finger has not offered any evidence from any UA witness regarding this purported "misclassification" and cannot do so.

22. Fact No. 9. *Plaintiff's ability to bid, build a schedule, and receive OJI benefits is incompatible with Defendant's narrative of inactivity.* This statement is false. Finger offers the red herring fallacy of an alleged narrative of "inactivity" by UA. As all the pleadings in this case demonstrate, UA has consistently taken the position that Finger failed to fulfill her return-to-work requirements under the CBA by flying a trip, sitting a day of reserve, or making a contractual schedule change. It has consistently delinked Finger's active status under its company systems and whether she fulfilled her return-to-work requirements under the CBA. It has never taken the

position that Finger's administrative separation resulted from her "inactivity."

23. Fact No. 10. *Internal AFA emails produced in 2024 show that Plaintiff attempted to file a grievance, but United blocked the grievance process.* This statement is false. UA has offered summary judgment evidence establishing that it could not provide a first-step grievance hearing because it administratively separated Finger under the CBA rather than discharged her under the just cause standard. Dkt. 226-1 at 118.

24. Fact No. 11. *United told the Union that Plaintiff was "inactive" and "not eligible" to grieve a statement contradicted by FAST/CCS and OJI records.* This statement is false. As the Court already knows, the Association of Flight Attendants pursued a grievance on Finger's behalf to the final step of binding arbitration before the RLA System Board of Adjustment.

25. Fact No. 12. *The Union relied on United's misclassification and refused to process Plaintiff's grievance.* This statement is false. UA directs the Court to its responses to Facts No. 10 and 11, above.

26. Fact No. 14. *Plaintiff's FAST/CCS administrative header was altered to remove Aleta Stansberry's name and replace it with a shadowed header.* This statement is false and immaterial. Finger has not offered any evidence from any UA witness regarding this purported alteration and cannot do so.

27. Fact No. 15. *A new "supervisor" was retroactively inserted into Plaintiff's work history - a person who had never supervised Plaintiff.* This statement is false and immaterial. Finger has not offered any evidence from any UA witness regarding this purported retroactive insertion and cannot do so.

28. Fact No. 16. *Krabbe's and Stansberry's declarations contain contradictions.* This statement if false and immaterial. UA does not rely on these declarations and has not included

them or any other declaration from Krabbe or Stansberry in the summary judgment record.

29. Fact No. 19. *But United did not uniformly enforce this rule.* This statement is false. Finger has not offered any evidence from any UA witness regarding this purported lack of uniformity and cannot do so.

30. Fact No. 20. *Comparator Bettencourt - a younger, non-injured flight attendant was permitted to return after exceeding the same limit.* As explained above, this statement is false. The Court may take judicial notice of the fact that UA administratively separated Bettencourt after she exceeded her maximum three-year medical leave without fulfilling her return-to-work requirements. *See* Ex. 1.

31. Fact No. 21. *Other flight attendants were also permitted to return after extended absences.* This statement is false. Finger has not offered any evidence from any UA witness regarding other flight attendants being permitted to return to work after expiration of the three-year medical leave of absence and cannot do so.

32. Fact No. 23. *"Three more days and I would have had you."* As explained above, this statement is immaterial.

**C. Finger Attempts to Refute UA's Statement of Material Facts Without Any Citation to the Summary Judgment Record.**

33. In her Rebuttal to Defendant's Statement of Facts, Finger attempts to refute multiple facts which UA supported by reference to the summary judgment record. Unsurprisingly, Finger offers no evidence to refute UA's asserted facts, and she cannot do so.

**D. Finger Asserts Without Evidence that UA's Asserted Reason for Her Administrative Separation Is False.**

34. Relying on Reeves v. Sanderson Plumbing Products, Inc., Finger argues that the Court should deny UA's motion for summary judgment because she has produced evidence that UA's stated reason for her administrative separation is false. As is her wont, Finger fails to offer

any evidence to support her assertion. UA has consistently stated that it administratively separated Finger because she did not fulfill the requirements of her return-to-work process by flying a trip, sitting a day of reserve, or making a contractual schedule change. Where is there any evidence that this is false? Did she actually fulfill any of these requirements? Because Finger cannot establish a genuine fact issue as to pretext, she then argues that UA lacks credibility as to various immaterial facts. She cannot avoid summary judgment by attempting to create issues as to immaterial facts.

**E. Finger's Twenty Pages of Argument Fail to Create a Fact Issue as to Any Element of Any of Her Claims or as to Pretext.**

35. Finger argues that UA misclassified her reinjury as a sick call rather than an on-the-job injury. Dkt. 234-2 at 23. She offers no evidence to support this assertion. On the one hand, she argues that she was able to file a worker compensation claim and receive wage replacement benefits for eighteen months because UA classified her reinjury as an on-the-job injury. On the other hand, she argues that UA could administratively separate her because it classified her reinjury as a sick call. Without dispute, UA administratively separated Finger because she failed to fulfill the requirements of her return-to-work process, not because of her on-the-job injury or sick call. This so-called misclassification is immaterial and does not create a material fact issue as to pretext.

36. Finger argues that she completed a reasonable accommodation process before beginning her return-to-work process. Dkt. 234-2 at 24. She offers no evidence to support this assertion. Without dispute, Finger was qualified and able to perform the essential functions of her job when she began her return-to-work process and before her reinjury. Her being a qualified employee under the ADA *before* her reinjury is immaterial and does not create a material fact issue as to pretext.

37. Finger argues that she completed training and requalified as a flight attendant. Dkt. 234-2 at 24-25. UA has not disputed that Finger completed her requalification training. Her having

completed her requalification training *before* her reinjury is immaterial and does not create a material fact issue as to pretext.

38. Finger argues that she did not want to report her reinjury immediately. Dkt. 234-2 at 25. Her reasons for not wanting to report her reinjury are immaterial. Ultimately, UA became aware of her reinjury, processed her worker compensation claim, and paid her eighteen months of wage replacement benefits because of her temporary total disability. The facts demonstrate that she was not an ADA qualified employee and that she did not engage in protected activity.

39. Finger argues that UA offered three different explanations for her employment ending. Dkt. 234-2 at 25-26. She offers no evidence to support this assertion. UA's nomenclature for its employment decision does not reveal an inconsistency that creates a fact issue as to pretext. Without dispute, UA administratively separated Finger because she failed to fulfill the requirements of her return-to-work process. This meant that she exceeded her maximum three-year medical leave of absence. Given her age and years of service at the time of her separation, Finger was also eligible for retirement.

40. Finger argues that the misclassification of her OJI as a sick call resulted in her administrative separation. Dkt. 234-2 at 26. She offers no evidence to support this assertion. Without dispute, UA administratively separated Finger because she failed to fulfill the requirements of her return-to-work process. The classification of her reinjury had no bearing on her inability to fulfill the return-to-work requirements.

41. Finger argues Reeves for the proposition that a false explanation provides evidence of discrimination or retaliation. Dkt. 234-2 at 26-27. However, she has no evidence that UA provided a false explanation. Without dispute, UA has consistently stated that it administratively separated her because she failed to fulfill the requirements of her return-to-work process by not

flying a trip, sitting a day of reserve, or making a contractual schedule change.

42. Finger argues that UA suppressed, withheld, and fragmented evidence and this forms evidence of pretext. Dkt. 234-2 at 27. She offers no evidence to support this assertion. Despite Finger's multiple motions, the Court never found that UA violated any of its discovery obligations. She has no basis to make this argument.

43. Finger argues that UA withheld emails and grievance blocking communications. Dkt. 234-2 at 27. She offers no evidence to support this assertion. UA has offered summary judgment evidence establishing that it could not provide a first-step grievance hearing because it administratively separated Finger under the CBA rather than discharged her under the just cause standard. Dkt. 226-1 at 118. She also argues that UA submitted inconsistent declarations from Robert Krabbe. Not only are these declarations not inconsistent, but UA has not relied on them or otherwise included them in the summary judgment record. The Court should ignore this argument as immaterial.

44. Finger argues that UA and her union withheld documents from the RLA System Board of Adjustment. Her second amended complaint does not contain claims against the union or any claim challenging the arbitral award. The Court should ignore this argument as immaterial.

45. Finger argues that UA withheld metadata. Dkt. 234-2 at 28. She offers no evidence to support this assertion. The discovery rules do not require that a party produce metadata without the counterparty's request. To the extent that Finger requested metadata, UA produced such metadata. *See* Dkt. 166. UA denies that any produced metadata shows any retroactive alteration of records. Finger has no basis to make this argument.

46. Finger argues that UA did not produce documentation of her on-the-job injury until later in litigation, depriving her of use of the documents before the RLA System Board of

Adjustment. Dkt. 234-2 at 28-29. She offers no evidence to support this assertion. Her second amended complaint does not contain any claim challenging the arbitral award. The Court should ignore this argument as immaterial.

47. Finger argues that she did not receive the transcript of and exhibits to Aleta Stansberry's deposition until weeks later. Dkt. 234-2 at 29. UA did not retain the court reporter for the Stansberry deposition and had no control over the time required for the transcript or exhibits.

48. Finger argues that UA withheld evidence, provided incomplete records, altered documents, and shifted explanations all provide evidence of pretext. Dkt. 234-2 at 29. She offers no evidence to support this assertion. She cites Burton v. Freescale Semiconductor, Inc., 798 F.3d 222 (5th Cir. 2015), for the proposition that shifting explanations provide evidence of pretext. UA has consistently offered a single explanation for administratively separating Finger from employment, namely her failure to fulfill her return-to-work requirements by flying a trip, sitting a day of reserve, or making a contractual contract change. In Burton, two management witnesses offered two different reasons for the plaintiff's employment termination. "Akroyd first testified that he did not know if Burton's unauthorized use of the Internet was "one of the things" that motivated his decision. He then testified, however, that he learned of the infraction from Alvarez, verbally, on the day he decided to terminate Burton. Alvarez, however, testified that she never talked to Akroyd about Burton's performance." *Id*. at 235. The Fifth Circuit held that the district court improperly weighed evidence by choosing which testimony to credit and which to discard. *Id*. at 236. Importantly, the Fifth Circuit also stated, "We are not, at present, saying the inconsistency in and of itself raises an inference of pretext." *Id*. Rather, the court found that the Burton created a fact issue as to Akroyd's explanation which precluded summary judgment. *Id*. Finger cannot point to any inconsistency in the summary judgment record which rises to the level

of Burton and similarly creates an issue of material fact.

49. Finger argues that the suppressed evidence changes the record and precludes summary judgment. Dkt. 234-2 at 30. She offers no evidence to support this assertion. Again, despite Finger's multiple motions, the Court never found that UA violated any of its discovery obligations. She has no basis to make this argument of suppressed evidence. The Court should sanction Finger for her bad faith hyperbole.

50. Finger again argues about inconsistences in Robert Krabbe's declaration and whether her grievance was heard. Dkt. 234-2 at 30. She offers no evidence to support this assertion. As explained above, UA has offered summary judgment evidence establishing that it could not provide a first-step grievance hearing because it administratively separated Finger under the CBA rather than discharged her under the just cause standard. Dkt. 226-1 at 118. Also, as the Court knows, Finger's grievance progressed to final and binding arbitration before the RLA System Board of Adjustment. Further, as explained above, UA has not relied on Krabbe's declarations or otherwise included them in the summary judgment record. The Court should ignore this entire argument as immaterial.

51. Finger again repeats her arguments about inconsistences in declarations of Robert Krabbe and Aleta Stansberry. Dkt. 234-2 at 30-33. She offers no evidence to support this assertion. As explained above, UA has not relied on Krabbe's or Stansberry's declarations or otherwise included them in the summary judgment record. The Court should ignore this entire argument as immaterial.

52. Finger argues that Aleta Stansberry was responsible for creating a "false basis" for her administrative separation. Dkt. 234-2 at 34-36. She identifies multiple "facts" which demonstrate that Stansberry created this false basis. She offers no evidence to support this

assertion. Even if the Court presumes these "facts" to be true for purposes of summary judgment, they are immaterial. UA has consistently stated that it administratively separated Finger because she failed to fulfill the requirements of her return-to-work process by flying a trip, sitting a day of reserve, or making a contractual schedule change. *Stansberry was not responsible for Finger's failure to fulfill her return-to-work requirements*. Stansberry did not stop Finger from flying a trip, sitting a day of reserve, or making a contractual schedule change. Stansberry did not mislead Krabbe into determining that Finger failed to fulfill her return-to-work requirements. This does not create cat's paw liability under Staub. Finger cannot dispute that she did not fly a trip, sit a day of reserve, or make a contractual schedule change. This is not a "false basis" for her administrative separation.

53. Finger argues that the rapid escalation of termination supports cat's paw liability. Dkt. 234-2 at 36. She offers no evidence to support this assertion. As explained above, even if the Court presumes for purposes of summary judgment that UA made its separation decision in 48 minutes, this is an immaterial fact. It surely does not support cat's paw liability.

54. Finger argues that Stansberry expressed discriminatory animus. Dkt. 234-2 at 36-37. She offers no evidence to support this assertion. As explained above, even if the Court presumes for purposes of summary judgment that Stansberry made this statement, this is an immaterial fact. The statement does not demonstrate any discriminatory intent based on Finger's age or disability. It only reflects UA's policy: had Finger not begun the return-to-work process before her three-year medical leave of absence expired, UA would have administratively separated her from employment.

55. Finger argues that Stansberry did not verify her reasonable accommodation status. Dkt. 234-2 at 37. This is an immaterial fact. She offers no evidence to support this assertion. As

explained above, after her reinjury, Finger could not perform her essential job functions for eighteen months and was no longer an ADA qualified employee. UA was not required to initiate the reasonable accommodation process, and the reasonable accommodation process would not have avoided Finger's administrative separation under the terms of the CBA.

56. Finger argues that her grievance being "blocked" was part of the cat's paw chain. Dkt. 234-2 at 37. She offers no evidence to support this assertion. As the Court knows, Finger's grievance progressed to final and binding arbitration before the RLA System Board of Adjustment. Even if the Court presumes for purposes of summary judgment that Stansberry somehow "blocked" Finger's grievance for some period of time, this is an immaterial fact.

57. Finger argues that UA "falsified" her grievance history. Dkt. 234-2 at 37. She offers no evidence to support this assertion. Again, as the Court knows, Finger's grievance progressed to final and binding arbitration before the RLA System Board of Adjustment. Finger makes another false, inflammatory statement in bad faith with impunity. This false statement without evidence does not create a fact issue as to pretext.

58. Finger argues that metadata shows that UA made retroactive edits to its records. Dkt. 234-2 at 38. She offers no evidence to support this assertion. As explained above, UA denies that any produced metadata shows any retroactive alteration of records. Finger has no basis to make this argument.

59. Finger argues that Stansberry did not complete her on-the-job injury investigation until UA administratively separated Finger. Dkt. 234-2 at 38-39. This is an immaterial fact. She offers no evidence to support this assertion. After Finger's reinjury, UA determined that she did not fulfill her return-to-work requirements and administratively separated her. The worker compensation claim stemming from her reinjury involved a separate process which Stansberry also

administered. The process for initiating, investigating, and filing the worker compensation claim does not create a fact issue as to pretext.

60. Finger argues that UA selectively enforced its three-year medical leave of absence. Dkt. 234-2 at 39-41. Unsurprisingly, Finger offers no evidence to support her allegations. Whether UA heard a first-step for Sherri Bettencourt is immaterial. The material fact – that UA administratively separated both Finger and Bettencourt for failing to fulfill the return-to-work requirements – demonstrates UA's consistency. Finger offers no evidence of another flight attendant whose medical leave exceeded three years under the current CBA. She has no evidence of pretext.

61. Finger argues that UA misclassified Finger as "inactive." Dkt. 234-2 at 40. This is an immaterial fact. She offers no evidence to support this assertion. Regardless of her "inactive" or "active" status, Finger cannot dispute that she did not fly a trip, sit a day of reserve, or make a contractual schedule change.

62. Finger argues that Stansberry used an inconsistent title when she issued Finger's separation letter. Dkt. 234-2 at 40. This is an immaterial fact. She offers no evidence to support this assertion. Regardless of Stansberry's title, Finger cannot dispute that she did not fly a trip, sit a day of reserve, or make a contractual schedule change.

63. Finger argues that UA bypassed a contractual investigation process when it administratively separated her from employment. Dkt. 234-2 at 40-41. She offers no evidence to support this assertion. Any argument about her rights under the CBA implicate RLA preclusion. Finger has no evidence to show that a flight attendant subject to administrative separation for failing to fulfill return-to-work requirements has any right to an investigation process.

64. Finger argues that UA engaged in selective enforcement. Dkt. 234-2 at 41-42. She

offers no evidence to support this assertion.

## IV.
## FINGER'S 51-PAGE BRIEF, 317 PAGES OF EVIDENCE, AND 589 PAGES OF SUPPLEMENTAL EVIDENCE FAIL TO CREATE A FACT ISSUE.

65. Seven months after filing her response to United's motion for summary judgment, Finger filed her so-called summary judgment evidence, including a 51-page brief attempting to dispute UA's statement of facts, Dkt. 265; 317 pages across 15 exhibits, Dkt. 265-1 to 265-15; and an additional 539 pages across 16 exhibits, Dkt. 266 and Dkt. 266-1 to 266-16. The Court may merely rely on the Fifth Circuit's longstanding rule, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 408 (5th Cir. 2011) (quotation marks and citation omitted). "Judges are not like pigs, hunting for truffles buried in the record." United States v. del Carpio Frescas, 932 F.3d 324, 331 (5th Cir. 2019) (quotation marks and citation omitted). The Court need not determine where in 856 pages of exhibits and deposition transcripts a fact issue lies when Finger does not pinpoint the purported evidence by page number. *See also* Cortez-Burlingame v. Galveston Cnty., No. 3:18-cv-00183, slip op. at 7 (S.D. Tex. Apr. 27, 2020) ("Do Plaintiffs help me pinpoint which page, among the 4,200+ pieces of paper that comprise this one exhibit, I can turn to in order to find the reference? Unfortunately, no. …. And I will not do so here."). Finger has not provided any means for relating any information in her 856 pages of exhibits and transcripts, Dkts. 256 and 266, to any argument raised in her summary judgment response, Dkt. 234-2. More importantly, Finger has failed to relate any information in her summary judgment exhibits to the fact issues which UA identified in its motion for summary judgment, Dkt. 226.

Given Finger's failure to provide any roadmap to navigate her summary judgment exhibits, the Court should find that Finger has not produced any evidence which comports with the requirements of Rule 56 and the controlling precedent of the Fifth Circuit.

**A. Finger Still Has No Evidence of a Comparator to State an Age Discrimination Claim.**

66. In her 317-page submission, Finger provides a document which states: "Plaintiff has also identified three similarly situated comparators-Indy Persaud-Santo, Michelle Hagan, and Diana Vail-who exceeded the 3-year limit but were not administratively separated. Their continued employment shows that United did not apply the rule uniformly." Dkt. 265-6 at 6. She provides no additional information regarding Persaud-Santo or Hagan but manages to offer what purports to be an 11-page Facebook direct message conversation between her and Vail. Dkt. 265-6 at 23-33. Of course, Finger does not authenticate the direct messages, and Vail's statements do not constitute evidence. However, if the Court were to consider Vail's purported statements, it would note that Vail admits, "I was on leave for 33 months …." Dkt. 265-6 at 29. Accordingly, by her own admission, Vail did *not* exceed the three-year maximum contractual duration for medical leave and does not qualify as a comparator. Finger offers no other evidence to support her contentions regarding Persaud-Santo and Hagan among her 856 pages. She has failed to create a fact issue as to a comparator and fails to state a prima facie claim for age discrimination.

**B. Finger Still Has No Evidence of Her Qualification to State a Disability Discrimination Claim.**

67. In her 51-page brief, Finger concedes: "I admit that I had a disability and continuing physical limitations arising from my occupational injuries, and that my June 2019 occupational-injury claim continued after United Airlines terminated me. I also admit receiving the subsequent workers' compensation wage-replacement benefits identified by Defendant." Dkt. 265 at 43. Then, in a textbook illustration of cognitive dissonance, Finger asserts, "I deny that these facts establish

that I was not a qualified individual with a disability when United terminated me on June 28, 2019." Without any dispute, Finger could not work as a flight attendant at the time of her administrative separation or at any point afterward until March 15, 2021, when her temporary total disability benefits through her worker's compensation claim ended. She further provide no evidence that she ever worked or even sought employment after her administrative separation from UA. In fact, she provides her own testimony to establish that she has not worked *and does not want to work* since her administrative separation from UA:

> Q.· Okay.· Let me ask the question this way:· Have you applied for any job since you were administratively terminated by United?
>
> A.· No.· I -- I -- I'm 64 years old.· I was 60 years old when I was terminated.· Not exactly out there on the -- I have no computer skills.· I'm not exactly on the big hiring criteria of what would be a great candidate, and, honestly, my heart is just, if I can't fly, I don't want another job.

Dkt. 266-14 at 15 (Finger Dep. at 53:10-18). She has failed to create a fact issue as to her qualification.

**C. Finger Still Has No Evidence of Causation to State a Disability Discrimination Claim.**

68. Finger has not produced any evidence that UA administratively separated her *because of* her disability as required under LHC Group and Chevron Phillips. The mere fact that UA had knowledge of Finger's disability does not constitute evidence that any decisionmaker had any anti-disability animus. To the contrary, UA continued Finger's employment while she had contractual medical leave *despite* her disability. It separated her only after she exceeded her maximum contractual medical leave, regardless of her disability. She has failed to create a fact issue as to causation.

**D. Finger Still Has No Evidence of Protected Activity to State a Retaliation Claim.**

69. Finger has not produced any evidence that she engaged in protected activity as to

her disability. She has produced evidence showing that United invited her to participate in its reasonable accommodation program. Dkt. 265-1 at 39. UA previously produced its determination that Finger did not require an accommodation, Dkt. 226-1 at 60. Without dispute, without any accommodation, Finger began the return-to-work process by completing requalification training. Dkt. 226-1 at 78. To be sure, an employee "making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." Tabatchnik v. Continental Airlines, 262 F.App'x 674, 676 (5th Cir. 2008). However, no reported Fifth Circuit case holds that merely participating in an interactive process initiated by the employer constitutes a protected activity. Finger has failed to create a fact issue as to ADA protective activity.

70. Finger has not produced any evidence that she engaged in protected activity as to her age. She has failed to create a fact issue as to ADEA protective activity.

**E. Finger Still Has No Evidence of Causation to State a Retaliation Claim.**

71. Finger has not produced any evidence that but for her protected activity, UA would not have administratively separated her. She has failed to create a fact issue as to causation.

**F. Finger Still Has No Evidence of Pretext.**

72. In her 51-page brief, Finger states the following:

> Plaintiff will further show that the processing and timing of her documented OJI are materially disputed. Although the injury occurred before her June 28, 2019 separation, Plaintiff contends that the corresponding TRIR processing was delayed until July 2, 2019, four days after her termination. Plaintiff contends that this sequence and delay, considered together with management's contemporaneous knowledge of the OJI and her established RAP history, supports a reasonable inference of pretext and retaliatory motive.

Dkt. 265 at 7. How does a purported four-day delay in filing an on-the-job injury report support a reasonable inference of pretext? How does management's knowledge of her on-the-job injury or her participation in a reasonable accommodation program (which resulted no accommodation being identified) support a reasonable inference of pretext? Ultimately, Finger cannot deny what

the RLA System Board of Adjustment determined: when she missed her first trip assignment following her requalification training, without having first flown a trip, sat a day of reserve, or engaged in a contractual schedule change, she failed to comply with the return-to-work requirements under the LOA Packet and, as a result, exceeded the maximum contractual duration for medical leave. She has failed to create a fact issue as to causation.

## V.
## CONCLUSION

73. For these reasons, UA requests that the Court enter judgment that Finger take nothing, dismiss Finger's suit with prejudice, assess costs and attorney fees against Finger, and award UA such other and further relief, general or special, legal or equitable, to which it may show itself justly entitled.

Respectfully submitted,

THE MISRA LEGAL GROUP

By: **/s/ Amit K. Misra**
Amit K. Misra, Esq., P.C.
S.D. Tex. No. 21460
State Bar of Tex. No. 00795534
639 Heights Boulevard
Houston, Texas 77007
832-723-4776 Telephone
832-476-9656 Telecopier
amit@misralegal.com

ATTORNEYS FOR DEFENDANT
UNITED AIRLINES, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October, 2026, a copy of the foregoing was filed electronically with the Clerk of Court and served by email as permitted by the consent of parties under Rule 5(b)(2)(F), to the following pro se party:

Christine Finger
1ladyfinger@gmail.com

**/s/ Amit K. Misra**
Amit K. Misra