United States District Court
Southern District of Texas
**ENTERED**
April 23, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRI BETTENCOURT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2981 |
| | § | |
| UNITED AIRLINES INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is the Defendant United Airlines, Inc.'s ("United" or "Defendant") Motion for Summary Judgment (Doc. No. 27). The Plaintiff Sherri Bettencourt ("Bettencourt" or "Plaintiff") responded (Doc. No. 32) and United replied (Doc. No. 33). After considering the motion, briefing, summary judgment evidence, and applicable law, the Court grants the motion.

### I. Factual Background

This is a labor-law case brought by Bettencourt against her former employer, United. Bettencourt was a flight attendant for Continental Airlines, which merged with United in 2010. Due to the merger, United became Bettencourt's employer. As a flight attendant, Bettencourt was represented by the Association of Flight Attendants-CWA, AFL-CIO (the "AFA" or the "Union"). In March 2014,[1] Bettencourt sustained a lumbar strain while working for United when she reached and turned a bag in an overhead bin during a flight. Bettencourt immediately went on medical leave. At that time, the collective bargaining agreement (CBA) that governed Bettencourt's leave

---

[1] There is apparently some confusion as to the exact date of Bettencourt's injury. In her Amended Complaint and her summary judgment response, Bettencourt claims she was injured in August of 2014. (*See* Doc. No. 3 at 3; Doc. No. 32 at 2). Bettencourt stated in her deposition, however, that she was injured in March of 2014. (*See* Doc. No. 27, Ex. 1 at 7). Nevertheless, the exact date of Bettencourt's injury is not material to the dispute between the parties.

was the 2012-2014 PM Continental Airlines CBA (the "Continental CBA"). Section 14.C. of the Continental CBA, entitled "Medical Leaves of Absence," provided in relevant part:

> 1. Leaves of absence required due to *illness or non-occupational injury* will be granted upon written verification of disability from a qualified medical doctor. Any such leave may not exceed the lesser of: (1) the period of disability, or (2) six (6) years, or (3) the flight attendant's total length of active service. While on this type of leave, the flight attendant accrues seniority for all purposes. At the end of the maximum period, the flight attendant will be administratively terminated and removed from the System Seniority List.
>
> 2. Leaves of absence required due to *occupational injury* will be granted upon written verification from a qualified medical doctor. Any such leave may not exceed the lesser of: (1) the period of disability, or (2) six (6) years, or (3) the flight attendant's total length of active service. While on this type of leave the flight attendant accrues seniority for all purposes. At the end of the maximum period, the flight attendant will be administratively terminated and removed from the System Seniority List.

(Doc. No. 27, Ex. 6 at 166–67) (emphasis added). As one can see, the terms of leave for non-occupational and occupational injury were identical. Both had a maximum of six years of leave.

After the merger and after arms-length negotiations between United and the AFA, they were able to reach an agreement on a new CBA (the "Joint CBA") in August of 2016. The new relevant provision, entitled "E. Medical Leave" provided:

> 1. Leaves of absence required due to *illness or non-occupational injury* shall be granted upon written verification of disability from a qualified medical doctor. Any such leave may not exceed the lesser of:
>    a. The period of disability, or
>    b. Three (3) years, or
>    c. The Flight Attendant's total length of active service.
>
> 2. At the end of the maximum period, the Flight Attendant will be administratively terminated and removed from the System Seniority List.
>
> 3. For the purposes of pay and vacation step adjustments, Flight Attendants on medical leave will continue to accrue longevity for the duration of the medical leave up to the maximum leave in Paragraph E.1. above.

4. chart in Paragraph N. below contains additional rules and benefits that apply to medical leave.

(Doc. No. 27, Ex. 5 at 150) (emphasis added). Unlike in the Continental CBA, the Joint CBA did not specifically mention occupational injury. Importantly, the six-year medical leave maximum was bargained down to three. Bettencourt contends that she never received a copy of the Joint CBA while she was on leave.

In September of 2016, in coordination with the AFA, United sent a letter to Bettencourt advising her of the three-year medical leave maximum under the Joint CBA and the fact that her leave would expire on August 10, 2017. (*See* Doc. No. 27, Ex. 7). Bettencourt contends that she never received such a letter, but did acknowledge in her deposition that the address on the letter was her correct address at the time. (*See id.*, Ex. 1 at 11–12).

Bettencourt did not return to work on August 10, 2017, so on that date, United sent a letter to Bettencourt informing her that her employment had been terminated. (*See id.*, Ex. 8). On August 13, 2017, Bettencourt attempted to list for a flight but discovered she was locked out of the system to do so. She then called her supervisor and left two voicemails. She received the August 10 letter the next morning, on August 14, 2017.

Two weeks later on August 28, 2017, United and the AFA executed a letter agreement stating that they understood and had always intended that the "Medical Leave" provision of the Joint CBA would apply to all medical leaves of absence (occupational and non-occupational). (*See id.*, Ex. 9). The only difference between the two types of leave was to be that Flight Attendants on occupational medical leave would still accrue vacation. (*Id.*). The letter agreement stated that this understanding was "consistent with the parties' discussions during negotiations." (*Id.*).

The AFA filed a grievance on Bettencourt's behalf contesting the termination decision, and United rejected the grievance. The AFA appealed the denial, which United also denied.

Subsequently, the AFA Grievance Chair concluded that Bettencourt was "properly administratively terminated as contractually required by the terms of" the Joint CBA, and notified Bettencourt of this conclusion. (Doc. No. 12, Ex. 12 at 10). The AFA then withdrew Bettencourt's grievance without prejudice. (*Id.* at 16).

Bettencourt instituted this action against both United and the AFA. She claimed that the AFA breached its duty of fair representation and that United breached the CBA, or in the alternative she claimed promissory estoppel. (*See* Doc. No. 3). Thereafter, Bettencourt voluntarily moved to dismiss the AFA from the suit (Doc. No. 22), a motion that the Court granted (Doc. No. 24). United has now moved for summary judgment, arguing that: (1) this Court lacks jurisdiction over Bettencourt's claims against it because she dismissed the AFA, (2) Bettencourt has no evidence that the AFA breached its duty of fair representation, (3) Bettencourt has no evidence that her termination breached the applicable CBA, and (4) Bettencourt's promissory estoppel claim is preempted or, if it is not preempted, she has no evidence of it.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is

Case 4:19-cv-02958 Document 36 Filed 04/09/21 in TXSD Page 5 of 11

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III. Analysis

As previously stated, United argues that: (1) this Court lacks jurisdiction over Bettencourt's claims against it because she dismissed the AFA, (2) Bettencourt has no evidence that the AFA breached its duty of fair representation, (3) Bettencourt has no evidence that her termination breached the applicable CBA, and (4) Bettencourt's promissory estoppel claim is preempted or she has no evidence to support her claim.

### A. Jurisdictional Issue

United argues first that this Court lacks jurisdiction to consider Bettencourt's claims because she voluntarily dismissed the AFA from the suit. The Railway Labor Act (RLA) governs employment relations in the airline industry, including those between employees and employee unions. *See* 45 U.S.C. §§ 181–188; *Johnson v. Express One Intern., Inc.*, 944 F.2d 247, 250 (5th Cir. 1991) ("The RLA . . . governs employer/employee relations with respect to common carriers by air."). Generally, the National Railroad Adjustment Board has exclusive jurisdiction "over a[n] [airline] employee's grievances against the [airline] involving the interpretation or application of a collective bargaining agreement." *Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 123 (5th Cir. 1990). An exception to this rule exists, however, "when the employee has not only a dispute with the employer involving interpretation of the collective bargaining agreement, but also

a claim against the union for breach of the union's duty of fair representation." *Id.*; *see also Johnson v. Transp. Commc'ns Workers Union*, 56 F.3d 1385, *2 n.2 (5th Cir. 1995) (plaintiff-employee "filed a 'hybrid action,' which under the [RLA] is an exception to the exclusive jurisdiction of the National Railroad Adjustment Board over an employee's individual grievances against an employer"). In such a "hybrid" suit, the plaintiff-employee may file in federal district court alleging claims against both the union and the employer. *Trial*, 896 F.2d at 123.

United contends that, because Bettencourt voluntarily dismissed the AFA from this action, it is no longer a "hybrid" action and therefore not within the exception to the National Railroad Adjustment Board's exclusive jurisdiction. The law on this issue is not altogether settled. In *DelCostello v. Int'l Broth. of Teamsters*, the Supreme Court stated that, in a hybrid action brought under the National Labor Relations Act (NLRA), later amended by the Labor Management Relations Act (LMRA),"[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." 462 U.S. 151, 165 (1983); *see also Brown v. Witco Corp.*, 340 F.3d 209, 213 n.5 (5th Cir. 2003) ("If the employee so chooses, he may sue one defendant and not the other, but the case to be proved is the same whether one or both are sued."); *Trial*, 896 F.2d at 123 ("A hybrid action brought under the LMRA does not have to join both the employer and the union as defendants; it is sufficient for the employee to sue one or the other, but the employee must prove a cause of action against both."). Thus, it is clear that if the NLRA governed this suit, United's argument would fail.

Nevertheless, neither the Supreme Court nor the Fifth Circuit has decided whether the same rule applies when the hybrid action is instead brought under the RLA. In *Trial*, the Fifth Circuit recognized that it "ha[d] not yet decided whether an employee bringing a hybrid suit under the RLA must join the union as a party." 896 F.2d at 123. In that case, though, the court held it did not

need to resolve the issue because the plaintiff's claims against the union were time-barred. The Supreme Court has recognized that "carefully drawn analogies from the federal common labor law developed under the NLRA may be helpful in deciding cases under the RLA." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 432 (1989). In addition, "[h]ybrid claims under either [the NLRA or RLA] originate from an identical implied duty of fair representation and involve a similar balancing of competing interests." *Brock v. Republic Airlines, Inc.*, 776 F.2d 523, 526 (5th Cir. 1985). Further, the Fifth Circuit has held that the similarities between the NLRA and the RLA warrant applying *DelCostello*'s holding relating to the statute of limitations to the RLA. *See id.* ("We agree that under the reasoning of *DelCostello*, the six-month statute of limitations in § 10(b) of the National Labor Relations Act controls hybrid actions brought under the Railway Labor Act."). On the other hand, there may be convincing reasons why the *DelCostello* rule regarding joinder of defendants in hybrid actions should not apply in RLA cases. Neither party has sufficiently briefed the issue. In any event, the Court need not decide this issue because it holds, as explained below, that summary judgment is warranted for other reasons.

**B. Duty of Fair Representation**

As explained, regardless of whether Bettencourt was required to pursue her claims with the AFA as a party, she will still have to ultimately prove both that United breached the CBA and that the AFA breached its duty of fair representation in this hybrid action. *See Trial*, 896 F.2d at 123. United argues that she is unable to do so. "The duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (5th Cir. 2017), as revised (July 14, 2017) (quoting *O'Neill v. Airline Pilots Ass'n, Int'l*, 939 F.2d 1199, 1201 (5th Cir. 1991)). Accordingly, a union breaches

its duty of fair representation only when the its conduct is arbitrary, discriminatory, or in bad faith. *Id.* A union's conduct is arbitrary when, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Horner v. Am. Airlines, Inc.*, 927 F.3d 340, 343 n.1 (5th Cir. 2019). A showing of discrimination by the union "requires 'substantial evidence' that there was discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.* at 343 n.2 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp.'s of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). Finally, bad faith occurs when a union acts with a "motive to harm" a particular group, and the action in question turns on the subjective motivation of the union officials. *Carr*, 866 F.3d at 602.

Bettencourt pleaded that the AFA breached its duty to her in two ways. First, she complained of the Union's entering into the letter agreement with United to apply the new medical leave provision to occupational injuries retroactively, arguing that the move was meant to target her specifically. (*See* Doc. No. 3 at 6). Next, she complained of the AFA's abandonment of her grievance against United.

United argues that neither allegation constitutes breach of the duty of fair representation as a matter of law. United argues that Bettencourt can present no evidence that entering into the letter agreement was arbitrary, discriminatory, or in bad faith, and further presents evidence that the agreement was rational and consistent with agreements reached between United and the AFA during negotiations. It presents the declaration of its Labor Relations manager, Robert Krabbe, who testified that the CBA was always intended to treat occupational and non-occupational leave equally. (Doc. No. 27, Ex. 4 at 4–5). This was consistent with the identical treatment of the two types of leave in the old Continental CBA. *Id.*

Next, United argues that the AFA's decision to withdraw Bettencourt's grievance after completing Level 2 of the grievance process did not breach its duty of fair representation. Unions have wide latitude and discretion when deciding whether, and how far, to pursue an employee's grievance. *See Vaca v. Sipes*, 386 U.S. 171, 191 (1967). Nevertheless, the union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Id.* Here, United points to summary judgment evidence showing that the AFA was not only not arbitrary in its handling of Bettencourt's grievance, but also that the union handled the grievance in good faith and with effective advocacy. Bettencourt herself testified in her deposition that she was happy with the assistance she received during the grievance process and even went so far as to say that she had no complaints with the way the AFA handled her grievance. (*See* Doc. No. 27, Ex. 1 at 17–18, 30).[2] Moreover, the AFA *did* pursue Bettencourt's grievance to Level 2 of the procedure. (*See* Doc. No. 27, Ex. 12). The Union's eventual change of position on the merits of the grievance does not, in itself, establish a breach of duty. *See Vaca*, 386 U.S. at 191.

Bettencourt does not respond to this argument or evidence, but instead relies on her contention that her lack of notice of the Continental CBA's replacement by the Joint CBA constitutes a breach by the Union. Her entire argument in her response brief as to this point is as follows:

> When Sherri Bettencourt was injured on the job, her employment was subject to the terms of the first CBA, which protected the employee from administrative termination for six years from the date of the occupational injury. That provision remained in place throughout the tenure of Sherri Bettencourt and even after her termination.

---

[2] The latter exchange was as follows:

> Q: What complaints, if any, do you have about the AFA's handling of your grievance?
> A: Could you give me a better example of what you're referring to.
> Q: Right. In this lawsuit, are you making any complaints about the way -- the way the AFA handled your grievance?
> A: No.

> Not one time was Bettencourt attempted to be contacted while out on leave. No phone call or email. Where was Human Resources? Not receiving any type of notice was arbitrary and bad faith.

(Doc. No. 32 at 6). This is patently deficient. Bettencourt points to no evidence in the record to support her conclusory statement regarding arbitrary actions and bad faith. She does not rebut any of United's evidence that the union handled the grievance process and the letter agreement rationally, professionally, and in good faith. It is clear that Bettencourt has failed to meet her summary judgment burden to demonstrate a disputed issue of fact as to whether the AFA breached its duty of fair representation. As previously explained, in order for Bettencourt to maintain her suit for breach of the collective bargaining agreement against United, she must ultimately prove her breach of duty claim against the Union. *See Trial*, 896 F.2d at 123. Given that she has not controverted it legally or factually, United is entitled to summary judgment on Bettencourt's claim that it breached the collective bargaining agreement. Moreover, since the Court is granting summary judgment on this ground, it need not address United's argument that Bettencourt has no evidence of its breach of the collective bargaining agreement.

## C. Promissory Estoppel

United also argues that Bettencourt's promissory estoppel claim fails as a matter of law because it is preempted by the RLA. "[A] claim is preempted by the RLA only if it relies on the interpretation of a provision of the CBA; if the claim is brought under state law without any reference to the CBA, then it is not preempted." *Hirras v. Na'l R.R. Passenger Corp.*, 44 F.3d 278, 282 (5th Cir. 1995). The elements of a promissory estoppel claim under Texas law are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Gano v. Diaz*, 03-17-00119-CV, 2018 WL 3150988, at *7 (Tex. App.—Austin June 28, 2018, no pet.).

In her summary judgment response, Bettencourt argues that the promise forming the basis of her promissory estoppel claim was the medical leave of absence provision in the old Continental CBA. (*See* Doc. No. 32 at 13). Clearly, then, this claim relies on the interpretation of that provision and "refers to the CBA." *See Hirras*, 44 F.3d at 282; *cf. Lagrotte v. AMR Corp.*, CIV.A.3:97-CV-1278P, 1998 WL 133140, at *4 (N.D. Tex. Mar. 16, 1998) (promissory estoppel claim was not necessarily completely preempted by RLA for removal purposes when alleged promise was extrinsic to and independent of the CBA). Here, the alleged promise is within the CBA. The promissory estoppel claim is therefore preempted by the RLA and summary judgment as to it is granted.[3]

## IV. Conclusion

For the foregoing reasons, the Court hereby grants United's motion for summary judgment. (Doc. No. 27).

SIGNED at Houston, Texas this 23rd day of April, 2021.

Andrew S. Hanen
United States District Judge

---

[3] Moreover, even if the claim for promissory estoppel was not preempted by the RLA, under Texas law, "the promissory-estoppel doctrine presumes no contract exists." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002). Here, the relationship between Bettencourt and United was governed by the CBAs, so her promissory estoppel claim would fail.