United States District Court
Southern District of Texas
**ENTERED**
October 23, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTINE FINGER, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-4205 |
| | § | |
| UNITED AIRLINES, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

# ORDER

Pending before the Court are Defendant United Airlines, Inc.'s ("United") Restated Motion to Dismiss for Lack of Subject Matter Jurisdiction, (Doc. No. 225), and United's Restated Motion for Summary Judgment. (Doc. No. 226). Plaintiff Christine Finger ("Finger") has now filed responses to both.[1] (Doc. Nos. 233, 265, 266). After considering the motions and the law, the Court hereby **DENIES** United's Restated Motion to Dismiss and **GRANTS** United's Restated Motion for Summary Judgment.

## I. Factual Background

Finger was employed as a flight attendant with United for nearly 35 years. After sustaining an injury during a flight, she spent most of the last five of those years on medical leave. She did return to work for a brief stint in the middle of that time, but sustained another injury. After Finger

[1] The Court has granted numerous extensions—now totaling over six months—for Finger to file her exhibits in support of her response to United's motion for summary judgment. It appears that Finger filed her substantive response, (Doc. No. 265), on October 6, 2026, and her exhibits to that response, (Doc. No. 266), on October 7, 2026. Despite making clear in several orders that October 6th would be Finger's final opportunity to file supporting exhibits, the Court considers both her response and her exhibits here. Finger's motion for leave, (Doc. No. 266), is granted.

exhausted the three years of medical leave—following the second injury—allotted under the Collective Bargaining Agreement (CBA) that governed Finger's employment, United terminated Finger's employment on June 28, 2019.

Since that time, a System Board of Adjustment ("System Board"), empaneled under the Railway Labor Act (RLA) heard a grievance brought by Finger's union—the Association of Flight Attendants (AFA)—on her behalf. (Doc. No. 225–1 (System Board decision). 45 U.S.C. §§ 151–188). On March 17, 2022, the System Board denied Finger's grievance, finding that Finger had not complied with United's return-to-work requirements, and that United had properly terminated Finger. (System Board decision at 21).

Finger has now sued United, pleading causes of action for: (1) age discrimination under the Age Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights Act (TCHRA), (2) disability discrimination under the Americans with Disabilities Act (ADA) and TCHRA, and (3) retaliation. United has moved to dismiss under Rule 12(b)(1) and has moved for summary judgment on all of Finger's claims. With regard to the latter, United contends that Finger cannot produce evidence sufficient to create a fact issue as to a prima facie case of any of her claims. United also contends that, even if Finger could make out a prima facie case, she would be unable to create a material fact issue on the required showing of pretext for each of her claims.

## II. United's Motion to Dismiss

As an initial matter, United asks this Court to revisit its earlier order denying United's motion to dismiss for lack of subject matter jurisdiction. (Doc. No. 29). United argues that, in light of the March 17, 2022 System Board decision, this Court is divested of jurisdiction. While stated in terms of jurisdiction, as a practical matter United's motion principally argues that this Court is precluded from considering certain factual matters because it is bound by the System Board's

determination of those issues. Whether or not that is the case, it does not affect this Court's jurisdiction to hear the case, the basis of which is outlined in this Court's prior order, and remains unchanged. (Doc. No. 29).

United's reliance on *Said v. Nat'l R.R. Passenger Corp.* is instructive on this point. In that case, the United States District Court for the District of Columbia held that the RLA precluded it from considering certain summary judgment evidence, not that it deprived the court of subject matter jurisdiction. 390 F.Supp.3d 46, 55 (D. D.C. 2019) ("[T]he plaintiff's claims are not preempted or precluded . . . . Nevertheless, the Court concludes that the RLA bars it from considering much of the evidence that it previously concluded a reasonable jury could rely upon in finding for the plaintiff.").

United's Motion to Dismiss. (Doc. No. 225). is **DENIED**. United's arguments on the preclusive effect of the System Board's factual findings are instead considered and discussed—following the persuasive guidance of *Said*—in the context of United's motion for summary judgment.

## III. United's Motion for Summary Judgment

### A. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant

then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

**B. Analysis**

Finger has pleaded three theories of liability: age discrimination, disability discrimination, and retaliation. Each of these claims requires the Court to apply the *McDonnell Douglas* burden-shifting framework. *See Norsworthy v. Houston Independent School District*, 70 F.4th 332, 336 (5th Cir. 2023) (age discrimination); *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (disability discrimination); *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (retaliation).

Under the *McDonnell Douglas* framework, the Plaintiff must first establish a prima facie case. *Feist*, 730 F.3d at 454. If the employee establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Id.* "After the employer

states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.*

In this case, United has stated a legitimate, non-discriminatory, non-retaliatory reason for its decision to terminate Finger: she exceeded the maximum contractual duration for medical leave under the CBA. United then argues that Finger cannot make the required prima facie showing with respect to each of her three claims. United's arguments in its motion for Summary Judgment, however, focus largely on whether Finger can show pretext. That being the case, the Court focuses on this issue because even if Finger could make the required showing of a prima facie case for each of her claims above, for her claims to survive United's motion, she would need to raise a genuine issue of material fact as to whether United's stated reason is actually a pretext for discrimination and/or retaliation.

An employee may meet the burden of showing pretext by presenting "evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (internal quotations omitted). At the summary judgment stage, "the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Caldwell v. KHOU–TV*, 850 F.3d 237, 242 (5th Cir. 2017). One way to show pretext is to show that an employer failed to follow its own policies and procedures with regard to terminating the employee. *See Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010). Another way is to show disparate treatment. *Delaval*, 824 F.3d at 480.

Finger does not claim "disparate treatment." *Delaval*, 824 F.3d at 480. In other words, she has not pointed to a comparator—or similarly situated individual—who was treated differently. *Id.* Instead, Finger relies on evidence tending to show that: (1) she had completed requalification training and thus returned to "active status" before her three year leave elapsed; (2) United delayed

processing her new injury—sustained during return-to-work training—until after her termination; and (3) multiple United officials stated that she would not be terminated while going through the return to work process, because that process constituted "active status." (Doc. No. 265 at 17). Functionally, each of these contentions, if supported by evidence, could theoretically raise a fact issue as to whether United, in essence, "failed to follow its own policies and procedures with regard to terminating" Finger. *See Smith*, 371 F. App'x at 520.

In this case the applicable policies and procedures are supplied by the CBA, which "covers the whole employment relationship." *See Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008). That being the case, by asking this Court to find a fact issue as to pretext on the basis that she had completed her return to active status or that United delayed processing her paperwork, Finger is—in effect—asking this Court to consider factors which may be precluded by the System Board's finding that United did *not* violate the CBA, and that Finger did. (System Board decision at 21). The Railway Labor Act creates a mandatory arbitral forum for the resolution of certain "minor" employment disputes within the airline industry.[2] *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994). "Minor disputes involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" *Id.* (quoting *Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33 (1957). Minor disputes "must be resolved only through the RLA mechanisms . . . ." *Id.* To be sure, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted." *Id.* at 260.

---

[2] "Minor disputes," according to the Supreme Court, are "those that involve duties and rights created or defined by the CBA." *Hawaiian Airlines Inc. v. Norris*, 512 U.S. 246, 258 (1994). Some may consider that the use of the term "minor" in this context to have an unfortunately disparaging tone. Courts consider every claim of a party to be important and worthy of dispassionate consideration. Nevertheless, since it is the terminology used by the Supreme Court in interpreting the RLA, this Court will use it herein.

This Court has already held, (*See* Doc. No. 29), that Finger's causes of action, as described above, are not pre-empted by the RLA. Nevertheless, this Court must determine if it is precluded from considering the evidence concerning certain contentions that Finger claims constitute evidence of pretext because they have already been decided against her by the System Board.

As an initial matter, there is a well-established line of cases holding that the RLA "does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 256. Perhaps most relevant to this case is *Carmona v. Southwest Airlines*. In *Carmona*, a former flight attendant sued Southwest Airlines after being terminated for accruing the maximum allowable absences under his CBA. *Id.* at 346. Carmona's grievance was heard by a System Board, which upheld his termination. *Id.* Carmona then brought causes of action for violation of Title VII and the ADA. *Id.* The district court granted Southwest's motion for summary judgment, concluding that Carmona's claims were precluded by the RLA. *Id.* at 347.

The Fifth Circuit in *Carmona* held that Carmona's claims were not precluded by the RLA, reasoning that:

> As provisions of the CBA are relevant to, but *not* dispositive of, the resolution of Carmona's claims, his claims do not constitute a minor dispute under the RLA. Even though a court would have to *refer to* the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination. Carmona's factual allegations that unexcused absences by female flight attendants went unpunished, that remarks of his supervisors regarding male employees were discriminatory, and that his chronic illnesses were the real reason he was fired, do not bring the meaning of any CBA provisions into dispute. He alleges that CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory. Thus, consideration of the CBA *as applied to Title VII and the ADA*—not interpretation of the CBA itself—is what is required to resolve Carmona's claims.

*Id.* at 349–50 (emphasis in original).

"[S]ome courts have 'drawn on the RLA preemption doctrine as an evidentiary guide.'" *Said*, 390 F.Supp.3d at 54 (quoting *Gilmore v. Union Pac. R.R. Co.*, 2012 WL 3205233, at *8 (E.D. Cal. Aug. 2, 2012)). In those cases, the courts ruled that evidence offered to raise a fact issue concerning pretext was inadmissible where it constituted a collateral attack on the System Board's holdings. *See id.* In other words, the courts held that "considering that evidence would require an interpretation of the relevant portions of the CBA," which would violate the RLA. *Id.* at 55. This concept is at the heart of United's motion. This Court is unable to find any case in this Circuit addressing the effect of a final System Board decision on the admissibility of evidence contradicting that final decision.

That being said, *Carmona* and *Said* do, without a doubt, present a fine line. It is both a clear line and one that makes practical sense: courts may, as *Carmona* held, hear claims based on independent rights that merely require reference to a CBA. They may not, as *Said* held, consider evidence in those cases that would require directly contradicting the findings of the System Board in the area in which the RLA grants exclusive jurisdiction: interpretation of the CBA.

This holding is necessarily narrow: if a plaintiff in an RLA-governed employment case presents evidence of discrimination or retaliation—including evidence of pretext—that does not require a court to re-evaluate the decision of the system board, such as evidence of a similarly situated comparator, then the Court does not have an RLA preclusion issue. If, however, a plaintiff presents evidence that necessarily requires a court to determine whether an employee complied with the requirements of the CBA for returning from leave or whether the employer complied with the requirements of the CBA for terminating that employee, and the System Board has already addressed that issue, the court must refrain from considering the contrary evidence.

In this case, a System Board of Adjustment empaneled pursuant to the RLA expressly considered whether United had violated the CBA with respect to its treatment of Finger. (*See* System Board opinion). That System Board held that: "[United] did not violate the [CBA] when it administratively separated [Finger] on June 28, 2019." (*Id.* at 21). In reaching this conclusion, it necessarily ruled contrary to the second way Finger seeks to prove pretext: that United did not comply with the CBA when it separated her. This Court cannot determine that United "failed to follow its own policies and procedures" without considering evidence that United violated the CBA. The System Board also explicitly ruled—in holding that United did not violate the CBA—that Finger did not fulfill the requirements for reinstatement to active status. (System Board decision at 21). This directly contradicts Finger's first contention: that she had properly returned from leave under the CBA.

That being the case, the System Board ruled contrary to Finger's first two assertions. With respect to her third contention, that multiple United officials stated that she would not be terminated while going through the return-to-work process, Finger specifically contends that:

> Elizabeth Hibbard [union chapter] President wrote to Tammy Holt, and TG Miller [union on-job injury] Chairperson also wrote to Tammy Holt, confirming that an FA [flight attendant] actively completing RTW [return to work] steps was considered active and would not be terminated. Plaintiff also personally called Tammy Holt prior to beginning her RTW process, and Holt stated directly that "as long as a flight attendant is in the RTW process, they are considered active and will not be administratively terminated."

(Doc. No. 265 at 17).

This Court cannot determine whether the System Board considered this evidence. That being said, neither Hibbard nor Miller, in this situation, were acting as representatives of United. They were *union* representatives. As such, considering this evidence—which the System Board decision does not mention—the Court finds that it is not sufficient to raise a genuine issue of material fact as to whether United failed to follow its internal policies and procedures regarding

termination (pretext). While Holt did work for United, what she allegedly told Hibbard or Miller—who then passed it along to Finger—would be inadmissible double hearsay. Additionally, each of the statements—including the statement Holt allegedly made directly to Finger—necessarily rely on an interpretation of the CBA. "[A]s long as a flight attendant is in the RTW process, they are considered active" is an interpretation of the CBA, and an interpretation that the System Board squarely rejected. Finger cannot show that United failed to follow its internal policies and procedures by showing that a United representative misinterpreted—or misrepresented—those policies and procedures. The fact remains that a "compulsory and binding arbitration" proceeding *Consolidated Rail Corp. v. Railway Labor Execs. Ass'n*, 491 U.S. 299, 303 (1989), found that the return-to-work process did not constitute "active status," and that United did not violate the CBA. (System Board Opinion at 19–21).

A holding in this Court that United's stated reason for firing Finger—that she had failed to fulfill the return-to-work requirements in the CBA—was pretextual would be the equivalent of holding that United violated the CBA and she did not. Such a holding would be directly contrary to the System Board's findings. It would violate the RLA's mandate that disputes over the application of the CBA be decided "only through the RLA mechanisms." *Hawaiian Airlines*, 512 U.S. at 253. That being the case, the Court is precluded from considering evidence that contradicts the System Board's determination—that United complied with the CBA and that Finger did not.

In the absence of any other evidence tending to suggest that United's reason for terminating Finger was pretextual, the Court determines that summary judgment is appropriate on all of Finger's claims. Finger has not carried her burden of raising a genuine issue of material fact "that the employer's reason is actually a pretext for retaliation." *Feist*, 730 F.3d at 454. As discussed

above, this showing is required for Finger to succeed on each of her claims. United's motion for summary judgment is granted.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss, (Doc. No. 225), and **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 226). All of Plaintiff's claims are hereby dismissed with prejudice.

It is so ordered.

Signed on this the 23rd day of October 2026.

Andrew S. Hanen
United States District Judge